IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP., | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff Bytemark, Inc. ("Bytemark" or "Plaintiff"), files this Complaint against Defendants Xerox Corp. ("Xerox"), ACS Transport Solutions, Inc. ("ACS"), Xerox Transport Solutions, Inc. ("Xerox Transport"), Conduent Inc. ("Conduent") (collectively the "Xerox Entities"), and New Jersey Transit Corp. ("NJ Transit") (collectively "Defendants") and as claim for relief states as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement under the Patent Act, trade secret misappropriation under New York state and federal law, trade secret misappropriation under the New Jersey Trade Secret Act, breach of contract, tortious interference with business relations, unfair competition, and unjust enrichment under New York state laws.

## PARTIES

2.      Bytemark is a Delaware corporation organized and existing under the laws of the State of Delaware with a place of business at 268 W 44th Street, 3rd Floor, New York, New

York 10036.

3.      Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open APIs.  Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for consumers and merchants.

4.      On information and belief, Xerox is a New York domestic business corporation with its headquarters at 45 Glover Avenue, PO Box 4505, Norwalk, Connecticut 06850.

5.      On information and belief, Xerox is in the business of offering for sale and selling business services and document technology products.

6.      Xerox conducts business throughout the U.S., including within the State of New York and within this district.

7.      On information and belief, Xerox Transport Solutions, Inc. is a Georgia domestic profit corporation with its principal office address at 2828 N Haskell Ave, Building 1 Floor 10, Dallas, Texas 75204.

8.      On information and belief, Xerox Transport is a subsidiary of Xerox.

9.      On information and belief, ACS Transport Solutions, Inc. is a Georgia domestic profit corporation with its Principal Office Address at 2828 N Haskell Ave, Building 1 Floor 10, Dallas, Texas 75204.

10.     On information and belief, ACS is a subsidiary of Xerox.

11.     On information and belief, Conduent Inc. is a New York domestic business corporation with its Corporate Headquarters at 233 Mount Airy Road, Basking Ridge, New Jersey 07920.

12.     On information and belief, Conduent is a spinoff company of Xerox.

13.     On information and belief, NJ Transit is a New Jersey corporation with its Headquarters at 1 Penn Plaza East, Newark, New Jersey 07105.

14.     NJ Transit is a public transportation system and operates bus, light rail, and commuter trains throughout New York, New Jersey, and Pennsylvania.

## JURISDICTION

15.     This Court has subject matter jurisdiction under Title 28, United States Code, §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

17.     Venue in this judicial district is proper under Title 28, United States Code, §§ 1391 and 1400 because Defendants conduct business within this district and offer for sale and/or sell in this district applications and systems that infringe Plaintiff's patents.  Additionally, venue is proper because Xerox and Conduent's principal places of business are in this district.

18.     This Court has personal jurisdiction over Defendants because of Defendants' continuous and systematic contacts and business activities within the state of New York and within this District.

## BACKGROUND

19.     Bytemark is the owner of all rights, title and interest in and to United States patent Nos. 8,494,967 ("the '967 patent"), attached hereto as Exhibit A, and 9,239,993 ("the '993 patent"), attached hereto as Exhibit B (collectively the "Patents-in-Suit").

20.     Bytemark offers for sale visual validation mobile ticketing applications and

systems disclosed and claimed by the Patents-in-Suit including but not limited to the V3 Ticketing Technology.

21.     Bytemark has secured contracts relating to its V3 Ticketing Technology within the mass transit industry, including a contract with New York Waterway, the largest private ferry operator in the U.S.

22.     Bytemark's contract with New York Waterway was highly publicized and well known in the mobile ticketing market.

23.     Bytemark is the owner of trade secrets and confidential information relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  Bytemark's trade secrets include a unique compilation of proprietary information including mobile ticketing development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm (the "trade secrets").

24.     Bytemark has taken reasonable measures to keep its trade secrets and other confidential information secret.  Bytemark only discloses its trade secrets when necessary, and only to those who agree to keep the information secret by signing confidentiality agreements. Bytemark has ensured that any and all potential third parties to whom trade secrets and/or confidential information were disclosed were provided with, and signed, confidentiality agreements, including teaming agreements and NDAs.  Furthermore, all Bytemark employees sign employment agreements that contain confidentiality provisions relating to Bytemark's

intellectual property and undergo employee training with respect to maintaining the confidentiality of Bytemark's intellectual property including its trade secrets and other confidential information. All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted using the latest versions of MacOS X, iOS 10, Android 6 & 7. Additionally, all documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

25.     Bytemark's trade secrets are valuable and crucial to the implementation of its business and competitive market position and it has invested substantial time, effort, and money in developing its trade secrets.

26.     Beginning in Spring 2012, Plaintiff entered into a series of Nondisclosure Agreements and Teaming Agreements (the "Confidentiality Agreements") with Xerox subsidiaries ACS and Xerox Transport for the purpose of potentially developing joint proposals and/or bids related to providing mobile ticketing solutions to prospective clients in the mass transit industry.

27.     Pursuant to the Confidentiality Agreements, the Parties agreed that no title, license, intellectual property rights, or any other right of ownership or use shall be granted (expressly, by implication, or by estoppel) to the receiving party under any patent, trademark, copyright, or trade secret owned or controlled by the disclosing party by the disclosure of proprietary information.

28.     While protected by the Confidentiality Agreements, Bytemark disclosed its trade secrets and confidential information to the Xerox Entities on numerous occasions between 2012 and 2015.

29.     Over the years and while covered by the Confidentiality Agreements, Bytemark

has refined and developed its trade secret protected mobile ticketing technologies and systems and competitive knowledge in management and service of these technologies and systems, which were disclosed to the Xerox Entities.

30.     After Plaintiff disclosed its trade secrets and other confidential information to the Xerox Entities, the Xerox Entities cut Plaintiff out of a joint bidding effort and instead used and/or disclosed Plaintiff's patents and trade secrets to bid and secure a contract with NJ Transit on their own.

31.     The Xerox Entities offered for sale and sold their infringing visual validation applications and systems, including the exemplary product/system the MyTix mobile application, to NJ Transit in Newark, New Jersey.

32.     Defendants are offering for sale and selling their visual validation mobile ticketing applications and systems including the MyTix mobile application that infringe at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent literally and/or under the doctrine of equivalents and at least claim 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '933 patent literally and/or under the doctrine of equivalents.

33.     Defendants materially breached the Confidentiality Agreements by using and/or disclosing Bytemark's trade secrets and other confidential information to NJ Transit and other third parties and using Bytemark's intellectual property for their own gain.

34.     In addition to misappropriating Plaintiff's trade secrets and other confidential information in breach of the Confidentiality Agreements, Defendants have recently begun interfering with Plaintiff's business relationship and current and prospective contracts with Plaintiff's longtime customer, New York Waterway.

35.     Defendants have offered to sell their infringing visual validation applications and

systems and implementations that use Bytemark's trade secrets to New York Waterway as part of an integrated transportation contract.

36.     On or about January 2015, Plaintiff notified Defendants of their infringement and misappropriation.  Despite this notice, Defendants have continued to use and offer for sale their infringing visual validation applications and systems and misappropriated trade secrets and other confidential information.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 8,494,967**
**(Against all Defendants)**

37.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-36 herein.

38.     Pursuant to 35 U.S.C. § 271(a), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications including the exemplary product/system the MyTix mobile application in the State of New York and elsewhere in the U.S.

39.     In violation of 35 U.S.C. § 271(b), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent indirectly by inducing the infringement of the '967 patent claims by third parties including but not limited to New York Waterway and its customers by encouraging these customers and others to purchase and use the infringing systems and applications including the MyTix mobile application.

40.     On or about January 2015, Plaintiff notified Defendants of their infringing

activities with respect to the '967 patent.

41.     Despite actual notice of infringement, Defendants continue to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for their infringing applications with the knowledge or willful blindness that their conduct will induce their customers to infringe the '967 patent's asserted claims.

42.     In violation of 35 U.S.C. § 271(c), the Xerox Entities have infringed and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent indirectly by contributing to the infringement of the '967 Patent's claims, including but not limited to NJ Transit and its customers.

43.     Defendants have contributed and continue to contribute to the infringement of at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent because they knew that the applications and systems they offer for sale and sell, including but not limited to the MyTix mobile application, are infringing and are not suitable for substantial non-infringing use.

44.     As a result of Defendants' infringement of the '967 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

45.     Defendants' infringement of the '967 patent has been deliberate, willful and with full knowledge, or willful blindness to knowledge, of the '967 patent.

46.     Plaintiff has suffered damages in an amount to be determined at trial by reason of

Defendants' willful infringement of the '967 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendants from continuing such infringement.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT NO. 9,239,993**
**(Against all Defendants)**

47.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-46 herein.

48.     Pursuant to 35 U.S.C. § 271(a), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications and systems including the exemplary products/systems the MyTix mobile application in New York and elsewhere in the U.S.

49.     In violation of 35 U.S.C. § 271(b), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent indirectly by inducing the infringement of the '993 patent's claims by third parties including but not limited to New York Waterway and its customers by encouraging these customers and others to purchase and use the infringing systems and applications including the MyTix mobile application.

50.     On or about January 2015, Plaintiff notified Defendants of their infringing activities with respect to the '993 patent.

51.     Despite actual notice of infringement, Defendants continue to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for their infringing applications with

the knowledge or willful blindness that their conduct will induce their customers to infringe the '993 patent's asserted claims.

52.     In violation of 35 U.S.C. § 271(c), the Xerox Entities have infringed and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent indirectly by contributing to the infringement of the '993 patent's asserted claims by NJ Transit and its customers.

53.     Defendants have contributed and continue to contribute to the infringement of at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent because they knew that the applications and systems they offer for sale and sell, including but not limited to the MyTix mobile application, are infringing and are not suitable for substantial non-infringing use.

54.     As a result of Defendants' infringement of the '993 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

55.     Defendants' infringement of the '993 patent has been deliberate, willful and with full knowledge, or willful blindness to knowledge, of the '993 patent.

56.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '993 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendants from continuing such infringement.

## COUNT THREE
## BREACH OF CONTRACT UNDER NEW YORK LAW
### (Against Defendants Xerox, ACS, Xerox Transport, and Conduent)

57.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-56 herein.

58.    Beginning in Spring 2012, Plaintiff entered into a series confidentiality agreements with the Xerox Entities for the limited purpose of potentially developing joint proposals and/or bids relating to providing mobile ticketing solutions to prospective customers in the mass transit industry.

59.    Under the Confidentiality Agreements, the parties agreed that any trade secrets or other confidential information shall remain the property of the originating party and the Xerox Entities had a duty to exercise all reasonable care to preserve and protect Plaintiff's trade secrets and other confidential information from unauthorized access, use, disclosure, or theft and to restrict access to only those who agreed to be bound by the terms and conditions of the Confidentiality Agreements.

60.    Under the protection of the Confidentiality Agreements, Plaintiff disclosed trade secrets and other confidential information to the Xerox Entities.

61.    The Xerox Entities breached the Confidentiality Agreements by using and/or disclosing Plaintiff's trade secrets and other confidential information for their own benefit.

62.    The Xerox Entities have used Plaintiff's trade secrets and confidential information in their contract with NJ Transit and NJ Transit and the Xerox Entities are using and/or disclosing Plaintiff's trade secrets and confidential information in an attempt to gain an integrated transportation contract with New York Waterway.

63.     As a result of the Xerox Entities' breach, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT FOUR**
**<u>VIOLATION OF THE DEFEND TRADE SECRETS ACT</u>**
**(Against all Defendants)**

64.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-63 herein.

65.     The actions of Defendants as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016, 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 *et seq*.

66.     Plaintiff is the owner of trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  Bytemark's trade secrets include a compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

67.     Plaintiff's trade secrets constitute independent economic value and are not generally known or readily ascertainable.

68.     At all times, Plaintiff has taken reasonable efforts to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, employee training, and password protection and encryption.

69.     The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust

and by way of the Confidentiality Agreements, which imposed a duty upon Xerox Entities to maintain the confidentiality of Bytemark's confidential information and trade secrets and to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff. At all relevant times, Xerox Entities knew about the confidential nature of Plaintiff's trade secrets.

70.     The Xerox Entities misappropriated Plaintiff's trade secrets by improper means in violation of the Confidentiality Agreements by using them and continuing to use them for their own economic benefit.

71.     The Xerox Entities have intentionally, willfully and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continue to do so, in violation of a confidential relationship.

72.     The Xerox Entities continue to misuse and/or disclose Plaintiff's trade secrets and confidential information in their attempt to interfere with Plaintiff's current and prospective contracts with New York Waterway as recent as January 2017.

73.     On information and belief, NJ Transit knew or had reason to know that the Xerox Entities acquired Bytemark's trade secrets by improper means.

74.     As a consequence of the foregoing, Bytemark has suffered and will continue to suffer irreparable harm and loss.

**COUNT FIVE**
**MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK LAW**
**(Against all Defendants)**

75.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-74 herein.

76.     Plaintiff is the owner of trade secrets relating to the design of applications and

technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  Bytemark's trade secrets include a compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

77.    Plaintiff's trade secrets constitute independent economic value and are not generally known or readily ascertainable.

78.    At all times, Plaintiff has taken reasonable efforts to keep its trade secrets secret through the use of confidentiality agreements, employment agreements, employee training, and password protection and encryption.

79.    Defendants acquired Plaintiff's trade secrets through a relationship of trust and by way of the Confidentiality Agreements, which imposed a duty upon Defendants to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff. At all relevant times, Defendants knew about the confidential nature of Plaintiff's trade secrets.

80.    Defendants misappropriated Plaintiff's trade secrets by using and/or disclosing them for their own economic benefit to secure a contract for providing mobile ticketing services to NJ Transit in violation of the Confidentiality Agreements.

81.    Defendants have intentionally, willfully and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continue and will continue to do so, in violation of a confidential relationship.

82.    Defendants continue to misuse and/or disclose Plaintiff's trade secrets and

confidential information to interfere with Plaintiff's current and prospective contracts with New York Waterway.

83.     On information and belief, NJ Transit knew or had reason to know that the Xerox Entities acquired Bytemark's trade secrets by improper means.

84.     As a consequence of the foregoing, Bytemark has suffered and will continue to suffer irreparable harm and loss.

**COUNT SIX**
**MISAPPROPRIATION OF TRADE SECRETS UNDER NEW JERSEY TRADE SECRET ACT**
**(Against all Defendants)**

85.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-84 herein.

86.     Bytemark possesses valuable confidential information and trade secrets.

87.     At all times, Plaintiff has taken reasonable efforts to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, employee training, and password protection and encryption.

88.     The Xerox Entities acquired Plaintiff's confidential information and trade secrets and is, and at all relevant times, were aware of the confidential nature of Plaintiff's trade secrets.

89.     In violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, et seq., the Xerox Entities have misappropriated Plaintiff's confidential information and trade secrets by using and/or disclosing such confidential information and trade secrets by improper means for their own personal gain with NJ Transit and others.

90.     On information and belief, NJ Transit knew or had reason to know that the Xerox Entities acquired Bytemark's trade secrets by improper means.

91.     As a result of the Xerox Entities' actions, Plaintiff has suffered and will suffer damages and irreparable harm.

### COUNT SEVEN
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS UNDER NEW YORK LAW
### (Against all Defendants)

92.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-91 herein.

93.     Plaintiff entered into a series of valid and existing contracts with New York Waterway to provide its visual validation ticketing and back end management services between 2012 and 2017.

94.     Plaintiff and New York Waterway have been negotiating a future contract for Plaintiff to continue to provide its mobile ticketing application and systems and back-end support and management services to New York Waterway.

95.     Defendants were aware of Plaintiff's contract and prospective contract with New York Waterway and interfered with Plaintiff's relationship with New York Waterway.

96.     On information and belief, NJ Transit developed a cooperative transportation strategy where NJ Transit and New York Waterway would offer integrated bus and ferry services to transportation passengers.

97.     As part of this scheme, NJ Transit would provide New York Waterway with Xerox's infringing mobile ticketing application and technical support and back-end management technical support and service that unlawfully uses Plaintiff's trade secrets and other confidential information.

98.     Defendants' actions have undermined and damaged Plaintiff's business relations with New York Waterway and threaten Plaintiff's current and prospective contracts and have damaged and caused irreparable harm to the Plaintiff.

## COUNT EIGHT
## UNFAIR COMPETITION UNDER NEW YORK LAW
### (Against all Defendants)

99.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-98 herein.

100.    The foregoing acts constitute unfair competition under New York state law.

101.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from using and/or disclosing Plaintiff's trade secrets and other confidential information, and enjoined from engaging in the infringing conduct set forth above.

102.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein, Plaintiff's lost profits, attorneys fees,' costs and interest.

103.    Furthermore, because Defendants' actions are wanton, willful, malicious, and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

## COUNT NINE
## UNJUST ENRICHMENT
### (Against all Defendants)

104.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-103 herein.

105.    As a result of Defendants' unlawful conduct including but not limited to their infringement and misappropriation of Plaintiff's trade secrets, Defendants have diverted substantial revenues from Plaintiff.

106.    Furthermore, Defendants have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell their own competing mobile ticketing platform.

107.    Thus, Defendants have benefitted by saving the significant time and cost that it would otherwise have had to incur in order to develop their own mobile ticketing platform.

108.    As a direct and proximate consequence of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense.

109.    It would be against equity and good conscience to permit Defendants to retain the substantial revenues that they have realized through the aforementioned conduct.

110.    Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

111.    Furthermore, because Defendants' actions are wanton, willful, malicious, and have been taken in conscious disregard of Plaintiff's rights, Defendants are also liable for punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Bytemark, Inc., prays for relief, as follows:

A.    That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 8,494,967, together with all rights of recovery under such patent for past and future infringement thereof;

B.    That United States Patent No. 8,494,967 is valid and enforceable in law and that

Defendants have infringed said patent;

C.     That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 9,239,993, together with all rights of recovery under such patent for past and future infringement thereof;

D.     That United States Patent No. 9,239,993 is valid and enforceable in law and that Defendants have infringed said patent;

E.     Awarding to Plaintiff its damages caused by Defendants' infringement of United States Patent Nos. 8,494,967 and 9,239,993, including an assessment of pre-judgment and post-judgment interest and costs, and an award of supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting, as needed;

F.     That Defendants' infringement has been willful and said damages be trebled pursuant to 35 U.S.C. § 284;

G.     Entering a permanent injunction against Defendants, their officers, employees, attorneys, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the patents-in-suit, including without limitation, from continuing to make, use, sell and/or offer for sale;

H.     An award of damages adequate to compensate Plaintiffs for Defendants' misappropriation of Plaintiff's trade secrets, together with prejudgment and post-judgment interest, attorneys' fees and costs;

I.     An award of damages adequate to compensate Plaintiff for Defendants' breach of contract, together with prejudgment and post-judgment interest and costs;

J.     An award of damages adequate to compensate Plaintiffs for Defendants' unfair

competition, together with prejudgment and post-judgment interest and costs;

      K.     An award of damages adequate to compensate Plaintiff for Defendants' unjust enrichment, together with prejudgment and post-judgment interest and costs;

      L.     That this is an exceptional case and awarding to Plaintiff its costs, expenses and reasonable attorney fees pursuant to 35 U.S.C. § 285;

      M.     That the Court award punitive damages to Plaintiff owing to the willful, wanton, and malicious nature of Defendants' acts; and

      N.     Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues triable by jury.

Dated: March 10, 2017

                    Respectfully submitted,

                    /s/ Darius Keyhani
                    Darius Keyhani (DK-9673)
                    Meredith & Keyhani, PLLC
                    125 Park Avenue, 25th Floor
                    New York, New York 10017
                    Tel. (212) 760-0098
                    Fax (212) 202-3819
                    dkeyhani@meredithkeyhani.com
                    *Attorneys for Plaintiff*