IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BYTEMARK, INC.,

    Plaintiff,

    v.

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and
NEW JERSEY TRANSIT CORP.,

    Defendants.

Civil Action No. 1:17-cv-01803-PGG

JURY TRIAL DEMANDED

## FIRST AMENDED COMPLAINT

Plaintiff Bytemark, Inc. ("Bytemark" or "Plaintiff"), files this Complaint against Defendants Xerox Corp. ("Xerox"), ACS Transport Solutions, Inc. ("ACS"), Xerox Transport Solutions, Inc. ("Xerox Transport"), Conduent Inc. ("Conduent") (collectively the "Xerox Entities"), and New Jersey Transit Corp. ("NJ Transit") (collectively "Defendants") and as claim for relief states as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement under the Patent Act, trade secret misappropriation under New York state and federal law, trade secret misappropriation under the New Jersey Trade Secret Act, breach of contract, tortious interference with business relations, unfair competition, and unjust enrichment under New York and New Jersey state laws.

## PARTIES

2.    Bytemark is a Delaware corporation organized and existing under the laws of the State of Delaware with a place of business at 268 W 44th Street, 3rd Floor, New York, New

York 10036.

3.      Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open APIs.  Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for consumers and merchants.

4.      On information and belief, Xerox is a New York domestic business corporation with its headquarters at 45 Glover Avenue, PO Box 4505, Norwalk, Connecticut 06850.

5.      On information and belief, Xerox is in the business of offering for sale and selling business services and document technology products.

6.      Xerox conducts business throughout the U.S., including within the State of New York and within this District.

7.      On information and belief, Xerox Transport Solutions, Inc. is a Georgia domestic profit corporation with its principal office address at 2828 N Haskell Ave, Building 1 Floor 10, Dallas, Texas 75204.

8.      On information and belief, Xerox Transport is a subsidiary of Xerox.

9.      On information and belief, ACS Transport Solutions, Inc. is a Georgia domestic profit corporation with its Principal Office Address at 2828 N Haskell Ave, Building 1 Floor 10, Dallas, Texas 75204.

10.     On information and belief, ACS is a subsidiary of Xerox.

11.     On information and belief, Conduent Inc. is a New York domestic business corporation with its Corporate Headquarters at 100 Campus Drive, Suite 200, Florham Park, New Jersey 07932.

12.     On information and belief, Conduent is a spinoff company of Xerox.

13.     On information and belief, NJ Transit is a New Jersey corporation with its Headquarters at 1 Penn Plaza East, Newark, New Jersey 07105.

14.     NJ Transit is a public transportation system and operates buses and light rail and commuter trains throughout New York, New Jersey, and Pennsylvania.

## JURISDICTION

15.     This Court has subject matter jurisdiction under Title 28, United States Code, §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17.     Venue in this judicial district is proper under Title 28, United States Code, §§ 1391 and 1400 because Defendants conduct business within this District and offer for sale and/or sell in this District applications and systems that infringe Plaintiff's patents.  Additionally, venue is proper because Xerox and Conduent's principal places of business are in this District. Furthermore, a substantial part of the events or omissions giving rise to the claim occurred in this District: Bytemark negotiated and signed the Confidentiality Agreements in this District; Defendants misused and/or disclosed Plaintiff's intellectual property, trade secrets, and confidential information to prospective customers located and/or operating in this District; and Defendants interfered with Plaintiff's business relationships in this District, including with Plaintiff's customer New York Waterway.  Bytemark's intellectual property and trade secrets, the property that is the subject of the action, are also situated in this District.

18.     This Court has personal jurisdiction over Defendants because of Defendants' continuous and systematic contacts and business activities within the state of New York and within this District.

## BACKGROUND

19.     Bytemark is the owner of all rights, title and interest in and to United States patent Nos. 8,494,967 ("the '967 patent"), attached hereto as Exhibit A, and 9,239,993 ("the '993 patent"), attached hereto as Exhibit B (collectively the "Patents-in-Suit").

20.     Bytemark offers for sale visual validation mobile ticketing applications and systems disclosed and claimed by the Patents-in-Suit including but not limited to the V3 Ticketing Technology.

21.     Bytemark has secured contracts relating to its V3 Ticketing Technology within the mass transit industry, including a contract with its first and longtime customer New York Waterway, the largest private ferry operator in the U.S.

22.     Bytemark's contract with New York Waterway was highly publicized and well known in the mobile ticketing market.

23.     Bytemark is the owner of trade secrets and confidential information relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  Bytemark's trade secrets include a unique compilation of proprietary information including mobile ticketing development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives

and profit generation paradigm (the "trade secrets").

24.     Bytemark's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.

25.     Bytemark has taken reasonable measures to keep its trade secrets and other confidential information secret.  Bytemark only discloses its trade secrets when necessary, and only to those who agree to keep the information secret by signing confidentiality agreements. Bytemark has ensured that any and all potential third parties to whom trade secrets and/or confidential information were disclosed were provided with, and signed, confidentiality agreements, including teaming agreements and nondisclosure agreements.  Furthermore, all Bytemark employees sign employment agreements that contain confidentiality provisions relating to Bytemark's intellectual property and undergo employee training with respect to maintaining the confidentiality of Bytemark's intellectual property including its trade secrets and other confidential information.  All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted using the latest versions of MacOS X, iOS 10, Android 6 & 7.   Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

26.     Bytemark's trade secrets are valuable and crucial to the implementation of its business and competitive market position and it has invested substantial time, effort, and money in developing its trade secrets.  Since its founding in 2011, Bytemark has invested and continues to invest millions of dollars into research and development and implementation of the trade-secret protected systems.

27.     Beginning in Spring 2012, Plaintiff entered into a series of Nondisclosure Agreements ("NDAs") and Teaming Agreements (the "Confidentiality Agreements") with Xerox

subsidiaries ACS and Xerox Transport for the purpose of potentially developing joint proposals and/or bids related to providing mobile ticketing solutions to prospective clients in the mass transit industry.

28.    Pursuant to the Confidentiality Agreements, the parties agreed that no title, license, intellectual property rights, or any other right of ownership or use shall be granted (expressly, by implication, or by estoppel) to the receiving party under any patent, trademark, copyright, or trade secret owned or controlled by the disclosing party by the disclosure of proprietary information.

29.    While protected by the Confidentiality Agreements, Bytemark disclosed its trade secrets and confidential information to the Xerox Entities on numerous occasions between 2012 and 2015.

30.    Over the years and while covered by the Confidentiality Agreements, Bytemark has refined and developed its trade secret protected mobile ticketing technologies and systems and competitive knowledge in management and service of these technologies and systems, which were disclosed to the Xerox Entities.

31.    After Plaintiff disclosed its trade secrets and other confidential information to the Xerox Entities, the Xerox Entities cut Plaintiff out of a joint bidding effort and instead used and/or disclosed Plaintiff's patents and trade secrets to bid and secure a contract with NJ Transit on their own.

32.    The Xerox Entities' actions indicate that they never intended to partner with Plaintiff.  Rather, their goal was to exploit Bytemark's efforts and use Bytemark's intellectual property and confidential information for their own commercial advantage.

33.    The Xerox Entities offered for sale and sold their infringing visual validation

applications and systems, including the exemplary product/system the MyTix mobile application, to NJ Transit in Newark, New Jersey.

34.     On information and belief, NJ Transit developed a cooperative transportation strategy wherein NJ Transit and New York Waterway would offer integrated bus and ferry services to transportation passengers.  As part of this scheme, NJ Transit agreed to provide New York Waterway with Xerox's infringing mobile ticketing application and technical support and back-end management technical support and service that unlawfully uses Plaintiff's trade secrets and other confidential information.

35.     At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property.

36.     Defendants are offering for sale and selling their visual validation mobile ticketing applications and systems including the MyTix mobile application that infringe at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent literally and/or under the doctrine of equivalents and at least claim 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '933 patent literally and/or under the doctrine of equivalents.

37.     Defendants materially breached the Confidentiality Agreements by using and/or disclosing Bytemark's trade secrets and other confidential information to NJ Transit and other third parties and using Bytemark's intellectual property for their own gain.

38.     In addition to misappropriating Plaintiff's trade secrets and other confidential information in breach of the Confidentiality Agreements, Defendants have recently begun interfering with Plaintiff's business relationship and current and prospective contracts with New York Waterway.

39.     Defendants have offered to sell their infringing visual validation applications and systems and implementations that use Bytemark's trade secrets to New York Waterway as part of an integrated transportation contract.

40.     As a result, Plaintiff's existing contract with New York Waterway, which was supposed to be renewed in accordance with the terms of the original agreement in early 2017, has not been extended.  Instead, New York Waterway informed Bytemark that it had a better deal with Defendants.  Only after Bytemark initiated this action did New York Waterway agree to temporary short-term extensions to the contract.

41.     On or about January 2015, Plaintiff notified Defendants of their infringement and misappropriation.  Despite this notice, Defendants have continued to use and offer for sale their infringing visual validation applications and systems and misappropriated trade secrets and other confidential information.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 8,494,967**
**(Against all Defendants)**

42.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-41 herein.

43.     Pursuant to 35 U.S.C. § 271(a), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications including the exemplary product/system the MyTix mobile application in the State of New York and elsewhere in the U.S.

44.     In violation of 35 U.S.C. § 271(b), Defendants have infringed, and are continuing

to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent indirectly by inducing the infringement of the '967 patent claims by third parties including but not limited to New York Waterway and its customers by encouraging these customers and others to purchase and use the infringing systems and applications including the MyTix mobile application.

45.     On or about January 2015, Plaintiff notified Defendants of their infringing activities with respect to the '967 patent.

46.     Despite actual notice of infringement, Defendants continue to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for their infringing applications with the knowledge or willful blindness that their conduct will induce their customers to infringe the '967 patent's asserted claims.

47.     In violation of 35 U.S.C. § 271(c), the Xerox Entities have infringed and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent indirectly by contributing to the infringement of the '967 patent's claims, including but not limited to NJ Transit and its customers.

48.     Defendants have contributed and continue to contribute to the infringement of at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent because they knew that the applications and systems they offer for sale and sell, including but not limited to the MyTix mobile application, are infringing and are not suitable for substantial non-infringing use.

49.     As a result of Defendants' infringement of the '967 patent's asserted claims,

Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

50.     Defendants' infringement of the '967 patent has been deliberate, willful and with full knowledge, or willful blindness to knowledge, of the '967 patent.

51.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '967 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendants from continuing such infringement.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT NO. 9,239,993**
**(Against all Defendants)**

52.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-51 herein.

53.     Pursuant to 35 U.S.C. § 271(a), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications and systems including the exemplary products/systems the MyTix mobile application in New York and elsewhere in the U.S.

54.     In violation of 35 U.S.C. § 271(b), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent indirectly by inducing the infringement of the '993 patent's claims by third parties including but not limited to New York Waterway and its customers by encouraging these customers and others to purchase and use the

infringing systems and applications including the MyTix mobile application.

55.     On or about January 2015, Plaintiff notified Defendants of their infringing activities with respect to the '993 patent.

56.     Despite actual notice of infringement, Defendants continue to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for their infringing applications with the knowledge or willful blindness that their conduct will induce their customers to infringe the '993 patent's asserted claims.

57.     In violation of 35 U.S.C. § 271(c), the Xerox Entities have infringed and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent indirectly by contributing to the infringement of the '993 patent's asserted claims by NJ Transit and its customers.

58.     Defendants have contributed and continue to contribute to the infringement of at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent because they knew that the applications and systems they offer for sale and sell, including but not limited to the MyTix mobile application, are infringing and are not suitable for substantial non-infringing use.

59.     As a result of Defendants' infringement of the '993 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

60.     Defendants' infringement of the '993 patent has been deliberate, willful and with

full knowledge, or willful blindness to knowledge, of the '993 patent.

61.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '993 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendants from continuing such infringement.

**COUNT THREE**
**BREACH OF CONTRACT UNDER NEW YORK LAW**
**(Against Defendants Xerox, ACS, Xerox Transport, and Conduent)**

62.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-61 herein.

63.     Beginning in Spring 2012, Plaintiff entered into a series of Confidentiality Agreements with the Xerox Entities for the limited purpose of potentially developing joint proposals and/or bids relating to providing mobile ticketing solutions to prospective customers in the mass transit industry.

64.     These Confidentiality Agreements include the April 3, 2012 NDA between Bytemark and ACS; the December 7, 2012 NDA between Bytemark and ACS; the January 31, 2013 NDA between Bytemark and ACS; the February 7, 2013 NDA between Bytemark and ACS; the November 8, 2013 NDA between Bytemark and ACS; the September 18, 2015 NDA between Bytemark and Xerox Transport; the WMATA NEPP mobile ticketing solution Teaming Agreement between Bytemark and ACS; and the Virginia Railway Teaming Agreement between Bytemark and ACS.

65.     Under the NDAs, the parties agreed that any trade secrets or other confidential information shall remain the property of the originating party (Paragraph 5) and that the Xerox Entities had a duty to exercise all reasonable care to preserve and protect Plaintiff's trade secrets and other confidential information from unauthorized access, use, disclosure, or theft; to restrict

access to only those who agreed to be bound by the terms and conditions of the Confidentiality Agreements; to not reproduce Plaintiff's proprietary information in any form except as necessary to accomplish the NDA's intent; and to inform Plaintiff if the Xerox Entities became aware of any unauthorized access, use, disclosure, or theft of the proprietary information (Paragraph 6).

66.     Under the Teaming Agreements, the parties agreed that the inventions shall remain the property of the originating party (Paragraph 10) and that disclosure and protection of proprietary information under the agreements shall be subject to the terms and conditions of the referenced NDAs (Paragraph 11).

67.     Under the protection of the Confidentiality Agreements, Plaintiff disclosed its trade secrets and other confidential information to the Xerox Entities.

68.     The Xerox Entities breached the above-named Confidentiality Agreements by using and/or disclosing Plaintiff's trade secrets and other confidential information to outside parties without Plaintiff's consent, and solely for the Xerox Entities' own benefit.

69.     The Xerox Entities have used Plaintiff's trade secrets and confidential information in their contract with NJ Transit, and NJ Transit and the Xerox Entities are using and/or disclosing Plaintiff's trade secrets and confidential information in an attempt to gain an integrated transportation contract with New York Waterway.

70.     As a result of the Xerox Entities' breach, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT FOUR
## <u>VIOLATION OF THE DEFEND TRADE SECRETS ACT</u>
### (Against all Defendants)

71.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-70 herein.

72.     The actions of Defendants as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016, 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 *et seq*.

73.     Plaintiff is the owner of trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  These trade secrets include a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

74.     Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.  It is for this reason that Xerox, a large multinational corporation, and its subsidiaries sought to partner with Bytemark, a small start-up company with no assets other than its possession of this valuable, unknown and unduplicatable information and its demonstrated success in creating and achieving the implementation of its systems.

75.     At all times, Plaintiff has taken reasonable and extensive efforts to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, and employee training.  All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted.  Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

76.     At no time did Plaintiff consent to Defendants' use or disclosure of its trade

secrets or confidential information for any purpose.

77.     Plaintiff's trade secrets constitute independent economic value.   Since its founding in 2011, Bytemark has invested and continues to invest millions of dollars into research and development and implementation of the trade-secret protected systems, including the V3 ticketing system used by New York Waterway.   Bytemark has also invested and continues to invest significant economic resources into refining these systems.

78.     Plaintiff's trade secrets are crucial to the success of the implementation, operation, and maintenance of Bytemark's trade-secret protected systems and provide a decisive competitive advantage to Bytemark and to anyone else with access to this information. Bytemark's trade secrets provide the company with a critical market advantage in attracting new contracts, and it is for this reason that the Xerox Entities sought to partner with Plaintiff.

79.     The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust and by way of the Confidentiality Agreements, which imposed a duty upon the Xerox Entities to maintain the confidentiality of Bytemark's confidential information and trade secrets and to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff. At all relevant times, the Xerox Entities knew about the confidential nature of Plaintiff's trade secrets.

80.     The Xerox Entities misappropriated Plaintiff's trade secrets by improper means in violation of the Confidentiality Agreements by using them and continuing to use them for their own economic benefit.

81.     The Xerox Entities have intentionally, willfully and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continue to do so, in violation of a confidential relationship.   The Xerox Entities' misappropriation of

Plaintiff's trade secrets and confidential information has been ongoing.  Plaintiff's knowledge and information regarding their systems have evolved since the parties began their partnership, and the Xerox Entities have continuously misused and/or disclosed Plaintiff's information throughout all stages of its evolution and development.

82.     The Xerox Entities continue to misuse and/or disclose Plaintiff's trade secrets and confidential information in their attempt to interfere with Plaintiff's current and prospective contracts with New York Waterway.  The Xerox Entities' misuse and/or disclosure of Plaintiff's trade secrets with regard to New York Waterway occurred as recently as January 2017.

83.     At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property.  Furthermore, on information and belief, NJ Transit knew of Plaintiff's dispute with Xerox and was aware that the Xerox Entities acquired Plaintiff's trade secrets by improper means and in violation of the parties' Confidentiality Agreements.

84.     As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss.

### COUNT FIVE
### MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK LAW
### (Against all Defendants)

85.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-84 herein.

86.     The actions of Defendants as described above constitute violations of New York common law.

87.     Plaintiff is the owner of trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3

Ticketing Technology and related systems.  These trade secrets include a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

88.   Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.  It is for this reason that Xerox, a large multinational corporation, and its subsidiaries sought to partner with Bytemark, a small start-up company with no assets other than its possession of this vital, unknown and unduplicatable information and its demonstrated success in creating and achieving the implementation of its systems.

89.   At all times, Plaintiff has taken reasonable and extensive efforts to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, and employee training.  All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted.  Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

90.   Plaintiff's trade secrets constitute independent economic value.  Since its founding in 2011, Bytemark has invested and continues to invest millions of dollars into research and development and implementation of the trade-secret protected systems, including the V3 ticketing system used by New York Waterway.  Plaintiff has also invested and continues to invest significant economic resources into refining these systems.

91.   Plaintiff's trade secrets are crucial to the success of the implementation,

operation, and maintenance of Bytemark's trade-secret protected systems and provide a decisive competitive advantage to Bytemark and to anyone else with access to this information. Bytemark's trade secrets provide the company with a critical market advantage in attracting new contracts, and it is for this reason that the Xerox Entities agreed to partner with Plaintiff.

92.      The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust and by way of the Confidentiality Agreements, which imposed a duty upon the Xerox Entities to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff.   At all relevant times, the Xerox Entities knew about the confidential nature of Plaintiff's trade secrets.

93.      The Xerox Entities misappropriated Plaintiff's trade secrets by using and/or disclosing them for their own economic benefit to secure a contract for providing mobile ticketing services to NJ Transit in violation of the Confidentiality Agreements.

94.      The Xerox Entities have intentionally, willfully and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continue to do so, in violation of a confidential relationship.   The Xerox Entities' misappropriation of Platiniff's trade secrets and confidential information has been ongoing.   Plaintiff's knowledge and information have evolved since the parties began their partnership, and the Xerox Entities have continuously misused and/or disclosed Plaintiff's information throughout all stages of its evolution and development.

95.      The Xerox Entities continue to misuse and/or disclose Plaintiff's trade secrets and confidential information in their attempt to interfere with Plaintiff's current and prospective contracts with New York Waterway.   The Xerox Entities' misuse and/or disclosure of Plaintiff's trade secrets with regard to New York Waterway occurred as recently as January 2017.

96.     At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property.   Furthermore, on information and belief, NJ Transit knew of Plaintiff's dispute with Xerox and was aware that the Xerox Entities acquired Plaintiff's trade secrets by improper means and in violation of the parties' Confidentiality Agreements.

97.     As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss.

**COUNT SIX**
**MISAPPROPRIATION OF TRADE SECRETS UNDER NEW JERSEY TRADE**
**SECRET ACT**
**(Against all Defendants)**

98.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-97 herein.

99.     The actions of Defendants as described above constitute violations of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 *et seq*.

100.     Plaintiff is the owner of trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  These trade secrets include a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

101.     At all times, Plaintiff has taken reasonable efforts and precautions to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, and

employee training.   All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted.  Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

102.   At no time did Plaintiff consent to Defendants' use or disclosure of its trade secrets or confidential information for any purpose.

103.   The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust and by way of the Confidentiality Agreements, which imposed a duty upon the Xerox Entities to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff.  Thus, the Xerox Entities are, and at all relevant times were, aware of the confidential nature of Plaintiff's trade secrets and that disclosure of the information would be improper.

104.   The Xerox Entities have misappropriated Plaintiff's confidential information and trade secrets by using and/or disclosing such confidential information and trade secrets by improper means for their own personal gain with NJ Transit and others.

105.   NJ Transit similarly misappropriated Plaintiff's trade secrets.  On information and belief, NJ Transit developed a cooperative transportation strategy wherein NJ Transit and longtime Bytemark customer New York Waterway would offer integrated bus and ferry services to transportation passengers.  As part of this scheme, NJ Transit agreed to provide New York Waterway with Xerox's infringing mobile ticketing application and technical support and back-end management technical support and service that unlawfully uses Plaintiff's trade secrets and other confidential information.

106.   At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property.   Furthermore, on information and belief, NJ Transit knew of

Plaintiff's dispute with Xerox and was aware that the Xerox Entities acquired Plaintiff's trade secrets by improper means and in violation of the parties' Confidentiality Agreements.

107.    Defendants' use of Bytemark's trade secrets to secure contracts that otherwise would have been awarded to Plaintiff has been detrimental to Plaintiff.  For example, Plaintiff's existing contract with New York Waterway, which was supposed to be renewed in accordance with the terms of the original agreement in early 2017, has not been extended.  Instead, New York Waterway informed Bytemark that it had a better deal with Defendants.

108.    As a result of Defendants' actions, Plaintiff has suffered and will suffer damages and irreparable harm.

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS UNDER NEW YORK LAW**
**(Against all Defendants)**

109.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-108 herein.

110.    Plaintiff entered into a series of valid and existing contracts with New York Waterway to provide its visual validation ticketing and back end management services between 2012 and 2017.  During this time, the parties have enjoyed a successful business relationship.

111.    Plaintiff had an expectation of future business with New York Waterway.  The parties have been negotiating a renewal of their existing five-year contract (which was set to expire this year) wherein Plaintiff would continue to provide its mobile ticketing application and systems and back-end support and management services to New York Waterway in accordance with the terms of the original agreement.  Based on its discussions with New York Waterway, Plaintiff expected its contract to be renewed in early 2017.

112.    At all relevant times, Defendants were aware of Plaintiff's existing contracts and

prospective contract with New York Waterway.

113.   The Xerox Entities directly interfered with Plaintiff's business relationship with New York Waterway and in so doing, used dishonest, unfair, and improper means.  Plaintiff disclosed its trade secrets and all other confidential information to the Xerox Entities based on the parties' agreement to partner to develop joint proposals and/or bids related to providing mobile ticketing solutions to prospective clients in the mass transit industry.  The Xerox Entities had no intention of partnering with Plaintiff, however.  Rather, their goal was to exploit Plaintiff's efforts and use Plaintiff's intellectual property and confidential information for their own commercial advantage.  Ultimately, the Xerox Entities cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts, including an integrated transportation contract with Plaintiff's valued customer, New York Waterway.

114.   NJ Transit similarly interfered with Plaintiff's business relationship with New York Waterway and in so doing, used dishonest, unfair, and improper means.  On information and belief, NJ Transit developed a cooperative transportation strategy wherein NJ Transit and New York Waterway would offer integrated bus and ferry services to transportation passengers. As part of this scheme, NJ Transit agreed to provide New York Waterway with Xerox's infringing mobile ticketing application and technical support and back-end management technical support and service that unlawfully uses Plaintiff's trade secrets and other confidential information.

115.   At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property.

116.     Defendants' actions have undermined and damaged Plaintiff's business relations with New York Waterway, causing injury to Plaintiff.  Plaintiff's existing contract with New York Waterway, which was supposed to be renewed in accordance with the terms of the original agreement, has not been extended.  Instead, New York Waterway informed Bytemark that it had a better deal with Defendants.  Only after Bytemark initiated this action did New York Waterway agree to temporary short-term extensions to the contract.

117.     Defendant's actions threaten Plaintiff's current and prospective contracts and have damaged and caused irreparable harm to Plaintiff.

## COUNT EIGHT
## UNFAIR COMPETITION UNDER NEW YORK LAW
### (Against all Defendants)

118.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-117 herein.

119.     The foregoing acts, in which Defendants misappropriated Plaintiff's labors and expenditures, constitute unfair competition under New York state law.

120.     In misappropriating Plaintiff's labors and expenditures, Defendants acted in bad faith and exploited Bytemark's exclusive commercial advantage.  Under the guise of forming a partnership with Plaintiff, Defendants led Plaintiff to disclose its valuable intellectual property, trade secrets, and other confidential information.  Defendants had no intention of partnering with Plaintiff, however, and instead exploited Plaintiff's efforts and used its intellectual property and confidential information for Defendants' own commercial advantage.

121.     Ultimately, Defendants cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts, including an integrated transportation contract with New York Waterway.  In so doing,

Defendants exploited the exclusive commercial advantage Plaintiff had previously held in the mobile ticketing application market.

122.    As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from using and/or disclosing Plaintiff's trade secrets and other confidential information, and enjoined from engaging in the infringing conduct set forth above.

123.    In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein and Plaintiff's lost profits, attorneys' fees, costs and interest.

124.    Furthermore, because Defendants' actions are wanton, willful, malicious, and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**COUNT NINE**
**<u>UNJUST ENRICHMENT UNDER NEW YORK LAW</u>**
**(Against all Defendants)**

125.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-124 herein.

126.    As a result of Defendants' unlawful conduct including but not limited to their infringement and misappropriation of Plaintiff's trade secrets, Defendants have diverted substantial revenues from Plaintiff.

127.    Furthermore, Defendants have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform.

128.    Thus, Defendants have benefitted by saving the significant time and cost that they

would otherwise have had to incur to develop their own mobile ticketing platform.

129.    As a direct and proximate consequence of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense.

130.    It would be against equity and good conscience to permit Defendants to retain the substantial revenues that they have realized through the aforementioned conduct.

131.    Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

132.    Furthermore, because Defendants' actions are wanton, willful, malicious, and have been taken in conscious disregard of Plaintiff's rights, Defendants are also liable for punitive damages.

## COUNT TEN
## UNJUST ENRICHMENT UNDER NEW JERSEY LAW
### (Against all Defendants)

133.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-132 herein.

134.    Plaintiff shared its valuable intellectual property, trade secrets, and other confidential information with Defendants with the expectation of remuneration in the form of future joint ventures and business contracts.

135.    As a result of Defendants' unlawful conduct including but not limited to their infringement and misappropriation of Plaintiff's trade secrets, Defendants have diverted substantial revenues from Plaintiff.

136.    Furthermore, Defendants have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform.

137.    Thus, Defendants have benefitted by saving the significant time and cost that they

would otherwise have had to incur to develop their own mobile ticketing platform.

138.    As a direct and proximate consequence of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense.

139.    It would be unjust and against good conscience and equity to permit Defendants to retain, without payment to Plaintiff, the substantial revenues that they have realized through the aforementioned conduct.

140.    Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

141.    Furthermore, because Defendants' actions are wanton, willful, malicious, and have been taken in conscious disregard of Plaintiff's rights, Defendants are also liable for punitive damages.

<u>**PRAYER FOR RELIEF**</u>

Wherefore, Plaintiff, Bytemark, Inc., prays for relief, as follows:

A.    That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 8,494,967, together with all rights of recovery under such patent for past and future infringement thereof;

B.    That United States Patent No. 8,494,967 is valid and enforceable in law and that Defendants have infringed said patent;

C.    That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 9,239,993, together with all rights of recovery under such patent for past and future infringement thereof;

D.    That United States Patent No. 9,239,993 is valid and enforceable in law and that Defendants have infringed said patent;

E.      Awarding to Plaintiff its damages caused by Defendants' infringement of United States Patent Nos. 8,494,967 and 9,239,993, including an assessment of pre-judgment and post-judgment interest and costs, and an award of supplemental damages for any continuing post-verdict infringement up until entry of the final Judgment with an accounting, as needed;

F.      That Defendants' infringement has been willful and said damages be trebled pursuant to 35 U.S.C. § 284;

G.      Entering a permanent injunction against Defendants, their officers, employees, attorneys, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the patents-in-suit, including without limitation, from continuing to make, use, sell and/or offer for sale;

H.      An award of damages adequate to compensate Plaintiff for Defendants' misappropriation of Plaintiff's trade secrets, together with prejudgment and post-judgment interest, attorneys' fees and costs;

I.      An award of damages adequate to compensate Plaintiff for Defendants' breach of contract, together with prejudgment and post-judgment interest and costs;

J.      An award of damages adequate to compensate Plaintiff for Defendants' unfair competition, together with prejudgment and post-judgment interest and costs;

K.      An award of damages adequate to compensate Plaintiff for Defendants' unjust enrichment, together with prejudgment and post-judgment interest and costs;

L.      That this is an exceptional case and awarding to Plaintiff its costs, expenses and reasonable attorney fees pursuant to 35 U.S.C. § 285;

M.      That the Court award punitive damages to Plaintiff owing to the willful, wanton,

and malicious nature of Defendants' acts; and

      N.      Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

      In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues triable by jury.

Dated: September 6, 2017

                                Respectfully submitted,

                                  /s/ Dariush Keyhani
                                  Dariush Keyhani (DK-9673)
                                  Meredith & Keyhani, PLLC
                                  125 Park Avenue, 25th Floor
                                  New York, New York 10017
                                  Tel. (212) 760-0098
                                  Fax (212) 202-3819
                                  dkeyhani@meredithkeyhani.com
                                  *Attorneys for Plaintiff*