**MEREDITH & KEYHANI, PLLC**
125 Park Avenue
25th Floor
New York, New York 10017

Writer's Direct Email:
dkeyhani@meredithkeyhani.com
Direct Dial: (212) 380-1325

**VIA ECF AND FACSIMILE**

October 3, 2017

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007
Fax: (212) 805-7986

Re: *Bytemark, Inc. v. Xerox Corp. et al.*, Case No. 1:17-cv-01803

Dear Judge Gardephe:

We represent Plaintiff Bytemark, Inc. We write in response to Defendants' letter dated September 28, 2017, and request that the Court deny Defendants' request for leave to file a Motion to Dismiss. Plaintiff's First Amended Complaint ("FAC") more than meets Rule 8's notice pleading requirements. Defendants raise arguments that contravene the governing law and seek to impose an imagined pleading standard that far exceeds the requirements of *Iqbal* and *Twombly*. This case is at a very preliminary stage—no initial disclosures have been exchanged, nor has there been any discovery. There are multiple defendants involved, and the relationships between them and how they worked together to commit the alleged unlawful acts will be the subject of discovery. Plaintiff's pleadings are entirely sufficient.

We also object to Defendants' request to extend the page limit to 75 pages. Rule IV(B) of this Court provides that memoranda of law in support of motions be limited to 25 pages. We see no reason why Defendants cannot conform to this page limit, and we certainly do not believe that Defendants need an additional 50 pages to make their arguments. Defendants' request is unnecessary and would be a waste of the Court's and the parties' time and resources.

### A. Xerox's Liability for the Wrongful Acts of the Other Xerox Entities

Contrary to Defendants' assertions, the FAC sufficiently alleges Xerox's liability for the wrongful acts of the other Xerox Entities.[1] Plaintiff alleges multiple theories to establish Xerox's liability. First, Plaintiff alleges that Xerox and the Entities are one and the same—a claim that does not rely

---

[1] Defendants' request that the Court dismiss the FAC in its entirety because "Plaintiff has failed to state a claim upon which relief may be granted for all Counts at least with respect to Xerox" is egregious and contrary to law.

on a veil-piercing theory of liability. Second, the FAC alleges an agency relationship between Xerox and the Entities such that the Entities' acts were, in both form and substance, those of Xerox. *See Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp. 2d 414, 422 (S.D.N.Y. 2007).

Moreover, Plaintiff has sufficiently alleged that Xerox's "complete direction and control" over the other Xerox Entities was used to commit wrongs against Bytemark that resulted in its injury. Plaintiff alleges that "at all relevant times the Xerox Entities' acts . . . were directed and fully controlled by Xerox," Dkt. 40 ¶ 8, and then proceeds to detail throughout the FAC all of the wrongs the Xerox Entities committed while under Xerox's control, including patent infringement, misappropriation of trade secrets, tortious interference with business relations, and unfair competition. For each of these wrongs, Plaintiff asserts an injury. Additionally, Plaintiff's factual allegations in support of its veil-piercing theory are entirely sufficient at this early stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Plaintiff alleges numerous factors considered—though not necessarily required—by courts in determining whether complete control existed, including an overlap in ownership, officers, directors, and personnel, a low amount of discretion shown by the Xerox Entities, arms length dealings between Xerox and the Xerox Entities, and the allegations cited by Defendants in their letter. *See* Dkt. 40 ¶ 12. Accordingly, Plaintiff's allegations of Xerox's complete domination are plausible on their face.

### B. Counts One and Two for Infringement of U.S. Patent '993 and U.S. Patent '967

As an initial matter, Defendants' § 101 challenge is premature. The Federal Circuit has held that determining a patent claim's subject matter eligibility under § 101 may be informed by the understanding of the subject matter of the patent and the construction of the claims. *See Iron Gate Sec., Inc. v. Lowe's Cos.*, No. 15-CV-8814, 2016 WL 4146140 (S.D.N.Y. Aug. 3, 2016). Furthermore, the Patents-in-Suit are directed to patent-eligible subject matter. 35 U.S.C. § 101; *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). The Supreme Court laid out the test for determining patent eligibility in *Alice Corp. v. CLS Bank*.[2] Preemption is the underlying concern that drives the § 101 analysis, because monopolization of "the basic tools of scientific and technological work" would thwart the patent laws' primary object: to promote future innovation. *Id.* at 2354. Courts have often cited the lack of preemption concerns to support a determination that a claim is patent-eligible under § 101. *See, e.g., McRO* 837 F.3d at 1315-16; *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 195 (S.D.N.Y. 2016). Further, the Supreme Court cautioned that exceptions to patent eligibility must not be applied beyond the limits of the exception's purpose of preventing the preemption of new discoveries, otherwise "this exclusionary principle [could] swallow all of patent law." *Alice*, 134 S. Ct. at 2354.

---

[2] The first step involves determining whether the claims at issue are directed to a patent-ineligible concept such as abstract ideas. The core question underlying step one is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). Step two considers whether the claims contain an "inventive concept" sufficient to "transform the nature of the claim into a patent-eligible application," and involves both looking at the claim as a whole and the individual claim elements to determine whether the claims contain "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S.Ct. at 2355. Claims that effect an improvement in a technology or technical field suffice under step two. *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016).

Defendants' argument that the Patents-in-Suit are invalid under § 101 is without merit. The '993 Patent, which is a continuation of the '967 Patent and has an identical specification as the '967 Patent, was prosecuted after *Alice* and its claims underwent rigorous § 101 review and were analyzed in light of *Alice*. Indeed, the USPTO noted in its May 23, 2016 Notice of Allowance that the claims of the '993 Patent were scrutinized by both the Examiner and a "[§] 101 expert, Jim Trammell." Nevertheless, the asserted claims are not directed to an abstract idea but rather are directed to a specific improvement in computer capabilities. Further, even if the claimed invention is deemed an abstract idea, the asserted claims and specific claim elements of the asserted claims of the Patents-in-Suit add an inventive concept that amounts to significantly more than an abstract idea. The claims of the Patents-in-Suit do not involve a method of doing business that happens to be implemented on a computer, but rather involves a unique technology improvement in the way servers and computers communicate with and transfer information with remote devices in the context of implementing a visual validation mobile electronic ticketing system. The claims of the Patents-in-Suit improve the security and efficiency of server/computer/remote device communication. In particular, the Patents-in-Suit improve the security of user data through the unique use of tokens, which act as publicly unknown identifiers that provide a relationship between sensitive data and the token while allowing for transfer of a token that has no meaningful value while maintain secure storage of the real, sensitive data.

The innovative use of technology and combination of elements disclosed and claimed in the Patents-in-Suit (*see, e.g.*, Claim 1 of Ex. B) is a new and useful improvement of existing technology that was not known in the art at the time of the invention and amounts to significantly more than the abstract idea of merely distributing and visually validating electronic tickets. Furthermore, none of the preemption concerns with § 101 are implicated here because conventional, well-understood, and routine methods of validating electronic tickets remain outside of the boundaries of the Patents-in-suit. Conventional methods for data security, such as encryption, also remain outside the boundaries of the Patents-in-Suit. Accordingly, Defendants' arguments should be rejected.

### C. Counts Four Through Six for Misappropriation of Trade Secrets

Defendants falsely assert that "the only specific 'trade secret' described with any specificity anywhere in the Complaint relates to Plaintiff's patented technology" and that Plaintiff has therefore failed to state a claim of misappropriation under state and federal law. The FAC clearly alleges that Plaintiff owns "trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems," including "a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm." Dkt. 40 ¶¶ 86, 101, 115. Nowhere does Plaintiff assert that the patented systems themselves are trade secrets; rather, Plaintiff argues that the trade secrets relate to implementation and maintenance of those systems. Plaintiff's allegations are more than sufficient to state a claim of trade secrets misappropriation. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 789-90 (S.D.N.Y. 2008).

### D. Count Seven for Tortious Interference Under New York Law

Defendants contend that Plaintiff has failed to state a claim for tortious interference. This argument is without merit, as Plaintiff has alleged that Defendants used dishonest, unfair, or improper means and that Defendants intended to inflict injury by unlawful means. *See Abbas v. Martin*, 689 F. App'x 43, 44 (2d Cir. 2017). According to the FAC, "Defendants were aware of Plaintiff's existing contracts and prospective contract with New York Waterway," "[t]he Xerox Entities had no intention of partnering with Plaintiff . . . . [r]ather, their goal was to exploit Plaintiff's efforts and use Plaintiff's intellectual property and confidential information for their own commercial advantage," and "the Xerox Entities and Conduent . . . cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts." Dkt. 40 ¶¶ 128-29. Defendants' improper use and disclosure constitutes, *inter alia*, violations of Plaintiff's rights under federal and state trade secrets law and infringement of Plaintiff's rights under U.S. patent law—all of which has resulted in injury, as alleged throughout the FAC. As to NJ Transit, the FAC alleges that it also knew that Plaintiff's information consisted of confidential trade secrets and proprietary, trade-secret, and patent-protected property, and acted in collaboration with the Xerox Entities and Conduent to provide New York Waterway with this propriety technology. Dkt. 40 ¶¶ 130-31. Accordingly, Plaintiff has stated a claim for tortious interference.

### E. <u>Count Eight for Unfair Competition Under New York Law</u>

Defendants incorrectly argue that Plaintiff has not alleged facts that support an allegation of bad faith by NJ Transit, Xerox, or Conduent and that "their grouping together within the collective 'Defendants' is improper" and fails to state a claim for unfair competition. Although Defendants may have a factual disagreement as to whether "NJ Transit, Xerox, or Conduent ever formed or communicated an intention to form a partnership with Plaintiff," Plaintiff's properly pleaded allegation is that all Defendants did so. Dkt. 40 ¶ 136. Furthermore, the FAC alleges, *inter alia*, that ACS and Xerox Transport, with whom Plaintiff entered into partnerships, were "in form and substance, one and the same as Xerox." Dkt. 40 ¶¶ 8, 11. The FAC also alleges that "Conduent is a spinoff company of Xerox that formally came into existence in January 2017" and that "was created following Xerox's separation into two publicly traded companies." Dkt. 40 ¶ 14. Thus, the acts of these Defendants, who Plaintiff alleges were interconnected and essentially one and the same, may be properly grouped together. Plaintiff has alleged bad faith against NJ Transit, because, like the other Defendants, it "led Plaintiff to disclose its valuable intellectual property, trade secrets, and other confidential information" under the guise of forming a partnership with Plaintiff, "exploited Plaintiff's efforts and used its intellectual property and confidential information for [its] own commercial advantage," "cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure [its] own contracts," "exploited the exclusive commercial advantage Plaintiff had previously held in the mobile ticketing application market," and irreparably harmed Plaintiff. Dkt. 40 ¶¶ 136-37.

### F. <u>Counts Nine and Ten for Unjust Enrichment Under New York and New Jersey Law</u>

The FAC sufficiently states a claim for unjust enrichment under New York and New Jersey law. Contrary to Defendants' assertions, Plaintiff has not "mere[ly] lump[ed]" all Defendants together. Rather, the FAC plainly states that *all* Defendants engaged in the *same* improper and unlawful acts—e.g., all Defendants participated in "unlawful conduct including but not limited to their infringement of Plaintiff's Patents-in-Suit and misappropriation of Plaintiff's trade secrets," all

Defendants "have diverted substantial revenues from Plaintiff," all Defendants "have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform," and all Defendants "have benefitted by saving the significant time and cost that they would otherwise have had to incur to develop their own mobile ticketing platform." Dkt. 40 ¶¶ 150-52. Accordingly, Defendants' request should be denied.

### G. Plaintiff Sufficiently Pleads Personal Jurisdiction and Venue

Defendants arguments regarding personal jurisdiction and improper venue lack merit. Plaintiff has established personal jurisdiction and proper venue over all Defendants because "Bytemark negotiated and signed the Confidentiality Agreements (involving Xerox, ACS, Xerox Transport) in this District; all Defendants unlawfully used and/or disclosed Plaintiff's trade secrets and confidential information to prospective customers located and/or operating in this District; all Defendants infringed the Patents-in-Suit within this District; and all Defendants interfered with Plaintiff's business relationships in this District, including with Plaintiff's customer New York Waterway, which is located in this District. Bytemark's intellectual property and trade secrets, the property that is the subject of the action, are also situated in this District." Dkt. 40 ¶¶ 19-20. The FAC thus makes clear (1) that all Defendants have sufficient minimum contacts with the forum to justify this Court's exercise of personal jurisdiction over them, see *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016), and (2) that a substantial part of the events giving rise to the claims occurred, and a substantial part of property that is the subject of the action is situated, in this District such that venue is proper under 28 U.S.C. § 1391.[3]

### H. Defendants' Request for a More Definite Statement Should Be Denied

Finally, the Court should reject Defendants' request for a more definite statement. The FAC is not "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rather, the factual allegations are more than sufficient to give Defendants "fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

### I. Conclusion

For the foregoing reasons, Plaintiff respectfully asks that the Court deny Defendants' request for leave to file a motion to dismiss the FAC and Defendants' request for a page limit extension.

Very truly yours,

Dariush Keyhani
Counsel for Plaintiff

cc:   Defendants' Counsel of Record (via ECF)

---

[3] Defendants cite the rule articulated in *TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514 (2017). This is the wrong standard. *TC Heartland's* application is limited to venue in patent cases, whereas here, eight of the ten claims are not related to patent infringement and, for venue purposes, are governed by 28 U.S.C. § 1391.