# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:17-cv-01803-PGG |
| | § | Hon. Paul G. Gardephe |
| XEROX CORP., ACS TRANSPORT | § | |
| SOLUTIONS, INC., XEROX | § | |
| TRANSPORT SOLUTIONS, INC., | § | |
| CONDUENT INC., and | § | |
| NEW JERSEY TRANSIT CORP., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS ONE, TWO, EIGHT, NINE, AND TEN OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   BACKGROUND ........................................................................................... 1

III.  LEGAL STANDARD FOR FAILURE TO STATE A CLAIM ........................... 3

IV.   LEGAL STANDARD IS DE NOVO REVIEW OF A PATENT'S SUBJECT MATTER
      ELIGIBILTY WITH NO PRESUMPTION OF VALIDITY ............................... 4

V.    ARGUMENT .............................................................................................. 6

      A.  The Court Should Dismiss Counts One and Two Because Plaintiff Failed to State A
          Claim Under Rule 12(b)(6) as the Asserted Patents are Directed to Non-Statutory
          Subject Matter ................................................................................... 6

          1.  The Two-Part Analysis under *Alice* Focuses on the Claims ................ 6

          2.  *Alice* Part One: The '967 and '993 Patents are Directed to Non-Statutory Subject
              Matter .................................................................................. 8

              a.  The Court Must Determine Whether the Asserted Claims as a  Whole are
                  Directed to an Abstract Idea ............................................... 8

              b.  The Asserted Claims are Directed to the Abstract Idea of  Conditioning and
                  Controlling Access to Data Based on Payment ......................... 9

              c.  The Court Acknowledged that the '967 and '993 Patents Appear to be
                  Directed at the Abstract Idea of Conditioning and Controlling Access to
                  Data Based on Payment ..................................................... 16

              d.  The Federal Circuit has Held Comparable Patents to be  Directed to
                  An Abstract idea ............................................................. 17

          3.  *Alice* Part Two: The '967 and '993 Patents Only Implement the Abstract Idea
              Using Generic Computer Technology and Add Nothing Inventive ........ 18

              a.  The Court Must Identify Whether the Asserted Claims Recite An Inventive
                  Concept that is Significantly More Than The Abstract Idea of Conditioning
                  and Controlling Access to Data Based On Payment.................... 18

              b.  Supposed Novelty and Nonobviousness Have No Bearing  on Subject Matter
                  Eligibility ..................................................................... 18

              c.  The Asserted Claims Only Implement the Abstract Idea of Conditioning and
                  Controlling Access to Data based on Payment with Generic Computer
                  Technology that Adds Nothing Inventive............................... 19

              d.  The Asserted Claims Do Not Recite Any Specific Improvement in Computer
                  Capabilities, and the Alleged Lack of Preemption Does Not Salvage Non-
                  Inventive Claims ............................................................. 20

  e. Bytemark's Alleged Improvements Are Not Recited by the Asserted Claims or Specification of the Asserted Patents, and thus Cannot Support an Inventive Concept. ........................................................ 24

  f. There is No Inventive Concept in the Claimed "Token" or "Securing", or Even the Unclaimed "Server/Computer/Remote Device Communication" or the Unclaimed "Security and Efficiency" Benefits ...................................... 25

  g. The Asserted Claims Fail to Recite Any Inventive Concept To Improve the Ticket Verification Process by Providing a Human Perceptible Visual Display.......................................................... 28

  h. The Dependent Claims Add Nothing Inventive................................................. 32

 B. The Court Should Dismiss Count Eight For Unfair Competition Under New York Law Because Plaintiff Has Failed To State A Claim Under Rule 12(b)(6).................. 35

  1. Unfair Competition With Respect To All Defendants Is Preempted  By Federal Patent Law ........................................................ 35

  2. Unfair Competition With Respect To Xerox, ACS, And Xerox  Transport Is Precluded By Count Three For Breach Of Contract ................................................ 36

  3. The Amended Complaint Failed To Allege Bad Faith On  The Part Of Conduent And NJ Transit ........................................................ 37

 C. The Court Should Dismiss Count Nine For Unjust Enrichment Under New York Law Because Plaintiff Failed To State A Claim Under Rule 12(b)(6) ........................ 40

 D. The Court Should Dismiss Count Ten For Unjust Enrichment Under New Jersey Law Because Plaintiff Failed To State A Claim Under Rule 12(b)(6) Against Conduent and NJ Transit ........................................................ 41

VI. CONCLUSION.................................................................. 43

# TABLE OF AUTHORITIES

## Cases

*Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013)..................7

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016)......................8

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ..................8, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ..........................................passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016)...........................5

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ................................................7, 8

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015) .............................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................................4

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012) ..........6

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012).................37

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................3

*Bilski v. Kappos*, 561 U.S. 593 (2010)..............................................................................32, 35

*Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 05 civ 6882, 2009 U.S. Dist.
    LEXIS 15486 (S.D.N.Y. Feb. 9, 2009) ..........................................................................40

*BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig*, 774 F.3d 755
    (Fed. Cir. 2014) ..............................................................................................................23

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014)..................................................30

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317 (E.D.N.Y. 2014) ..........35

*Cereus Prod. Dev., Inc. v. Boom LLC*, 14 civ. 4292,  2015 U.S. Dist. LEXIS 73503
    (S.D.N.Y. June 5, 2015) ..................................................................................................36

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343
    (Fed. Cir. 2014) ....................................................................................................5, 8, 30

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 967 N.E.2d 1177, 944 N.Y.S.2d 732 (2012)......40

*Crye Precision LLC v. Duro Textiles, LLC*, 16-1333, 2017 U.S. App. LEXIS 7818
    (2d Cir. May 3, 2017)................................................................................................38, 41

*Crypto Research, LLC v. Assay Abloy, Inc.*, 236 F. Supp. 3d 671 (E.D.N.Y. 2017).....................5

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ........................................................7

*EasyWeb Innovations LLC v. Twitter Inc.*, No. 11-cv-4550, 2016 U.S. Dist. LEXIS 42549
    (E.D.N.Y. March 30, 2016) ..............................................................................................17

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ..............................passim

*Erickson v. Pardus*, 551 U.S. 89 (2007) .....................................................................................3

*Fasching v. Kallinger*, 211 N.J. Super. 26, 510 A.2d 794 (N.J. App. Div. 1986)......................42

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611 (2d Cir. 2010)... 41

*Fidelity Nat'l Info. Servs., Inc.* v. *DataTreasury Corp.*, CBM2014-00021, 2015 WL 1967328,
    (P.T.A.B. Apr. 29, 2015)..................................................................................................25

*Hughes v. Panasonic Consumer Elecs. Co.*, Civil Action No. 10-846, 2011 U.S. Dist. LEXIS
    79504 (D.N.J. July 21, 2011) ..........................................................................................42

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318 (Fed. Cir. 1998) ...................... 35

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ................................................. 3

*In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................... 42

*In re Smith*, 815 F.3d 816 (Fed. Cir. 2016).................................................................................... 23

*In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) ......................................... 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir. 2015).......... 30

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) .................... 7, 8

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 U.S. Dist.
    LEXIS 56092 (S.D.N.Y. April 28, 2015.)............................................................................... 26

*Internet Patents Corp. v. Active Network*, 790 F.3d 1343 (Fed. Cir. 2015) ........................ 8, 9, 30

*Iron Gate Sec., Inc. v. Lowe's Cos.*, 15-cv-8814,  2016 U.S. Dist. LEXIS 101796
    (S.D.N.Y. August 3, 2016)......................................................................................................... 5

*ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 880 N.E.2d 852, 858, 850 N.Y.S.2d 366
    (N.Y. 2007) ............................................................................................................................. 37

*Lippe v. Bairnco Corp*, 96 civ 7600, 1998 U.S. Dist. LEXIS 16060
    (S.D.N.Y. Oct. 13, 1998)......................................................................................................... 40

*Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189 (S.D.N.Y. 2013) ............. 5

*M'Baye v. N.J. Sports Prod.*, 06 civ 3439, 2007 U.S. Dist. LEXIS 9101
    (S.D.N.Y. Feb. 7, 2007) ............................................................................................... 41, 42, 43

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) ........................ 6, 7, 18

*McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299 (Fed. Cir. 2016).............. 9, 20, 21

*Medina v. Bauer*, 02 civ 8837, 2004 U.S. Dist. LEXIS 910 (S.D.N.Y. Jan. 26, 2004).......... 39, 42

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314 (Fed. Cir. 2016).............. 30

*O'Reilly v. Morse*, 56 U.S. 62 (1854)............................................................................................. 21

*Price v. L'Oreal USA, Inc.*, 17 civ 0614, 2017 U.S. Dist. LEXIS 165931
    (S.D.N.Y. Oct. 5, 2017)............................................................................................................ 40

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294, 2015 U.S. Dist. LEXIS
    111823 (S.D.N.Y. Aug. 24, 2015) .......................................................................................... 36

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017)........................................... 23

*Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp. 2d 288
    (S.D.N.Y. 2012) ................................................................................................................. 37, 38

*S. Christian Leadership Conference v. Supreme Ct.*, 252 F.3d 781 (5th Cir. 2001) ...................... 4

*ScentSational Techs., LLC v. PepsiCo, Inc.*, 13 cv 8645, 2017 U.S. Dist. LEXIS 162723
    (S.D.N.Y. Sep. 14, 2017) ......................................................................................................... 37

*Secured Mails Sols., LLC v. Universal Wilde, Inc.*, 2016-1728, 2017 U.S. App. LEXIS 20105
    (Fed. Cir. October 16, 2017) ................................................................................................... 27

*Sitt v. Nature's Bounty, Inc.*, 15-CV-4199, 2016 U.S. Dist. LEXIS 131564
    (E.D.N.Y. September 26, 2016)................................................................................................ 40

*Smart Systems Innovations, LLC v. Chi. Transit Auth.*, 2016-1233, 2017 U.S. App. LEXIS
    20333 (Fed. Cir. October 18, 2017) .................................................................................. 17, 23

*Smartflash LLC v. Apple Inc.*, 680 Fed. Appx. 977 (Fed. Cir. 2017) ..................................... passim

*Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244 (E.D.N.Y. 2015).................................. 35

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138 (Fed. Cir. 2016) ................................ 7

*Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) ...................................... 40

*Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339 (S.D.N.Y. 1998) ........................................ 38

*Two-Way Media Ltd v. Comcast Cable Communs.*, LLC,  2016-2531, 2016-2532, 2017 U.S.
      App. LEXIS 21706 (Fed. Cir. November 1, 2017) ......................................................... 8, 9, 18

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)................................................... 4

*Uniloc USA, Inc. v. ADP, LLC*, case 2:16-cv-00741-RWS, Dkt. 267 (E.D. Tex. 2017). ............. 27

*United States ex rel Doe v. Dow Chem. Co.*, 343 F.3d 325 (5th Cir. 2003) .................................. 4

*Verint Systems v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190 (S.D.N.Y 2016)............... passim

*Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015) .............................. 22

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519 (1994) ...................................... 42

*Zurch Am. Ins. Co. v. Dah Sing Bank, Ltd.*, 03 civ. 7778, 2004 U.S. Dist. LEXIS 10786
      (S.D.N.Y. June 15, 2004) ............................................................................................ 39

## Statutes

35 U.S.C. § 101......................................................................................................... 5, 6, 20

## Rules

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 5, 6

**EXHIBIT LIST**

Exhibit A – Bytemark's Complaint (Dkt. No. 1)

Exhibit B – U.S. Patent No. 8,494,967 (Dkt. No. 1-1)

Exhibit C – U.S. Patent No. 9,239,993 (Dkt. No. 1-2)

Exhibit D – Bytemark's First Amended Complaint (Dkt. No. 40)

Exhibit E – Defendants' September 28, 2017 Pre-Motion Letter (Dkt. No. 41)

Exhibit F – Bytemark's October 3, 2017 Pre-Motion letter (Dkt. No. 43)

Exhibit G – Transcript from October 16, 2017 Scheduling Conference (Dkt. No. 49)

Exhibit H – Declaration of Michael Fluhler regarding Authenticity of Exhibits A-G

## I.      PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Xerox Corp. ("Xerox"), ACS Transport Solutions, Inc. ("ACS"), Xerox Transport Solutions, Inc. ("Xerox Transport"), Conduent Inc. ("Conduent"), and New Jersey Transit Corp. ("NJ Transit") (collectively "Defendants") move to dismiss, with respect to all Defendants, Counts One and Two for patent infringement, Count Eight for unfair competition under New York law, Count Nine for unjust enrichment under New York, and Count Ten for unjust enrichment under New Jersey law, with respect to Defendants Conduent and NJ Transit, because the First Amended Complaint of Plaintiff Bytemark, Inc. ("Bytemark" or "Plaintiff") (**Exhibit D**, Dkt. No. 40)  fails to state a claim upon which relief can be granted.

## II.     BACKGROUND

On March 10, 2017, Bytemark filed its Complaint (**Exhibit A**, Dkt. No. 1) asserting claims of patent infringement of U.S. Patent Nos. 8,494,967  (**Exhibit B**, Dkt. No. 1-1, the "'967 patent") (Count One) and 9,239,993 (**Exhibit C**, Dkt. No. 1-2, the "'993 patent") (Count Two), breach of contract under New York law (Count Three), violation of the Defend Trade Secrets Act (Count Four), misappropriation of trade secrets under New York law (Count Five) and New Jersey law (Count Six), tortious interference of business relations under New York law (Count Seven), unfair competition under New York law (Count Eight), and unjust enrichment (Count Nine).  Counts One, Two, and Four through Nine were brought against all Defendants and Count Three was brought against Xerox, ACS, Xerox Transport, and Conduent.

After several back and forth discussions between Plaintiff's counsel and Defendants' counsel, in which Defendants' counsel identified several issues and deficiencies with the Complaint, Plaintiff filed a "First Amended Complaint" (Dkt. No. 37) on September 6, 2017, and

then a second, "First Amended Complaint" (**Exhibit D**, Dkt. No. 40) on September 21, 2017. Despite multiple revisions, Plaintiff's Amended Complaint continues to be deficient with regard to several of the Counts, which should be dismissed for a number of reasons.

First, Counts One and Two should be dismissed because the asserted patents are directed to patent-ineligible subject matter and are therefore invalid.  The '993 and '967 patents (both of which are entitled "Method And System For Distributing Electronic Tickets With Visual Display") include a "system and method for distributing electronic ticketing such that the ticket is verified at the entrance to venues by means of an animation or other human perceptible verifying visual object that is selected by the venue for the specific event."  (**Exhibit B**, Dkt. No. 1-1, '967 patent; **Exhibit C**, Dkt. No. 1-2, '993 patent; collectively the "Asserted Patents"). These patents claim patent-ineligible subject matter, namely the abstract idea of conditioning and controlling access to data based on payment and without significantly more.   The Asserted Patents are invalid[1].

Second, the Amended Complaint is fatally defective with regard to the alleged violation of Bytemark's non-disclosure agreements and teaming agreements, which it collectively refers to as the "Confidentiality Agreements," with ACS and Xerox Transport. The Amended Complaint collectively refers to those entities, together with Xerox, as the "Xerox Entities," but no other Defendant was alleged as a party to any of the Confidentiality Agreements.  The Amended Complaint then alleges that the Xerox Entities breached the Confidentiality Agreements by misappropriating and disclosing Bytemark's proprietary technology, trade secrets, and confidential information.

---

[1] The '967 patent is the subject of a pending IPR (Inter Partes Review) Invalidity proceeding at the U.S.P.T.O. (IPR # 2017-01449).  In addition, the '967 and '993 patents are subject to summary judgment motions for invalidity before the Eastern District of Texas in the case *Bytemark v. Masabi* (2:16-cv-00543 (*see* Dkt. No. 113)).

Additionally, the Amended Complaint does not allege any facts supporting a relationship between Bytemark and either Conduent or NJ Transit with respect to Counts Eight, Nine and Ten, and thus these Counts cannot be maintained against these Defendants.  Despite the absence of any established relationship, the Amended Complaint lumps Conduent and NJ Transit together with the Xerox Entities as the collective "Defendants" in making various allegations, resulting in inconsistencies throughout the Amended Complaint.[2]  Accordingly, Plaintiff failed to state a claim against Conduent and NJ Transit for Counts Eight, Nine and Ten.

For the reasons explained hereinafter, Defendants' motion to dismiss should be granted.

## III.   LEGAL STANDARD FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the court must accept as true all factual allegations of the complaint,  the Supreme Court has held that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*   If claims are plead based upon information and belief, "the

---

[2] As one example, paragraph 29 alleges that "Plaintiff entered into a series of Nondisclosure Agreements ('NDAs') and Teaming Agreements (collectively 'the Confidentiality Agreements') with Xerox divisions ACS and Xerox Transport."  Paragraph 39 then alleges that "**Defendants** materially breached and/or acted in violation of the Confidentiality Agreements by using and/or disclosing Bytemark's trade secrets and other confidential information **to NJ Transit** and other third parties and using Bytemark's intellectual property for their own gain.  (Emphasis added). In addition to the inconsistency between paragraphs 29 and 39, it is unclear how NJ Transit, who is a Defendant, could breach an agreement by disclosing information to itself.

complaint must set forth the basis for such belief." *United States ex rel Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003).

When presented with a motion to dismiss for failure to state a claim, the court must conduct a two-part analysis. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). First, the court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Id*. Put another way, a complaint must do more than aver that the plaintiff is entitled to relief; it must "show" such an entitlement through its facts. *S. Christian Leadership Conference v. Supreme Ct.*, 252 F.3d 781, 786 (5th Cir. 2001) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   LEGAL STANDARD IS DE NOVO REVIEW OF A PATENT'S SUBJECT MATTER ELIGIBILTY WITH NO PRESUMPTION OF VALIDITY

To survive a motion to dismiss, a patent must satisfy the subject matter requirements of 35 USC §101, which are in addition the pleading requirements as set forth above.  The determination of a patent's subject matter eligibility is made *de novo* as a question of law, and there is no presumption of validity for subject matter eligibly.  "[N]o presumption of eligibility attends the section 101 inquiry." *Verint Systems v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 194 (S.D.N.Y 2016) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring)); *Iron Gate Sec., Inc. v. Lowe's Cos.*, 15-cv-8814,  2016 U.S.

Dist. LEXIS 101796, at *14 (S.D.N.Y. August 3, 2016). "Because the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101." *Ultramercial*, 772 F.3d at 720. This Court reviews questions of patent eligibility under Section 101 de novo, as a question of law. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc*., 841 F.3d 1288, 1293 (Fed. Cir. 2016). Patent eligibility under § 101 "is a pure question of law." *Iron Gate*, 2016 U.S. Dist. LEXIS 101796 at *14 (quoting *Lumen View Tech. LLC v. Findthebest.com, Inc*., 984 F. Supp. 2d 189, 204 (S.D.N.Y. 2013)). Thus, subject matter eligibility is evaluated de novo without deference examination by the U.S. Patent and Trademark Office ("PTO").

Subject matter eligibility is properly considered on the pleadings under a Rule 12 motion. "Because patent-eligibility under Section 101 is a threshold question, it may be considered properly on the pleadings." *Crypto Research, LLC v. Assay Abloy, Inc*., 236 F. Supp. 3d 671 (E.D.N.Y. 2017) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) (concluding patented process was abstract, and thus patent-ineligible, on a Rule 12(b)(6) motion to dismiss); *Ultramercial,* 772 F.3d at 709 (finding patented material ineligible for protection on a Rule 12(b)(6) motion to dismiss)). Thus, the consideration of subject matter eligibility is appropriate under this motion.

Claim construction is not required for a determination of subject matter eligibility, as the Federal Circuit recently confirmed: "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A*., 776 F.3d 1343, 1349 (Fed. Cir. 2014). *See also*

*Ultramercial*, 772 F.3d at 714-15; *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266 (Fed. Cir. 2012). It is now timely to rule on this motion.

In addition to evaluating the pleading requirements as set forth above, the Court must determine a patent's subject matter eligibility according to the two-step analysis established by the Supreme Court. "To determine whether claims contain ineligible patent subject matter under § 101, the Court must apply the two-step test introduced in [*Mayo Collaborative Servs. v. Prometheus Labs., Inc*., 566 U.S. 66 (2012)] and further explained in [*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)]." *Verint Systems,* 226 F. Supp. 3d at 194. Thus, in order to survive a motion to dismiss, a patent must overcome the two-step analysis for subject matter eligibility as set forth by the Supreme Court.

Accordingly, the subject matter eligibility of the Asserted Claims is properly considered on the pleadings under a rule 12 motion, and the Asserted Claims are considered de novo without a presumption of validity.

## V.      ARGUMENT

### A.  The Court Should Dismiss Counts One and Two Because Plaintiff Failed to State A Claim Under Rule 12(b)(6) as the Asserted Patents are Directed to Non-Statutory Subject Matter

The Court should dismiss Counts One and Two for patent infringement and direct entry of judgment for the Defendants because the Plaintiff has failed to state a claim under Rule 12(b)(6) as the '967 and '993 patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

#### 1.  The Two-Part Analysis under *Alice* Focuses on the Claims

The Supreme Court established a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp.*, 134 S. Ct. at 2355.   In step one, the court must

"determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* In step two, the court must "search for an 'inventive concept' … that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* "[C]omputer functions that are 'well-understood, routine, conventional activit[ies]' previously known to the industry" or that merely "require a generic computer to perform generic computer functions" fail to satisfy part two. *Id.* at 2359 (quoting *Mayo Collaborative Servs.,* 566 U.S. at 79 ).

In each of the steps the focus is on the claims. *Alice Corp.* 134 S. Ct. at 2355–59. It is error to rely on "technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016). "The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). The Federal Circuit has explained, for example, that the "complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method." *Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *see also, e.g.*, *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016) ("The difficulty of the programming details for this functionality is immaterial because these details are not recited in the actual claims."); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims.").

The Federal Circuit has routinely found claims unpatentably abstract when they are not limited to a concrete solution to a problem, but instead "effectively cover any solution to an identified problem." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir.

2016); *see also*, *Smartflash LLC v. Apple Inc.*, 680 Fed. Appx. 977 (Fed. Cir. 2017); *Apple, Inc.*, 842 F.3d at 1240-45; *Intellectual Ventures I LLC.*, 838 F.3d at 1313–22; *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269–70 (Fed. Cir. 2016); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1265 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).

Accordingly, the focus of the analysis under *Alice* must be on the asserted claims themselves.[3]   Features not found in its claims do not impart concreteness to fatally abstract claims.

## 2.  *Alice* Part One: The '967 and '993 Patents are Directed to Non-Statutory Subject Matter

### a.  The Court Must Determine Whether the Asserted Claims as a Whole are Directed to an Abstract Idea

In step one of the *Alice* analysis, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S. Ct. at 2355.   "[T]he claims are considered in their entirety to ascertain whether their ***character as a whole*** is directed to excluded subject matter." *Two-Way Media Ltd v. Comcast Cable Communs*., LLC,  2016-2531, 2016-2532, 2017 U.S. App. LEXIS 21706, at *10 (Fed. Cir. November 1, 2017) (quoting *Internet Patents Corp.*, 790 F.3d at 1346 (Fed. Cir. 2015)) (emphasis added).  Addressing each claim of the asserted patents is **unnecessary** when the claims are **"substantially similar and linked to the same abstract idea."** *Content Extraction & Transmission LLC*, 776 F.3d at 1348 (emphasis added).  "We look to whether the claims in the patent focus on a specific means or method, or are instead directed to **a result or effect that itself is the abstract idea and merely**

---

[3] The Asserted Claims are 1-6, 17-23 and 34 of the '967 patent and claims 1-17, and 22-24 of the '993 patent (**Exhibit D**, Dkt. 40, pp. 11 and 14).  Claims 1, 17 and 18 of the '967 patent and 1 and 8 of the '993 patent are independent claims.

invokes generic processes and machinery." *Two-Way Media* 2017 U.S. App. LEXIS 21706 at

*10 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1314 (Fed. Cir.

2016)) (emphasis added). Claims directed to "**generalized steps to be performed on a**

**computer using conventional computer activity are not patent eligible**." *Id*. at *11 (quoting

*Internet Patents*, 790 F.3d at 1348-49) (emphasis added).

### b. The Asserted Claims are Directed to the Abstract Idea of Conditioning and Controlling Access to Data Based on Payment

Applying step one of the *Alice* analysis, the '967 and '993 patents are directed to the

abstract idea of conditioning and controlling access to data based on payment, which is nothing

more than a "fundamental economic practice long prevalent in our system of commerce" and a

"method of organizing human activity," which constitutes an abstract idea according to the

Supreme Court. *Alice Corp.,* 134 S. Ct. at 2356-57.

***The '967 Patent Claims Are Directed to An Abstract Idea.*** Claim 1 of the '967 patent,

similar to claims 17 and 18, describes receiving, determining and causing activation steps "for

obtaining visual validation of the possession of a purchased electronic ticket on a user's computer

device for presentation to a ticket taker." (**Exhibit B**, Dkt. 1-1, '967 patent, pp. 25-27, claim 1,

preamble; see also claims 17 and 18)

More specifically, independent claims 1, 17 and 18 of the '967 patent (**Exhibit B**, Dkt. 1-

1, '967 patent, pp. 25-27) are provided below with the claim language emphasizing the abstract

idea in **bold** and the generic computer elements shown underlined:

| Claim 1 | Claim 17 | Claim 18 |
|---|---|---|
| [A]  A method by a server system for obtaining visual **validation** of the possession | [A]  A non-transitory computer readable data storage medium containing | [A]  A system for obtaining visual **validation** of the possession of a **purchased** |

9

| | | |
|---|---|---|
| of a **purchased** electronic ticket on a <u>user's computer device</u> for presentation to a ticket taker comprising: | <u>computer program code</u> that when loaded and executed by a <u>computer system</u> causes the <u>computer system</u> to perform a method for obtaining visual **validation** of the possession of a **purchased** electronic ticket on a <u>user's computer device</u> for presentation to a ticket taker comprising the steps of: | electronic ticket on a <u>user's computer device</u> for presentation to a ticket taker comprising one or more <u>computers</u> operatively connected that are configured to: |
| [B] **receiving** from the <u>user's computer device</u> a request to **verify purchase** of a previously **purchased** electronic ticket | [B] **receiving** from the <u>user's computer device</u> a request to **verify purchase** of a previously **purchased** electronic ticket | [B] **receive** from the <u>user's computer device</u> a request to **verify purchase** of a previously **purchased** electronic ticket |
| [C] and to obtain a visual **validation** <u>display object</u> that confirms that the user possesses the previously **purchased** electronic ticket | [C] and to obtain a visual **validation** <u>display object</u> that confirms that the user possesses the previously **purchased** electronic ticket | [C] and to obtain a visual **validation** <u>display object</u> that confirms that the user possesses the previously **purchased** and **valid** electronic ticket |
| [D] for utilization of a service | [D] for utilization of a service | [D] for utilization of a service |

| | | |
|---|---|---|
| monitored by the ticket taker, | monitored by the ticket taker, | monitored by the ticket taker, |
| [E] the visual **validation** <u>display object</u> configured to be readily recognizable visually by the ticket taker; | [E] the visual **validation** <u>display object</u> configured to be readily recognizable visually by the ticket taker; | [E] the visual **validation** <u>display object</u> configured to be readily recognizable visually by the ticket taker; |
| [F] **receiving** from the <u>user's computer device</u> a **token** associated with the received request; | [F] **receiving** from the <u>user's computer device</u> a **token** associated with the received request; | [F] **receive** from the <u>user's computer device</u> a **token** associated with the received request; |
| [G] **determining** whether a **token** associated with the **purchased** electronic ticket has been stored in a <u>data record</u> associated with the received request, and if it has, whether the received **token** is **valid**; and | [G] **determining** whether a **token** associated with the **purchased** electronic ticket has been stored in a <u>data record</u> associated with the received request, and if it has, whether the received **token** is **valid**; and | [G] **determine** whether a **token** associated with the **purchased** electronic ticket has been stored in a <u>data record</u> associated with the received request, and if it has, whether the received **token** is **valid**; and |
| [H] in dependence on the determination that the received **token** is **valid**, **causing an activation** of the **purchased** electronic ticket [I] by transmitting to the <u>user's</u> | [H] in dependence on the determination that the received **token** is **valid**, **causing an activation** of the **purchased** electronic ticket [I] by transmitting to the <u>user's</u> | [H] in dependence on the determination that the received **token** is **valid**, **cause an activation** of the **purchased** electronic ticket [I] by transmitting to the <u>user's</u> |

11

| computer device a data file comprising the visual **validation** display object [J] that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker. | computer device a data file comprising the visual **validation** display object [J] that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker. | computer device a data file comprising the visual **validation** display object [J] that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker. |
| --- | --- | --- |

As such, claims 1, 17 and 18 of the '967 patent recite "obtaining visual **validation** of the possession of a **purchased** electronic ticket … for presentation to a ticket taker" and "to **verify purchase** of a previously **purchased** electronic ticket" with the same steps of receiving, determining and causing an activation – amounting to conditioning and controlling access to data based on payment.  Not only are elements A-J of claims 1, 17 and 18 substantially similar, but they are linked by way of the **bolded** terms above to the abstract idea, and with nothing more than the <u>underlined</u> generic computer elements. Thus, independent claims 1, 17 and 18 are directed to the abstract idea of conditioning and controlling access to data based on payment.

***The '993 Patent Claims Are Directed to An Abstract Idea.***  Claim 1 of the '993 patent, similar to claim 8, recites transmitting, validating, securing, and enabling display steps "for displaying visual validation of the possession of a previously purchased electronic ticket for utilization of a service monitored by a ticket taker" (**Exhibit C**, Dkt. 1-2, '993 patent, pp. 26-27, claim 1, preamble; see also claim 8).

12

More specifically, the independent claims 1 and 8 of the '993 patent (**Exhibit C**, Dkt. 1-2, '993 patent, pp. 26-27), substantially similar to and linked to terms from claims 1, 17 and 18 of the '967 patent, are provided below with claim language emphasizing the abstract idea in **bold** and with generic computer elements in <u>underline</u>:

| Claim 1 | Claim 8 |
|---|---|
| [A] A method performed by a <u>computer system</u> for displaying visual **validation** of the possession of a previously **purchased** electronic ticket for utilization of a service monitored by a ticket taker comprising: | [A] A system for **validating** previously **purchased** electronic tickets for utilization of a service monitored by a ticket taker, comprising: a <u>central computer system</u> and at least one <u>remote display device</u> operatively connected to the central <u>computer system</u> over a <u>data communication network</u>, wherein the <u>central computer system</u>: |
| [B] **transmitting** a **token** associated with a previously **purchased** electronic ticket to a <u>remote display device</u>, [C] wherein the **token** is a unique alphanumeric string, and [D] wherein a copy of the unique alphanumeric string is stored on a <u>central computer system</u>; | [B] **transmits** a **token** associated with the previously **purchased** electronic ticket to the at least one <u>remote display device</u>, [C] wherein the **token** is a unique alphanumeric string, and [D] wherein a copy of the unique alphanumeric string is stored on the <u>central computer system</u>; |
| [E] **validating** the **token** [F] by matching the **token** transmitted to the <u>remote display device</u> to the copy of the unique alphanumeric string | [E] and upon a request received in the at least one <u>remote display device</u>, **validates** the **token** associated with the previously **purchased** |

| | |
|---|---|
| stored on the <u>central computing system</u> [G] to provide a ticket payload to the <u>remote display device</u>; | electronic ticket [F] by matching the **token** transmitted to the <u>remote display device</u> to the copy of the unique alphanumeric string stored on the <u>central computing system</u> [G] to provide a ticket payload to the at least one <u>remote display device</u>; |
| [H] **securing** a **validation** <u>display object</u> prior to transmission to provide a secured **validation** <u>display object</u>; | [H]**secures** a **validation** <u>display object</u> prior to transmission to provide a secured **validation** <u>display object</u>; |
| [I] **transmitting** to the <u>remote display device</u> a secured **validation** <u>display object</u> associated with the ticket payload; and | [I] **transmits** to the <u>remote display device</u> over the <u>data communication network</u> the secured **validation** <u>display object</u> associated with the ticket payload, and |
| [J] **enabling** the <u>remote display device</u> to display the secured **validation** <u>display object</u> upon validation of the **token** for visual recognition by the ticket taker or | [J] wherein the <u>remote display device</u>: **enables** display of the secured **validating** <u>display object</u> upon validation of the **token** for visual recognition by the ticket taker or |
| [K] **preventing** the <u>remote display device</u> from displaying the secured **validation** <u>display object</u> in the event that the **token** is not **validated**. | [K] **prevents** the <u>remote display device</u> from displaying the secured **validation** <u>display object</u> in the event that the **token** is not **validated**. |

As such, claim 1 recites "visual **validation** of the possession of a previously **purchased** electronic ticket for utilization of a service monitored by a ticket taker" and claim 8 recites

"**validating** previously **purchased** electronic tickets for utilization of a service monitored by a ticket taker" with common steps including transmitting, validating, securing, and enabling or preventing display steps based on payment – amounting to conditioning and controlling access to data based on payment. Not only are elements A-K of the '993 patent substantially similar to each other, and with elements A-J of the '997 patent, but they are linked by way of the **bolded** terms to the abstract idea, and with nothing more than the underlined generic computer elements. Thus, the '967 and '993 patents are directed to the abstract idea of conditioning and controlling access to data based on payment.

The specifications of the '967 and '993 patents (which are identical) confirm the conclusion that the claimed inventions are directed to conditioning and controlling access to data based on payment.  In particular, the specifications characterize the "field of the invention" as follows: "[t]his invention provides a mechanism whereby a venue or other facility that **meters usage** by means of tickets can **distribute** tickets electronically and use a visual aid on an electronic device to visually **confirm** that a person is a **valid** ticket holder."  (**Exhibit B**, Dkt. 1-1, pg. 19, col. 1, ln 15-19 (emphasis added))    "[T]he system is used to **verify payment of a purchase price**." (*Id.*, at pp. 22-23, col 8, ln 67–col. 9, ln. 1 (emphasis added))   "[T]he system for **payment** will also transmit transaction details, for example, an **amount of money** and an identity of **goods or services**." (*Id.* at pg. 23, col. 10, ln 33-35 (emphasis added))

The specifications of the '967 and '993 patents further describe the "token" of the Asserted Claims consistent with conditioning and controlling access to data based on payment, stating that "[t]he use of electronic ticketing provides opportunities that change how tickets can be **bought and sold**.  For example a first customer can **purchase** a ticket and receive on their device a ticket **token**." (**Exhibit B**, Dkt. No. 1-1, '967 patent, pg. 21, col. 4, ln 42-46 (emphasis

added); *see also* **Exhibit C**, '993 patent) "[T]he system can operate a typical on-line **payment** and credit system that **secures payment**." (*Id.* at col. 4, ln 58-59 (emphasis added)) "[T]he user **purchases** a ticket from an on-line website. The website sends to the user's device a unique number, referred to as a **token**. The **token** is also stored in the ticketing database." (*Id*. at pg. 19, col. 2, ln 46-48 (emphasis added)) "Ticket holders that have **purchased** tickets have a data record in the system database that contains the unique **token** associated with the ticket and other relevant information, including the venue ID and an identifier identifying the specific show the ticket is for." (*Id.* at pg. 20, col. 3, ln 61-64 (emphasis added))  "This application fetches the stored ticket **token**." (*Id.* at col. 3, ln 65 (emphasis added))  "If the **token** is **valid**, then the system transmits back to the device a ticket payload. (*Id.* at col. 4, ln 3-4) "In one embodiment, the device transmits the ticket **token** to the system with a command indicating that the ticket has been used." (*Id.* at col. 4, ln 16-18 (emphasis added)).  Therefore, the Asserted Patents are directed to an abstract idea.

### c. The Court Acknowledged that the '967 and '993 Patents Appear to be Directed at the Abstract Idea of Conditioning and Controlling Access to Data Based on Payment

Pursuant to Defendants' September 28, 2017, letter (**Exhibit E**, Dkt. 41) in advance of this motion and Bytemark's October 3, 2017, response letter (**Exhibit F**, Dkt. 43), the Court offered its preliminary impressions on the subject matter eligibility of the '967 and '993 patents. According to the Transcript of the Scheduling Conference held on October 16, 2017, the Court stated the following:

> As in *Smartflash*, the '993 and '997 patents involve payment and ticket validation, and appear to be directed at the abstract idea "of conditioning and controlling access to data based on payment." Citing *Smartflash*, 680 F.App'x at 982; see also *Elec. Power Grp*.,

830 F.3d at 1354 (noting that abstract ideas include the "creating and manipulation of legal obligations such as contracts involved in fundamental economic practices"). Thus, it appears to me, based on what I have read so far, that the patents might be directed at a patent-ineligible concept.

(**Exhibit G**, Dkt. No. 49, page 13, line 22 to page 14, line 6)

### d. The Federal Circuit Has Held Comparable Patents to be Directed to An Abstract Idea

The Federal Circuit has held that "**conditioning and controlling access to data based on payment**" constitutes an abstract idea.  *Smartflash LLC,* 680 Fed. Appx. at 982 (emphasis added).  In *Ultramercial,* the Federal Circuit affirmed a district court's invalidation of a patent directed to the idea of **distributing and limiting access** to media products over the internet as "an abstract idea, devoid of a concrete or tangible application." *Ultramerical,* 772 F. 3d at 715 (emphasis added).

Further, comparable to the "token" of the '967 and '993 patents as bolded above, the Federal Circuit held that "an identifying ***token*** for time-based mass transit fare products" and "validating entry," "determining an identifier" and "denying access" with respect to a transit network were directed to the abstract idea of "**collection, storage, and recognition of data**." *Smart Systems Innovations, LLC v. Chi. Transit Auth*., 2016-1233, 2017 U.S. App. LEXIS 20333, at *12 (Fed. Cir. October 18, 2017) (emphasis added).  Further, claims directed to a "token" defined as "a set of letters and numbers that uniquely identifies the user - to the mobile device" were held to be directed to "**an abstract idea of authentication**." *EasyWeb Innovations LLC v. Twitter Inc*., No. 11-cv-4550, 2016 U.S. Dist. LEXIS 42549, at * 90 (E.D.N.Y. March 30, 2016) (emphasis added).

Comparable to the "visual validation" and "validation display object" of the Asserted Claims, the Federal Circuit also held that "**collecting information, analyzing it, and displaying certain results of the collection and analysis**" is an abstract idea. *Elec. Power Grp., LLC,* 830 F.3d at 1353 (emphasis added).

Accordingly, the asserted claims of the '967 and '993 patents are directed to the abstract idea of conditioning and controlling access to data based on payment, thus satisfying part one of the *Alice* analysis.

### 3. *Alice* Part Two: The '967 and '993 Patents Only Implement the Abstract Idea Using Generic Computer Technology and Add Nothing Inventive

#### a. The Court Must Identify Whether the Asserted Claims Recite An Inventive Concept that is Significantly More Than The Abstract Idea of Conditioning and Controlling Access to Data Based On Payment

In step two of the *Alice* analysis, the court must "search for an 'inventive concept' … that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice Corp.*, 134 S. Ct. at 2355. "[C]omputer functions that are 'well-understood, routine, conventional activit[ies]' previously known to the industry" or that merely "require a generic computer to perform generic computer functions" fail to satisfy part two. *Id.* at 2359 (quoting *Mayo Collaborative Servs.,* 566 U.S. at 79).

#### b. Supposed Novelty and Nonobviousness Have No Bearing on Subject Matter Eligibility

Novelty and nonobviousness have no bearing on subject matter eligibility. "The novelty and nonobviousness of the claims under [35 U.S.C.] §§ 102 and 103 does not bear on whether the claims are directed to patent-eligible subject matter under § 101." *Two-Way Media*, 2017 U.S. App. LEXIS 21706, at *7 (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* Nos. 14-1006-RGA, 14-1212-RGA, 2016 U.S. Dist. LEXIS 107478, at *4). "Eligibility and

novelty are separate inquiries." *Id.*, at *17 (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC,* 838 F.3d at 1263) (holding that "even assuming" that a particular claimed feature was novel does not "avoid the problem of abstractness")).  Thus, novelty and non-obviousness are not considered in part two of *Alice.*

**c.   The Asserted Claims Only Implement the Abstract Idea of Conditioning and Controlling Access to Data based on Payment with Generic Computer Technology that Adds Nothing Inventive**

The Asserted Claims only implement an abstract idea with generic computer technology that adds nothing inventive, thus failing to transform the abstract idea into patent-eligible subject matter.  The Federal Circuit has held that adding steps of "reading, receiving, and responding to payment validation data and, based upon the amount of payment, and access rules, allowing access to multimedia content" with nothing more than "generic computer components" ***does not*** "transform [the] abstract idea into a patent-eligible invention."  *Smartflash LLC,* 680 Fed. Appx. at 984.  *See also Elec. Power Grp, LLC*, 830 F.3d at 1355 (noting that there is no "inventive concept" where the asserted claims "do not even require a new source or type of information, or new techniques for analyzing it" and merely "provide a 'humanly comprehensible' amount of information [that] does not transform the otherwise-abstract processes.").   Similarly, the Federal Circuit has confirmed that step two of the *Alice* analysis cannot be satisfied where "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."  *Id*.  The Federal Circuit has "repeatedly held that such invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea."  *Id*.

Here, as described in the claim charts above (in Section V(A)(2)(b)), the Asserted Claims

19

only implement an abstract idea with generic computer technology that adds nothing inventive, thus failing to transform the abstract idea into patent-eligible subject matter.   Bytemark's arguments to the contrary are unavailing, for the reasons noted below (in Sections V(A)(3)(d) to (h)).

### d.   The Asserted Claims Do Not Recite Any Specific Improvement in Computer Capabilities, and the Alleged Lack of Preemption Does Not Salvage Non-Inventive Claims

Bytemark's letter to the Court stated "Courts have often cited to the lack of preemption concerns to support a determination that a claim is patent-eligible under § 101."  (**Exhibit F,** Dkt. 43, pg. 2 (citing *McRO,* 837 F.3d at 1314, and *Verint Sys. Inc.*, 226 F. Supp. 3d at 196)) Bytemark further stated that "the asserted claims are not directed to an abstract idea but rather are directed to a specific improvement in computer capabilities."  (**Exhibit F,** Dkt. 43, pg. 3.) *VerintSys*, however, only passingly address the concept of "preemption" by stating that "exceptions to patent eligibility must not be applied beyond the limits of the exception's purpose of preventing the preemption of new discoveries," which clearly fails to support Bytemark's contention. *VerntSys*, at 194. However, in direct contrast to Bytemark's statement, *McRO* states that "the absence of complete preemption does not demonstrate patent eligibility."  *McRO*, at 1315 (quoting *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)).  The primary focus of *VerintSys* and *McRO* is on the specific limitations and improvements recited by the claims.  The Asserted Claims, however, are completely devoid of such specifics.  *See* the claims set forth in the charts above.

Unlike the Asserted Claims, the *McRO* court relied on the "specific structure of the claimed rules [to] prevent broad preemption" based on "limited rules in a process specifically designed to achieve an improved technological result." (*McRO*, at 1316) More specifically, the

20

*McRO* court found that "the claimed process uses a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results." *Id.*, at 1315. However, the Asserted Claims are completely devoid of any specific structure, improved technological result or specific rules or format. In contrast to *McRO*, elements A-J of the '967 patent and elements A-K of the '993 patent merely utilize generic computer components that implement the abstract idea of conditioning and controlling access to data based on payment, e.g., as set forth by the **bolded** and underlined claim elements in the charts above. The Asserted Claims do not recite any specific structure, improved technological result or specific rules or format that amount to significantly more than the abstract idea of conditioning and controlling access to data based on payment.

For example, the claimed "token," "visual validation," "validation display object," and "securing" elements are only generically claimed – without claiming any specific structure, improved technological result, specific rules or format, any non-generic computer components, or any description of how these claim elements are generated, displayed or performed. As the Federal Circuit held, "[t]he abstract idea exception has been applied to prevent patenting of claims that abstractly cover results where 'it matters not by what process or machinery the result is accomplished.'" *McRO*, 837 F.3d at 1314. Accordingly, courts should "look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Id.* The Asserted Claims are directed to a result or effect that itself is the abstract idea of conditioning and controlling access to data based on payment, and merely invoke generic components to accomplish the same, without claiming *how*

it is accomplished, thereby failing to recite significantly more than the abstract idea.  As a result, the Asserted Claims are patent ineligible.

The *Verint Systems* case is instructive on the specific limitations that must be claimed to overcome step two of the *Alice* analysis.  There, this Court found patent eligibility where the patents at issue claimed a "highly technical way to capture, record, and present certain very specific information with specific limitations." *Verint Sys.*, 226 F. Supp. 3d at 205.  By contrast, the Asserted Claims of the '967 and '993 patents are completely devoid of such specificity.  As stated above, taking the claimed "token," "visual validation," and "securing" as examples, these elements are only generically claimed – without claiming any improved technological result, any non-generic computer components, how the claimed terms are generated, displayed or performed, or even the specifics of what they include.  Thus, the Asserted Claims fail to recite significantly more than the abstract idea.

Also by way of example, claim 1, similar to claims 17 and 18, of the '967 patent recites a "server system," "user's computer device," "display object" and "data record," claim 1 of the '993 patent recites a "computer system," "remote display device," "data communication network, and a "display object," and claim 8 of the '993 patent recites similar elements with the addition of a "data communication network" – all entirely generic computer components.  The recitation of such generic components is insufficient to transform the abstract claims of the Asserted Patents into patentable subject matter under step two of the *Alice* analysis.  "[T]he presence of a general purpose computer to facilitate operations through uninventive steps does not change the fundamental character of an invention." *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1327 (Fed. Cir. 2015) (quoting *Alice Corp.*, 134 S. Ct. at 2347).  "The proper question is therefore not whether the invention is novel or whether it would be obvious to

someone skilled in the art, but whether the claims contain an inventive concept such that the invention does not claim an abstract idea." *Verint Sys.*, 226 F. Supp. 3d at 196. "Reciting 'only routine and conventional steps' is insufficient to state an inventive concept" *Id.* (quoting *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig*, 774 F.3d 755, 765 (Fed. Cir. 2014)); *see also In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016) ("[A]ppending purely conventional steps to an abstract idea does not supply a sufficiently inventive concept.").) Accordingly, the Asserted Claims include generic computer components that implement the abstract idea and nothing significantly more, thereby making them patent ineligible.

The Asserted Claims are not directed to "specific rules that improve a technological process," instead merely reciting the abstract idea of conditioning and controlling access to data based on payment with entirely generic computer components. *Smart Systems*, 2017 U.S. App. LEXIS 20333 at *13. For example, independent claims 1, 17 and 18 of the '967 patent recite steps of receiving, determining and causing an activation based on payment using generic computer components as underlined above, and independent claims 1 and 8 of the '993 patent recite steps of transmitting, validating, securing, and enabling or preventing display using generic computer components as underlined above – amounting to conditioning and controlling access to data based on payment. Comparable to the Asserted Claims, the Federal Circuit held that reciting the "collection of financial data," "storing of that financial data," "linking to the financial data," and "allowing access to a transit system based on the financial data" are "not directed to a combined order of specific rules that improve any technological process, but rather invoke computers in the collection and arrangement of data." *Id.*, at *14-15 (quoting *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)). "[C]ollecting information, including when limited to particular content (which does not change its character as

23

information), as within the realm of abstract ideas." *Elec. Power Grp., LLC*, 830 F. 3d at 1353.

The Asserted Claims fail to recite any technological improvements, and thus are invalid.

In short, the '967 and '993 patents fail to recite any specific improvements amounting to an inventive concept significantly more than the abstract idea of conditioning and controlling access to data based on payment, thereby making them patent ineligible.

> **e.  Bytemark's Alleged Improvements Are Not Recited by the Asserted Claims or Specification of the Asserted Patents, and thus Cannot Support an Inventive Concept**

Bytemark argues that the Asserted Patents "involve[] a unique technology improvement in the way servers and computers communicate with and transfer information with remote devices in the context of implementing a visual validation mobile electronic ticketing system," "improve the security and efficiency of server/computer/remote device communication" and "improve the security of user data through the unique use of tokens, which act as publicly unknown identifiers that provide a relationship between sensitive data and the token while allowing for transfer of a token that has no meaningful value while maintain secure storage of the real, sensitive data" (**Exhibit F**, Dkt. No. 43, pg. 3).  However, in contradiction to Bytemark's assertions, neither Asserted Claims nor the Asserted Patents as a whole expressly recite "improvements" or even language such as "improve the way servers and computers communicate," "efficiency," "improve the security and efficiency of server/computer/remote device communication," "improve the security of user data," "publically unknown identifiers," "relationship between sensitive data and the token" or "allowing for transfer of a token that has no meaningful value while maintain secure storage of the real, sensitive data." As stated above, the receiving, determining and causing an activation steps based on payment of claims 1, 17 and 18 of the '967 patent, and the transmitting, validating, securing, and enabling or preventing

display steps based on payment of claims 1 and 8 of the '993 patent, amount to conditioning and controlling access to data based on payment.  The Asserted Claims are thus completely devoid of the "alleged improvements," and thereby lack any inventive concept associated with the same.

Accordingly, the Asserted Claims fail to recite the "alleged improvements" amounting to significantly more than the abstract idea of conditioning and controlling access to data based on payment.  Thus, the Asserted Claims cannot support an inventive concept.

> **f.   There is No Inventive Concept in the Claimed "Token" or "Securing", or Even the Unclaimed "Server/Computer/Remote Device Communication" or the Unclaimed "Security and Efficiency" Benefits**

Addressing a well-known security problem by merely adding a generic mechanism for controlling access to information such as a "token" or "securing" to the claims is not inventive. Use of a *token* or *securing* is no more than disguising the true meaning of a message – an old and abstract idea.  For example, the Patent Trial and Appeal Board recognized that encrypting a message to hide its meaning is both ancient and abstract: "[T]he basic concept of encryption is ubiquitous. Encryption, in general, represents a basic building block of human ingenuity that has been used for hundreds, if not thousands, of years. … [E]ncryption in its simplest form does not require the use of technology to communicate secure messages. Specifically, encryption, in its simplest form, could be performed with pencil and paper."  *Fidelity Nat'l Info. Servs., Inc.* v. *DataTreasury Corp.*, CBM2014-00021, 2015 WL 1967328, at *8 (P.T.A.B. Apr. 29, 2015).

Comparable to conditioning and controlling access to data based on payment according to the asserted claims, the Federal Circuit, in *Ultramercial, Inc. v. Hulu*, found that claims directed to "distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement" were not patentable--despite the fact that the claims included numerous additional elements. *Ultramerical*,

772 F.3d at 712, 715-16.  The Federal Circuit also held that "reading, receiving, and responding to payment validation data and, based upon the amount of payment, and access rules, allowing access to multimedia content" with nothing more than "generic computer components" does not "transform [the] abstract idea into a patent-eligible invention."  *Smartflash LLC*, 680 Fed. Appx. at 984.

Regarding the addition of "secur[ing] a validation display object prior to transmission to provide a secured validation display object" to the independent claims of the '993 patent, this recitation in no way provides an "inventive concept" as required by *Alice Corp.*  The claims fail to recite any inventive concept behind the term "securing" – other than the generic concept of keeping something safe or secure.  For example, anything could be "secured" by simply placing it in a safe place, hiding it, putting a lock on it, or even applying a password – all well-known concepts that are not even remotely inventive. Thus, this recitation does nothing to salvage even the '993 patent from step two under *Alice Corp*.

Notably, this Court has previously found steps of securing data and controlling access based on secured data to be non-inventive.  More specifically, steps of "encrypting portions of data" and "distributing the encrypted data were held to be "routine, conventional activity" and a step of "controlling access to decrypted portions of the distributed data by applying various, unspecified rules defining access rights" was held to be "nothing more than an abstraction, completely lacking any corporeal application or particular function."  *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 U.S. Dist. LEXIS 56092, at *40-41 (S.D.N.Y. April 28, 2015.)  Considering that claims 1 and 8 of the '993 patent generically recite "securing" and claims 1, 17 and 18 of the '967 patent even lack that recitation, the Asserted Claims clearly fail to recite any inventive concept associated with security.

In an attempt to distract from the abstractness of the Asserted Claims, Bytemark alleged improvements to "the security and efficiency of server/computer/remote device communication" (**Exhibit F,** Dkt. No. 43, pg. 3), but this is not recited in the Asserted Claims and the Federal Circuit also held this to be non-inventive.  As set forth above, the Asserted Claims (and specification) fail to recite "improve the security and efficiency of server/computer/remote device communication" making it in error to rely on "technological details [allegedly] set forth in the patent's specification and not set forth in the claims to find an inventive concept" *Intellectual Ventures I*, at 1322.  Further, comparable to the "persistent connection that maintains a bi-directional, full-duplex communications channel" as described in column 8, lines 52-53 of the '967 patent (**Exhibit B**, Dkt. No. 1-1, '967 patent, col. 8, ln. 51-53; see also **Exhibit C**, Dkt. No. 1-2, '993 patent), the Federal Circuit recently held that even claims directed to a "bidirectional communication line" are not inventive for being "non-specific and lack[ing] technical detail" while "using generic computer technology" and "[t]he fact that an identifier can be used to make a process more efficient, however, does not necessarily render an abstract idea less abstract." *Secured Mails Sols., LLC v. Universal Wilde, Inc.*, 2016-1728, 2017 U.S. App. LEXIS 20105, at *9 and *14-15 (Fed. Cir. October 16, 2017).  Similarly, benefits such as increasing "efficiency" are "not technological benefits or improvements to a computer's functionality."  *Uniloc USA, Inc. v. ADP, LLC*, case 2:16-cv-00741-RWS, Dkt. 267, at 11-12. (E.D. Tex. 2017).  Not only do the Asserted Claims fail to recite the alleged improvements, but security and efficiency improvements are not inventive.

The Asserted Claims do not provide a unique solution to a technical problem that is unique in the computer field. To the contrary, the problem of limiting access to a product or service using a token or ticket is an ancient one, common throughout human history. For

millennia, humans have tried to limit products or services to users who have been properly verified, and this is not a problem unique to the internet or computers. Similarly, the Asserted Claims do not purport to have improved the functioning of the underlying computers or software in some way. Indeed, Bytemark's recitation of the components of its claimed invention is purely functional. For instance, all we know about the claimed server system and the user's computer device of the '967 patent, and the computer system and remote device of the '993 patent, are the functions they supposedly perform such as receiving, determining, and causing an activation of the '967, and transmitting, validating, securing, and enabling/preventing of the '993 patent. The claims offer no guidance on specifically how these functions are performed or what particular hardware must be used to perform these functions —much less that the supposed invention improved their functioning in some way. Also, Bytemark's patents here do not purport to use a non-generic arrangement of generic equipment to improve upon the prior art. To the contrary, here the specification expressly relies on the generic client-server arrangement common to decades of internet usage, and the specification is silent as to any improvement over the prior art by the claimed inventions.

Accordingly, the Asserted Claims lack any inventive concept, thereby making them invalid.

  **g. The Asserted Claims Fail to Recite Any Inventive Concept To Improve the Ticket Verification Process by Providing a Human Perceptible Visual Display**

Bytemark's alleged improvement to the ticket verification process by "providing a human perceptible visual display" is also insufficient to provide an inventive concept that is "significantly more" than the abstract idea itself.   More specifically, the Asserted Claims of the '967 patent recite as follows:

- a visual validation display object that confirms that the user possesses the previously purchased electronic ticket ('967 patent, claims 1, 17 and 18, element [C] above)

- the visual validation display object configured to be readily recognizable visually by the ticket taker ('967 patent, claims 1, 17 and 18, element [E] above)

- the visual validation display object that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker ('967 patent, claims 1, 17 and 18, elements [I]-[J] above)

Further, the Asserted Claims of the '993 patent recite as follows:

- securing a validation display object prior to transmission to provide a secured validation display object ('993 patent, element [H] above, claims 1 and 8)

- transmitting to the remote display device a secured validation display object associated with the ticket payload ('993 patent, element [I] above, claims 1 and 8)

- enabling the remote display device to display the secured validation display object upon validation of the token for visual recognition by the ticket taker ('993 patent, element [J] above, claims 1 and 8)

- preventing the remote display device from displaying the secured validation display object in the event that the token is not validated ('993 patent, element [K] above, claims 1 and 8)

None of these elements define what the "validation display object" includes, how it is generated, secured, or displayed, or even any non-generic computer components associated with the claimed validation display object.

The Federal Circuit "recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Elec. Power Grp., LLC,* 830 F.3d at 1350.  The asserted claims "do not even require a new source or type of information, or new techniques for analyzing it" and merely "provide a 'humanly comprehensible' amount of information [that] does not transform the otherwise-abstract processes." *Id.* at 1355.  "Inquiry therefore must turn to any requirements for *how* the desired result is achieved. But in this case the claims' invocation of computers, networks, and displays does not transform the claimed subject matter into patent-eligible applications." *Id.*  As such, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."  *Id.*  The Federal Circuit has "repeatedly held that such invocations of computers and networks that are not even arguably inventive are 'insufficient to pass the test of an inventive concept in the application' of an abstract idea." *Id.* (quoting *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014)); *see also, e.g.*, *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016); *Intellectual Ventures I LLC*, 792 F.3d at 1370; *Internet Patents Corp.,* 790 F.3d at 1348-49; *Content Extraction,* 776 F.3d at 1347-48.  As such, the Asserted Claims lack any inventive concept.

Regarding Bytemark's alleged improvements to the ticket verification process, the Asserted Claims fail to recite a "human perceivable visual display" and even lack details regarding "how the desired result is achieved"– a necessary inquiry according to the Federal Circuit.  *Elec. Power Grp*, at 1355.  The Asserted Patents acknowledge that "[e]xisting systems

distribute information that can constitute a ticket, but the verification problem is difficult" with the solution supposedly being a "human perceivable visual display" such that "invention provides for the distribution of an electronic ticket that also contains a visual display that ticket takers can rely on as verification." (**Exhibit B**, Dkt. No. 1, pg. 19, '967 patent, col. 1, lns. 25-27 and 39-42.) Not only do the Asserted Claims fail to recite a "human perceivable visual display" or associated improvements, but they merely utilize generic computer components for transmitting and enabling/preventing steps without actually generating or displaying a "human perceivable visual display." More specifically, claims 1, 17 and 18 of the '967 patent recite a "transmitting to a user's computer device a data file comprising a visual validation display object" and claims 1 and 8 of the '993 patent recite "enabling the remote display device to display the secured validation display object" or "preventing the remote display device from displaying the secured validation display object." Thus, the Asserted Claims recite generic computer components (e.g., user's computer device / remote display device) with a generic "validation display object," but the Asserted Claims fail to provide any specific details regarding "how" the claimed display object is achieved, e.g., how it is generated or displayed. The claimed "validation display object" is entirely abstract in itself and requires nothing inventive, thereby failing to provide "significantly more" as required under part two of the Alice test. Thus, the claimed validation display object is non-inventive.

Furthermore, the '967 and '993 Patents only implement the abstract idea with generic computer technology that adds nothing inventive, failing to transform the abstract idea into patent-eligible subject matter. For example, independent claims 1, 17, and 18 of the '967 recite a generic "server system" and "user's computer device" and independent claims 1 and 8 of the

'993 patents merely recite a generic "computer system" and "remote display device."  Thus, the Asserted Claims lack any inventive concept.

Moreover, the '967 patent, similar to the '993 patent, admit to using well known computing components.  More specifically, the Asserted Patents admit that "[e]xamples of ***well known*** computing systems, environments, and/or configurations that may be suitable for use with the invention include, but are not limited to, personal computers, server computers, hand-held, laptop or mobile computer or communications devices such as cell phones." (**Exhibit B**, Dkt. 1-1, pg. 24, '967 Patent, col. 12, ln. 21-25.)  The Asserted Patents are completely devoid of any non-generic computing components.  Thus, the Asserted Patents admit to reciting only well known computing components – clearly devoid of an inventive concept.

Accordingly, there is no inventive concept associated with a human perceptible visual display implemented with generic computing components, and thus the Asserted Claims contain no inventive concept.  *Alice* part two is satisfied.

### h.  The Dependent Claims Add Nothing Inventive

In much the same way as the independent claims, the dependent claims rely on conventional equipment or steps and fail to transform the abstract idea into something more than conditioning and controlling access to data based on payment. Indeed, the dependent claims add limitations, generic hardware and technological environments within which Bytemark's abstract idea is to be implemented. These, however, lack any inventive concept to salvage the underlying abstract ideas.  As the Supreme Court put it, "[i]t is well established that the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the abstract idea] to a particular technological environment." *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (internal quotation marks omitted).

For example, the dependent claims of the '967 and '993 patents lack any inventive concept that is significantly more than the abstract idea of conditioning and controlling access to data based on payment – patent ineligible according to at least *Smart Systems*, *Smartflash*, *Electric Power,* and *Ultramercial*.   For example, the dependent claims of the '967 patent are summarized as follows:

- claims 2 and 19 amount to confirming, storing, and transmitting data based on payment and without any details on specifically how these operations are performed or what the data includes

- claims 3 and 20 amount to storing, determining and permitting or not permitting transmission of data based on time and without any specific details on how these operations are performed or how the time is generated or utilized

- claims 4 and 21 amount to transmitting a key and without any specific details on how this transmitting operation is performed or what the key includes

- claims 5-6 and 22-23 amount to encrypting data based on a key and without any specific details on how the encryption operation is performed or what the key includes

- claim 34 amounts to a non-specific display object and without any details of specifically how it is displayed or even what is being displayed or how

None of the above recite any inventive details such as specifically what the data includes, how the operations are being performed, or what is being displayed or how.   As such, these dependent claims are all forms of conditioning and controlling access to data – clearly non-inventive according to the Federal Circuit.   Further, the dependent claims of the '993 patent are summarized as follows:

- claim 2 amounts to receiving, determining and transmitting data based on payment and without any specific details on these operations

- claim 3 amounts to transmitting data prior to verification and without any specific details on the transmitting operation

- claim 4 amounts to securing data prior to display based on payment verification and without any specific details on the particular securing operation

- claims 5, 7 and 10 amount to encrypting data and without any specific details on the encryption operation

- claim 6 amounts to transmitting data for non-specific authentication and without any specific details on the operation

- claims 9, 12, 13, 15 and 23-24 amount to displaying a display object based on payment and without any specific details of what is displayed or how

- claim 11 amounts to receiving and storing a non-specific display object based on payment verification

- claim 14 amounts to non-specific data parameters for purchase validation

- claims 16 and 17 amount to a non-specific predefined area of a display screen and without any specific details on what is being displayed or how

- claim 22 amounts to a non-specific display object according to a non-specific schedule and without any  specific details on what is being displayed or how

Again, all of the dependent claims fail to recite any inventive details such as specifically what the data includes, how the operations are being performed, or what is being displayed or how. Thus, the dependent claims of the '993 patent merely amount to conditioning and controlling access to data – non-inventive according to the Federal Circuit.   As such, the dependent claims

of the '967 and '993 patent are completely devoid of any inventive concept according to the *Smart Systems*, *Smartflash, Electric Power,* and *Ultramercial* decisions.

In summary, the '967 and '993 patents are not patent-eligible under 35 U.S.C. § 101, thereby necessitating dismissal of Counts One and Two for patent infringement and direct entry of judgment for the Defendants.

### B. The Court Should Dismiss Count Eight For Unfair Competition Under New York Law Because Plaintiff Has Failed To State A Claim Under Rule 12(b)(6)

#### 1. Unfair Competition With Respect To All Defendants Is Preempted By Federal Patent Law

In addition to alleging unfair competition against all Defendants, Plaintiff also alleged patent infringement against all Defendants. Courts have dismissed unfair competition claims as being preempted by federal patent law. *See Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 261 (E.D.N.Y. 2015) (dismissing Plaintiffs' unfair competition claim because it was "purely based on allegations of patent infringement or copying of an unpatented product" and was therefore "necessarily preempted by federal patent law"); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 334-35 (E.D.N.Y. 2014). "If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. Conversely, if the conduct is not so protected or governed, then the remedy is not preempted." *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1336 (Fed. Cir. 1998).

Here, in alleging unfair competition, the Amended Complaint asserts that "Defendants' practicing of the claims of the Patents-in-Suit and their unlawful use of Plaintiff's trade secrets in Defendants' applications that also have substantially the same look and feel is likely to cause confusion." (**Exhibit D,** Dkt. No. 40, paragraph 135) Thus, to the extent that Plaintiff's unfair

competition claim is based on the same fact and circumstances as the patent infringement claims, it is preempted by the patent infringement claims.

Accordingly, this Court should dismiss Count Eight with respect to all Defendants.

### 2. Unfair Competition With Respect To Xerox, ACS, And Xerox Transport Is Precluded By Count Three For Breach Of Contract

Plaintiff also alleges breach of contract against the Xerox Entities.   The Amended Complaint alleges that "Plaintiff entered into a series of Confidentiality Agreements with the Xerox Entities for the limited purpose of potentially developing joint proposals and/or bids relating to providing mobile ticketing solutions to prospective customers in the mass transit industry" and that "[t]he Xerox Entities breached the above-named Confidentiality Agreements by using and/or disclosing Plaintiff's trade secrets and other confidential information to outside parties without Plaintiff's consent, and solely for the Xerox Entities' own benefit."  (**Exhibit D,** Dkt. No. 40, paragraphs 74 and 81)

However, this district has held unfair competition to be duplicative of a breach of contract claim, and dismissed same on this basis alone.  *See RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294, 2015 U.S. Dist. LEXIS 111823, at *5-6 (S.D.N.Y. Aug. 24, 2015) (stating that "no claim for unfair competition lies where its underlying allegations are merely a restatement albeit in slightly different language of the implied contractual obligations asserted in the cause of action for breach of contract"); *Cereus Prod. Dev., Inc. v. Boom LLC*, 14 civ. 4292,  2015 U.S. Dist. LEXIS 73503, at *8 (S.D.N.Y. June 5, 2015) (stating that "it is one of the well-settled principles of New York law that the existence of a valid and enforceable contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." (internal quotations omitted).  "A plaintiff may maintain tort claims in addition to a breach of contract claim only where 'a legal duty independent of the

contract itself has been violated.'" *ScentSational Techs., LLC v. PepsiCo, Inc.*, 13 cv 8645, 2017 U.S. Dist. LEXIS 162723, at *59 (S.D.N.Y. Sep. 14, 2017) (quoting *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012)).

Here, in alleging unfair competition, the Amended Complaint alleges that "[t]he foregoing acts, in which Defendants misappropriated Plaintiff's labors and expenditures, constitute unfair competition under New York state law" and that "Defendants' practicing of the claims of the Patents-in-Suit and their unlawful use of Plaintiff's trade secrets in Defendants' applications that also have substantially the same look and feel is likely to cause confusion." (**Exhibit D,** Dkt. No. 40, paragraph 135)   In other words, the basis for Plaintiff's unfair competition claim, at least with respect to the Xerox Entities, is the alleged breach of the Confidentiality Agreements, which precludes the unfair competition claim.   The Amended Complaint has not alleged any legal duty independent of the Confidentiality Agreements that has been violated.

Accordingly, this Court should dismiss Count Eight with respect to Xerox, ACS, and Xerox Transport.

### 3.   The Amended Complaint Failed To Allege Bad Faith On The Part Of Conduent And NJ Transit

"New York law has 'long recognized two theories of common-law unfair competition: palming off and misappropriation.' …   Palming off refers to 'the sale of the goods of one manufacturer as those of another,' while misappropriation encompasses the principle that one may not in bad faith 'misappropriate the results of the skill, expenditures and labor of a competitor.'" *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 894 F. Supp. 2d 288, 325-326 (S.D.N.Y. 2012) (quoting *ITC Ltd. v. Punchgini, Inc*., 9 N.Y.3d 467, 880 N.E.2d 852, 858, 850 N.Y.S.2d 366 (N.Y. 2007)).   "To prevail on a claim of unfair competition under

New York law under either a misappropriation or a palming off theory, a plaintiff 'must show a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product [or service] *and* bad faith on the part of Defendants.'"  *Id.* (quoting *Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363-64 (S.D.N.Y. 1998) (citations omitted); *see also Crye Precision LLC v. Duro Textiles, LLC*, 16-1333, 2017 U.S. App. LEXIS 7818, at *7-8 (2d Cir. May 3, 2017)  ("A common law unfair competition claim under New York law is generally the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.").

Here, in alleging bad faith on the part of <u>all</u> Defendants, the Amended Complaint alleges that "under the guise of forming a partnership with plaintiff, defendants led plaintiff to disclose its valuable intellectual property, trade secrets, and other confidential information" and then "improperly used and disclosed plaintiff's patents and trade secrets to bid on and secure their own contracts.  (**Exhibit D,** Dkt. No. 40, paragraph 136)

However, earlier in the Amended Complaint, Plaintiff plead that only ACS and Xerox Transport (and by extension, Xerox) (collectively referred to as the "Xerox Entities" in the Amended Complaint) entered into any type of agreements or partnership with Plaintiff. Specifically, the Amended Complaint alleged that "[b]eginning in 2012, Plaintiff entered into a series of Nondisclosure Agreements ('NDAs') and Teaming Agreements (collectively 'the Confidentiality Agreements') **with Xerox divisions ACS and Xerox Transport for the purpose of potentially developing joint proposals and/or bids** related to providing mobile ticketing solutions to prospective clients in the mass transit industry."  (**Exhibit D,** Dkt. No. 40, paragraph 29 (emphasis added)) The Amended Complaint then alleges that "[a]fter Plaintiff disclosed its trade secrets and other confidential information to the Xerox Entities, **the Xerox**

**Entities cut Plaintiff out of a joint bidding effort** and instead used and/or disclosed Plaintiff's patents and trade secrets to bid and secure a contract with NJ Transit on their own.  **The Xerox Entities' actions indicate that they never intended to partner with Plaintiff**.  Rather, their goal was to exploit Bytemark's efforts and use Bytemark's proprietary technology for their own commercial advantage."  (**Exhibit D,** Dkt. No. 40, paragraphs 33-34 (emphases added))

Thus, only the Xerox Entities had any kind of relationship with Plaintiff, by way of the Confidentiality Agreements, from which the alleged bad faith conduct, *i.e.*, a "guise of forming a partnership", could arise.  The Amended Complaint did not allege anywhere a relationship between Plaintiff and either Conduent or NJ Transit, let alone one of forming a partnership. Indeed, Plaintiff brought its breach of contract claim only against the Xerox Entities in Count Three of the Amended Complaint, and actually removed Conduent from the Count in the Amended Complaint.  (*see* **Exhibit D,** Dkt. No. 40, p. 15; *cf* Dkt. No. p. 11)

Therefore, the Amended Complaint has not alleged bad faith with respect to at least Conduent and NJ Transit such that either Defendant would have fair notice of the grounds upon which the unfair competition claim is based.  *See e.g.*, *Zurch Am. Ins. Co. v. Dah Sing Bank, Ltd.*, 03 civ. 7778, 2004 U.S. Dist. LEXIS 10786, at *6 (S.D.N.Y. June 15, 2004) (stating that one of the core purposes of Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").  The only basis is the lumping of all Defendants together, which is improper, especially in view of the inconsistencies in the Amended Complaint as explained above.  *See Medina v. Bauer*, 02 civ 8837, 2004 U.S. Dist. LEXIS 910, *17-18 (S.D.N.Y. Jan. 26, 2004) (dismissing the amended complaint because "[b]y lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8 [because] the allegations fail to give adequate notice to

these defendants as to what they did wrong."); *Lippe v. Bairnco Corp*, 96 civ 7600, 1998 U.S. Dist. LEXIS 16060, at *39 (S.D.N.Y. Oct. 13, 1998) ("Plaintiffs cannot simply 'lump' all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant").

Accordingly, the Amended Complaint has failed to establish bad faith against Conduent and NJ Transit, and therefore this Court should dismiss Count Eight with respect to Conduent and NJ Transit. *See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 198 (2d Cir. 2001) (finding that there was no unfair competition because there was no evidence that defendants acted in bad faith).

## C. The Court Should Dismiss Count Nine For Unjust Enrichment Under New York Law Because Plaintiff Failed To State A Claim Under Rule 12(b)(6)

In New York, unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Price v. L'Oreal USA, Inc.*, 17 civ 0614, 2017 U.S. Dist. LEXIS 165931, at *12-13 (S.D.N.Y. Oct. 5, 2017) (citing *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 944 N.Y.S.2d 732 (2012) (internal quotations omitted)). "[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*; *see also Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 05 civ 6882, 2009 U.S. Dist. LEXIS 15486, at *21 (S.D.N.Y. Feb. 9, 2009) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery of an unjust enrichment claim."); *Sitt v. Nature's Bounty, Inc.*, 15-CV-4199, 2016 U.S. Dist. LEXIS 131564 (E.D.N.Y. September 26, 2016) (dismissing Plaintiff's unjust enrichment claim under New York law because it was duplicative of the other new York claims as they were based on the same allegations as the claims brought

under New York law, and Plaintiff had not shown how her unjust enrichment claim differed); *Crye Precision LLC,* 112 F. Supp. 3d at 78 (holding that 28 U.S.C. 1498(a) blocked Plaintiff's unjust enrichment claim)).  Under New York law, "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010).

Here, the Amended Complaint alleged that "[a]s a result of Defendants' unlawful conduct including but not limited to their infringement of plaintiff's Patents-in-Suit and misappropriation of Plaintiff's trade secrets, Defendants have diverted substantial revenues from Plaintiff" and "[f]urthermore, Defendants have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform."  (**Exhibit D,** Dkt. No. 40, paragraphs 141-142)  Thus, Plaintiff's unjust enrichment claim is based on the same allegations brought forth in Counts One and Two for patent infringement and Counts Four through Six for misappropriation of trade secrets against all Defendants, and Count Three for breach of contract against the Xerox Entities.  The Amended Complaint does not allege any facts independent of these allegations.  Therefore, Plaintiff's unjust enrichment claim is merely duplicative of the adequate remedies at law sought in Counts One through Six.

Accordingly, this Court should dismiss Count Nine for unjust enrichment under New York law against all Defendants.

### D. The Court Should Dismiss Count Ten For Unjust Enrichment Under New Jersey Law Because Plaintiff Failed To State A Claim Under Rule 12(b)(6) Against Conduent and NJ Transit

To establish a claim of unjust enrichment in New Jersey, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *M'Baye v. N.J. Sports Prod.*, 06 civ. 3439, 2007 U.S. Dist. LEXIS 9101, at *33-34 (S.D.N.Y. Feb. 7, 2007) (quoting *In re Rezulin Prods. Liab. Litig.*, 390 F. Supp. 2d 319, 342 (S.D.N.Y.

2005) (internal quotations omitted)).  Unjust enrichment also requires that "plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id*. (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994) (internal quotations omitted)).  Unjust enrichment further requires that "there must be a direct relationship between the parties or there 'must be a mistake on the part of the person conferring the benefit.'" *Hughes v. Panasonic Consumer Elecs. Co.*, Civil Action No. 10-846, 2011 U.S. Dist. LEXIS 79504, *78 (D.N.J. July 21, 2011) (quoting *Fasching v. Kallinger*, 211 N.J. Super. 26, 36, 510 A.2d 794 (N.J. App. Div. 1986)).

Here, in alleging unjust enrichment against all of the Defendants, the Amended Complaint alleges that "Plaintiff shared its valuable intellectual property, trade secrets, and other confidential information with Defendants with the expectation of remuneration in the form of future joint ventures and business contracts."  (**Exhibit D,** Dkt. No. 40, paragraph 149) However, as explained above, the Amended Complaint plead facts that establish a direct relationship only between Plaintiff and the Xerox Entities.  Not only did the Amended Complaint acknowledge that Plaintiff entered into the Confidentiality Agreements with only ACS and Xerox Transport, the Amended Complaint further plead that NJ Transit and Conduent received Plaintiff's proprietary technology, trade secrets, and confidential information only from their relationships with the Xerox Entities.  (*See e.g.*, **Exhibit D,** Dkt. No. 40, paragraphs 35 and 39)  Thus, the allegation that Plaintiff shared its intellectual property, trade secrets, and other confidential information with Defendants is inconsistent with the rest of the Amended Complaint, and is another instance of improperly lumping Defendants together.  *See Medina*, 2004 U.S. Dist. LEXIS 910, at *17-18.  Plaintiff has not plead facts sufficient to establish a direct relationship

between Plaintiff and either Conduent or NJ Transit, and therefore has not plead that Plaintiff conferred a benefit on either Conduent or NJ Transit.  *See e.g.*, *M'Baye*, 2007 U.S. Dist. LEXIS 9101 (dismissing plaintiff's unjust enrichment claims against both defendants because plaintiff could not establish that he conferred a benefit on either defendant because he had no direct dealings with either of them).

Accordingly, this Court should dismiss Count Ten for unjust enrichment under New Jersey law with respect to Conduent and NJ Transit.

## VI.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for failure to state a claim should be granted, and Counts One and Two for patent infringement, Count Eight for unfair competition under New York law, and Count Nine for unjust enrichment under New York law should be dismissed with prejudice with respect to all Defendants, and Count 10 for unjust enrichment under New Jersey law should be dismissed with prejudice with respect to Conduent and NJ Transit.  If the Court should deny Defendants' motion, then Defendant's courteously request thirty (30) days to file a response to all Counts of the Amended Complaint.

Dated: November 10, 2017                          Respectfully submitted,

                                                  /s/Douglas P. LaLone
                                                  Douglas P. Lalone, Esq.
                                                  Michael T. Fluhler, Esq.
                                                  Thomas E. Donohue, Esq.
                                                  Christopher W. Wen, Esq.
                                                  Fishman Stewart PLLC
                                                  39533 Woodward Ave., Suite 140
                                                  Bloomfield Hills, MI 48304
                                                  Tel.: (248) 594-0600
                                                  Fax: (248) 594-0610
                                                  dlalone@fishstewip.com
                                                  mfluhler@fishstewip.com
                                                  tdonohue@fishstewip.com
                                                  cwen@fishstewip.com

/s/David Dehoney                                  /s/David Sochia
David Dehoney                                     David Sochia
McKool Smith                                      McKool Smith
One Bryant Park                                   300 Crescent Court
47th Flr                                          Suite 1500
New York, NY 10036                                Dallas, Texas 75201
Tel: (212) 402-9424                               Tel: (214) 978-4245
Fax: (212) 402-9444                               Fax: (214) 978-9444
ddehoney@mckoolsmith.com                          dsochia@mckoolsmith.com