## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

BYTEMARK, INC.,

    Plaintiff,

    v.

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and
NEW JERSEY TRANSIT CORP.,

    Defendants.

Civil Action No. 1:17-cv-01803-PGG

JURY TRIAL DEMANDED

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS ONE, TWO, EIGHT, NINE, AND TEN OF
PLAINTIFF'S FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .......................................................................1

II.    BACKGROUND ...........................................................................................1

III.   LEGAL STANDARD......................................................................................3

IV.    ARGUMENT ................................................................................................5

    A.  The Asserted Claims of the Patents-in-Suit Are Valid Under 35 U.S.C. § 101 ...............5

        1.  The Patents-in-Suit are presumed valid, and the claims of the '993 Patent underwent rigorous § 101 review by a § 101 expert in light of *Alice*..........................5

        2.  Legal standard for subject-matter eligibility................................................6

        3.  Argument .......................................................................................10

            a.  The claimed inventions of the '967 and '993 Patents are not directed to an abstract idea, and Defendants' grossly oversimplified characterization of the claimed inventions should be rejected ...............................................................10

            b.  The Asserted Claims of the Patents-in-Suit contain an "inventive concept" that amounts to significantly more than a patent on an allegedly ineligible concept........................................................................................14

            c.  Preemption is highly relevant to the § 101 analysis ...........................................16

            d.  Defendants' arguments make clear that claim construction and the opinion of a person of ordinary skill in the art would inform the understanding of the Patents-in-Suit........................................................................................16

    B.  Bytemark Has Sufficiently Stated a Claim for Unfair Competition Under New York Law ......................................................................................18

        1.  Bytemark's unfair competition claim is not preempted by federal patent law .........18

        2.  Bytemark's unfair competition claim against Xerox, ACS, and Xerox Transport is not precluded by Bytemark's breach of contract claim ............................................21

        3.  The Amended Complaint properly alleges bad faith on the part of Conduent and NJ Transit..........................................................................................23

    C.  Bytemark Has Stated a Claim for Unjust Enrichment Under New York Law ...............25

D.  Bytemark Has Stated a Claim for Unjust Enrichment Against All Defendants Under New Jersey Law ............................................................................................................27

V.  CONCLUSION ...............................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) ...........6

*Affinity Labs of Tex., LLC v. DirectTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) ..................................7

*Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ............................................. *passim*

*Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991) ......................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................................4

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013)............................6

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341
(Fed. Cir. 2016).......................................................................................................5, 9, 10, 15

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42
(2d Cir. 2012).........................................................................................................................22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................4, 24, 25, 29

*Bilski v. Kappos*, 561 U.S. 593 (2010).............................................................................................6

*Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016) .............................................26

*Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105 (App. Div. 1966) ........................28, 29

*Carson Optical, Inc., v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317 (E.D.N.Y. 2014) .............19

*Cioffi v. Google*, No. 2:13-CV-00103, 2017 WL 275395, *1 (E.D. Tex. Jan. 9, 2017) ...............8, 17

*Conley v. Gibson,* 355 U.S. 41 (1957) .......................................................................................5, 25

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (2012) ...................................................................27

*CyberFone v. Cellco*, 885 F. Supp. 2d 710 (D. Del. 2012)...............................................................9

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).....................................8, 9

*DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271 (S.D.N.Y. 2014), *aff'd*, 599
F. App'x 956 (Fed. Cir. 2015) ..................................................................................................5

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010).......................................................5

*Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998) ....................................................19

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)...........................................6, 7, 8, 9

*Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052, 2017 WL 4118383, *1 (E.D. Tex. Aug. 29, 2017) ...........................................................................................................................10

*In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319 (S.D.N.Y. 2005) ...........................................28

*In re Rezulin Prod. Liab. Litig.*, 392 F. Supp. 2d 597 (S.D.N.Y. 2005) ...........................................28

*In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) ..............................................7

*Insulation Contracting & Supply v. Kravco*, 209 N.J. Super. 367 (App. Div. 1986) .......................28

*Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291 (S.D.N.Y. 2007) ................................................................................................................................20

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ..............................7

*Iron Gate Sec., Inc. v. Lowe's Cos.*, No. 15-CV-8814, 2016 WL 4146140, *1 (S.D.N.Y. Aug 3, 2016) ..............................................................................................................16

*ITC Ltd. V. Punchgini, Inc.*, 9 N.Y.3d 467 (2007)...........................................................................20

*Gameologist Grp., LLC v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141 (S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. 2013) ...................................................................................21

*Kittay v. Kornstein*, 230 F.3d 531 (2d Cir. 2000) .................................................................4, 25, 29

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274 (S.D.N.Y. 2014).....................................26, 27

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) .............................7, 9

*McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)....................7, 8, 16

*Medina v. Bauer*, No. 02 Civ. 8837, 2004 WL 136636, *1 (S.D.N.Y. Jan. 27, 2004) .....................25

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. CV 14-732-RGA, 2015 WL 1744343, *1 (D. Del. Apr. 15, 2015) .................................................................................................................8

*Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540 (S.D.N.Y. 2017) ...................................4

*Openwave Sys., Inc. v. Apple Inc.,* 808 F.3d 509 (Fed. Cir. 2015) ......................................................9

*Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541 (S.D.N.Y. 2007) ..............21

*Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-CV-1366, 2016 WL 5719701, *1 (E.D. Tex. Sept. 13, 2016) ...............................................................................................14, 16

*RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294, 2015 WL 5008762, *1 (S.D.N.Y. Aug. 24, 2015) ........................................................................................................21

*Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294 (Fed. Cir. 1999)..............................................19

*Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117 (S.D.N.Y. 1996)...................4, 24, 29

*ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13-CV-8645, 2017 WL 4403308, *1 (S.D.N.Y. Oct. 2, 2017) .....................................................................................................................22

*SimpleAir, Inc. v. Google Inc.*, 136 F. Supp. 3d 745 (E.D. Tex. 2015) ..............................................8

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364 (Fed. Cir. 2017) ......................11

*Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244 (E.D.N.Y. 2015) ................................18, 19

*Telecom Int'l Am., Ltd. V. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001)......................................20, 23

*Trading Techs. Int'l, Inc., v. CGQ, Inc.*, No. 2016-1616, 2017 WL 192716, *1 (Fed. Cir. Jan. 18, 2017) ..................................................................................................................................9

*Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190 (S.D.N.Y. 2016) ................. *passim*

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994) ...................................................................28

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015)..........................................27

**Statutes**

35 U.S.C. § 101 ..................................................................................................................................5

35 U.S.C. § 282(a) .............................................................................................................................5

**Rules**

Fed. R. Civ. P. 8(a) .........................................................................................................................3, 4

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1, 4

**Website**

https://www.uspto.gov/patent/laws-and-regulations/examination-policy/subject-matter-eligibility-examination-guidance-date ............................................................................................5

## EXHIBIT LIST

Exhibit A – '993 Patent

Exhibit B – '967 Patent

Exhibit C – '993 Patent Notice of Allowance

Exhibit D – Transcript of conference held on 10/16/17 before Judge Paul G. Gardephe

## I.      PRELIMINARY STATEMENT

Plaintiff Bytemark, Inc. ("Bytemark") respectfully submits this memorandum of law in opposition to Defendants Xerox Corp. ("Xerox"), ACS Transport Solutions, Inc. ("ACS"), Xerox Transport Solutions, Inc. ("Xerox Transport"), Conduent, Inc. ("Conduent"), and New Jersey Transit Corp. ("NJ Transit") (collectively, "Defendants")'s motion to dismiss the First Amended Complaint ("Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff's Amended Complaint fully satisfies Rule 8's notice pleading requirements, and Defendants have failed to establish that Bytemark's allegations are deficient as to any of the challenged claims.  Accordingly, Bytemark requests that the Court deny Defendants' motion in its entirety.

## II.     BACKGROUND

The Amended Complaint sets forth Bytemark's action against Defendants for patent infringement under the Patent Act, trade secret misappropriation under New York state and federal law, trade secret misappropriation under the New Jersey Trade Secret Act, breach of contract, unfair competition, and unjust enrichment under New York and New Jersey state laws. *See* Dkt. No. 40.  For purposes of this motion, at least the following facts must be taken as true.

Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open APIs. Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for consumers and merchants.  Bytemark owns all rights, title, and interest in and to U.S. patent numbers 8,494,967 ("the '967 Patent") and 9,239,993 ("the '993 Patent") (collectively, the "Patents-in-Suit").     It also owns trade secrets and confidential information relating to the

design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems.  Bytemark has secured contracts relating to its V3 Ticketing Technology within the mass transit industry, including a contract with its first and longtime customer New York Waterway, the largest private ferry operator in the United States.

Beginning in Spring 2012, Bytemark entered into a series of Nondisclosure Agreements ("NDAs") and Teaming Agreements (collectively, "the Confidentiality Agreements") with ACS and Xerox Transport for the purpose of potentially developing joint proposals and/or bids related to providing mobile ticketing solutions to prospective clients in the mass transit industry.  ACS and Xerox Transport were subject to Xerox's complete direction and control and, were in form and substance, one and the same as Xerox at the time the Confidentiality Agreements were signed.  While protected by the Confidentiality Agreements, Bytemark disclosed its trade secrets and confidential information to Xerox, ACS, and Xerox Transport (collectively, the "Xerox Entities") on numerous occasions between 2012 and 2015.

After Bytemark disclosed its trade secrets and other confidential information to the Xerox Entities, the Xerox Entities cut Bytemark out of a joint bidding effort and instead used and/or disclosed its patents and trade secrets to bid and secure a contract with NJ Transit on their own.  The Xerox Entities' actions indicate that they never intended to partner with Plaintiff.  Rather, their goal was to exploit Bytemark's efforts and use Bytemark's proprietary technology for their own commercial advantage.  The Xerox Entities offered for sale and sold their infringing visual validation applications and systems, including the MyTix mobile application—the exemplary system incorporating Bytemark's proprietary technology—to NJ Transit.  Upon its formation, Conduent participated and continues to participate in the servicing, maintenance, and continued

implementation of Bytemark's proprietary technology.

NJ Transit developed a cooperative transportation strategy wherein it and New York Waterway would offer integrated bus and ferry services to transportation passengers.  As part of this scheme, NJ Transit, in collaboration with the Xerox Entities and Conduent, offered to provide New York Waterway with Bytemark's proprietary technology.  Defendants are offering for sale and selling their visual validation mobile ticketing applications and systems including the MyTix mobile application that infringe the Patents-in-Suit literally and/or under the doctrine of equivalents.  Defendants are also using and/or disclosing Bytemark's trade secrets and other confidential information to NJ Transit and other third parties and are using Bytemark's intellectual property for their own gain.

In addition to misappropriating Bytemark's trade secrets and other confidential information, Defendants have offered to sell their infringing visual validation applications and systems and implementations that use Bytemark's trade secrets to New York Waterway as part of an integrated transportation contract.  As a result, Bytemark's existing contract with New York Waterway, which was supposed to be renewed in accordance with the terms of the original agreement in early 2017, has not been extended.  Instead, New York Waterway informed Bytemark that it had a better deal with Defendants.  Only after Bytemark initiated this action did New York Waterway agree to temporary short-term extensions to the contract.  On or about January 2015, Bytemark notified the Xerox Entities and NJ Transit of their infringement and misappropriation.  Conduent, upon its formation, had knowledge of the infringement as well. Despite this notice, Defendants have continued to use and offer for sale Bytemark's proprietary technology.

## III.    LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Nguyen v. MaxPoint Interactive, Inc.*, 234 F. Supp. 3d 540, 544 (S.D.N.Y. 2017). As the U.S. Supreme Court has explained, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Id.* at 556. "Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage." *Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000) (citation omitted).

Determining the plausibility of a complaint's allegations is a two-step process that is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Then, "[the] court should assume the[] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* An entitlement to relief "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. Although "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable," plaintiffs must include sufficient "factual enhancement" to cross "the line between possibility and plausibility." *Id.* at 556-57.

On a motion to dismiss under Rule 12(b)(6), "the court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the non-movant." *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 121 (S.D.N.Y. 1996) (citing *Allen v.*

*WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991)).  "The motion should be granted only

when it appears beyond doubt from an examination of the complaint that the plaintiff 'can prove

no set of facts in support of his claim which would entitle him to relief.'"  *Id.* (quoting *Conley v.

Gibson*, 355 U.S. 41, 45-46 (1957)).  When contemplating a motion to dismiss for failure to state

a claim, "a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco

v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

## IV.   ARGUMENT

### A.   The Asserted Claims of the Patents-in-Suit Are Valid Under 35 U.S.C. § 101

#### 1.   The Patents-in-Suit are presumed valid, and the claims of the '993 Patent underwent rigorous § 101 review by a § 101 expert in light of *Alice*

The Patents-in-Suit enjoy a presumption of validity, and Defendant bears the burden of

proving invalidity by clear and convincing evidence.  35 U.S.C. § 282(a); *DietGoal Innovations

LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 277 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956

(Fed. Cir. 2015); *see also BASCOM Glob. Internet Servs., Inv. v. AT&T Mobility LLC*, 827 F.3d

1341, 1347 (Fed. Cir. 2016) (explaining that § 101 is "on equal footing with—any other statutory

provision").  This is especially true in the case of the '993 Patent[1], which was prosecuted after

the *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) decision under the USPTO's

new patent examination rules.  After the Supreme Court issued its *Alice* decision, the USPTO

implemented new patent examination rules to ensure that all patents issued after implementation

of those rules met the new standard for patentable subject matter.[1]   *See*

https://www.uspto.gov/patent/laws-and-regulations/examination-policy/subject-matter-

eligibility-examination-guidance-date.  Since patents granted by the USPTO under these new

---

[1] The Patents-in-Suit share nearly identical specifications.

patent examination rules are scrutinized in light of *Alice*, it would be incongruous and without reason to deny them a presumption of validity.   Indeed, in arguing that the presumption of validity should not apply to § 101 challenges, Defendant only cites cases that reason that "because the PTO *for many years applied an insufficiently rigorous subject matter eligibility standard*" and involve patents prosecuted pre-*Alice* (and before the implementation USPTO *Alice* guidelines).   That logic and factual disposition simply do not apply in this case.   This is the highly unusual case in which the USPTO brought in an expert to assess § 101 issues and confirm that the claims were patent eligible.[2]   Defendants boldly ask this Court to ignore the findings of the USPTO expert on the exact § 101 issues at issue in this case.   Defendants' request that the Patents-in-Suit should not be presumed valid should be rejected.

### 2.  Legal standard for subject-matter eligibility

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."   35 U.S.C. § 101.   The law also recognizes that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013).   Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields.   *See Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010).   The question of subject-matter eligibility must be determined on a "claim-by-claim basis."   *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1347 (Fed. Cir. 2013) (citation omitted).   "[D]escribing the claims at . . . a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."   *Enfish,*

---

[2] The USPTO noted in its May 23, 2016 Notice of Allowance that the claims of the '993 Patent were scrutinized by both the Examiner and a section "101 expert, Jim Trammell."   *See* Notice of Allowance (May 23, 2016) (Ex. C).

*LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).  Further, this Court has instructed courts to "scrutinize reductive descriptions [of inventions] with great care."  *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 226 F. Supp. 3d 190, 192 (S.D.N.Y. 2016).

The Supreme Court set out a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 134 S. Ct. at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012)).  "Whether at step one or step two of the *Alice* test, in determining the patentability of a method, a court must look to the claims as an ordered combination, without ignoring the requirements of the individual steps."  *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  Further, in both step one and step two, courts must consider both the language of the claims and the language of the specification.  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611-15 (Fed. Cir. 2016) (examining patent claims under Alice steps one and two in light of the written description); *Verint*, 226 F. Supp. 3d at 195.

The first step of the *Alice* test involves determining whether the "claims at issue are directed to a patent eligible concept."  *Alice*, 134 S. Ct. at 2355.  To do so, the courts look at the "focus of the claimed advance over the prior art" and decide whether the claim's "character as a whole" is directed to excluded subject matter.  *Affinity Labs of Tex., LLC v. DirectTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015); *Enfish*, 822 F.3d at 1335 ("[T]he first step of the [*Alice*] inquiry is a meaningful one, i.e., . . . a substantial class of claims are *not* directed to a patent-ineligible concept.").  "The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'"  *McRO,* 837 F.3d at 1312.

7

Courts have cautioned against oversimplifying key inventive concepts of the claim or downplaying an invention's benefits by looking at the claim generally and ignoring specific requirements.  *McRO*, 837 F.3d at 1313; *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. CV 14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015) ("If one looks at almost any patent from far enough away, it could arguably claim an abstract idea").  For example, in *SimpleAir, Inc. v. Google Inc.*, the court held that the patents-in-suit were "not directed toward an abstract idea, because they are directed toward patent-eligible methods and systems of using a central broadcast server to package and transmit data from an online information source to remote computing devices." 136 F. Supp. 3d 745, 750 (E.D. Tex. 2015).  There, the Court rejected the defendant's characterization that the patents were directed to the idea of "packaging and transmitting information" because the characterization ignored significant claim limitations. *Id*.  The Court went on to explain that it did not disagree that the "patented inventions, at some level, contain an implementation of the abstract idea of 'packaging and transmitting information'. . . [h]owever, every invention can be reduced to some form of an abstract idea.  *Id*.

The Federal Circuit has made clear that developments in computer-related technology, in which the focus of the claims is on solutions "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014), or on "improvement to computer functionality itself," are not directed to an abstract idea, *Enfish*, 822 F.3d at 1336.  Further, a particularized method of improving an existing computer-related technology may be patent eligible.  *Cioffi v. Google*, No. 2:13-CV-00103, 2017 WL 275395 at *3 (E.D. Tex. Jan. 9, 2017).[3]

---

[3] The Federal Circuit and this Court has explained that it is "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" because "[e]xisting precedent does not establish a definitive rule to determine what constitutes an

A court applies the second step of the *Alice* test only if the Court finds an ineligible concept after considering the claims' character as a whole under step one. *Enfish*, 822 F.3d at 1339; *Verint*, 226 F. Supp. 3d at 199. Step two of the *Alice* test looks for an "inventive concept." *BASCOM Glob. Internet Servs.,* 827 F.3d at 1349. The "inventive concept" may arise in one or more of the individual claim limitations or in the ordered combination of the limitations. *Id.*

Further, a claim directed to an ineligible concept may become patent-eligible when it includes unconventional steps that confine the claims to a particular application of the principle, *Mayo Collaborative Servs.*, 566 U.S. at 84; *see also DDR Holdings*, 773 F.3d at 1257, or where specific technological modifications solve a problem or improve the functioning of a known system, *see Trading Techs. Int'l, Inc., v. CGQ, Inc.*, No. 2016-1616, 2017 WL 192716, at *3 (Fed. Cir. Jan. 18, 2017) (holding that claims directed to methods and systems for electronic trading of stocks, bonds, and futures were valid because and the claims recited functionality that was addressed to and resolved a specifically identified problem in the prior art and had no pre-electronic trading analog); *Enfish*, 822 F.3d at 1337; *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513–14 (Fed. Cir. 2015) (finding that a specification's disparagement of the prior art is relevant to determine the scope of the invention).

A claim likely remains patent-ineligible if it describes only post-solution activity that is purely conventional or obvious. *Mayo*, 566 U.S. at 79; *see also Alice*, 134 S. Ct. at 2358 (noting "wholly generic computer implementation is not generally the sort of additional feature that provides any practical assurance that the process is more than a drafting effort designed to

---

"abstract idea" within the meaning of *Alice.*" *See Enfish,* 822 F.3d at 1335; *Verint*, 226 F. Supp. 3d at 194; *CyberFone v. Cellco*, 885 F. Supp. 2d 710, 716 (D. Del. 2012) ("It is fundamentally improper to paraphrase a claim in overly simplistic generalities in assessing whether the claim falls under the limited 'abstract ideas' exception . . . . Patent eligibility must be evaluated based on what the claims recite.")

monopolize the abstract idea itself"); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 216CV00052JRGRSP, 2017 WL 4118383, at *2 (E.D. Tex. Aug. 29, 2017). In contrast, a claim satisfies the second step of the *Alice* test if it has a non-conventional and non-generic arrangement of known, conventional pieces. *BASCOM Glob. Internet Servs.,* 827 F.3d at 1350. For example, in *BASCOM*, the Federal Circuit addressed a claim for a particular type of internet content filtering, which the Federal Circuit deemed was a generic concept. *Id.* The invention in *BASCOM* combined the benefits of different filtering methods already known in the art to prevent tampering while allowing user customizability. *Id.* The Federal Circuit held that the invention claimed a specific, "technology-based solution" that "overc[ame] preexisting problems with other Internet filtering systems." *Id.* at 1352. Thus, even though the filtering of internet content was a generic abstract idea, this "non-conventional and non-generic arrangement of known, conventional pieces" constituted an inventive concept. *Id.* at 1350.

### 3. Argument

#### a. The claimed inventions of the '967 and '993 Patents are not directed to an abstract idea, and Defendants' grossly oversimplified characterization of the claimed inventions should be rejected

In arguing that the claims of the Patents-in-Suit are not patent eligible, Defendants make the mistake of oversimplifying the claimed inventions[4] and dissecting the language of the claims and divorcing it from the context provided in the specifications.[5] Defendants argue broadly that the patents are directed to "the abstract idea of conditioning and controlling access to data based

---

[4] Defendants similarly oversimplify the problems solved by Bytemark's invention. Bytemark rejects Defendants' characterizations.

[5] Defendants present a series of charts with bolded or underlined claim terms and proceed to argue that the bolded terms "emphasiz[e] the abstract idea" and the underlined terms represent "generic computer elements." This type of analysis has been expressly rejected by this Court, which has cautioned against reductionist simplicity and mandated that claims be considered in their entirety. *See, e.g.*, *Verint*, 226 F. Supp. 3d at 194.

on payment." This argument is akin to the reductionist articulation this Court has cautioned against and fails to do justice to the claims of the Patents-in-Suit. Defendants' analysis is also flawed because Defendants dissect the language of the claims and attempt to lump all claims together based on common words while ignoring the character of each claim *as a whole*. Defendants' conclusory arguments that the Federal Circuit has found "comparable" patents to be directed to abstract ideas is similarly problematic. The fact that previous cases involve patents that disclose a token or are somehow related to the concepts of data and payment has no bearing on whether each claim of the Patents-in-Suit read individually as a whole in the context of the specification of the Patents-in-Suit is "abstract."[6]

*Smart Systems Innovations, LLC v. Chicago Transit Authority*, 873 F.3d 1364 (Fed Cir. 2017) is wholly inapposite to the case at hand. There, the Federal Circuit held that the claims at issue that "involve acquiring identification data from a bankcard, using the data to verify the validity of the bankcard, and denying access to a transit system if the bankcard" were directed to an abstract idea. *Id.* at 1371. The Court explained that "[t]he Asserted Claims are not directed to a new type of bankcard, turnstile, or database, nor do the claims provide a method for processing data that improves existing technological processes." *Id.* at 1372. The Asserted Claims of the Patents-in-Suit do not merely use generic computer functions to deny or grant access to a transit system based on whether a credit card is valid or invalid. Contrary to Defendants' simplistic framing of the claims, the claims of the Patents-in-Suit are directed to improving specific problems rooted in computer technology and arising in the realm of mobile electronic ticketing and are analogous to a new type of processing ticket data information that improves existing technological processes.

_____

The inventions of the Patents-in-Suit provide a human-perceivable visual display that a venue can rely on to verify the ticket, without using a scanning device. As stated in the specification, existing systems distribute information that can constitute a ticket, but the verification problem is difficult. In one example of prior art, an electronic ticket is displayed as a barcode on the recipient's telephone display screen. The telephone is then placed on a scanner that reads the bar-code in order to verify the ticket. The problem with these systems is that the scanning process is fraught with error and the time taken to verify the electronic ticket far exceeds that of the old system: looking at the paper ticket and tearing it in half. Barcode scanners were not designed to read a lit LCD screen displaying a barcode. The reflectivity of the screen can defeat the scanning process. Therefore, there is a need for an electronic ticketing system that provides a human-perceivable visual display that the venue can rely on to verify the ticket. This invention provides for the distribution of an electronic ticket that also contains a visual display that ticket takers can rely on as verification, without using a scanning device, which is described as impractical "given the potential large crowds that often attend open venues."

In addition to the visual validation aspect of the present invention, though, is only one aspect of the claims of the current invention. One embodiment of the present invention described in the specification provides:

> When the time comes to present the ticket, the venue can select what visual indicator will be used as the designated validation visual object. The user can then request the validation visual object. The user's device will have an application that launches a user interface. The user can select "validate" or some other equivalent command to cause the application to fetch and download from the ticketing system a data object referred to herein as a ticket payload, which includes a program to run on the user's device. In another embodiment, the ticket payload can be pushed to the device by the venue. As a result, the application transmitted to the user's device is previously unknown to the user and not resident in the user's device. At that point, the user's device can execute the program

embodied in the ticket payload, which causes the validation visual object to be displayed on the user's device.  The ticket taker knows what the validating visual object is, and simply looks to see that the user's device is displaying the correct visual object.

'993 Patent, Col. 2:50-30:2 (Ex. A).

The claims of the Patents-in-Suit also involve a nonconventional use of technology to improve the way servers and computers communicate with and transfer information with remote devices in the context of implementing a visual validation mobile electronic ticketing system.  In particular, the claims of the Patents-in-Suit improve the security and efficiency of server/computer/remote device communication to solve piracy and fraud problems not previously addressed by the prior art.  As in *Verint*, the specifications of the Patents-in-Suit identify the existing methods used for distributing and verifying electronic tickets and explain how the claimed invention represents an unconventional improvement over those methods and solves technological problems associated with the existing methods.  *See* '967 Patent, Col. 1:24-43, 3:20-23 (Ex. B).  The specification explains that the claimed invention is directed at solving piracy and fraud.  According to the disclosure in the Patents:

Piracy is limited in several ways.  First, the ticket holder and their device do not have access to the validating visual object until a time select to be close to the point in time where the ticket has to be presented.  Second, the validating visual object is one of a very large number of permutations and therefore cannot be guessed, selected or copied ahead of time.  Third, the ticket payload can contain code that destroys the validating visual object in a pre-determined period of time after initial display or upon some pre-determined input event.  Fourth, a number of security protocols can be utilized to ensure that a copy of the application that executes to display the validating visual object cannot be readily copied or reverse engineered.

*See* '967 Patent, Col. 2:66-3:11 (Ex. B).  The particular use of a token in the context of the Patents-in-Suit is one of the security protocols that ensure that the purchased electronic ticket is not copied.  This use of tokens improves the security of user data by acting as a publicly

13

unknown identifier that provides a relationship between sensitive data and the token while allowing for transfer of a token that has no meaningful value while maintaining secure storage of the real, sensitive data.   This innovative and unconventional use of technology and the combination of elements taught by the Patents is a new and useful improvement of existing technology that was not known in the art at the time of the invention.

Accordingly, the Asserted Claims are not abstract ideas under step one of the *Alice* test and are therefore patentable.

> **b. The Asserted Claims of the Patents-in-Suit contain an "inventive concept" that amounts to significantly more than a patent on an allegedly ineligible concept**

Even if the claims of the Patents-in-Suit were directed to an alleged abstract idea (and they are not), as Defendants propose, the elements of the claims transform the claims into patent-eligible application of the idea.   *See Alice*, 134 S. Ct. at 2355; *Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-CV-1366, 2016 WL 5719701, at *6 (E.D. Tex. Sept. 13, 2016). Contrary to Defendants' arguments, the improvements made by the invention are recited in the specification and claims of the Patents-in-Suit and result from the practice of the specific claim elements of the Asserted Claims.   *See, e.g.*, '967 Abstract; '993 Abstract; '967 Patent, Col. 1:28-43; '993 Patent, Col. 1:31-46; '993 claims 12, 13 (Ex. A, Ex. B).   As detailed in the specifications of the Patents-in-Suit and as noted by the Court in the transcript of the parties' October 16, 2017 conference, the Patents-in-Suit improve on the ticket verification process by "providing a human perceptible visual display that the venue can rely on to verify the ticket without using a scanning device."   10/16/17 Transcript, at 15-16 (Ex. D).   The specifications explain that under old ticket verification systems, an "electronic ticket was displayed as a bar code on the recipient's telephone display screen."   These systems were "fraught with error" and because bar-code scanners were "not designed to read a lit LCD screen displaying a bar code,"

the "reflectivity of the screen can defeat the scanning process."

Defendants' argument that the improvements claimed by Bytemark are not recited in the Patents-in-suit is incorrect.  The claims as read in the context of the specification make clear that they are directed to improving efficiency and security using new computer technology.  For example, it is an improvement in efficiency over prior art bar coding and with respect to security, the inventions use the transmission of tokens and associated technology as disclosed and claimed in the Patents-in-Suit to provide greater security in the ticketing process.  *See, e.g.*, '993 Patent, Col. 3:3-15, 1:31-38, 2:16-29 (Ex. A).   All of this is accomplished through innovation in server/computer/remote device technology.

Defendants' argument that there is no inventive concept in "token" or "securing" mischaracterizes the claimed invention.  Defendants again oversimplify the invention and ignore the specification, which describes in detail particular inventive uses of tokens and ways to secure ticket payloads.  The specification teaches that:

> In another embodiment, the ticket payload can be encrypted in such a way that the only decrypting key available is in the secure portion of the telecommunications device.   In that embodiment, the key is only delivered when an application running on the secure part of the device confirms that the ticket payload that is executing has not been tampered with, for example, by checking the checksum of its run-time image.  At that point, the key can be delivered to the ticket payload process so that the validating visual object is displayed on the device.

'993 Patent, Col. 5:37-46 (Ex. A).   Even if Defendants' assertion that there is no inventive concept in a token or securing alone were correct, the non-conventional and non-generic arrangement of known, conventional pieces can constitute an inventive concept.   *See, e.g., BASCOM Glob. Internet Servs.*, 827 F.3d at 1350.   The specifications of the Patents-in-Suit describe an unconventional combination of elements that amount to significantly more than a patent on an allegedly ineligible concept.   *See Personalized Media Commc'ns*, 2016 WL

5719701 at *6 ("the Court finds that the elements of the claim are arranged in a way that [the defendant] has not shown is conventional or generic").

### c. Preemption is highly relevant to the § 101 analysis

Preemption is the underlying concern that drives the § 101 analysis. *Alice*, 134 S. Ct. at 2354. This is because monopolization of "the basic tools of scientific and technological work" would thwart the patent laws' primary object: to promote future innovation. *Id.* Courts have often cited the lack of preemption concerns to support a determination that a claim is patent-eligible under § 101. *See, e.g.*, *McRO* 837 F.3d at 1315-16; *Verint*, 226 F. Supp. 3d at 195. Further, the Supreme Court cautioned that exceptions to patent eligibility must not be applied beyond the limits of the exception's purpose of preventing the preemption of new discoveries otherwise "this exclusionary principle [could] swallow all of patent law." *Alice*, 134 S. Ct. at 2354. Defendants' conclusory arguments that preemption concerns are not applicable to this case because the Asserted Claims "are completely devoid of any specific structure, improved technological result or specific rules of format" is contradicted by the specifications and language of the claims and should be rejected. None of the preemption concerns with § 101 are implicated in this case because conventional, well-understood, and routine methods of validating electronic tickets and conventional methods for data security, such as encryption, remain outside of the boundaries of the Patents-in-Suit.

### d. Defendants' arguments make clear that claim construction and the opinion of a person of ordinary skill in the art would inform the understanding of the Patents-in-Suit

This Court has repeatedly explained that determining a patent claim's subject matter eligibility under § 101 may be informed by the understanding of the subject matter of the patent and the construction of the claims. *See Iron Gate Sec., Inc. v. Lowe's Cos.*, No. 15-CV-8814, 2016 WL 4146140, at *3-5 (S.D.N.Y. Aug 3, 2016); *Verint*, 226 F. Supp. 3d at 192 ("Courts

must therefore be alert to motions seeking factual determinations of what a claimed invention 'is' when unaccompanied by the necessary submissions from those skilled in the art."); *see also Cioffi*, 2017 WL 275395 at *3 ("Whether a claim is unconventional is a highly-factual inquiry.").

In their briefing, Defendants make a litany of conclusory statements regarding the meaning of various claim terms and the scope of the invention.  For example, Defendants argue that the elements of the claims do not define "validation display object," fail to recite "a human perceivable visual display," and characterize claim limitations as involving "generic hardware and technological environments."  *See* Motion to Dismiss ("MTD") at 23, 29-30.  Defendants also argue that the terms "token," "visual validation," and "securing" are "generically claimed." *Id.* at 22.  Further, Defendants attempt to "summarize" the dependent claims of the Patents-in-Suit by paraphrasing claim limitations in their own words and without mention of the specification, which outlines concrete ways of accomplishing the claims.  *Id*. at 33-34.[7] Bytemark rejects Defendants' conclusory constructions of claim terms and characterization of the invention and technological environment, and these issues would be informed by the opinion of one of ordinary skill in the art, not by attorney argument.

To the extent that Defendants attempt to argue that there is some ambiguity in the claims or that the claims fail to provide guidance as to how to practice the invention, these issues go to the knowledge and perspective of one of ordinary skill in the art (and how this person would interpret the claims in the context of the specification), this would require input from experts and claim construction, all of which affirms the inappropriateness of the disposition of these issues at the pleading stage.

---

[7] *See Verint*, 226 F. Supp. 3d at 205 (explaining that claims should be read against the specification).

In sum, when viewed as a whole, in light of the specification at the time of the invention, there are unconventional, non-routine, novel, and inventive claim limitations that are sufficient to ensure that the Asserted Claims amount to significantly more than merely a patent on an abstract idea or patent ineligible concept, and/or at a minimum for purposes of pleading, Bytemark has sufficiently pled an inventive concept to survive a motion to dismiss.

## B.  Bytemark Has Sufficiently Stated a Claim for Unfair Competition Under New York Law

Defendants argue that Bytemark has failed to state a claim for unfair competition under New York law because: (1) the unfair competition claim is preempted by federal patent law, (2) the unfair competition claim against Xerox, ACS, and Xerox Transport is precluded by Bytemark's breach of contract claim, and (3) the Amended Complaint fails to allege bad faith on the part of Conduent and NJ Transit.  All of these arguments are without merit.

### 1.  Bytemark's unfair competition claim is not preempted by federal patent law

Defendants contend that "this Court should dismiss Count Eight with respect to all Defendants," because "to the extent that Plaintiff's unfair competition claim is based on the same fact and circumstances as the patent infringement claims, it is preempted by the patent infringement claims."  MTD, at 35-36.  This argument should be rejected.

As Defendants point out in their brief, courts dismiss unfair competition claims as preempted by federal patent law where the claims are "purely based on allegations of patent infringement or copying of an unpatented product."  *Id.* at 35 (quoting *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 262 (E.D.N.Y. 2015)).  For example, in the cases cited by Defendants, the court dismissed unfair competition claims where (1) the plaintiffs "allege[d] a claim for unfair competition based only on the . . . [d]efendants' [patent] infringement" or "on aspects of the patent that [we]re unprotected by federal patent law" and "ma[d]e no allegations of

unfair competition that [we]re separate and independent from [their] patent law claim of infringement," *see Sorias*, 124 F. Supp. 3d at 262 (internal quotation marks and citation omitted), and (2) the plaintiffs' factual allegations were "bare assertions," "fail[ed] to identify specifically the alleged wrongful conduct undertaken by defendants apart from patent infringement," and merely "amplify[ied] the scope of plaintiffs' infringement claims by asserting a knowing and willful patent infringement," *see Carson Optical, Inc., v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 330-31 (E.D.N.Y. 2014).   However, as the Federal Circuit has explained, federal patent law "*will not* preempt [state law] claims if they include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law."   *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999) (citing *Dow Chem. Co. v. Exxon Corp.,* 139 F.3d 1470, 1473 (Fed. Cir. 1998)) (emphasis added).

Here, unlike the cases cited by Defendants, Bytemark's unfair competition claim is not "purely based on allegations of patent infringement or copying of an unpatented product," *see Sorias*, 124 F. Supp. 3d at 262, and "include[s] additional elements not found in the federal patent law cause of action," *see Rodime PLC*, 174 F.3d at 1306.   The Amended Complaint plainly states that "Defendants misappropriated Plaintiff's labors and expenditures,"[8] and

---

[8] Specifically, Bytemark alleges, *inter alia*, that it "has invested and continues to invest millions of dollars into research and development and implementation of its trade-secret protected systems," Dkt. No. 40, ¶ 28, that after Bytemark "disclosed its trade secrets and other confidential information to the Xerox Entities, the Xerox Entities cut [Bytemark] out of a joint bidding effort and instead used and/or disclosed [Bytemark's] patents and trade secrets to bid and secure a contract with NJ Transit on their own," *id.* ¶ 33, that "[t]he Xerox Entities offered for sale and sold their infringing visual validation applications and systems, including the exemplary product/system the MyTix mobile application incorporating Bytemark's proprietary technology, to NJ Transit," *id.* ¶ 35, that Conduent participated and continues to participate in the servicing, maintenance, and continued implementation of Bytemark's proprietary technology, *id.* ¶ 35, that NJ Transit developed a cooperative transportation strategy wherein it Transit and New York

"[u]nder the guise of forming a partnership with Plaintiff, Defendants led Plaintiff to disclose its valuable intellectual property, trade secrets, other confidential information" and then "improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts." Dkt. No. 40, ¶¶ 135-36; *see Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001) ("The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship.").

Furthermore, the Amended Complaint states that "Defendants' practicing of the claims of the Patents-in-Suit and their unlawful use of Plaintiff's trade secrets in Defendants' applications that also have substantially the same look and feel is likely to cause confusion among consumers as to the origin of the technology." Dkt. No. 40, ¶ 135. This Court has stated that "[a]n unfair competition claim may also be predicated on a theory of 'passing off,' the essence of which is false representation of origin." *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) (citation omitted); *see also ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007) (explaining that New York law has "long recognized two theories of common-law unfair competition: palming [or passing] off and misappropriation") (citation omitted). "The gravamen of an unfair competition claim for 'palming [or passing] off' is that the labors and expenditures of the plaintiffs have been misappropriated by the defendants, and are likely to cause confusion among the purchasing public as to the origin of the product." *Gameologist Grp., LLC v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141, 166

---

Waterway would offer integrated bus and ferry services to transportation passengers and, as part of this scheme, NJ Transit, in collaboration with the Xerox Entities and Conduent, offered to provide New York Waterway with Bytemark's proprietary technology, *id.* ¶ 36, and that Defendants have continued to use and offer for sale Bytemark's proprietary technology, *id.* ¶ 46.

(S.D.N.Y. 2011), *aff'd*, 508 F. App'x 31 (2d Cir. 2013) (citation omitted).  This second theory of unfair competition, also alleged by Bytemark, provides an additional ground for its unfair competition claim.

For these reasons, it is evident that Bytemark's unfair competition claim is not preempted by federal patent law and that Bytemark has properly stated a claim as to Count Eight with respect to all Defendants.

## 2. Bytemark's unfair competition claim against Xerox, ACS, and Xerox Transport is not precluded by Bytemark's breach of contract claim

Defendants also argue that "the basis for Plaintiff's unfair competition claim, at least with respect to the Xerox Entities, is the alleged breach of the Confidentiality Agreements, which precludes the unfair competition claim," and that the Court should therefore dismiss Count Eight with respect to Xerox, ACS, and Xerox Transport.  MTD, at 37.  This statement is inaccurate, and Defendants' argument is without merit.

"It is well-settled . . . that no [unfair competition] claim lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract . . . ."  *Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  Thus, this Court has dismissed claims for unfair competition where the plaintiff, in alleging unfair competition, "simply reasserts the allegations . . . for breach of contract."  *See id.*; *see also RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp.*, No. 14CV6294, 2015 WL 5008762, at *6 (S.D.N.Y. Aug. 24, 2015) (dismissing unfair competition claim where counterclaim plaintiff alleged it was wronged when counterclaim defendant licensed its exclusive rights to third parties, and the only basis for counterclaim plaintiff's claim of wrongdoing was the contractual relationship granting it the right to

use defendant's trademarks).  The basis for this rule is that "[w]here a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists," *ScentSational Techs., LLC v. PepsiCo, Inc.*, No. 13-CV-8645, 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017), and that where "the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative," *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012).

Here, unlike the cases cited by Defendants, Bytemark is not simply restating or reasserting its allegations for breach of contract, nor is it seeking to obtain the benefit of the contractual bargain through a tort action.  Rather, Bytemark's unfair competition claim is based on wrongful acts that extend well beyond Bytemark's breach of contract claim.[9]  As discussed above, Bytemark's unfair competition claim is premised broadly on Defendants' unjust misappropriation of Bytemark's labors and expenditures and Defendants' "passing off" of Bytemark's proprietary technology such that confusion among consumers as to the origin of the product is likely.  *See* Section IV.B.1., *supra*.  Bytemark alleges, for example, that Defendants

---

[9] Under the Nondisclosure Agreements (NDAs), Bytemark and the Xerox Entities agreed that any trade secrets or other confidential information would remain the property of the originating party and that the Xerox Entities had a duty to exercise all reasonable care to preserve and protect Bytemark's trade secrets and other confidential information from unauthorized access, use, disclosure, or theft; to restrict access to only those who agreed to be bound by the terms and conditions of the Confidentiality Agreements; to not reproduce Bytemark's proprietary information in any form except as necessary to accomplish the NDA's intent; and to inform Bytemark if the Xerox Entities became aware of any unauthorized access, use, disclosure, or theft of the proprietary information.  Dkt. No. 40, ¶ 76.  Under the Teaming Agreements, the parties agreed that the inventions shall remain the property of the originating party and that disclosure and protection of proprietary information under the agreements shall be subject to the terms and conditions of the referenced NDAs.  *Id.* ¶ 76.  These provisions do not create legal obligations regarding Defendants' misappropriation of Bytemark's labors and expenditures or Defendants' "passing off" of Bytemark's proprietary technology.

have copied and unlawfully used the look and feel of its applications, Dkt. No. 40, ¶ 135, that Defendants, under the guise of forming a partnership with Bytemark, led Bytemark to disclose its valuable intellectual property, trade secrets, and other confidential information and then used this information for Defendants' own commercial advantage, *id.* ¶ 136, that Defendants cut Bytemark out of joint bidding efforts and improperly used and disclosed its patents and trade secrets to bid on and secure their own contracts, *id.*, and that, in so doing, Defendants exploited the exclusive commercial advantage Bytemark had previously held in the mobile ticketing application market, *id.*,—all wrongful acts beyond the scope of the contractual obligations asserted in the Confidentiality Agreements.

"The general principle [of unfair competition] is that commercial unfairness will be restrained when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit or property right belonging to another," and New York's unfair competition law "is a broad and flexible doctrine encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown." *Telecom Int'l Am.*, 280 F.3d at 197 (internal quotation marks and citation omitted). By Defendants' reasoning, in any case involving allegations of intellectual property infringement, misappropriation of trade secrets, etc. where the parties had previously signed an agreement prohibiting the disclosure, copying, or theft of confidential information, the plaintiff would be foreclosed from also bringing an unfair competition claim. Here, Bytemark's allegations plainly exemplify the notion of commercial unfairness and immorality contemplated by the Second Circuit and this Court and, therefore, state a cognizable claim for unfair competition under New York law.

   **3. The Amended Complaint properly alleges bad faith on the part of Conduent and NJ Transit**

Defendants further contend that "the Amended Complaint has not alleged bad faith with respect to at least Conduent and NJ Transit such that either Defendant would have fair notice of the grounds upon which the unfair competition claim is based."  MTD, at 39.  This argument also lacks merit.

As Defendants note, the Amended Complaint pleads that "[u]nder the guise of forming a partnership with Plaintiff, Defendants led Plaintiff to disclose its valuable intellectual property, trade secrets, and other confidential information" and then "cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts."  Dkt. No. 40, ¶ 136.  This language sufficiently alleges bad faith on the part of all Defendants, including Conduent and NJ Transit.  Defendants maintain, however, that because Bytemark did not plead earlier in the Amended Complaint that Conduent and NJ Transit entered into Confidentiality Agreements with Bytemark, that "only the Xerox Entities had any kind of relationship with Plaintiff, by way of the Confidentiality Agreements, from which the alleged bad faith conduct, *i.e.*, a 'guise of forming a partnership,' could arise."  MTD, at 38-39.

Defendants' argument is flawed.  As the Amended Complaint makes clear, Bytemark's position is that it believed it had formed partnerships with *all* Defendants.  Some of these partnerships were based in the Confidentiality Agreements, and others, including those formed with Conduent and NJ Transit, were not.  At this preliminary stage of the pleadings, the Amended Complaint's factual allegations—including that "[u]nder the guise of forming a partnership with Plaintiff, Defendants led Plaintiff to disclose its valuable intellectual property, trade secrets, and other confidential information"—sufficiently plead Defendants' bad faith.  *See Twombly*, 550 U.S. at 556 (Rule 8(a) "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.); *Rolls-Royce Motor*

24

*Cars, Inc.*, 929 F. Supp. at 121 ("[A] motion [to dismiss] should be granted only when it appears beyond doubt from an examination of the complaint that the plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Conley*, 355 U.S. at 45-46)). Bytemark is *not* required in its complaint to provide the precise details as to how and when each partnership with each Defendant was formed in order to plausibly claim that it believed such partnerships existed. *See Twombly*, 550 U.S. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Kittay*, 230 F.3d at 542 ("Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage.").

Moreover, Defendants' assertion that Conduent and NJ lack notice as to "the grounds upon which the unfair competition claim is based," *see* MTD, at 39, is disingenuous.  In contrast to the cases cited in their motion to dismiss, this is not a situation where Defendants lack "notice of what the [P]laintiff's claim is and the grounds upon which it rests" or lack notice "as to what [Defendants] did wrong." *See Medina v. Bauer*, No. 02 Civ. 8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004).  The Amended Complaint's allegations regarding bad faith on the part of all Defendants fully complies with Rule 8's notice pleading requirements, and Defendants' argument should be rejected.[10]

---

[10]  Defendants' repeated assertion that Bytemark's pleading is purportedly filled with inconsistencies is entirely self-constructed.  For example, with respect to Defendants' comment in Footnote 2 of their motion, Bytemark is obviously not alleging that NJ Transit disclosed confidential information to itself.  MTD, at 3 n.2.  Rather, as the Amended Complaint states, "Defendants materially breached and/or acted in violation of the Confidentiality Agreements by using and/or disclosing Bytemark's trade secrets and other confidential information to NJ Transit **and other third parties**."  Dkt. No. 40, ¶ 39 (emphasis added).  "Third parties" includes, for example, New York Waterway, and Bytemark alleges, *inter alia*, that "NJ Transit, in collaboration with the Xerox Entities and Conduent, offered to provide New York Waterway with Bytemark's proprietary technology." *Id.* ¶¶ 121, 130.  Defendants cannot credibly argue

### C.  Bytemark Has Stated a Claim for Unjust Enrichment Under New York Law

Defendants argue that the Court should dismiss Count Nine of Bytemark's Amended Complaint against all Defendants because Plaintiff's unjust enrichment claim "is based on the same allegations" as its patent infringement, misappropriation of trade secrets, and breach of contract claims, "[t]he Amended Complaint does not allege any facts independent of these allegations," and, "[t]herefore, Plaintiff's unjust enrichment claim is merely duplicative of the adequate remedies at law sought in Counts One through Six."  MTD, at 40-41.  This argument lacks merit.

Bytemark's Amended Complaint alleges, *inter alia*, that "[a]s a result of Defendants' unlawful conduct including but not limited to their infringement of Plaintiff's Patents-in-Suit and misappropriation of Plaintiff's trade secrets, Defendants have diverted substantial revenues from Plaintiff," Dkt. No. 40, ¶ 141, that "Defendants have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform," *id.* ¶ 142, that "Defendants have [thus] benefitted by saving the significant time and cost that they would otherwise have had to incur to develop their own mobile ticketing platform," *id.* ¶ 143, and that "[a]s a direct and proximate consequence of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense," *id.* ¶ 144.

As is apparent from a comparison of Bytemark's unjust enrichment claim and the other claims pleaded in the Amended Complaint, these allegations do not "simply duplicate[] or replace[]" Bytemark's patent infringement, misappropriation of trade secrets, or breach of contract claims.  *See Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016);

---

that the Amended Complaint does not give them notice "as to what they did wrong."  *See Medina*, 2004 WL 136636 at *6.

*Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 291 (S.D.N.Y. 2014).  Rather, the scope of Bytemark's unjust enrichment claim—along with the factual allegations upon which it is based—differs from each of these other claims.  Aside from its general assertion that "Plaintiff's unjust enrichment claim is based on the same allegations brought forth in Counts One [through Six]," Defendants provide no example of another claim in the Amended Complaint where Plaintiff's unjust enrichment claim is duplicated.  Defendants similarly assert that "[t]he Amended Complaint does not allege any facts independent of the[] allegations [in Counts One through Six]."  However, that Bytemark's factual allegations may overlap *in part* with other claims asserted in the Amended Complaint does not make the unjust enrichment claim duplicative of any other claim.[11]  *Cf. Koenig*, 995 F. Supp. 2d at 290-91 (dismissing plaintiffs' unjust enrichment claim as duplicative of their violation of General Business Law § 349 and breach of warranty claims where plaintiffs claimed only that they purchased a product because of defendants' purported misrepresentations, and defendants allegedly retained the revenue generated from these purchases).

Bytemark has stated a cognizable claim for unjust enrichment under New York and should not be precluded from recovering under this equitable principle.  Bytemark's unjust enrichment claim is not duplicative of any of its other claims, and the circumstances of this case create an equitable obligation running from Defendants to Bytemark.  *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).  Accordingly, Defendants' request for dismissal of this claim should be denied.

---

[11] In other words, the elements of all the other asserted claims could be found not to be present, yet Defendants could still have been unjustly enriched and Bytemark would be entitled to a remedy.

**D. Bytemark Has Stated a Claim for Unjust Enrichment Against All Defendants Under New Jersey Law**

Finally, Defendants argue that the Court should dismiss Count Ten for unjust enrichment under New Jersey law with respect to Conduent and NJ Transit, because "Plaintiff has not plead facts sufficient to establish a direct relationship between Plaintiff and either Conduent or NJ Transit, and therefore has not plead that Plaintiff conferred a benefit on either Conduent or NJ Transit." MTD, at 42-43. This argument lacks merit and should be rejected.

To establish unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that the retention of that benefit without payment would be unjust." *In re Rezulin Prod. Liab. Litig.*, 390 F. Supp. 2d 319, 342 (S.D.N.Y. 2005) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). "[T]he plaintiff must show 'that it expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant.'" *Id.* (quoting *VRG Corp.*, 135 N.J. at 554). Further, "[u]nder New Jersey law, absent a mistake by the person conferring the benefit, unjust enrichment claims require 'some direct relationship between the parties.'" *In re Rezulin Prod. Liab. Litig.*, 392 F. Supp. 2d 597, 620 (S.D.N.Y. 2005) (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div. 1966)).

Here, the Amended Complaint pleads facts sufficient to establish a direct relationship between Bytemark and Conduent and Bytemark and NJ Transit. Specifically, the Complaint alleges that "Plaintiff shared its valuable intellectual property, trade secrets, and other confidential information with Defendants with the expectation of remuneration in the form of future joint ventures and business contracts." Dkt. No. 40, ¶ 149. This allegation that Bytemark shared its intellectual property, trade secrets, and other confidential information with Conduent and NJ Transit (which are both included in the group, "Defendants") with the expectation of

28

remuneration establishes that a direct relationship existed between the parties and is sufficient to state a claim for unjust enrichment under New Jersey law.[12]  *Cf. Insulation Contracting & Supply v. Kravco*, 209 N.J. Super. 367, 379 (App. Div. 1986) (holding that subcontractor could not recover against property owner on a theory of unjust enrichment because the subcontractor contracted with and expected remuneration from the general contractor only, not from the property owner); *Callano*, 91 N.J. Super. at 109 (dismissing plaintiffs' unjust enrichment claim because plaintiffs had "no dealings with defendant, and did not expect remuneration" when they provided it with services).

Defendants again rely incorrectly on the fact that Conduent and NJ Transit were not parties to the Confidentiality Agreements, as if this were the only way in which Conduent and NJ Transit could have a direct relationship with Bytemark.  *See* MTD, at 42.  Defendants further rely on the erroneous assumption that because the Amended Complaint states that "[t]he Xerox Entities offered for sale and sold their infringing visual validation applications and systems . . . to NJ Transit," Dkt. No. 40, ¶ 35, "Defendants . . . disclos[ed] Bytemark's trade secrets and other confidential information to NJ Transit," *id.* ¶ 39, and "[u]pon its formation, Conduent participated and continues to participate in the servicing, maintenance, and continued implementation of Bytemark's proprietary technology," *id.* ¶ 35, that Bytemark had no direct relationship with either Conduent or NJ Transit.  As discussed in Section IV.B.3., *supra*, it is sufficient that Bytemark alleges in its Amended Complaint that it shared its intellectual property, trade secrets, and other confidential information with Conduent and NJ Transit.  Bytemark is *not* required to provide the precise details regarding its sharing of intellectual property, trade secrets,

---

[12] Given the language in Paragraph 149 of the Amended Complaint, Defendants' assertion that "the Amended Complaint further plead that NJ Transit and Conduent received Plaintiff's proprietary technology, trade secrets, and confidential information only from their relationships with the Xerox Entities," *see* MTD, at 42, is demonstrably untrue.

and other confidential information with Conduent and NJ Transit in order to plausibly claim the existence of a direct relationship, *see Twombly*, 550 U.S. at 570; *Kittay*, 230 F.3d at 542.

Bytemark's allegations are entirely adequate to state a claim for unjust enrichment at this stage of the litigation. *See Towmbly*, 550 U.S. at 556; *Rolls-Royce Motor Cars, Inc.*, 929 F. Supp. at 121. Accordingly, the Court should deny Defendants' request to dismiss Claim Ten with respect to Conduent and NJ Transit.

## V.   CONCLUSION

For the foregoing reasons, Bytemark respectfully requests that the Court deny Defendants' motion to dismiss in its entirety. If the Court should grant Defendants' motion, in full or in part, Bytemark respectfully requests that the Court dismiss the claims without prejudice and allow Bytemark to amend its complaint.


Dated: December 1, 2017                Respectfully submitted,

                                       /s/ Dariush Keyhani
                                       Dariush Keyhani (DK-9673)
                                       Meredith & Keyhani, PLLC
                                       125 Park Avenue, 25th Floor
                                       New York, New York 10017
                                       Tel. (212) 760-0098
                                       Fax (212) 202-3819
                                       dkeyhani@meredithkeyhani.com
                                       *Attorneys for Plaintiff*