```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BYTEMARK, INC.,

            Plaintiff,

         v.                                17 Cv. 1803 (PGG)


XEROX CORP., et al.,

            Defendants.
------------------------------x
                                        October 16, 2017
                                        5:00 p.m.
Before:

                HON. PAUL G. GARDEPHE,

                                        District Judge

                    APPEARANCES

MEREDITH & KEYHANI, P.L.L.C.
     Attorneys for Plaintiff
BY:  DARIUSH KEYHANI

FISHMAN STEWART PLLC
     Attorneys for Defendants
BY:  DOUGLAS P. LALONE
     CHRISTOPHER W. WEN
         -and-
McKOOL SMITH
BY:  DAVID R. DEHONEY
```

*also Elec. Power Grp.*, 830 F.3d at 1354 (noting that abstract ideas include the "creating and manipulation of legal obligations such as contracts involved in fundamental economic practices").  Thus, it appears to me, based on what I have read so far, that the patents might be directed at a patent-ineligible concept.

Under the *Alice* analysis, however, even if the '993 and '997 patents are directed at a patent-ineligible concept, the inventions could still be deemed patent-eligible applications if they contain an "inventive concept."

Defendants argue that the '993 and '997 patents merely implement an abstract idea "with generic computer technology that adds nothing inventive, thus failing to transform the abstract idea into patent-eligible subject matter."  Citing the defendants' letter, Docket No. 41, at page 3.  Bytemark argues, however, that the patents "add an inventive concept that amounts to significantly more than an abstract idea."  Citing the plaintiff's letter, Docket No. 43, at page 3.  According to Bytemark, the patents involve a "unique technology improvement in the way servers and computers communicate with and transfer information with remote devices in the context of implementing a visual validation mobile electronic ticketing system." *Id.* The patents "improve the security of user data through the unique use of tokens, which act as publicly unknown identifiers that provide a relationship between sensitive data and the

1   token" while maintaining "secure storage of the real, sensitive
2   data."  *Id.*
3           "Use of a computer to obtain data, adjust account
4   balances, and issue automated instructions" are all
5   "well-understood, routine, conventional" computer functions
6   previously known to the industry.  Citing *Smartflash*, 680
7   F.App'x at 983.  Accordingly, "merely storing, transmitting,
8   retrieving, and writing data to implement an abstract idea ON a
9   computer does not transform the nature of the claim into a
10  patent-eligible application."  *Id.*  Similarly, "reading,
11  receiving, and responding to payment validation data and, based
12  upon the amount of payment and access rules, allowing access to
13  multimedia content" is also insufficient.  *Id.* at 984.
14  "Off-the-shelf, conventional computer, network and display
15  technology for gathering, sending and presenting the desired
16  information fails to pass the test of an inventive concept in
17  the application of an abstract idea."  Quoting *Elec. Power*
18  *Grp.*, 830 F.3d at 1355.
19          Here, the '993 and '997 patents state that under old
20  ticket verification systems, an "electronic ticket was
21  displayed as a bar code on the recipient's telephone display
22  screen."  Citing the amended complaint, Docket No. 40, Exhibit
23  A at page 19, Exhibit B at page 20.  According to Bytemark, the
24  systems were "fraught with error," and because bar-code
25  scanners were "not designed to read a lit LCD screen displaying

1  a bar code," the "reflectivity of the screen can defeat the
2  scanning process."  *Id.*  Bytemark's patents allegedly improve
3  on the ticket verification process by "providing a human
4  perceptible visual display that the venue can rely on to verify
5  the ticket without using a scanning device."  *Id.*
6          This allegedly novel display system might constitute a
7  sufficiently inventive concept to transform the patents into
8  patent-eligible applications.  The patents suggest an "arguably
9  inventive device or technique for displaying information" in
10 response to "a problem specifically arising in" the mobile
11 technology field.  Citing *Elec. Power Grp., LLC*, 830 F.3d at
12 1355; *see also DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245,
13 at 1257 (Fed. Cir. 2014).
14         For purposes of pleading, it appears to me that
15 plaintiff has likely pled a sufficiently inventive concept to
16 survive a motion to dismiss.
17         As to Counts Four through Six of the amended
18 complaint, defendants contend that Bytemark has not pled a
19 claim, because the amended complaint does not specify what
20 categories of trade secrets were allegedly misappropriated.
21 Defendants also argue that patented technology cannot be a
22 trade secret because, "by its very nature of being patented,"
23 it is in the public domain.  Citing the defendants' letter,
24 Docket No. 41, at pages 3-4.
25         Bytemark responds by pointing out that the amended