UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BYTEMARK, INC.,

                    Plaintiff,

           -against-

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and NEW JERSEY
TRANSIT CORP.

                    Defendants.

| USDC SDNY |
|---|
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED:  9/24/18 |

**ORDER**

17 Civ. 1803 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Bytemark, Inc. brings this action against Defendants Xerox Corp., ACS

Transport Solutions, Inc. ("ACS Transport"), Xerox Transport Solutions, Inc. ("Xerox

Transport") (collectively the "Xerox Entities"), Conduent Inc., and New Jersey Transit Corp.

("NJ Transit") (collectively "Defendants"), asserting claims for patent infringement, breach of

contract, trade secrets misappropriation, tortious interference with business relations, unfair

competition, and unjust enrichment. (See First Am. Cmplt. ("FAC") (Dkt. No. 40) ¶¶ 1, 3)

Plaintiff alleges that it entered into a series of confidentiality agreements with ACS Transport

and Xerox Transport for the purpose of developing joint bids to provide mobile ticketing

solutions to prospective clients in the mass transit industry. (Id. ¶ 29) After Plaintiff disclosed

its trade secrets, the Xerox Entities allegedly cut Plaintiff out of the bidding process and used

Plaintiff's intellectual property and trade secrets to secure a contract with NJ Transit. (Id. ¶¶ 33,

39) Conduent has allegedly assisted the Xerox Entities in utilizing Plaintiff's proprietary

technology, and worked together with the Xerox Entities and NJ Transit to sell Plaintiff's

proprietary technology to prospective customers. (See id. ¶¶ 35-36) Plaintiff seeks damages

related to Defendants' alleged misuse of Plaintiff's patent-protected property and trade secrets.
(Id. at 32-34)[1]

In a July 18, 2018 letter, Plaintiff states that there is a pending inter partes review
of U.S. Patent No. 8,494,967 – one of the patents at issue in this litigation – and that a hearing
will be conducted before the Patent Trial and Appeal Board on August 22, 2018. (July 18, 2018
Pltf. Ltr. (Dkt. No. 66-1) at 1 n. 1)  On August 27, 2018, this Court directed the parties to provide
the Court with an update regarding the status of the inter partes review and to address whether
the action should be stayed pending resolution of the inter partes review.  (Order (Dkt. No. 68))
Defendants subsequently moved to stay the action pending resolution of the inter partes review.
(See Aug. 31, 2018 Def. Ltr. (Dkt. No. 69))  Plaintiff opposes the stay motion.  (Aug. 31, 2018
Pltf. Ltr. (Dkt. No. 70))

For the reasons stated below, this Court will stay Plaintiff's patent claims pending
resolution of the inter partes review.

## BACKGROUND

## I.     FACTS

Plaintiff owns two patents related to its visual validation mobile ticketing
applications – Patent No. 8,494,967 (the "'967 patent"), and Patent No. 9,239,993 (the "'993
patent").  (Id. ¶¶ 21-22, Ex. A ('967 Patent) (Dkt. No. 40-2), Ex. B ('993 Patent) (Dkt. No. 40-
3))  The '967 Patent was issued on July 23, 2013, while the '993 Patent was issued on January
19, 2016.  (See id., Ex. A ('967 Patent) (Dkt. No. 40-2) at 1, Ex. B ('993 Patent) (Dkt. No. 40-3)
at 1)

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

Both patents are entitled, "Method and System for Distributing Electronic Tickets with Visual Display." (See id.) According to the patent abstracts, each invention "discloses a novel system and method for distributing electronic ticketing such that the ticket is verified at the entrance to venues by means of an animation or other human perceptible verifying visual object that is selected by the venue for the specific event." (Id.) The patent abstracts further explain that this ticketing technology improves the ticket and payment experience for consumers and merchants, by removing the need for a bar-code scanner on an LCD display, "speed[ing] up" the ticket verification process, "maintain[ing] a persistent communication channel with the user device in order to control the ticket verification process," and allowing for ticket verification "in the absence of a network connection." (Id.) Although the claims differ slightly, the specifications in both patents are identical. (See id., Ex. A ('967 Patent) (Dkt. No. 40-2) at 3-27, Ex. B ('993 Patent) (Dkt. No. 40-3) at 4-27) Moreover, the '993 Patent "claims priority to U.S. patent application Ser. No. 13/475,881 [(the '967 Patent)] . . . as a continuation and . . . incorporates that application by reference in its entirety." (See id., Ex. A ('967 Patent) (Dkt. No. 40-2) at 1, Ex. B ('993 Patent) (Dkt. No. 40-3) at 20)

Plaintiff also owns trade secrets related to the design of applications, technical support systems, and back-end management technical support and service of its mobile ticketing applications. (FAC (Dkt. No. 40) ¶¶ 86, 101, 115) These trade secrets include "proprietary mobile development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated feature, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm." (Id.)

3

In the spring of 2012, Plaintiff entered into a series of Nondisclosure Agreements ("NDAs") and Teaming Agreements (collectively, "the Confidentiality Agreements") with ACS Transport and Xerox Transport for the purpose of developing joint proposals and bids to provide mobile ticketing solutions to clients in the mass transit industry. (Id. ¶ 29) ACS Transport and Xerox Transport are allegedly "subject to [Xerox Corp.'s] complete direction and control" and are, "in form and substance," the same as Xerox Corp. (Id.) Pursuant to the Confidentiality Agreements, ACS Transport, Xerox Transport, and Plaintiff agreed that any trade secrets or confidential information disclosed would remain the property of the originating party. (Id. ¶¶ 76-77) The Xerox Entities also agreed to exercise all reasonable care to preserve and protect Plaintiff's trade secrets and confidential information from unauthorized use or disclosure, and are obligated not to use Bytemark's proprietary information except for the authorized purpose specified under the agreements. (Id.)

Pursuant to the Confidentiality Agreements, Plaintiff disclosed its trade secrets and confidential information to the Xerox Entities on numerous occasions between 2012 and 2015. (Id. ¶¶ 31, 80) During this period, Plaintiff continued to refine and develop its mobile ticketing technology and systems, as well as the management and support services for its technology. (Id. ¶ 32) Plaintiff disclosed these improvements to the Xerox Entities. (Id.)

After Plaintiff disclosed its proprietary information to the Xerox Entities, the Xerox Entities cut Plaintiff out of a joint bidding effort. (Id. ¶ 33) The Xerox Entities then "used and/or disclosed" Plaintiff's patents, trade secrets, and confidential information to bid for, and secure, a contract with NJ Transit without Plaintiff. (Id. ¶¶ 33, 82) The Xerox Entities incorporated Plaintiff's proprietary information into their visual validation applications – such as

4

their MyTix mobile application – and then sold this infringing mobile technology to NJ Transit. (Id. ¶ 35)

Since its formation in 2017, Conduent has participated in the servicing, maintenance, and continued implementation of Plaintiff's proprietary information. (Id. ¶¶ 14, 35) Plaintiff alleges that Conduent also "had knowledge" of the infringement of Plaintiff's proprietary technology. (Id. ¶¶ 43, 52, 66)

At some point after the Xerox Entities sold their infringing mobile technology application to NJ Transit, NJ Transit – "in collaboration with the Xerox Entities and Conduent" – offered to provide the infringing visual validation software to New York Waterway as part of an integrated transportation contract, under which NJ Transit and New York Waterway would offer integrated bus and ferry services to transportation passengers. (Id. ¶¶ 36, 41-42) At all relevant times, NJ Transit knew that Plaintiff's mobile ticketing software was "proprietary, trade-secret, and patent-protected property." (Id. ¶ 37)

As a result of Defendants' actions, New York Waterway declined to extend its existing contract with Plaintiff. (Id. ¶ 42) New York Waterway explained that it had received a better offer from Defendants. (Id.) After Plaintiff initiated this action, New York Waterway agreed to a temporary short-term extension of its contract with Plaintiff. (Id.)

## II. PROCEDURAL HISTORY

The Complaint was filed on March 10, 2017. (See Cmplt. (Dkt. No. 1))

On January 26, 2018, Defendants notified this Court that a third party – Masabi Ltd. – had initiated an inter partes review of claims 1, 3-6, 17, 18, 20-23, and 34 of the '967 Patent. (Notice (Dkt. No. 58) at 1) In the decision instituting the inter partes review, the U.S. Patent and Trademark Office (the "PTO") found that petitioner had not demonstrated a

5

reasonable likelihood of demonstrating that claims 2 and 19 are anticipated by prior art (PTO Decision (Dkt. No. 58-1) at 25, 32), but that petitioner was "reasonably likely" to prevail in establishing that claims 1, 3-6, 17, 18, 20-23, and 34 are anticipated by prior art. (Id. at 32) Accordingly, the PTO instituted an inter partes review on claims 1, 3-6, 17, 18, 20-23, and 34 of the '967 Patent. (Id. at 35)

On July 18, 2018, Plaintiff informed the Court that the Patent Trial and Appeal Board would be conducting a hearing on August 22, 2018, concerning the petition for inter partes review of the '967 Patent. (July 18, 2018 Pltf. Ltr. (Dkt. No. 66-1) at 1 n. 1)

On August 27, 2018, the Court directed the parties to submit letters (1) providing an update on the status of the inter partes review of the '967 Patent; and (2) addressing whether the instant action should be stayed pending resolution of the inter partes review. (Order (Dkt. No. 68))

On August 31, 2018, the parties filed letters indicating that the August 22, 2018 hearing before the Patent Trial and Appeal Board had taken place. (Aug. 31, 2018 Def. Ltr. (Dkt. No. 69) at 1; Aug. 31, 2018 Pltf. Ltr. (Dkt. No. 70) at 1) The parties expect a Final Written Decision regarding the validity of the '967 Patent by December 4, 2018. (See Aug. 31, 2018 Def. Ltr. (Dkt. No. 69) at 1; Aug. 31, 2018 Pltf. Ltr. (Dkt. No. 70) at 1)

Defendants state that they believe "a prima facie case of invalidity has been made and that the Board will return a decision of invalidity of the '967 Patent." (Aug. 31, 2018 Def. Ltr. (Dkt. No. 69) at 1) Defendants request that this Court stay the action pending resolution of the inter partes review. (Id.) Plaintiff opposes the application for a stay. (Aug. 31, 2018 Pltf. Ltr. (Dkt. No. 70) at 1)

6

## DISCUSSION

## I.     LEGAL STANDARD

"'District courts have the inherent power to manage their dockets, which includes

issuing a stay pending the conclusion of review proceedings before the [PTO].'" Straight Path IP

Grp., Inc. v. Verizon Commc'ns Inc., No. 16 Civ. 4236 (AJN), 2016 WL 6094114, at *2

(S.D.N.Y. Oct. 18, 2016) (quoting CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc., No. 13

Civ. 05669 (NSR), 2014 WL 2854656, at *2 (S.D.N.Y. June 20, 2014)). "Courts have

recognized that this power extends to staying infringement actions while final [Patent Trial and

Appeal Board inter partes review] decisions are appealed to the Federal Circuit." Id. (citation

omitted). "The decision whether to grant a stay is committed to the district court's sound

discretion, and the court 'is given considerable leeway in the exercise of its judgment.'" Id.

(quoting Ultratec, Inc. v. CaptionCall, LLC, 611 F. App'x 720, 721 (Fed. Cir. 2015)).

"'Courts in this District consider three factors in determining whether a stay

pending resolution of [inter partes review] proceedings is appropriate: '(1) whether a stay will

simplify the issues in question and trial of the case; (2) the stage of the proceedings; and (3)

whether a stay will prejudice the nonmoving party.'" Rovi Guides, Inc. v. Comcast Corp., No.

16 Civ. 9278 (JPO), 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017) (quoting Straight Path,

2016 WL 6094114, at *2)). "'These factors are not exclusive, however, and in the end, an

overarching consideration of the circumstances in their totality governs.'" Straight Path, 2016

WL 6094114, at *2 (quoting Rensselaer Polytechnic Inst. v. Apple Inc., No. 13 Civ. 0633 (DEP),

2014 WL 201965, at *3 (N.D.N.Y. Jan. 15, 2014)). "The party seeking the stay bears the burden

of demonstrating that such relief is warranted." Id. (citation omitted).

## II.    ANALYSIS

### A.    Simplification of the Issues

Plaintiff argues that staying this action will not simplify the issues in this case, because: (1) the pending inter partes review only implicates a § 102 challenge against the claims in the '967 patent and all other patent eligibility and validity challenges will remain for this Court to resolve; (2) the opinions of the Patent Trial and Appeal Board will provide little guidance, because the evidentiary burdens applicable during inter partes review are different from those applicable in district court; (3) the Court will have to address Defendants' § 102 challenges in any event, because Defendants will not be estopped from re-litigating the issue since they did not join in Masabi's inter partes review; and (4) the inter partes review only affects one of nine claims in the FAC.  (Aug. 31, 2018 Pltf. Ltr. (Dkt. No. 70) at 1-2)

This Court concludes, however, that "the [patent] claims at issue will be simplified, regardless of the outcome of [inter partes review], because the [Patent Trial and Appeal Board's] decisions will be binding on this Court."  See, e.g., Rovi Guides, 2017 WL 4876305, at *3 (citations omitted); Goodman v. Samsung Elecs. Am., Inc., No. 17 Civ. 5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017) ("Both HP's petition and SEA's petition, which ASUS joins, challenge the validity of Claim 1 of the '315 Patent. . . . Should either pending petition result in an inter partes review that declares Claim 1 of the '315 Patent invalid in part or in full, that would limit the issues in this action significantly or moot the case entirely.").  Indeed, "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." Fresenius USA, Inc. v. Baxter Int'l, Inc., 721 F.3d 1330, 1340 (Fed. Cir. 2013).

8

Accordingly, "[i]n light of this relationship between [inter partes review] and litigation, any of the conceivable potential outcomes of [inter partes review] will lead to a simplification of the present case. If the [Patent Trial and Appeal Board] rules in favor of [the petitioner] and cancels all contested claims, it will render [a majority of the claims in the '967 Patent] moot. If the [Patent Trial and Appeal Board] cancels only some of the asserted claims, it will still narrow the issues before this Court, albeit less drastically." See Rovi Guides, 2017 WL 4876305, at *3. The Patent Trial and Appeal Board's decision "will [also] simplify the issues in this case by focusing discovery, narrowing the issues for trial, and potentially promoting settlement." See Lederer v. Newmatic Sound Sys., Inc., No. 10 Civ. 0271 (JS) (AKT), 2011 WL 31189, at *3 (E.D.N.Y. Jan. 4, 2011).

Even assuming arguendo that the Patent Trial and Appeal Board upholds certain claims in the '967 Patent, this Court will benefit from the Patent Trial and Appeal Board's claim construction and analysis – regardless of whether Defendants are collaterally estopped from re-litigating the issue – given the Patent Trial and Appeal Board's expertise in evaluating patentability. See Lederer, 2011 WL 31189, at *3 ("Plaintiff argues that a reexamination will complicate rather than simplify this case because Defendant is not estopped from re-litigating the results of an ex parte (as opposed to an inter partes) reexamination in district court, and that, instead of invalidating Plaintiff's patent, the reexamination will likely uphold it, albeit with certain possible changes. The Court is not persuaded by Plaintiff's arguments because regardless . . . of the PTO's ultimate conclusion, the Court will still benefit from the PTO's reexamination record when it is time to litigate patentability here."); Tour Tech. Sys., LLC v. Ice Portal, Inc., No. 11 Civ. 03912 (NGG) (JMA), 2012 WL 13098725, at *3 (E.D.N.Y. Oct. 22, 2012) ("[I]f the PTO affirms or changes any of the '400 patent claims, the Court will still benefit from the PTO's

9

record because of its expertise in evaluating prior art and assessing patent validity."). Moreover, should the Patent Trial and Appeal Board conclude that the claims in the '967 Patent are invalid, "the Court will have wasted substantial resources resolving the patentability issue," regardless of whether the patent validity challenges before the Court are asserted on different grounds. See Lederer, 2011 WL 31189, at *3.

While it is true that the inter partes review involves only the '967 Patent, the '993 Patent and the '967 Patent are closely linked – as Plaintiff acknowledges. (See Aug. 31, 2017 Pltf. Ltr. (Dkt. No. 70) at 1 n. 1 (noting that discovery regarding the '967 Patent and '993 Patent "would be substantially the same because both patents-in-suit share the same specifications")) Indeed, both patents are entitled, "Method and System for Distributing Electronic Tickets with Visual Display." (See FAC, Ex. A ('967 Patent) (Dkt. No. 40-2) at 1, Ex. B ('993 Patent) (Dkt. No. 40-3) at 1) Each invention "discloses a novel system and method for distributing electronic ticketing such that the ticket is verified at the entrance to venues by means of an animation or other human perceptible verifying visual object that is selected by the venue for the specific event." (Id.) Although the claims differ slightly, the specifications in both patents are identical. (See id., Ex. A ('967 Patent) (Dkt. No. 40-2) at 3-27, Ex. B ('993 Patent) (Dkt. No. 40-3) at 4-27) Moreover, the '993 Patent "claims priority to U.S. patent application Ser. No. 13/475,881 [(the '967 Patent)] . . . as a continuation and . . . incorporates that application by reference in its entirety." (See id., Ex. A ('967 Patent) (Dkt. No. 40-2) at 1, Ex. B ('993 Patent) (Dkt. No. 40-3) at 20) Accordingly, the Patent Trial and Appeal Board's decision regarding the construction and validity of the claims in the '967 Patent will have significant import for this Court in assessing the validity of the claims in the '993 Patent. A stay is thus highly likely to lead to simplification of the issues before this Court related to the validity of both the '967 and '993 Patents.

10

Plaintiff's remaining state law causes of action for breach of contract, trade secret misappropriation, tortious interference with business relations, unfair competition, and unjust enrichment under New Jersey law are distinct from Plaintiff's patent claims, however. For example, Plaintiff's breach of contract claim against the Xerox Entities turns on whether they breached the terms of the Confidentiality Agreements, irrespective of the validity of Plaintiff's patents.

Moreover, because Plaintiff's patents do not constitute trade secrets, see Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp. 3d 224, 269 (S.D.N.Y. 2014) ("Big Vision's July 2009 Indian patent application destroyed any secrecy that inhered in the alleged trade secret as of that date." (citing Timely Products Corp. v. Arron, 523 F.2d 288, 304 (2d Cir. 1975) ("The secret was disclosed by [plaintiff] himself when his patent issued on December 20, 1966. This cut off [plaintiff's] right to prevent use or disclosure by others, even including [defendant]."))), aff'd sub nom. Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co., 610 F. App'x 69 (2d Cir. 2015), and Plaintiff's trade secrets relate to proprietary information that is purportedly independent from its patents (see FAC (Dkt. No. 40) ¶¶ 86, 101, 115), Plaintiff's misappropriation of trade secrets claims do not turn on the validity of Plaintiff's patents.

Likewise, Plaintiff's tortious interference with business relations and unfair competition claims are focused on Defendants' alleged unfair commercial business practices, and resolution of these claims does not depend on the validity of Plaintiff's patents.

Finally, Plaintiff's unjust enrichment claim under New Jersey law turns on the Xerox Entities' alleged tortious conduct and misuse of Plaintiff's trade secrets.

11

In sum, a stay is not likely to simplify the issues with respect to Plaintiff's state law causes of actions. Accordingly, the simplification of issues factor weighs in favor of staying both patent claims, but permitting Plaintiff's remaining state claims to proceed.

### B.   Stage of the Proceedings

The stage of the proceedings also weighs in favor of staying the patent claims. This action is in its infancy. No discovery has taken place, and neither a <u>Markman</u> hearing nor a trial has been scheduled. "[Patent infringement] [c]ases are 'routinely stayed [pending <u>inter partes</u> review] in the absence of substantial progress toward trial.'" <u>See</u> <u>Lederer</u>, 2011 WL 31189, at *3 (quoting <u>Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.</u>, No. 08 Civ. 299S, 2009 WL 3162213, at *4 (W.D.N.Y. Sept. 28, 2009)); <u>Goodman</u>, 2017 WL 5636286, at *2 ("A stay is appropriate at this stage of the proceedings. . . . Goodman filed this case just over four months ago, and SEA filed its answer about one month ago. The Court has not yet held an initial conference or issued a scheduling order affixing dates for claim construction, discovery, or trial. It would not be at all difficult to pause the proceedings at this very early stage and await an <u>inter partes</u> decision. Indeed, it may only serve to waste resources to litigate this matter when an <u>inter partes</u> review could render the case moot."); <u>Straight Path</u>, 2016 WL 6094114, at *3 (No discovery has been taken and neither a claim construction hearing nor a trial has been scheduled. As the Federal Circuit has held, this 'timing factor heavily favors a stay.' (quoting <u>VirtualAgility Inc. v. Salesforce.com, Inc.</u>, 759 F.3d 1307, 1315 (Fed. Cir. 2014))).

### C.   Undue Prejudice to Plaintiff

Plaintiff argues that an appeal is likely to follow whatever decision the Patent Trial and Appeal Board renders. (Aug. 31, 2018 Pltf. Ltr. (Dkt. No. 70) at 2) Plaintiff contends that a stay will therefore result in significant delay that would be highly prejudicial to Plaintiff,

"because the parties are direct competitors in an exclusive and highly niche market" and a stay will allow Defendants to continue their "unlawful conduct" – which includes not only infringement, but also misappropriation of trade secrets and unfair competition – while denying Plaintiff a remedy. (Id.)

"'The question of undue prejudice or clear tactical advantage is informed by four sub-factors, including '(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties.'" Rovi Guides, 2017 WL 4876305, at *4. "'An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors.'" Id. (citation omitted). "'[M]ere delay in the litigation does not establish undue prejudice[, however].'" CDX Diagnostics, 2014 WL 2854656, at *4 (quoting Universal Elecs., Inc. v. Universal Remote Control, Inc., 943 F. Supp. 2d 1028, 1033 (C.D. Cal. 2013)). "The 'issue is whether the Plaintiff will be unduly prejudiced . . . beyond . . . the inevitable delay.'" Lavagear Inc. v. Okamoto USA, Inc., No. 12 Civ. 2317 (KAM), 2013 WL 145765, at *1 (E.D.N.Y. Jan. 14, 2013) (citation omitted); Sorensen ex rel. Sorensen Research & Dev. Tr. v. Black & Decker Corp., No. 06 Civ. 1572 (BTM) (CAB), 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007) (Because "[p]rotracted delay is always a risk inherent in granting a stay, . . . [t]he general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay.").

Here, there is no evidence that Defendants were dilatory in requesting a stay, or that granting a stay will give Defendants a tactical advantage. To the contrary, Defendants filed their request for a stay promptly in response to this Court's inquiry regarding the status of the inter partes review proceeding. See Rovi Guides, 2017 WL 4876305, at *4 ("Nor is the Court persuaded that the timing of Comcast's request for a stay was dilatory or likely to give it a

13

tactical advantage. Comcast filed the present motion just a few days after receiving the PTAB's decision granting IPR review on the last two of its petitions."). Moreover, because the Patent Trial and Appeal Board has already granted review on the '967 Patent and is expected to render a decision by December 4, 2018, a stay pending resolution of the inter partes review is not likely to result in undue prejudice. See id. ("[G]iven that the PTAB has already granted review on four of the five patents at issue, the status of the IPR proceedings is not likely to cause any undue prejudice or tactical advantage if a stay is granted."); cf. Rensselaer Polytechnic, 2014 WL 201965, at *6 ("Because the PTO has yet to make even an initial determination of the pending IPR petitions, and neither plaintiffs nor Apple can be certain of when the PTO may issue that decision, I conclude that this factor weighs against granting a stay.").

While the FAC's allegations indicate that Plaintiff and the Xerox Entities are direct competitors, "Plaintiff's argument that a stay would be unduly prejudicial is undermined somewhat by the [Patent Trial and Appeal Board's] preliminary finding" that the petitioner has shown a "reasonable likelihood that it w[ill] prevail in establishing the unpatentability of claims 1, 3-6, 17, 18, 20-23, and 34 of the '967 patent." (See PTO Decision (Dkt. No. 58-1) at 34; Lederer, 2011 WL 31189, at *3)) "Plaintiff's right to exclude others from practicing his patent is dependent on the patent's validity, and the [Patent Trial and Appeal Board's] granting [inter partes review] calls [the '967 patent's] validity into question." Lederer, 2011 WL 31189, at *3 (citation omitted). Given the close relationship between the '967 and the '993 patents, the Patent Trial and Appeal Board's decision also raises substantial questions regarding the validity of the '993 patent. Moreover, any "prejudice Plaintiff suffers as a result of Defendant's continued alleged infringement while the [patent claims] [are] stayed can be cured by a damages award that compensates Plaintiff for this additional infringement should [it] ultimately prevail." Id. (citation

14

omitted). Any prejudice is also mitigated by allowing Plaintiff's state law claims – which are independent of its patent infringement claims – to proceed. Accordingly, this Court concludes that staying Plaintiff's patent claims will not unduly prejudice Plaintiff.

Having considered all of the relevant factors and the totality of the circumstances, this Court concludes that a stay of Plaintiff's patent claims – Counts One and Two of the FAC – pending resolution of the inter partes review is appropriate.

## CONCLUSION

For the reasons stated above, Counts One and Two of the First Amended Complaint will be stayed pending resolution of the inter partes review. In light of the stay, Defendants' motion to dismiss Plaintiff's patent claims on the grounds that they are directed to patent-ineligible subject matter under 35 U.S.C. § 101 (see Mot. (Dkt. No. 51); Defs. Br. (Dkt. No. 52) at 13), is denied with leave to renew once the stay is lifted. The Clerk of Court is directed to terminate the motion (Dkt. No. 51).

By December 10, 2018, the parties will submit letters: (1) providing an update on the status of the inter partes review and any appeal; and (2) addressing whether the stay should be lifted. The parties will submit a proposed case management plan as to discovery concerning the state law claims by October 5, 2018.

Dated: New York, New York
　　　September 21, 2018

SO ORDERED.

Paul G. Gardephe
United States District Judge

15