UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BYTEMARK, INC.,

Plaintiff,

-against-

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and NEW JERSEY
TRANSIT CORP.

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _9/24/18_

**ORDER**

17 Civ. 1803 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Bytemark, Inc. brings this action against Defendants Xerox Corp., ACS

Transport Solutions, Inc. ("ACS Transport"), Xerox Transport Solutions, Inc. ("Xerox

Transport") (collectively the "Xerox Entities"), Conduent Inc., and New Jersey Transit Corp.

("NJ Transit") (collectively "Defendants"), asserting claims for patent infringement, breach of

contract, trade secret misappropriation, tortious interference with business relations, unfair

competition, and unjust enrichment. (See First Am. Cmplt. ("FAC") (Dkt. No. 40) ¶¶ 1, 3)

Bytemark alleges that it entered into a series of confidentiality agreements with ACS Transport

and Xerox Transport for the purpose of developing joint bids to provide mobile ticketing

solutions to prospective clients in the mass transit industry. (Id. ¶ 29) After Bytemark disclosed

its trade secrets, however, the Xerox Entities cut Bytemark out of the bidding process and used

Bytemark's trade secrets and intellectual property to secure a contract with NJ Transit. (Id. ¶ 33)

Conduent allegedly has assisted the Xerox Entities in utilizing Bytemark's proprietary

technology, and worked together with the Xerox Entities and NJ Transit to sell Bytemark's

proprietary technology to prospective customers.  (See id. ¶¶ 35-36)  Bytemark now seeks

damages related to Defendants' alleged misuse of its proprietary information.

   Defendants have moved to dismiss Counts One, Two, Eight, and Nine as to all

Defendants, and Count Ten as to Defendants Conduent and NJ Transit.  (Mot. (Dkt. No. 51) at 1-

2)[1]  For the reasons stated below, Defendants' motion to dismiss Counts Eight, Nine, and Ten

will be granted in part, and denied in part.  Defendants' motion regarding Counts One and Two –

Plaintiff's patent infringement claims – will be addressed in a separate order.

## BACKGROUND[2]

## I. FACTS

### A. The Parties

   Bytemark provides secure mobile ticketing platforms for transit, tourism, and

events through smartphone apps, point-of-sale plugins, and open application programming

interfaces ("APIs").  (FAC (Dkt. No. 40) ¶ 3)  Bytemark is also the owner of certain trade secrets

and patents related to the development and implementation of its mobile ticketing applications –

such as its V3 Ticketing Technology – and has secured contracts across the mass transit industry,

including a contract with New York Waterway – the largest private ferry operator in the United

States.  (Id. ¶¶ 21-23, 25)

   Xerox Corp. sells business services and document technology products.  (Id. ¶¶ 4-

5)

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

[2]  Unless otherwise noted, the following facts are drawn from the First Amended Complaint, and
are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd
Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

ACS Transport and Xerox Transport are divisions of Xerox Corp., are incorporated in Georgia, and have their principal places of business in Texas. (Id. ¶¶ 7-8, 10-11) Xerox Corp. acquired ACS Transport's parent company – Affiliated Computer Services, LLC – in February 2010. (Id. ¶ 8) Prior to the acquisition, Xerox Corp. operated primarily as a technology company. (Id.) After the acquisition, Xerox Corp. added a services operation and was reorganized into two major divisions: Xerox Technology and Xerox Services. (Id.) Affiliated Computer Services served as Xerox Corp.'s core business process service, and became known as "ACS, A Xerox Company" and "Xerox/ACS." (Id. ¶ 8) At all relevant times, ACS Transport was subject to Xerox's "complete direction and control" and was – "in form and substance[]" – the same as Xerox. (Id.)

In January 2014, Xerox Transport changed its name to "ACS Transport Solutions, Inc." (Id. ¶ 11) At all relevant times, Xerox Transport/ACS Transport Solutions was subject to the complete direction and control of Xerox. (Id.)

In 2016, Xerox Corp. split into two publicly traded companies: Conduent and Xerox Corp. (Id. ¶¶ 9, 14) Conduent formally came into existence in January 2017. (Id. ¶ 14) Xerox Corp. retained the document technology operations, while Conduent assumed the business process services arm of the company. (Id. ¶¶ 9, 14)

NJ Transit is a public transportation system that operates buses, light rail, and commuter trains in New York, New Jersey, and Pennsylvania. (Id. ¶ 16)

## B. Defendants' Alleged Misuse of Plaintiff's Proprietary Information

Bytemark owns two patents related to its visual validation mobile ticketing applications – Patent No. 8,494,967 (the "'967 patent"), and Patent No. 9,239,993 (the "'993 patent"). (Id. ¶¶ 21-22, Ex. A ('967 Patent) (Dkt. No. 40-2), Ex. B ('993 Patent) (Dkt. No. 40-

3

3)) The '967 Patent was issued on July 23, 2013, while the '993 Patent was issued on January 19, 2016. (See id., Ex. A ('967 Patent) (Dkt. No. 40-2) at 1, Ex. B ('993 Patent) (Dkt. No. 40-3) at 1)

Both patents are entitled, "Method and System for Distributing Electronic Tickets with Visual Display." (See id.) According to the patent abstracts, each invention "discloses a novel system and method for distributing electronic ticketing such that the ticket is verified at the entrance to venues by means of an animation or other human perceptible verifying visual object that is selected by the venue for the specific event." (Id.) The patent abstracts further explain that this ticketing technology improves the ticket and payment experience for consumers and merchants, by removing the need for a bar-code scanner on an LCD display, "speed[ing] up" the ticket verification process, "maintain[ing] a persistent communication channel with the user device in order to control the ticket verification process," and allowing for ticket verification "in the absence of a network connection." (Id.)

Bytemark also owns trade secrets related to the design of applications, technical support systems, and back-end management technical support and service of its mobile ticketing applications. (FAC (Dkt. No. 40) ¶¶ 25, 86, 101, 115) These trade secrets include "proprietary mobile development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm." (Id.) Bytemark takes reasonable measures to protect its trade secrets and confidential information by, inter alia, requiring third parties and employees to sign confidentiality agreements before disclosing any confidential information to them. (Id. ¶ 27)

4

In the spring of 2012, Bytemark entered into a series of Nondisclosure .

Agreements ("NDAs") and Teaming Agreements (collectively, "the Confidentiality

Agreements") with ACS Transport and Xerox Transport for the purpose of developing joint

proposals and bids to provide mobile ticketing solutions to clients in the mass transit industry.

(Id. ¶ 29)  The NDAs and Teaming Agreements between Bytemark and ACS Transport identify

ACS Transport as "A Xerox Company," and the NDAs between Bytemark and Xerox Transport

feature the "Xerox" logo.  (Id.)

In the Confidentiality Agreements, ACS Transport, Xerox Transport, and

Bytemark agreed that "no title, license, intellectual property rights, or any other right of

ownership or use shall be granted (expressly, by implication, or by estoppel) to the receiving

party under any patent, trademark, copyright, or trade secret owned or controlled by the

disclosing party by the disclosure of proprietary information."  (Id. ¶ 30)

Pursuant to the Confidentiality Agreements, Bytemark disclosed its trade secrets

and confidential information to the Xerox Entities on numerous occasions between 2012 and

2015.  (Id. ¶ 31)  During this period, Bytemark continued to refine and develop its mobile

ticketing technology and systems, as well as the management and support services for its

technology.  (Id. ¶ 32)  Bytemark disclosed these improvements to the Xerox Entities.  (Id.)

Bytemark asserts that after it disclosed its proprietary information to the Xerox

Entities, the Xerox Entities cut Bytemark out of a joint bidding effort aimed at NJ Transit.  (Id. ¶

33)  The Xerox Entities then "used and/or disclosed" Bytemark's patents and trade secrets to bid

for, and secure, a contract with NJ Transit without Bytemark.  (Id.)  The Xerox Entities

incorporated Bytemark's proprietary information into their visual validation applications – such

as their MyTix mobile application – and then sold this infringing mobile technology to NJ

5

Transit. (Id. ¶ 35)  On or about January 2015, Bytemark notified the Xerox Entities and NJ Transit of their infringement and misappropriation. (Id. ¶ 43)

Since its formation in 2017, Conduent has participated in the servicing, maintenance, and continued utilization and implementation of Bytemark's proprietary information. (Id. ¶ 35)  Bytemark alleges that Conduent also "had knowledge" of the infringement of Bytemark's proprietary technology. (Id. ¶¶ 43, 52, 66)

At some point after the Xerox Entities sold their infringing mobile technology application to NJ Transit, NJ Transit – "in collaboration with the Xerox Entities and Conduent[]" – offered to provide the infringing visual validation software to New York Waterway as a part of an integrated transportation contract, under which NJ Transit and New York Waterway would offer integrated bus and ferry services to transportation passengers. (Id. ¶¶ 36, 41-42)  At all relevant times, NJ Transit knew that Plaintiff's mobile ticketing software was "proprietary, trade-secret, and patent-protected property." (Id. ¶ 37)

As a result of Defendants' actions, New York Waterway declined to extend its existing contract with Bytemark. (Id. ¶ 42)  New York Waterway explained that it had received a better offer from Defendants. (Id.)  After Bytemark initiated this action, New York Waterway agreed to a temporary short-term extension of its contract with Bytemark. (Id.)

## II.  PLAINTIFF'S UNFAIR COMPETITION AND UNJUST ENRICHMENT CLAIMS

The First Amended Complaint was filed on September 21, 2017, and asserts claims for patent infringement, breach of contract, trade secret misappropriation, tortious interference with business relations, unfair competition, and unjust enrichment. (See id. ¶¶ 1, 44-156)  Defendants have moved to dismiss Counts Eight, Nine, and Ten of the First Amended Complaint. (Mot. (Dkt. No. 51))

6

In Count Eight – which alleges a claim of unfair competition under New York law against all Defendants, Plaintiff asserts that "Defendants' practicing of the claims of the Patents-in-Suit and their unlawful use of Plaintiff's trade secrets in Defendants' applications that also have substantially the same look and feel [as Plaintiff's applications] is likely to cause confusion among consumers as to the origin of the technology." (FAC (Dkt. No. 40) ¶¶ 134-39)  Plaintiff further alleges that Defendants acted in bad faith by leading Plaintiff to disclose its intellectual property, trade secrets, and other confidential information "[u]nder the guise of forming a partnership with Plaintiff," and then cutting Plaintiff out of the joint bidding effort and using Plaintiff's proprietary information to secure their own contracts, including an integrated transportation contract with New York Waterway.  (Id. ¶ 136)

Counts Nine and Ten set forth claims for unjust enrichment under New York and New Jersey law, against all Defendants.  (See id. ¶¶ 140-56)  Plaintiff alleges that by infringing and misappropriating its patents and trade secrets, Defendants have avoided the significant time and cost of developing their own mobile ticketing platform and have diverted substantial revenues from Plaintiff.  (Id. ¶¶ 141-43, 149-52)  As a result, Defendants have been unjustly enriched at Plaintiff's expense.  (Id. ¶¶ 144, 153)

## DISCUSSION

### I.    RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d

83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions, are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal. 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II.    UNFAIR COMPETITION CLAIM

Defendants have moved to dismiss Count Eight – Plaintiff's unfair competition claim – on the grounds that: (1) it is preempted by federal patent law with respect to all of the Defendants; (2) it is duplicative of Plaintiff's breach of contract claim in Count Three with

respect to the Xerox Entities; and (3) Plaintiff has not alleged facts demonstrating that Conduent and NJ Transit acted in bad faith.  (Def. Br. (Dkt. No. 52) at 42-47)

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship."  Telecom Int'l Am., Ltd. v. AT & T Corp., 280 F.3d 175, 197 (2d Cir. 2001); Carson Optical Inc. v. eBay Inc., 202 F. Supp. 3d 247, 267 (E.D.N.Y. 2016) ("'[T]he essence of an unfair competition claim is that 'the defendant has misappropriated the labors and expenditures of another' and has done so in bad faith.'"" (citations omitted)).  New York's unfair competition law is a "broad and flexible doctrine that depends more upon the facts set forth . . . than in most causes of action."  Telecom Int'l Am., Ltd., 280 F.3d at 197.  The tort "'does not have boundless application as a remedy for unfair trade practices[, however,] . . . Rather, . . . the primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditure of labor, skill, and money.'"  Gucci Am., Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 275 (S.D.N.Y. 2003) (quoting Ruder & Finn Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 671 (1981)).

New York law "'recognize[s] two theories of common-law unfair competition: palming [or passing] off and misappropriation.'"  Carson Optical Inc., 202 F. Supp. 3d at 267 (quoting ITC Ltd. v. Punchgini, Inc., 9 N.Y.3d 467, 476 (2007)).  "Palming off . . . is the 'sale of the goods of one manufacturer as those of another.'"  Id. at 267-68 (citations omitted); Punchgini, 9 N.Y.3d at 477 n. 2 ("'One of the most obvious forms' of palming off 'occurs when the copier of an article overtly and explicitly misrepresents its source[, for example], where [a] defendant . . . substituted its product for plaintiff's when customers specifically asked for

9

plaintiff's product.'" (alterations in original) (citations omitted)). "The second theory,

misappropriation, prevents individuals from 'misappropriat[ing] the results of the skill,

expenditures and labors of a competitor.'" Carson Optical Inc., 202 F. Supp. 3d at 268 (quoting

Punchgini, 9 N.Y.3d at 477).

## A.   Whether Plaintiff's Unfair Competition Claim is Preempted by Patent Law

Defendants argue that Plaintiff's unfair competition claim must be dismissed,

because it is preempted by federal patent law.  (Def. Br. (Dkt. No. 52) at 42-43)

"Federal law preempts state law that offers 'patent-like protection' to discoveries

unprotected under federal patent law." Ultra-Precision Mfg., Ltd. v. Ford Motor Co., 411 F.3d

1369, 1376-78 (Fed. Cir. 2005).  To determine whether state law torts "are in conflict with

federal patent law and accordingly preempted, [courts] assess a defendant's allegedly tortious

conduct [as follows]":

> If a plaintiff bases its tort action on conduct that is protected or governed by federal
> patent law, then the plaintiff may not invoke the state law remedy, which must be
> preempted for conflict with federal patent law.  Conversely, if the conduct is not so
> protected or governed, then the remedy is not preempted.  This approach, which
> considers whether a state law tort, "as-applied," conflicts with federal patent law, is
> consistent with that employed by the Supreme Court in cases involving preemption of
> state unfair competition law.

Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1335 (Fed. Cir. 1998), overruled

on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356 (Fed. Cir.

1999).

Accordingly, where a plaintiff's unfair competition claim is premised on a

defendant's alleged infringement of a patent, the claim is preempted by federal patent law.  See

Carson Optical Inc., 202 F. Supp. 3d at 265 (holding that the complaint's allegation that

defendant's "acts of unfair methods of competition and/or unfair or deceptive trade practices

include the bad faith and willful inducement of infringement of the 729 and 601 Patents" was

"necessarily preempted by federal patent law[]"); Sorias v. Nat'l Cellular USA, Inc., 124 F.

Supp. 3d 244, 262 (E.D.N.Y. 2015) ("Plaintiffs here allege a claim for unfair competition based

only on the . . . Defendants' infringement of the '486 Patent or, alternatively, on aspects of the

patent that are unprotected by federal patent law because they are not actionable trade secrets. . .

. Plaintiffs' unfair competition claim, therefore, is necessarily preempted by federal patent

law."); Carson Optical, Inc. v. Prym Consumer USA, Inc., 11 F. Supp. 3d 317, 329 (E.D.N.Y.

2014) ("Plaintiffs' allegations that defendants engaged in unfair competition by copying and

reproducing Carson's products that were covered by the '726 Patent and the '779 patent . . .

without more, are preempted by federal patent law because they are predicated upon plaintiffs'

claims that Prym's magnifiers infringed Carson's design patents."); Enzo Biochem, Inc. v.

Amersham PLC, 981 F. Supp. 2d 217, 226 (S.D.N.Y. 2013) ("Enzo alleges that Amersham and

Applied Biosystem's conspiracy resulted in the misappropriation of Enzo's patents. The Second

Circuit and the Supreme Court have made clear, however, that 'states cannot, under the guise of

regulating unfair competition, grant what is in effect patent protection . . . .' Because Enzo seeks

only to protect its patents from misappropriation, its state-law claim for unfair competition is

preempted by federal patent law." (quoting Flexitized, Inc. v. Nat'l Flexitized Corp., 335 F.2d

774, 783 n. 4 (2d Cir.1964) (citing Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231

(1964)))).

   "The patent laws will not preempt [state law unfair competition] claims[,

however,] if they include additional elements not found in the federal patent law cause of action

and if they are not an impermissible attempt to offer patent-like protection to subject matter

addressed by federal law." Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1306 (Fed. Cir.

11

1999); see also Hall v. Bed Bath & Beyond, Inc., 705 F.3d 1357, 1371 (Fed. Cir. 2013) ("Hall argues that BB & B did not copy a publicly available product from the marketplace, but copied his proprietary towel that he showed to BB & B in the course of discussion of a business relationship. BB & B accepted the sample towel, and had it copied. We agree with Hall that design patent infringement is not his only possible remedy, and that principles of patent law preemption do not override potential causes of action based on unfair commercial practices. . . . [F]ederal preemption does not apply to the circumstances set forth in the pleadings.").

Here, Plaintiff's unfair competition claim is premised on theories of misappropriation and "reverse passing off." (See FAC (Dkt. No. 40) ¶¶ 135-36; Pltf. Br. (Dkt. No. 54) at 27-29)

Plaintiff alleges that "Defendants' practicing of the claims of the Patents-in-Suit and their unlawful use of Plaintiff's trade secrets in Defendants' applications that also have substantially the same look and feel [as Plaintiff's applications] is likely to cause confusion among consumers as to the origin of the technology." (See FAC (Dkt. No. 40) ¶ 136; Pltf. Br. (Dkt. No. 54) at 28) As such, "the cause of action is principally a claim of 'reverse passing off' – that is, a claim that the defendant . . . misrepresented the plaintiffs' work as its own." See Carson Optical, Inc., 11 F. Supp. 3d at 333 (collecting cases). "A claim predicated on 'reverse passing off,' however, is preempted by federal [patent] law because the claim is essentially a claim for the unauthorized use of a patented product and does not contain an extra element to qualitatively differentiate it from one of patent infringement." Id.; cf. Colour & Design v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 8332 (MBM), 2005 WL 1337864, at *6 (S.D.N.Y. June 3, 2005) ("'In reverse passing off, the wrongdoer sells plaintiff's products as its own. It contrasts with passing off, where the wrongdoer sells its products as the plaintiff's.' Unfair competition claims

12

alleging the former are preempted because they are 'equivalent to a claim for copyright infringement.'"). Accordingly, to the extent Plaintiff's unfair competition claim is premised on a theory of reverse passing off, it is preempted by federal patent law.

Plaintiff's unfair competition claim is not preempted to the extent it is premised on a misappropriation theory, however, because Plaintiff's misappropriation claim does not turn solely on allegations that Defendants infringed Plaintiff's patents. Here, for example, the FAC alleges that "[u]nder the guise of forming a partnership with plaintiff, Defendants led Plaintiff to disclose its valuable intellectual property, trade secrets and other confidential information" when Defendants "had no intention of partnering with Plaintiff." (FAC (Dkt. No. 40) ¶ 136) Defendants then allegedly "cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts, including an integrated transportation contract with New York Waterway[]" – Plaintiff's longtime customer. (Id. ¶¶ 23, 136) As in Hall, Plaintiff unfair competition "based on [allegations] of unfair commercial practices" is not preempted, because it includes additional elements not addressed by federal patent law. See Hall, 705 F.3d at 1361, 1372 (unfair competition claim not preempted by federal patent law where plaintiff alleged that he had shared proprietary information with defendant, and defendant then made unauthorized copies of the product for sale); Rodime, 174 F.3d at 1307 (unfair competition claim not preempted by federal patent law where it included a showing of unfair business practices, such as "misleading, if not outright false, statements" by defendant). Accordingly, Defendants' motion to dismiss Plaintiff's misappropriation theory of unfair competition will be denied.

**B.  Whether Plaintiff's Unfair Competition Claim is – as to the Xerox Entities – Duplicative of its Breach of Contract Claim**

Defendants argue that Plaintiff's unfair competition claim against the Xerox

13

Entities is premised on the Xerox Entities' alleged breach of the Confidentiality Agreements, and that therefore this claim must be dismissed as duplicative of Plaintiff's breach of contract claim in Count Three. (Defs. Br. (Dkt. No. 52) at 43-44)

    Where a plaintiff's unfair competition claim is based entirely on the same alleged conduct proscribed by contract, and plaintiff has pled a breach of contract claim, the unfair competition claim is dismissed as duplicative of the breach claim. See, e.g., ScentSational Techs., LLC v. PepsiCo, Inc., No. 13 Civ. 8645 (KMK), 2017 WL 4403308, at *18 (S.D.N.Y. Oct. 2, 2017) at *18 (granting defendants' motion for summary judgement where plaintiff's unfair competition claim was premised solely on defendants' breach of confidentiality agreements); Bancorp Servs., LLC v. Am. Gen. Life Ins. Co., No. 14 Civ. 9687 (VEC), 2016 WL 4916969, at *9 (S.D.N.Y. Feb. 11, 2016) (dismissing plaintiffs' unfair competition claim where it was "entirely based on alleged conduct that is proscribed by the 2010 NDA – namely disclosure and use of information that was protected by the 2010 NDA[]" – and plaintiffs had not alleged that defendant "had any duty to them independent of the 2010 NDA, nor . . . alleged circumstances extraneous to that contract in support of their non-contract claims"); RCA Trademark Mgmt. S.A.S. v. VOXX Int'l Corp., No. 14 Civ. 6294 (LTS) (HBP), 2015 WL 5008762, at *5-6 (S.D.N.Y. Aug. 24, 2015) (dismissing unfair competition counterclaim as duplicative of breach of contract counterclaim where the "only basis for the claim that it ha[d] been wronged is the contractual relationship granting it the right to use RCA trademarks," and "[a]bsent that contractual right, it would have no claim at all to use of the trademarks and no legal ground for complaint regarding RCA's licensing of the trademarks to others[]"). "'It is well-settled . . . that no claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the 'implied' contractual

14

obligations asserted in the cause of action for breach of contract.'" RCA Trademark Mgmt.,
2015 WL 5008762, at *5 (quoting Orange County Choppers, Inc. v. Olaes Enterprises, Inc., 497
F. Supp. 2d 541, 558 (S.D.N.Y.2007)).

   "When a defendant breaches its contract with a plaintiff, that defendant may also
breach an independent duty in tort[, however,] if the defendant goes beyond a mere breach of the
contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the
plaintiff." Carvel Corp. v. Noonan, 350 F.3d 6, 16-17 (2d Cir. 2003) (holding that a jury could
conclude that defendant violated an independent duty in tort "by willfully causing damage to
[franchisees'] prospective business relationships," where the evidence demonstrated that
defendant instituted [a] coupon program for its gain, "at the cost of its franchisees," "with full
knowledge that doing so would damage [the franchisees'] relationships with their customers").
"A plaintiff may maintain tort claims in addition to a breach of contract claim only where 'a
legal duty independent of the contract itself has been violated.'" ScentSational Techs., 2017 WL
4403308, at *18 (quoting Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt.
LLC, 692 F.3d 42, 59 (2d Cir. 2012)); Carvel Corp., 350 F.3d at 16 ("Where the plaintiff and
defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort, the
plaintiff must prove that the defendant breached a duty 'independent' of its duties under the
contract; otherwise plaintiff is limited to an action in contract.").

   Here, Plaintiff's unfair competition claim against the Xerox Entities is not
predicated solely on the Xerox Entities' alleged breach of their contractual obligations not to use
or disclose Plaintiff's trade secrets. In addition to alleging that the Xerox Entities used and
disclosed Plaintiff's confidential information and trade secrets, Plaintiff claims that the Xerox
Entities "led Plaintiff to disclose its valuable intellectual property, trade secrets, and other

15

confidential information[]" under "the guise of forming a partnership with Plaintiff." (FAC

(Dkt. No. 40) ¶¶ 135-36) The Xerox Entities then "cut Plaintiff out of the joint bidding efforts"

while using Plaintiff's trade secrets to bid on and secure their own contracts, including an

integrated contract with one of Plaintiff's long-time customers – New York Waterway. (FAC

(Dkt. No. 40) ¶¶ 23, 33, 36, 135-36) These allegations of wrongful conduct extraneous to the

Confidentiality Agreements are sufficient to suggest "that [the Xerox Entities] ha[ve] done more

than simply fail to comply with the terms of the agreement[s], but rather ha[ve] undertaken

affirmative steps to intentionally harm [Plaintiff.]" See Reed Const. Data Inc. v. McGraw-Hill

Companies, Inc., 745 F. Supp. 2d 343, 348, 353 (S.D.N.Y. 2010) (denying motion to dismiss

because defendant's "use of deceit to access . . . and steal [plaintiff's] confidential information

and its subsequent use of that information to compete with [plaintiff] 'spring from circumstances

extraneous to'" the [nondisclosure] agreements, and violated a legal duty independent of the

agreements – namely, "the duty not to misappropriate the property of another" (citations

omitted)).

          Accepting Plaintiff's allegations as true, Plaintiff's unfair competition claim is not

duplicative of its breach of contract claim. See id.; Amphenol Corp. v. Paul, No. 3:12 Civ. 543

(AVC), 2013 WL 12251356, at \*7 (D. Conn. Mar. 28, 2013) ("While courts have dismissed

unfair competition claims for duplicating breach of contract claims, the instant case is

distinguishable. In the unfair competition claim, Amphenol has not simply reasserted that 'Paul

has breached and/or inevitably will breach the terms of the [Intellectual Property Agreement]

and/or Shareholder's agreements.' Rather, the complaint relies upon Paul's fraudulent and

deceptive misappropriation of Amphenol's confidential information without centering on the

contractual dispute between the parties. There are two distinct causes of action here."); Paysys

16

Int'l v. Atos SE, No. 14 Civ. 10105 (SAS), 2015 WL 4533141, at *4 (S.D.N.Y. July 24, 2015)

(denying motion to dismiss unfair competition claim because "[i]t [wa]s unclear from the face of

the Complaint if the factual overlap [with the breach of contract claim] [wa]s as extensive as

defendants suggest"); Cereus Prod. Dev., Inc. v. Boom LLC, No. 14 Civ. 4292 (PAC), 2015 WL

3540827, at *7 (S.D.N.Y. June 5, 2015) ("Plaintiff may proceed with tort claims in addition to its

breach of contract claim because it has alleged tortious conduct collateral to the contract. . . . The

complaint clearly alleges that Defendants spoke to Aero, pitched their business based on

information improperly gleaned from Plaintiff, and made misleading statements regarding the

stability of Plaintiff's business."); Albemarle Theatre, Inc. v. Bayberry Realty Corp., 27 A.D.2d

172, 174 (1st Dept. 1967) ("The amended complaint . . . contains allegations far beyond a mere

assertion of conspiracy by the defendants not to carry out the contract. It is alleged that the

defendant . . . in order to improve the operating position of other theatres owned by them and run

in competition to plaintiff's Albemarle Theatre . . . not only failed to operate the Albemarle

Theatre responsibly pursuant to the contract, but affirmatively, intentionally and wilfully [sic] set

out in conjunction with other defendants to destroy the value and utility of the Albemarle Theatre

henceforth as a theatre. Such allegations state a valid cause of action in tort against the

contracting parties."). Defendants' motion to dismiss Plaintiff's unfair competition claim against

the Xerox Entities will be denied.

### C.    Whether Plaintiff Has Alleged Bad Faith By Conduent and NJ Transit

Defendants have also moved to dismiss Plaintiff's unfair competition claim

against Conduent and NJ Transit on the grounds that Plaintiff has not pled facts demonstrating

that these Defendants acted in bad faith. (Def. Br. (Dkt. No. 52) at 44-47)

As noted above, "the gravamen of an unfair competition claim[, under New York

law,] is the bad faith misappropriation of a competitor's commercial advantage." MiniFrame
Ltd. v. Microsoft Corp., No. 11 Civ. 7419 (RJS), 2013 WL 1385704, at *8 (S.D.N.Y. Mar. 28,
2013) (citations omitted), aff'd, 551 F. App'x 1 (2d Cir. 2013); Fairfield Fin. Mortg. Grp., Inc. v.
Luca, 584 F. Supp. 2d 479, 488 (E.D.N.Y. 2008) ("'In a common law unfair competition claim
under New York law, the plaintiff must show . . . bad faith.'" (quoting Jeffrey Milstein, Inc. v.
Greger, Lawlor, Roth, Inc., 58 F.3d 27, 35 (2d Cir. 1995)).

        Here, the FAC alleges generally that all of the "Defendants acted in bad faith" by
leading Plaintiff "to disclose its valuable intellectual property, trade secrets, and other
confidential information[]" "[u]nder the guise of forming a partnership with Plaintiff." (FAC
(Dkt. No. 40) ¶ 136) "Defendants had no intention of partnering with Plaintiff, however, and
instead . . . cut Plaintiff out of the joint bidding efforts and improperly used and disclosed
Plaintiff's patents and trade secrets to bid on and secure their own contracts, including an
integrated transportation contract with New York Waterway." (Id.)

        It is true that the FAC's allegations of bad faith focus on ACS Transport, Xerox
Transport, and Xerox Corp. (See FAC (Dkt. No. 40) ¶¶ 29-35) The FAC alleges that
"[b]eginning in Spring 2012, Plaintiff entered into a series of [Confidentiality Agreements] . . .
with Xerox divisions ACS and Xerox Transport for the purpose of developing joint . . . bids
related to providing mobile ticketing solutions." (Id. ¶ 29) Pursuant to the Confidentiality
Agreements, Plaintiff disclosed its proprietary information "to the Xerox Entities," and after
Plaintiff did so, "the Xerox Entities cut Plaintiff out of a joint bidding effort and instead used . . .
Plaintiff's patents and trade secrets to bid and secure a contract with NJ Transit on their own."
(Id. ¶ 33) According to the FAC, the "Xerox Entities' actions indicate that they never intended
to partner with Plaintiff[;] [r]ather, their goal was to exploit Bytemark's efforts . . . for their own

18

commercial advantage." (Id. ¶ 34)

Conduent is the product of a 2017 divestiture from Xerox Corp. The components of Xerox Corp. that make up Conduent were part of Xerox Corp. in 2012 when the Confidentiality Agreements were entered into. (See id. ¶¶ 7-11, 14, 29-32) Accordingly, upon its formation in 2017, Conduent was aware that the Xerox Entities had misappropriated Plaintiff's trade secrets and confidential information. (See id. ¶¶ 14, 43, 52, 66, 82) Conduent nonetheless allegedly participated in the servicing, maintenance, and continued utilization and implementation of Plaintiff's proprietary technology. (Id. ¶¶ 35, 43, 82) Conduent, in collaboration with the Xerox Entities, is also alleged to have offered to provide New York Waterway – Plaintiff's longtime customer – with Plaintiff's proprietary technology. (Id. ¶ 36) These allegations are sufficient to demonstrate bad faith at this stage of the litigation. See, e.g., Capital Records, LLC v. Vimeo, LLC, No. 09 Civ. 10101 (RA), 2018 WL 1634123, at *5 (S.D.N.Y. Mar. 31, 2018) ("Plaintiffs have alleged red-flag knowledge. . . . [B]ad faith generally 'may be inferred from the [defendant's] actual or constructive knowledge of the [plaintiffs]' property right. . . ."); Apple Indus., Inc. v. Merit Indus., Inc., No. 07 Civ. 1216 (ADS) (ARL), 2008 WL 10665120, at *5 (E.D.N.Y. Feb. 29, 2008) ("If the plaintiffs allegations are viewed as true and Merit used Apple's proprietary information to its own advantage while excluding Apple from participation with full knowledge of the MCD Agreement, a reasonable finder of fact could find Merit liable for unfair competition.").

By contrast, the FAC's unfair competition claim contains no non-conclusory allegations as to NJ Transit. Although the FAC pleads that NJ Transit purchased mobile technology applications from the Xerox Entities, and allegedly helped the Xerox Entities sell this technology to New York Waterway (see FAC (Dkt. No. 40) ¶¶ 33, 35-36), Plaintiff has not pled

19

facts demonstrating that NJ Transit knew that the technology it purchased from the Xerox Entities – and helped sell to New York Waterway – was Plaintiff's technology. Accordingly, Plaintiff's bad faith misappropriation claim against NJ Transit fails.

## III.   UNJUST ENRICHMENT CLAIMS

### A.   Unjust Enrichment Under New York Law

Defendants argue that Count Nine – Plaintiff's claim for unjust enrichment under New York law – must be dismissed, because it is duplicative of Plaintiff's contract and tort claims. (Defs. Br. (Dkt. No. 52) at 48)

"The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012) (citations ómitted). Although "[i]n a broad sense, this may be true in many cases, . . . unjust enrichment is not a catchall cause of action to be used when others fail." Id. "[U]njust enrichment under New York law 'is an equitable claim that is unavailable where an adequate remedy at law exists.'" In re Gen. Motors LLC Ignition Switch Litig., 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (quoting Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V., 400 F. App'x 611, 613 (2d Cir. 2010)). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff[,]" as in cases "in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." Corsello, 18 N.Y.3d at 790. Accordingly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id.

Here, Count Nine is based on the same allegations set forth in support of

Plaintiff's claims for patent infringement, misappropriation of trade secrets, and breach of

contract. Indeed, the FAC alleges that, "[a]s a result of Defendants' unlawful conduct including

but not limited to their infringement of Plaintiff's Patents-in-Suit and misappropriation of

Plaintiff's trade secrets, Defendants have diverted substantial revenues from Plaintiff." (FAC

(Dkt. No. 40) ¶ 141) The FAC further states that "Defendants have and continue to use/and or

disclose Plaintiff's trade secrets and confidential information to develop and sell a competing

mobile ticketing platform," and that in doing so, Defendants have been unjustly enriched at

Plaintiff's expense "by saving the . . . time and cost that they would otherwise have had to incur

to develop their own mobile ticketing platform." (Id. ¶¶ 143-44)

Because (1) Plaintiff's unjust enrichment claim under New York law is based on

the same factual allegations underlying its contract and tort claims; and (2) Plaintiff has not

explained how its unjust enrichment claim differs from its contract and tort claims, Plaintiff's

unjust enrichment claim under New York law will be dismissed as duplicative of its contract and

tort claims. See, e.g., Cont'l Indus. Grp., Inc. v. Altunkilic, No. 14 Civ. 790 (AT) (JLC), 2018

WL 1508566, at *9 (S.D.N.Y. Mar. 27, 2018) ("Plaintiff's . . . submissions mentioned the unjust

enrichment theory in terms that restated other torts, specifically usurpation of corporate

opportunity and trade secret misappropriation. Plaintiff has not offered any theory explaining

how its unjust enrichment claim is distinct. . . . Where Plaintiff has 'fail[ed] to explain how [its]

unjust enrichment claim is not merely duplicative of their other causes of action,' it is not

cognizable." (citations omitted)); In re Gen. Motors, 257 F. Supp. 3d at 433 ("Plaintiffs' unjust

enrichment claims fail . . . [b]ecause they have adequate remedies at law. . . . '[T]he accusations

surrounding the plaintiff's unjust enrichment claim overlap with her fraud, fraudulent

concealment, express warranty, and [Section] 349 claims, all of which may proceed. She

therefore may not bring an unjust enrichment claim as a catch-all cause of action.'" (citations

omitted)); Sitt v. Nature's Bounty, Inc., No. 15 Civ. 4199 (MKB), 2016 WL 5372794, at *18

(E.D.N.Y. Sept. 26, 2016) ("Because Plaintiff's unjust enrichment claims under New York law

are based on the same allegations as her claims of violations of GBL sections 349 and 350 and

breach of express warranty under New York law, and because Plaintiff has not shown how her

unjust enrichment claim differs from her other New York claims, Plaintiff's unjust enrichment

claim . . . is duplicative."); Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 297 (S.D.N.Y.

2015) (same).

## B.    Unjust Enrichment Under New Jersey Law

Defendants have also moved to dismiss Count Ten – Plaintiff's claim for unjust

enrichment under New Jersey law – as against Conduent and NJ Transit. (Defs. Br. (Dtk. No.

52) at 48) Defendants argue that this claim must be dismissed, because Plaintiff has not pled

sufficient facts to establish a direct relationship between Plaintiff and either Conduent or NJ

Transit. (Id.)

"To establish unjust enrichment under New Jersey law, 'a plaintiff must show

both that defendant received a benefit and that the retention of that benefit without payment

would be unjust.'" M'Baye v. New Jersey Sports Prod., Inc., No. 06 Civ. 3439 (DC), 2007 WL

431881, at *12 (S.D.N.Y. Feb. 7, 2007) (quoting In re Rezulin Prod. Liab. Litig., 390 F. Supp. 2d

319, 342 (S.D.N.Y. 2005)). "[A] plaintiff must show that 'it expected remuneration from the

defendant at the time it performed or conferred a benefit on defendant and that the failure of

remuneration enriched defendant beyond its contractual rights.'" Eli Lilly & Co. v. Roussel

Corp., 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (quoting VRG Corp. v. GKN Realty Corp., 135

N.J. 539, 554 (1994)). "The benefit must [therefore] have been conferred on the defendant by

22

plaintiff, not by a third party." M'Baye, 2007 WL 431881, at *12 (citations omitted). Moreover, "absent a mistake by the person conferring the benefit, unjust enrichment claims [under New Jersey law] require 'some direct relationship between the parties.'" In re Rezulin Prod. Liab. Litig., 390 F. Supp. 2d at 343 (quoting Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 109 (App. Div. 1966)); Hughes v. Panasonic Consumer Elecs. Co., No. CIV.A. 10-846 (SDW), 2011 WL 2976839, at *27 (D.N.J. July 21, 2011) ("To support an unjust enrichment claim, there must be a direct relationship between the parties or there 'must be a mistake on the part of the person conferring the benefit.'" (quoting Fasching v. Kallinger, 211 N.J. Super. 26, 36 (App. Div. 1986)).

Here, Plaintiff alleges that it "shared its valuable intellectual property, trade secrets, and other confidential information with Defendants with the expectation of remuneration in the form of future joint ventures and business contracts," that Defendants unlawfully infringed and misappropriated Plaintiff's trade secrets, and that, as a result, "Defendants [were] unjustly enriched at Plaintiff's expense." (FAC (Dkt. No. 40) ¶¶ 149-53) The FAC does not plead facts demonstrating that Plaintiff conferred a benefit on, or entered into a business relationship with, Conduent or NJ Transit, however. While the FAC alleges that Plaintiff entered into a series of Confidentiality Agreements with the Xerox Entities – under which Plaintiff shared its confidential information with the Xerox Entities for the purpose of developing joint bids with them – the FAC contains no allegations suggesting that Plaintiff ever had any business relationship with Conduent or NJ Transit. (See id. ¶¶ 29-34) To the contrary, the FAC alleges that the Xerox Entities – not Plaintiff – disclosed Plaintiff's trade secrets and confidential information to NJ Transit "and other third parties" in breach of the Confidentiality Agreements.

23

(See id. ¶¶ 33-34, 39-40, 80-82)[3]

Because the FAC does not plead facts demonstrating that Plaintiff had a direct relationship with, or conferred a benefit on, Conduent or NJ Transit, Plaintiff's unjust enrichment claim under New Jersey law will be dismissed as to Conduent and NJ Transit. See, e.g., M'Baye, 2007 WL 431881, at *12 ("[P]laintiff asserts that the defendants were unjustly enriched by the money they received for 'promoting fighters who wrongfully usurped Plaintiff's status as Official Contender . . . at Plaintiff's expense.' The money received by Main Events and English, however, was not from plaintiff. Rather, any money that the defendants received came from a third party. . . . Here, plaintiff cannot establish that he conferred a benefit on either Main Events or English because he had no direct dealings with either of them. Accordingly, plaintiff's unjust enrichment claims against both Main Events and English are dismissed."); Fasching, 211 N.J. Super. at 36 ("Plaintiffs contend that . . . defendants allegedly 'cashed in' on plaintiffs'

---

[3] Plaintiff contends that the FAC's allegation "that 'Plaintiff shared its valuable intellectual property, trade secrets, and other confidential information with Defendants with the expectation of remuneration in the form of future joint ventures and business contracts'" is sufficient to establish a direct relationship between Plaintiff and both Conduent and NJ Transit. (See Pltf. Br. (Dkt. No. 54) at 36-37 (quoting FAC (Dkt. No. 40) ¶ 149)) Plaintiff's efforts to lump all of the Defendants together and impute the acts of the Xerox Entities to Conduent and NJ Transit is improper, however. See, e.g., Ochre LLC v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants. A plaintiff cannot merely 'lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct.'" (citations omitted)), aff'd, 530 F. App'x 19 (2d Cir. 2013); Appalachian Enterprises, Inc. v. ePayment Sols., Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) ("A plaintiff fails to satisfy [Fed. R. Civ. P.] 8, where the complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct' because such "allegations fail to give adequate notice to the[] defendants as to what they did wrong.'" (citations omitted)); Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd., No. 03 Civ. 7778 (DLC), 2004 WL 1328215, at *6 (S.D.N.Y. June 15, 2004) ("The Amended Complaint does not include a single factual allegation against Union Bank in support of any of [its negligence, money had and received, and conversion] claims. Instead, it lumps the three bank defendants together and asserts that they collectively processed the checks. This type of group pleading is inadequate to state a claim against Union Bank.")

24

misfortune and were unjustly enriched at plaintiffs' expense. Plaintiffs contend that had they known defendants were publishing a book they would have expected remuneration . . . No direct relationship existed between plaintiffs and defendants[, however]. Moreover, plaintiffs did not confer any benefit on defendants. Thus, even though plaintiffs assert that they would have expected payment had they known defendants were publishing [a book], this fact lacks legal significance in the absence of any benefit conferred by plaintiffs.").

## IV.    LEAVE TO AMEND

In its opposition brief, Plaintiff requests leave to amend in the event that Defendants' motion to dismiss is granted. (See Pltf. Br. (Dkt. No. 54) at 38)

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000), and leave to amend should generally be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may properly deny leave to amend, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Murdaugh v. City of New York, No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile."). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

25

Because Plaintiff has adequate remedies at law sounding in contract and tort, it is

clear that any amendment of Plaintiff's unjust enrichment claim under New York law would be

futile. Accordingly, leave to amend is denied as to Count Nine.

As to Plaintiff's unjust enrichment claim under New Jersey law, and its unfair

competition claim against NJ Transit, this Court cannot conclude that any amendment would be

futile. Accordingly, leave to amend will be granted. Plaintiff will file any Second Amended

Complaint by October 1, 2018.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part,

and denied in part. Plaintiff's request for leave to amend is granted. Any Second Amended

Complaint will be filed by October 1, 2018.

Dated: New York, New York
        September 2│, 2018

SO ORDERED.

Paul G. Gardephe
United States District Judge

26