**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:17-cv-01803-PGG |
| | § | JURY TRIAL PREVIOUSLY DEMANDED |
| XEROX CORP., ACS TRANSPORT | § | |
| SOLUTIONS, INC., XEROX | § | |
| TRANSPORT SOLUTIONS, INC., | § | |
| CONDUENT INC., and | § | |
| NEW JERSEY TRANSIT CORP., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT FOR PATENT INFRINGEMENT, TRADE SECRET
MISAPPROPRIATION, BREACH OF CONTRACT, INTERFERENCE WITH
BUSINESS RELATIONS, UNFAIR COMPETITION, AND UNJUST ENRICHMENT
AND
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Defendants, XEROX Corp., ACS Transport Solutions, Inc., XEROX Transport Solutions, Inc., Conduent Inc., and New Jersey Transit Corp.  ("Defendants"), hereby file their Answer to Plaintiff's Second Amended Complaint as set forth below.

**NATURE OF THE ACTION**

1.      This is an action for patent infringement under the Patent Act, trade secret misappropriation under New York state and federal law, trade secret misappropriation under the New Jersey Trade Secret Act, breach of contract, unfair competition, and unjust enrichment under New Jersey state law.

**ANSWER:    Admitted.**

## PARTIES

2.      Bytemark, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware with a place of business at 268 W 44th Street, 3rd Floor, New York, New York 10036.

**ANSWER:     Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 2, and therefore deny same.**

3.      Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open APIs. Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for consumers and merchants.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3, and therefore deny same.**

4.      On information and belief, Xerox is a New York domestic business corporation with its headquarters at 45 Glover Avenue, PO Box 4505, Norwalk, Connecticut 06850.

**ANSWER: Denied.  The corporate headquarters address for Xerox is 201 Merritt 7, Norwalk, Connecticut 06851.**

5.      Xerox conducts business throughout the U.S., including within the State of New York and within this District. On information and belief, at all relevant times Xerox was in the business of offering for sale and selling business services and document technology products.

**ANSWER: Admitted with regard to Xerox conducting business throughout the U.S., including within the State of New York.  Admitted that Xerox's business includes the sales of business services and document technology products.  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 5 with regard to what the Plaintiff considers "at all relevant times" as the Plaintiff has not adequately defined this time period.**

6.      On information and belief, Xerox was and continues to be the mastermind of the Xerox Entities: at all relevant times, Xerox made decisions for the Entities, and directed, implemented, and benefited from the unlawful activities pleaded within.

**ANSWER: Denied.**

**7.**      On information and belief, ACS Transport Solutions, Inc. is a Georgia domestic profit corporation with its principal office address at 2828 N Haskell Ave, Building 1 Floor 10, Dallas, Texas 75204.

**ANSWER: Denied. ACS Transport Solutions, Inc. was renamed Xerox Transport Solutions, Inc and subsequently renamed Conduent Transport Solutions, Inc.  Conduent Transport Solutions, Inc. is a Georgia domestic profit corporation with its principal office address at 100 Campus Drive, Florham Park, NJ 07932.**

8.      On information and belief, at all relevant times, ACS was a division of Xerox, subject to its complete direction and control and, in form and substance, one and the same as Xerox. ACS was founded in 1980. In February 2010, Xerox acquired ACS's parent organization, Affiliated Computer Services, LLC in its entirety. With this acquisition, Xerox— originally a

3

technology company—added a services operation and reorganized into two major divisions:

Xerox Technology and Xerox Services. Affiliated Computer Services served as Xerox's core

business process service, and, according to Xerox, the merging of the companies resulted in

"shared customers, efficiencies, and technological innovation." After the merger, Affiliated

Computer Services was known as "ACS, A Xerox Company" and "Xerox/ACS.".

**ANSWER: Denied.  However, it is admitted that Xerox acquired Affiliated**

**Computer Services, LLC in 2010.  Admitted that Affiliated Computer Services had a**

**subsidiary named ACS Transport Solutions, Inc.  Admitted that ACS was previously a**

**subsidiary of Xerox.  Defendants lack knowledge or information sufficient to form a belief**

**as to the allegations contained in Paragraph 8 with regard to what the Plaintiff considers**

**"at all relevant times" as the Plaintiff has not adequately defined this time period, and**

**therefore deny the same.  Denied as to the attempts to improperly characterize the post-**

**acquisition nature of Affiliated Computer Services and Xerox.**

9.      On information and belief, in 2016, Xerox split into two companies, "Conduent

Inc." and "Xerox Corp.," spinning off the services operation it acquired when it bought

Affiliated Computer Services in 2010.

**ANSWER:  Admitted to the extent that in 2016/2017 Xerox split into Conduent Inc.**

**and Xerox Corp.  Denied as to the characterization that the services split off were identical**

**to those acquired when Xerox when it bought Affiliated Computer Services in 2010.**

10.      On information and belief, Xerox Transport Solutions, Inc. is a Georgia domestic

profit corporation with its principal office address at 2828 N Haskell Ave, Building 1 Floor 10,

Dallas, Texas 75204.

**ANSWER: Denied.   ACS Transport Solutions, Inc. was renamed Xerox Transport Solutions, Inc., and subsequently renamed Conduent Transport Solutions, Inc.  Conduent Transport Solutions, Inc. is a Georgia domestic profit corporation with its principal office address at 100 Campus Drive, Florham Park, NJ 07932.**

11.     On information and belief, at all relevant times, Xerox Transport was a division of Xerox, subject to its complete direction and control and, in form and substance, one and the same as Xerox. Xerox Transport has undergone several name changes over the course of its existence. In January 2014, Xerox Transport changed its name to "ACS Transport Solutions, Inc.".

**ANSWER: Admitted that Xerox Transport Solutions, Inc. was previously a subsidiary of Xerox.  Denied that Xerox Transport Solutions, Inc. was a division of Xerox, subject to its complete direction and control and, in form and substance, one and the same as Xerox.  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 11 with regard to what the Plaintiff considers "at all relevant times" as the Plaintiff has not adequately defined this time period, and therefore deny the same.**

12.     On information and belief, at all relevant times the Xerox Entities' acts were, in both form and substance, those of Xerox and were directed and fully controlled by Xerox. Xerox's divisions consented to this relationship, owed a fiduciary duty to Xerox, and possessed the power to alter the legal relations between Xerox and third parties (e.g., to enter into contracts). ACS and Xerox Transport exercised a low amount of discretion, and the dealings between the entities were at arms length. Xerox carried the gain or risk, not its divisions. Moreover, there was an overlap in ownership, officers, directors, and personnel, with, e.g.,

employees of Xerox concurrently working for ACS, Xerox Transport, and/or Conduent. This includes employees who worked on the infringing MyTix mobile ticketing project for NJ Transit. Additionally, the Xerox Entities shared customers, efficiencies, and technological innovation. It is believed that the Xerox Entities shared common office space, address and/or phone numbers. It is also believed that the Xerox Entities' funds, profits, and property were intermingled; that the Entities were not treated as independent profit centers; that there was inadequate capitalization; that there was a disregard of corporate formalities; and that the other Entities' debts were guaranteed and paid by Xerox.

**ANSWER: Denied.**

13.     On information and belief, Conduent Inc. is a New York domestic business corporation with its Corporate Headquarters at 100 Campus Drive, Suite 200, Florham Park, New Jersey 07932.

**ANSWER: Admitted.**

14.     On information and belief, Conduent is a spinoff company of Xerox that formally came into existence in January 2017. Conduent was created following Xerox's separation into two publicly traded companies: the business process services company (which was named "Conduent Inc.") and the document technology company (which continues to be called "Xerox Corp.").

**ANSWER: Admitted.**

15.     On information and belief, NJ Transit is a New Jersey corporation with its Headquarters at 1 Penn Plaza East, Newark, New Jersey 07105.

**ANSWER: Admitted.**

16.    NJ Transit is a public transportation system and operates bus, light rail, and commuter trains throughout New York, New Jersey, and Pennsylvania.

**ANSWER: Admitted.**

## <u>JURISDICTION</u>

17.    This Court has subject matter jurisdiction under Title 28, United States Code, §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq. and the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.

**ANSWER: The allegations of paragraph 17 consist of legal conclusions to which no response is required. To the extent the Court deems a response is required, Defendants admit that the Complaint purports to state a cause of action arising under the Patent Laws of the United States and over which this Court has exclusive subject matter jurisdiction. Defendants deny that they are liable for infringement under such provisions.**

18.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

**ANSWER: The allegations of paragraph 18 consist of legal conclusions to which no response is required. To the extent the Court deems a response is required, Defendants admit that the Complaint purports to state a cause of action including state law claims under which this Court may have supplemental jurisdiction. Defendants deny that they are liable under any such provisions.**

7

19.     Venue in this judicial district is proper under Title 28, United States Code, §§ 1391 and 1400 because Defendants conduct business within this District and offer for sale and/or sell in this District applications and systems that infringe Plaintiff's patents. Additionally, venue is proper because Xerox and Conduent's principal places of business are in this District. Furthermore, a substantial part of the events or omissions giving rise to the claim occurred in this District: Bytemark negotiated and signed the Confidentiality Agreements (involving Xerox, ACS, Xerox Transport) in this District; all Defendants unlawfully used and/or disclosed Plaintiff's trade secrets and confidential information to prospective customers located and/or operating in this District; all Defendants infringed the Patents-in-Suit within this District; and all Defendants interfered with Plaintiff's business relationships in this District, including with Plaintiff's customer New York Waterway, which is located in this District. Bytemark's intellectual property and trade secrets, the property that is the subject of the action, are also situated in this District.

**ANSWER: The allegations of this paragraph consist of legal conclusions to which no response is required. Admitted solely with respect to venue being proper in the district. Denied with respect to alleged activities of Defendants.  Further, Plaintiff has failed to adequately identify what it believes to be "confidential information" and "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

20.     This Court has personal jurisdiction over Defendants because of Defendants' continuous and systematic contacts and business activities within the state of New York and within this District.

**ANSWER: Admitted.**

8

**BACKGROUND**

21.     Bytemark is the owner of all rights, title and interest in and to United States patent

Nos. 8,494,967 ("the '967 Patent"), attached hereto as Exhibit A, and 9,239,993 (The '993

Patent"), attached hereto as Exhibit B (collectively the "Patents-in-Suit").

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as
to the allegations contained in Paragraph 21, and therefore deny the same.**

22.     Bytemark offers for sale visual validation mobile ticketing applications and

systems disclosed and claimed by the Patents-in-Suit including but not limited to the V3

Ticketing Technology.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as
to the allegations contained in Paragraph 22, and therefore deny the same.**

23.     Bytemark has secured contracts relating to its V3 Ticketing Technology within

the mass transit industry, including a contract with its first and longtime customer New York

Waterway, the largest private ferry operator in the U.S.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as
to the allegations contained in Paragraph 23, and therefore deny the same.**

24.     Bytemark's contract with New York Waterway was highly publicized and well

known in the mobile ticketing market.

9

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 24, and therefore deny the same.**

25.     Bytemark is the owner of trade secrets and confidential information relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems. Bytemark's trade secrets include a unique compilation of proprietary information including mobile ticketing development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, backend application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm (the "trade secrets"). [Bytemark's technology disclosed and claimed in the Patents-in-Suit as well as the trade secret aspects of the technology are hereinafter referred to as "Bytemark's proprietary technology."].

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 25, and therefore deny the same.  Further, Plaintiff has failed to adequately identify with particularity "confidential information" or "trade secrets" whatsoever and as such Defendants cannot properly form a belief as to the allegations.**

26.     Bytemark's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26, and therefore deny the same.  Further,**

Plaintiff has failed to adequately identify any "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.

27.    Bytemark has taken reasonable measures to keep its trade secrets and other confidential information secret. Bytemark only discloses its trade secrets when necessary, and only to those who agree to keep the information secret by signing confidentiality agreements. Bytemark has ensured that any and all potential third parties to whom trade secrets and/or confidential information were disclosed were provided with, and signed, confidentiality agreements, including teaming agreements and NDAs. Furthermore, all Bytemark employees sign employment agreements that contain confidentiality provisions relating to Bytemark's intellectual property and undergo employee training with respect to maintaining the confidentiality of Bytemark's intellectual property including its trade secrets and other confidential information. All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted using the latest versions of MacOS X, iOS 10, Android 6 & 7. Additionally, all documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 27, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "confidential information" or "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

28.    Bytemark's trade secrets are valuable and crucial to the implementation of its business and competitive market position and it has invested substantial time, effort, and money in developing its trade secrets. Since its founding in 2011, Bytemark has invested and continues

11

to invest millions of dollars into research and development and implementation of its trade-secret protected systems.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 28, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

29.     Beginning in Spring 2012, Plaintiff entered into a series of Nondisclosure Agreements ("NDAs") and Teaming Agreements (collectively "the Confidentiality Agreements") with Xerox divisions ACS and Xerox Transport for the purpose of potentially developing joint proposals and/or bids related to providing mobile ticketing solutions to prospective clients in the mass transit industry. On information and belief, ACS and Xerox Transport were subject to Xerox's complete direction and control and, were in form and substance, one and the same as Xerox at the time the Confidentiality Agreements were signed. The NDAs and Teaming Agreements between Bytemark and ACS identify ACS as "A Xerox Company," and the NDAs between Bytemark and Xerox Transport feature the "Xerox" logo.

**ANSWER: Admitted that agreements were entered into between Plaintiff and ACS Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Admitted that agreements were entered into between Plaintiff and Xerox Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Denied with regard to the remaining allegations and to the generalized description of these agreements as well as the mischaracterization of the control and relationship of ACS Transport Solutions and Xerox.**

30.     Pursuant to the Confidentiality Agreements, the parties agreed that no title, license, intellectual property rights, or any other right of ownership or use shall be granted (expressly, by implication, or by estoppel) to the receiving party under any patent, trademark, copyright, or trade secret owned or controlled by the disclosing party by the disclosure of proprietary information.

**ANSWER:  Admitted that agreements were entered into between Plaintiff and ACS Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Admitted that agreements were entered into between Plaintiff and Xerox Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Denied to the extent the allegation attempts to provide a construction of the language of the individual agreements.**

31.     While protected by the Confidentiality Agreements, Bytemark disclosed its trade secrets and confidential information to the Xerox Entities on numerous occasions between 2012 and 2015.

**ANSWER: Denied.**

32.     Over the years and while covered by the Confidentiality Agreements, Bytemark has refined and developed its trade secret protected mobile ticketing technologies and systems and competitive knowledge in management and service of these technologies and systems, which were disclosed to the Xerox Entities.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 32, and therefore deny the same.  Further,**

13

**Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

33.     After Plaintiff disclosed its trade secrets and other confidential information to the Xerox Entities, the Xerox Entities cut Plaintiff out of a joint bidding effort and instead used and/or disclosed Plaintiff's patents and trade secrets to bid and secure a contract with NJ Transit on their own.

**ANSWER: Denied.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

34.     The Xerox Entities' actions indicate that they never intended to partner with Plaintiff. Rather, their goal was to exploit Bytemark's efforts and use Bytemark's proprietary technology for their own commercial advantage.

**ANSWER: Denied**

35.     The Xerox Entities offered for sale and sold their infringing visual validation applications and systems, including the exemplary product/system the MyTix mobile application incorporating Bytemark's proprietary technology, to NJ Transit in Newark, New Jersey. Upon its formation, Conduent participated and continues to participate in the servicing, maintenance, and continued implementation of Bytemark's proprietary technology.

**ANSWER: Denied.   Further, Plaintiff has failed to adequately identify any particular "proprietary technology" and as such Defendants cannot properly form a belief as to the allegations.**

14

36.    On information and belief, NJ Transit developed a cooperative transportation strategy wherein NJ Transit and New York Waterway would offer integrated bus and ferry services to transportation passengers. As part of this scheme, NJ Transit, in collaboration with the Xerox Entities and Conduent, offered to provide New York Waterway with Bytemark's proprietary technology.

**ANSWER: Denied.  Further, Plaintiff has failed to adequately identify any particular "proprietary technology" and as such Defendants cannot properly form a belief as to the allegations.**

37.    At all relevant times, NJ Transit knew that the mobile ticketing technology and services that it purchased and contracted for from the Xerox Entities—and conspired to sell to New York Waterway—belonged to Plaintiff. NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade secret, and patent-protected property. NJ Transit was fully aware that the trade secrets technology and the patent-claimed aspects of the technology were owned by Plaintiff because the technology was originally presented to NJ Transit as a collaborative project involving both the Xerox Entities and Plaintiff, wherein the parties would use Plaintiff's technology. Plaintiff was later cut out of the bidding process.

**ANSWER: Denied.  Further, Plaintiff has failed to adequately identify any particular "confidential trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

38.    Defendants are offering for sale and selling their visual validation mobile ticketing applications and systems including the MyTix mobile application that infringe at least

claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent literally and/or under

the doctrine of equivalents and at least claim 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17,

22, 23, and 24 of the '933 patent literally and/or under the doctrine of equivalents.

**ANSWER: Denied.**

39.     Defendants materially breached the Confidentiality Agreements by using and/or

disclosing Bytemark's trade secrets and other confidential information to NJ Transit and other

third parties and using Bytemark's intellectual property for their own gain.

**ANSWER: Denied.**

40.     In addition to misappropriating Plaintiff's trade secrets and other confidential

information in breach of the Confidentiality Agreements, Defendants have recently begun

interfering with Plaintiff's business relationship and current and prospective contracts with

Plaintiff's longtime customer, New York Waterway.

**ANSWER: Denied**.

41.     Defendants have offered to sell their infringing visual validation applications and

systems and implementations that use Bytemark's trade secrets to New York Waterway as part

of an integrated transportation contract.

**ANSWER: Denied**.

42.     As a result, Plaintiff's existing contract with New York Waterway, which was

supposed to be renewed in accordance with the terms of the original agreement in early 2017,

has not been extended. Instead, New York Waterway informed Bytemark that it had a better deal

with Defendants. Only after Bytemark initiated this action did New York Waterway agree to temporary short-term extensions to the contract.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 42, and therefore deny the same.**

43.     On or about January 2015, Plaintiff notified the Xerox Entities and NJ Transit of their infringement and misappropriation. Conduent, upon its formation, had knowledge of the infringement as well. Despite this notice, Defendants have continued to use and offer for sale Bytemark's proprietary technology.

**ANSWER: Denied.  Further, Plaintiff has failed to adequately identify any particular "proprietary technology" and as such Defendants cannot properly form a belief as to the allegations.**

## COUNT ONE
## <u>INFRINGEMENT OF U. S. PATENT NO. 8,494,967</u>

44.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-43 herein.

**ANSWER:  Defendants hereby incorporate by reference the preceding answers.**

45.     Plaintiff alleges infringement of all the same claims by all of the Defendants using mobile ticketing systems, including the MyTix mobile application, that include a method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker and all claim elements recited in claims 1-6. See Exhibit A.

**ANSWER:  Admitted that Plaintiff is making said allegations.  With regard to the remainder of this paragraph, denied as to the substance and merit of these allegations.**

46.     Plaintiff alleges infringement of all the same claims by all of the Defendants using mobile ticketing systems, including the MyTix mobile application, that include a non-transitory computer readable data storage medium containing computer program code that when loaded and executed by a computer system causes the computer system to perform a method for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker and all claims elements recited in claim 17. See Exhibit A.

**ANSWER:  Admitted that Plaintiff is making said allegations.  With regard to the remainder of this paragraph, denied as to the substance and merit of these allegations.**

47.     Plaintiff alleges infringement of all the same claims by all of the Defendants using mobile ticketing systems, including the MyTix mobile application, that include a system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker comprising one or more computers operatively connected that are configured to carry out the claim elements of claims 18-23 and claim 34. See Exhibit A.

**ANSWER:  Admitted that Plaintiff is making said allegations.  With regard to the remainder of this paragraph, denied as to the substance and merit of these allegations.**

18

48.     Xerox was and continues to be the mastermind of the Xerox Entities: at all relevant times, it made decisions for the Entities, and directed, implemented, and benefited from their infringement of the Patents-in-Suit.

**ANSWER:     Denied.  In addition, Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 48 with regard to what the Plaintiff considers "at all relevant times" as the Plaintiff has not adequately defined this time period, and therefore deny same.**

49.     NJ Transit implemented the infringing MyTix system while fully aware that doing so would infringe the asserted claims of the Patents-in-Suit.

**ANSWER: Denied.**

50.     Pursuant to 35 U.S.C. § 271(a), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications including the exemplary product/system the MyTix mobile application in the State of New York and elsewhere in the U.S.

**ANSWER:  Denied.**

51.     In violation of 35 U.S.C. § 271(b), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent indirectly by inducing the infringement of the '967 patent claims by third parties including but not limited to New York Waterway and its

customers by encouraging these customers and others to purchase and use the infringing systems and applications including the MyTix mobile application.

**ANSWER: Denied.**

52.      On or about January 2015, Plaintiff notified the Xerox Entities and NJ Transit of their infringing activities with respect to the '967 patent. Conduent, upon its formation, had knowledge of the infringement as well.

**ANSWER: Denied.**

53.      Despite actual notice of infringement, Defendants continue to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for their infringing applications with the knowledge or willful blindness that their conduct will induce their customers to infringe the '967 patent's asserted claims.

**ANSWER: Denied.**

54.      In violation of 35 U.S.C. § 271(c), the Xerox Entities have infringed and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent indirectly by contributing to the infringement of the '967 Patent's claims, including but not limited to NJ Transit and its customers.

**ANSWER: Denied.**

55.      Defendants have contributed and continue to contribute to the infringement of at least claims 1, 2, 3, 4, 5, 6, 17, 18, 19, 20, 21, 22, 23, and 34 of the '967 patent because they knew that the applications and systems they offer for sale and sell, including but not limited to

the MyTix mobile application, are infringing and are not suitable for substantial non-infringing use.

**ANSWER: Denied.**

56.    As a result of Defendants' infringement of the '967 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**ANSWER: Denied.**

57.    Defendants' infringement of the '967 patent has been deliberate, willful and with full knowledge, or willful blindness to knowledge, of the '967 patent.

**ANSWER: Denied.**

58.    Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '967 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendants from continuing such infringement.

**ANSWER: Denied.**


**COUNT TWO**
**INFRINGEMENT OF U. S. PATENT NO. 9,239,993**

59.    Plaintiff incorporates by reference herein the allegations set forth in paragraphs 1-58 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

60.    Plaintiff alleges infringement of all the same claims by all of the Defendants using mobile ticketing systems, including the MyTix mobile application, that include a method performed by a computer system for displaying visual validation of the possession of a previously purchased electronic ticket for utilization of a service monitored by a ticket taker and all claims elements recited in claims 1-7. See Exhibit B.

**ANSWER:  Admitted that Plaintiff is making said allegations.  With regard to the remainder of this paragraph, denied as to the substance and merit of these allegations.**

61.    Plaintiff alleges infringement of all the same claims by all of the Defendants using mobile ticketing systems, including the MyTix mobile application, that include a system for validating previously purchased electronic tickets for utilization of a service monitored by a ticket taker that includes all claim elements recited in claims 8-17, 22-24. See Exhibit B.

**ANSWER:  Admitted that Plaintiff is making said allegations.  With regard to the remainder of this paragraph, denied as to the substance and merit of these allegations.**

62.    Xerox was and continues to be the mastermind of the Xerox Entities: at all relevant times, it made decisions for the Entities, and directed, implemented, and benefited from their infringement of the Patents-in-Suit.

**ANSWER: Denied.  Further, Plaintiff has failed to adequately define "mastermind" and as such Defendants cannot properly form a belief as to the allegations.**

63.    NJ Transit implemented the infringing MyTix system while fully aware that doing so would infringe the asserted claims of the Patents-in-Suit.

**ANSWER: Denied.**

64.     Pursuant to 35 U.S.C. § 271(a), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications and systems including the exemplary products/systems the MyTix mobile application in New York and elsewhere in the U.S.

**ANSWER: Denied.**

65.      In violation of 35 U.S.C. § 271(b), Defendants have infringed, and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent indirectly by inducing the infringement of the '993 patent's claims by third parties including but not limited to New York Waterway and its customers by encouraging these customers and others to purchase and use the infringing systems and applications including the MyTix mobile application.

**ANSWER: Denied.**

66.     On or about January 2015, Plaintiff notified the Xerox Entities and NJ Transit of their infringing activities with respect to the '993 patent. Conduent, upon its formation, had knowledge of the infringement as well.

**ANSWER: Denied.**

67.     Despite actual notice of infringement, Defendants continue to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for their infringing applications with

23

the knowledge or willful blindness that their conduct will induce their customers to infringe the '993 patent's asserted claims.

**ANSWER: Denied.**

68.     In violation of 35 U.S.C. § 271(c), the Xerox Entities have infringed and are continuing to infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent indirectly by contributing to the infringement of the '993 patent's asserted claims by NJ Transit and its customers.

**ANSWER: Denied.**

69.     Defendants have contributed and continue to contribute to the infringement of at least claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 22, 23, and 24 of the '993 patent because they knew that the applications and systems they offer for sale and sell, including but not limited to the MyTix mobile application, are infringing and are not suitable for substantial non-infringing use.

**ANSWER: Denied.**

70.     As a result of Defendants' infringement of the '993 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

**ANSWER: Denied.**

71.     Defendants' infringement of the '993 patent has been deliberate, willful and with full knowledge, or willful blindness to knowledge, of the '993 patent.

24

**ANSWER: Denied.**

72.     Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendants' willful infringement of the '993 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendants from continuing such infringement.

**ANSWER: Denied.**

**COUNT THREE**
**BREACH OF CONTRACT UNDER NEW YORK LAW**
**(Against Defendants Xerox, ACS, and Xerox Transport)**

73.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-72 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

74.     Beginning in Spring 2012, Plaintiff entered into a series confidentiality agreements with the Xerox Entities for the limited purpose of potentially developing joint proposals and/or bids relating to providing mobile ticketing solutions to prospective customers in the mass transit industry.

**ANSWER.  Admitted that agreements were entered into between Plaintiff and ACS Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Admitted that agreements were entered into between Plaintiff and Xerox Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Denied with regard to the attempt to universally characterize the individual agreements.**

75.     These Confidentiality Agreements include the April 3, 2012 NDA between Bytemark and ACS; the December 7, 2012 NDA between Bytemark and ACS; the January 31, 2013 NDA between Bytemark and ACS; the February 7, 2013 NDA between Bytemark and

ACS; the November 8, 2013 NDA between Bytemark and ACS; the September 18, 2015 NDA between Bytemark and Xerox Transport; the WMATA NEPP mobile ticketing solution Teaming Agreement between Bytemark and ACS; and the Virginia Railway Teaming Agreement between Bytemark and ACS.

**ANSWER:  Admitted that agreements were entered into between Plaintiff and ACS Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Admitted that agreements were entered into between Plaintiff and Xerox Transport Solutions, Inc. (at the time a subsidiary of Xerox).**

76.     Under the NDAs, the parties agreed that any trade secrets or other confidential information shall remain the property of the originating party (Paragraph 5) and that the Xerox Entities had a duty to exercise all reasonable care to preserve and protect Plaintiff's trade secrets and other confidential information from unauthorized access, use, disclosure, or theft; to restrict access to only those who agreed to be bound by the terms and conditions of the Confidentiality Agreements; to not reproduce Plaintiff's proprietary information in any form except as necessary to accomplish the NDA's intent; and to inform Plaintiff if the Xerox Entities became aware of any unauthorized access, use, disclosure, or theft of the proprietary information (Paragraph 6).

**ANSWER:  Admitted that agreements were entered into between Plaintiff and ACS Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Admitted that agreements were entered into between Plaintiff and Xerox Transport Solutions, Inc. (at the time a subsidiary of Xerox).  Denied with regard to the attempt to universally characterize the individual agreements.  Denied with regard to the allegation that the agreements were between "Xerox Entities" as opposed to the specific parties in each specific agreement.**

26

**Further, Plaintiff has failed to adequately identify any particular trade secret or proprietary information and as such Defendants cannot properly form a belief as to the allegations.**

77.     Under the Teaming Agreements, the parties agreed that the inventions shall remain the property of the originating party (Paragraph 10) and that disclosure and protection of proprietary information under the agreements shall be subject to the terms and conditions of the referenced NDAs (Paragraph 11).

**ANSWER: Admitted that the teaming agreements as cited in Paragraph 75 were entered into between Plaintiff and ACS Transport Solutions, Inc. (at the time a subsidiary of Xerox).  With regard to the remainder of this paragraph, denied with respect to the substance of the agreements.  Further, Plaintiff has failed to adequately identify any particular "proprietary information" and as such Defendants cannot properly form a belief as to the allegations.**

78.     On information and belief, ACS and Xerox Transport's acts were, in both form and substance, those of Xerox and were directed and fully controlled by Xerox at the time the Confidentiality Agreements were signed. At the time the Confidentiality Agreements were signed and at all relevant times thereafter, ACS was a division of Xerox and subject to its complete control. ACS was known as "ACS, A Xerox Company" and "Xerox/ACS." The NDAs and Teaming Agreements between Bytemark and ACS identify ACS as "A Xerox b Company," and the NDAs between Bytemark and Xerox Transport feature the "Xerox" logo. Similarly, Xerox Transport was a division of Xerox and subject to its complete control.

27

**ANSWER:  Denied.  ACS Transport Solutions, Inc. was previously a subsidiary of Xerox.  ACS Transport Solutions, Inc. was renamed Xerox Transport Solutions, Inc and continued under this name as a subsidiary of Xerox.  After the separation of Xerox and Conduent in 2017, Xerox Transport Solutions, Inc. was renamed Conduent Transport Solutions, Inc.  Regarding the remainder of this paragraph, denied as the Plaintiff has failed to define "all relevant times."**

79.     On information and belief, at all relevant times ACS and Xerox Transport consented to their relationship with Xerox, owed a fiduciary duty to Xerox, and possessed the power to alter the legal relations between Xerox and third parties (e.g., to enter into contracts). ACS and Xerox Transport were fully controlled by Xerox, exercised a low amount of discretion, and the dealings between them were at arms length. Xerox, and not its divisions, carried the gain or risk. Moreover, there was an overlap in ownership, officers, directors, and personnel, with, e.g., employees of Xerox concurrently working for ACS, Xerox Transport, and/or Conduent. This includes employees who worked on the infringing MyTix mobile ticketing project for NJ Transit. Additionally, the Xerox Entities shared customers, efficiencies, and technological innovation. It is believed that the Xerox Entities shared common office space, address and/or phone numbers. It is also believed that the Xerox Entities' funds, profits, and property were intermingled; that the Entities were not treated as independent profit centers; that there was inadequate capitalization; that there was a disregard of corporate formalities; and that the other Entities' debts were guaranteed and paid by Xerox.

**ANSWER:  Denied.**

28

80.     Under the protection of the Confidentiality Agreements, Plaintiff disclosed its trade secrets and other confidential information to the Xerox Entities.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 80, and therefore deny same.**

81.     The Xerox Entities breached the above-named Confidentiality Agreements by using and/or disclosing Plaintiff's trade secrets and other confidential information to outside parties without Plaintiff's consent, and solely for the Xerox Entities' own benefit.

**ANSWER: Denied.**

82.     The Xerox Entities have used Plaintiff's trade secrets and confidential information in their contract with NJ Transit, and NJ Transit, the Xerox Entities, and Conduent are using and/or disclosing Plaintiff's trade secrets and confidential information in an attempt to gain an integrated transportation contract with New York Waterway.

**ANSWER: Denied.**

83.     As a result of the Xerox Entities' breach, Plaintiff has suffered damages in an amount to be determined at trial.

**ANSWER: Denied.**

## COUNT FOUR
## VIOLATION OF THE DEFEND TRADE SECRETS ACT
### (As to All Defendants)

84.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-83 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

85.    The actions of Defendants as described above constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016, 130 Stat 376, which amends the Economic Espionage Act, 18 U.S.C. § 1831 et seq.

**ANSWER: Denied.**

86.    Plaintiff is the owner of trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems. Bytemark's trade secrets include a compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 86, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

87.    Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others. It is for this reason that Xerox, a large multinational corporation, and the other Xerox Entities sought to partner with Bytemark, a small start-up company with no assets other than its possession of this valuable, unknown and unduplicatable information and its demonstrated success in creating and achieving the implementation of its systems.

**ANSWER:  Denied as to the allegations regarding Xerox motivations.  For the remaining allegations Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 87, and therefore deny the same.**

88.     At all times, Plaintiff has taken reasonable and extensive efforts to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, and employee training. All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted. Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 88, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

89.     At no time did Plaintiff consent to Defendants' use or disclosure of its trade secrets or confidential information for any purpose.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 89, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "confidential information" or "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

90.     Plaintiff's trade secrets constitute independent economic value. Since its founding in 2011, Bytemark has invested and continues to invest millions of dollars into research and development and implementation of the trade-secret protected systems, including the V3

ticketing system used by New York Waterway. Bytemark has also invested and continues to invest significant economic resources into refining these systems.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 90, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

91.     Plaintiff's trade secrets are crucial to the success of the implementation, operation, and maintenance of Bytemark's proprietary technology and provide a decisive competitive advantage to Bytemark and to anyone else with access to this information. Bytemark's trade secrets provide the company with a critical market advantage in attracting new contracts, and it is for this reason that the Xerox Entities sought to partner with Plaintiff.

**ANSWER:  Denied as to the allegations regarding Xerox motivations.  For the remaining allegations Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 91, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "proprietary information" and as such Defendants cannot properly form a belief as to the allegations.**

92.     The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust—in which they represented to Plaintiff that they would be business partners and would not divulge Plaintiff's confidential information, and by way of the Confidentiality Agreements— which imposed a duty upon the Xerox Entities to maintain the confidentiality of Bytemark's confidential information and trade secrets and to not improperly use and/or disclose confidential

information and trade secrets belonging to Plaintiff. At all relevant times, the Xerox Entities

knew about the confidential nature of Plaintiff's trade secrets.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 92, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "confidential information" or "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

93.     The Xerox Entities misappropriated Plaintiff's trade secrets by improper means in violation of the Confidentiality Agreements by using the secrets and continuing to use them for their own economic benefit.

**ANSWER:  Denied.**

94.     The Xerox Entities have intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continue to do so, in breach of the Confidentiality Agreements and in violation of a confidential relationship and duty. The Xerox Entities' misappropriation of Plaintiff's trade secrets and confidential information has been ongoing. Plaintiff's knowledge and information have evolved since the parties began their partnership, and the Xerox Entities have continuously misused and/or disclosed Plaintiff's information throughout all stages of its evolution and development.

**ANSWER:  Denied.**

95.     Conduent has also intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continues to do so. Conduent's use of Plaintiff's trade secrets was the result of discovery by improper means

because at all relevant times, Conduent knew about the confidential nature of Plaintiff's trade secrets, and the Xerox Entities shared and/or disclosed the information to Conduent in breach of the Confidentiality Agreements and in violation of a confidential relationship and duty to Plaintiff.

**ANSWER: Denied**.

96.     The Xerox Entities and Conduent continue to misuse and/or disclose Plaintiff's trade secrets and confidential information in their attempt to interfere with Plaintiff's current and prospective contracts with New York Waterway. The Xerox Entities' and Conduent's misuse and/or disclosure of Plaintiff's trade secrets with regard to New York Waterway occurred as recently as January 2017.

**ANSWER: Denied.**

97.     At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property. NJ Transit's use of Plaintiff's trade secrets was the result of discovery by improper means because, on information and belief, NJ Transit knew of Plaintiff's dispute with Xerox and was aware that the Xerox Entities acquired Plaintiff's trade secrets by improper means and in violation of the parties' Confidentiality Agreements, and the Xerox Entities disclosed the information to NJ Transit in breach of the Confidentiality Agreements and in violation of a confidential relationship and duty to Plaintiff.

**ANSWER: Denied.  Further, Plaintiff has failed to adequately identify any particular "proprietary, trade-secret" property and as such Defendants cannot properly form a belief as to the allegations.**

98.     As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss.

**ANSWER: Denied.**

### COUNT FIVE
### <u>MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK LAW</u>
### (As to All Defendants)

99.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-98 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

100.     The actions of Defendants as described above constitute violations of New York common law.

**ANSWER: Denied.**

101.     Plaintiff is the owner of trade secrets relating to the design of applications and technical support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems. These trade secrets include a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 101, and therefore deny the same.  Further,**

**Plaintiff has failed to adequately identify any particular "proprietary mobile ticket development technology and know-how" and as such Defendants cannot properly form a belief as to the allegations.**

102.    Plaintiff's trade secrets are not generally known or readily ascertainable nor could they be properly acquired or duplicated by others. It is for this reason that Xerox, a large multinational corporation, and the other Xerox Entities sought to partner with Bytemark, a small start-up company with no assets other than its possession of this vital, unknown and unduplicatable information and its demonstrated success in creating and achieving the implementation of its systems.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 102, and therefore deny the same.  Further, denied are the unfounded allegations regarding Xerox or Xerox Entities motivations.**

103.    At all times, Plaintiff has taken reasonable and extensive efforts to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, and employee training. All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted. Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 103, and therefore deny the same.   Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

104.    Plaintiff's trade secrets constitute independent economic value. Since its founding in 2011, Bytemark has invested and continues to invest millions of dollars into research and development and implementation of the trade-secret protected systems, including the V3 ticketing system used by New York Waterway. Plaintiff has also invested and continues to invest significant economic resources into refining these systems.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 104, and therefore deny the same.  Further,**

36

**Plaintiff has failed to adequately identify any particular "trade-secret protected systems" and as such Defendants cannot properly form a belief as to the allegations.**

105.    Plaintiff's trade secrets are crucial to the success of the implementation, operation, and maintenance of Bytemark's proprietary technology and provide a decisive competitive advantage to Bytemark and to anyone else with access to this information. Bytemark's trade secrets provide the company with a critical market advantage in attracting new contracts, and it is for this reason that the Xerox Entities agreed to partner with Plaintiff.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 105, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

106.    The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust—in which they represented to Plaintiff that they would be business partners and would not divulge Plaintiff's confidential information, and by way of the Confidentiality Agreements—which imposed a duty upon the Xerox Entities to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff. At all relevant times, the Xerox Entities knew about the confidential nature of Plaintiff's trade secrets.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 105, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "confidential information" or "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

107.    The Xerox Entities misappropriated Plaintiff's trade secrets by using and/or disclosing them for their own economic benefit to secure a contract for providing mobile ticketing services to NJ Transit in violation of the Confidentiality Agreements.

**ANSWER: Denied.**

108.    The Xerox Entities have intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continue to

do so, in breach of the Confidentiality Agreements and in violation of a confidential relationship and duty. The Xerox Entities' misappropriation of Plaintiff's trade secrets and confidential information has been ongoing. Plaintiff's knowledge and information have evolved since the parties began their partnership, and the Xerox Entities have continuously misused and/or disclosed Plaintiff's information throughout all stages of its evolution and development.

**ANSWER: Denied.**

109.     Conduent has also intentionally, willfully, and maliciously misused trade secrets and/or confidential or proprietary information or knowledge of Bytemark, and continues to do so. Conduent's use of Plaintiff's trade secrets was the result of discovery by improper means because at all relevant times, Conduent knew about the confidential nature of Plaintiff's trade secrets, and the Xerox Entities shared and/or disclosed the information to Conduent in breach of the Confidentiality Agreements and in violation of a confidential relationship and duty to Plaintiff.

**ANSWER: Denied.**

110.     The Xerox Entities and Conduent continue to misuse and/or disclose Plaintiff's trade secrets and confidential information in their attempt to interfere with Plaintiff's current and prospective contracts with New York Waterway. The Xerox Entities' and Conduent's misuse and/or disclosure of Plaintiff's trade secrets with regard to New York Waterway occurred as recently as January 2017.

**ANSWER: Denied.**

111.     At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property. NJ Transit's use of Plaintiff's trade secrets was the result of discovery by improper means because, on information and belief, NJ Transit knew of Plaintiff's dispute with Xerox and was aware that the Xerox Entities acquired Plaintiff's trade secrets by improper means and in violation of the parties' Confidentiality Agreements, and the Xerox Entities disclosed the information to NJ Transit in breach of the Confidentiality Agreements and in violation of a confidential relationship and duty to Plaintiff.

**ANSWER: Denied.**

112.     As a consequence of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm and loss.

**ANSWER: Denied.**


### COUNT SIX
### MISAPPROPRIATION OF TRADE SECRETS UNDER
### NEW JERSEY TRADESECRET ACT
### (As to All Defendants)

113.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1-84 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

114.     The actions of Defendants as described above constitute violations of the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 et seq.

**ANSWER: Denied.**

115.     Plaintiff is the owner of trade secrets relating to the design of applications and Techni al support systems and back-end management technical support and service of its V3 Ticketing Technology and related systems. These trade secrets include a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 115, and therefore deny the same.  Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

116. At all times, Plaintiff has taken reasonable efforts and precautions to keep its trade secrets secret through the use of Confidentiality Agreements, employment agreements, and employee training. All of Bytemark's trade secrets are stored on secure servers and are password-protected and encrypted. Additionally, documents containing Bytemark's trade secrets are clearly marked as "Confidential" and/or "Proprietary."

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 116, and therefore deny the same. Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

117. At no time did Plaintiff consent to Defendants' use or disclosure of its trade secrets or confidential information for any purpose.

**ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 117, and therefore deny the same. Further, Plaintiff has failed to adequately identify any particular "trade secrets" and as such Defendants cannot properly form a belief as to the allegations.**

118. The Xerox Entities acquired Plaintiff's trade secrets through a relationship of trust, in which they represented to Plaintiff that they would be business partners and would not divulge Plaintiff's confidential information, and by way of the Confidentiality Agreements, which imposed a duty upon the Xerox Entities to not improperly use and/or disclose confidential information and trade secrets belonging to Plaintiff. Thus, the Xerox Entities are, and at all relevant times were, aware of the confidential nature of Plaintiff's trade secrets and that disclosure of the information would be improper.

**ANSWER: Denied.**

119.    At all relevant times, Conduent was aware of the confidential nature of Plaintiff's trade secrets, that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property, and that disclosure of the information would be improper.

**ANSWER: Denied.**

120.    The Xerox Entities and Conduent have misappropriated Plaintiff's confidential information and trade secrets by using and/or disclosing such confidential information and trade secrets by improper means for their own personal gain with NJ Transit and others.

**ANSWER: Denied.**

121.    NJ Transit similarly misappropriated Plaintiff's trade secrets. On information and belief, NJ Transit developed a cooperative transportation strategy wherein NJ Transit and longtime Bytemark customer New York Waterway would offer integrated bus and ferry services to transportation passengers. As part of this scheme, NJ Transit, in collaboration with the Xerox Entities and Conduent, offered to provide New York Waterway with Bytemark's proprietary technology.

**ANSWER: Denied.**

122.    At all relevant times, NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, trade-secret and patent-protected property. Furthermore, on information and belief, NJ Transit knew of Plaintiff's dispute with Xerox and was aware that the Xerox Entities acquired Plaintiff's trade secrets by improper means and in violation of the parties' Confidentiality Agreements.

**ANSWER: Denied.**

123.    Defendants' use of Bytemark's trade secrets to secure contracts that otherwise would have been awarded to Plaintiff has been detrimental to Plaintiff. For example, Plaintiff's existing contract with New York Waterway, which was supposed to be renewed in accordance with the terms of the original agreement in early 2017, has not been extended. Instead, New York Waterway informed Bytemark that it had a better deal with Defendants.

**ANSWER: Denied.**

124.    As a result of Defendants' actions, Plaintiff has suffered and will suffer damages and irreparable harm.

**ANSWER: Denied.**

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH BUSINESS**
**RELATIONS UNDER NEW YORK LAW**
**(As to All Defendants)**

125.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-124 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

126.    The foregoing acts, in which Defendants misappropriated Plaintiff's labors and expenditures, constitute unfair competition under New York state law. Defendants' practicing of the claims of the Patents-in-Suit and their unlawful use of Plaintiff's trade secrets in Defendants' applications that also have substantially the same look and feel is likely to cause confusion among consumers as to the origin of the technology.

**ANSWER: Denied.**

127.    In misappropriating Plaintiff's labors and expenditures, Defendants acted in bad faith and exploited Bytemark's exclusive commercial advantage. Under the guise of forming a partnership with Plaintiff, Defendants led Plaintiff to disclose its valuable intellectual property,

trade secrets, and other confidential information. Defendants had no intention of partnering with Plaintiff, however, and instead exploited Plaintiff's efforts and used its intellectual property and confidential information for Defendants' own commercial advantage. Ultimately, Defendants cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts, including an integrated transportation contract with New York Waterway. In so doing, Defendants exploited the exclusive commercial advantage Plaintiff had previously held in the mobile ticketing application market.

**ANSWER: Denied.**

128.     At all relevant times, NJ Transit knew that the mobile ticketing technology and services that it purchased and contracted for from the Xerox Entities—and conspired to sell to New York Waterway—belonged to Plaintiff. NJ Transit knew that Plaintiff's information consisted of confidential trade secrets and that Plaintiff's ticketing system was proprietary, tradesecret, and patent-protected property. NJ Transit was fully aware that the trade secrets technology and the patent-claimed aspects of the technology were owned by Plaintiff because the technology was originally presented to NJ Transit as a collaborative project involving both the Xerox Entities and Plaintiff, wherein the parties would use Plaintiff's technology. Plaintiff was later cut out of the bidding process.

**ANSWER: Denied.**

129.     As a direct and proximate consequence of the foregoing, Plaintiff has no adequate remedy at law, has been irreparably harmed and will continue to be irreparably harmed unless Defendants are enjoined from using and/or disclosing Plaintiff's trade secrets and other confidential information, and enjoined from engaging in the infringing conduct set forth above.

**ANSWER: Denied.**

130.     In addition, Plaintiff is entitled to all damages that it has sustained by virtue of the aforementioned conduct, in an amount to be determined at trial, including, without limitation, Defendants' profits and gains arising from the wrongful acts described herein and Plaintiff's lost profits, attorneys' fees, costs and interest.

**ANSWER: Denied.**

131.    Furthermore, because Defendants' actions are wanton, willful, malicious, and have been undertaken in conscious disregard of Plaintiff's rights, Defendants also are liable for punitive damages.

**ANSWER: Denied.**

## COUNT EIGHT
## UNJUST ENRICHMENT UNDER NEW JERSEY LAW
### (Against Defendants Xerox, ACS, and Xerox Transport)

132.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1-131 herein.

**ANSWER: Defendants hereby incorporate by reference the preceding answers.**

133.    Plaintiff shared its valuable intellectual property, trade secrets, and other confidential information with the Xerox Entities with the expectation of remuneration in the form of future joint ventures and business contracts.

**ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 133, and therefore deny the same.**

134.    As a result of the Xerox Entities' unlawful conduct including but not limited to their infringement of Plaintiff's Patents-in-Suit and misappropriation of Plaintiff's trade secrets, the Xerox Entities have diverted substantial revenues from Plaintiff.

**ANSWER: Denied.**

135.    Furthermore, the Xerox Entities have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform.

**ANSWER: Denied.**

136.    Thus, the Xerox Entities have benefitted by saving the significant time and cost that they would otherwise have had to incur to develop their own mobile ticketing platform.

**ANSWER: Denied.**

137.    As a direct and proximate consequence of the foregoing, the Xerox Entities have been unjustly enriched at Plaintiff's expense.

**ANSWER: Denied.**

138.    It would be unjust and against good conscience and equity to permit the Xerox Entities to retain, without payment to Plaintiff, the substantial revenues that they have realized through the aforementioned conduct.

**ANSWER: Denied.**

139.    Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

**ANSWER: Denied.**

140.    Furthermore, because the Xerox Entities' actions are wanton, willful, malicious, and have been taken in conscious disregard of Plaintiff's rights, the Xerox Entities are also liable for punitive damages.

**ANSWER: Denied.**


## **AFFIRMATIVE DEFENSES**

Defendants sets forth the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

141.    Plaintiff's Complaint fails to state a claim upon which relief can be granted, including without limitation any allegations of willful infringement.

## SECOND AFFIRMATIVE DEFENSE – EQUITABLE RELIEF

142.    Plaintiff is not entitled to equitable relief because any alleged injury to Plaintiff is not immediate or irreparable because the remedies at law are adequate.

## THIRD AFFIRMATIVE DEFENSE - INVALIDITY

143.    The claims of the '967 and '993 Patent are invalid for failure to comply with the requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 112, 101, 102 and 103 and failure to comply with the applicable rules, regulations and directives of the United States Patent and Trademark Office pertaining to patents including, but not limited to, anticipation and obviousness over the prior art.

## FOURTH AFFIRMATIVE DEFENSE – NON INFRINGEMENT

144.    Defendants have not infringed, and is not infringing, any valid and enforceable claim of the '967 or '993 Patents, either directly, contributorily, by inducement, or otherwise.

## FIFTH AFFIRMATIVE DEFENSE - PROSECUTION ESTOPPEL

145.    Plaintiff is equitably estopped from asserting the claims of the '967 or '993 Patents against Defendants or otherwise asserting that the claims should be construed to cover Defendants' products or processes, either literally or under the doctrine of equivalents.

Plaintiff's amendments and arguments during prosecution of the '967 and '993 Patents prevent it from expanding the scope of the '967 and '993 Patents to cover Defendants' products or processes.

## SIXTH AFFIRMATIVE DEFENSE – PATENT MISUSE

146.    The '967 and '993 Patents are unenforceable because plaintiff has misused said patents by attempting to enforce the knowingly invalid patents against the accused product that clearly do not infringe.

## SEVENTH AFFIRMATIVE DEFENSE – BAD FAITH LITIGATION/EXCEPTIONAL CASE

147.    Defendants allege that Plaintiff brought this action in bad faith, making it an exceptional case and thereby entitling Defendants to their costs and attorneys' fees pursuant to 35 U.S.C. § 285, and/or *Octane Fitness*.

## EIGHTH AFFIRMATIVE DEFENSE – FAILURE TO MARK

148.    Upon information and belief, Plaintiff's claim for damages prior to the date of the Complaint are barred because Plaintiff and/or licensees of Plaintiff failed to mark or cause to be marked products sold commercially and covered by one or more claims of the '967 and/or '993 Patents pursuant to 35 U.S.C. § 287.

## NINTH AFFIRMATIVE DEFENSE – STATUTORILY LIMITED

149.    Plaintiff's claims for relief are statutorily barred in whole or in part by 35 U.S.C. § 1, *et seq.*, including without limitation 35 U.S.C. § 286.

## TENTH AFFIRMATIVE DEFENSE – EQUITABLE DEFENSES

150.    Plaintiff's claims are barred, in whole or in part, by an express or implied license, and/or the equitable doctrine of unclean hands, failure to disclose art, waiver, acquiescence, estoppel, and/or the doctrine of patent exhaustion.

## ELEVENTH AFFIRMATIVE DEFENSE – COSTS BARRED

151.    35 U.S.C. § 288 bars Plaintiff from recovering costs associated with this action.

## TWELFTH AFFIRMATIVE DEFENSE – INDEPENDENT DEVELOPMENT

152.    Defendants have developed their mobile ticketing technology and services independent from Plaintiffs alleged trade secrets.

## THIRTEENTH AFFIRMATIVE DEFENSE – PUBLIC INFORMATION

153.    Plaintiff's alleged trade secrets comprise public information and are therefore not protectable under trade secret laws.

## FOURTEENTH AFFIRMATIVE DEFENSE
## FAILURE TO PROTECT SECRETS

154.    Plaintiff has failed to provide adequate protections to keep their alleged trade secrets a secret.

## FIFTEENTH AFFIRMATIVE DEFENSE
## FAILURE TO ESTABLISH DTSA CLAIM

155.    The allegations of misappropriation and disclosure alleged by the Plaintiff comprise activity prior to May 11, 2016, the effective date of DTSA.

## SIXTEENTH AFFIRMATIVE DEFENSE – NO STANDING

156.    Plaintiff lacks standing to pursue some or all of its claims against one or more Defendants.


## SEVENTEENTH AFFIRMATIVE DEFENSE
## NO EXCEPTIONAL CASE FOR PLAINTIFF

157.    Plaintiff cannot prove that this is an exceptional case justifying an award of attorney's fees against Defendants pursuant to 35 U.S.C. § 285.


## RESERVATION OF RIGHTS

158.    Defendants reserve the right to add any further additional and/or affirmative defenses (including but not limited to inequitable conduct) or counterclaims permitted under the Federal Rules of Civil Procedure, the patent laws of the United States, and/or at law or in equity which may now exist nor in the future may be available based on discovery and further factual investigation in this case.


## COUNTERCLAIMS

159.    Defendants incorporate by reference its answers and affirmative defenses pleaded in paragraphs 1 through 158 of this Answer as though fully set forth herein.

160.    Counterclaimant XEROX Corp. a New York domestic business corporation with its headquarters at 201 Merritt 7, Norwalk, Connecticut 06851.

161.    Counterclaimant ACS Transport Solutions, Inc. was renamed Xerox Transport Solutions, Inc., and subsequently renamed Conduent Transport Solutions, Inc.  Conduent

Transport Solutions, Inc. is a Georgia domestic profit corporation with its principal office address at 100 Campus Drive, Florham Park, NJ 07932.

162.    Counterclaimant Conduent, Inc. is a New York domestic business corporation with its Corporate Headquarters at 100 Campus Drive, Suite 200, Florham Park, New Jersey 07932.

163.    Counterclaimant New Jersey Transit Corp is a New Jersey corporation with its Headquarters at 1 Penn Plaza East, Newark, New Jersey 07105.  XEROX Corp, ACS Transport Solutions, Inc., XEROX Transport Solutions, Conduent, Inc., and New Jersey Transit Corp are collectively referred to as "Counterclaimants."

164.    Counter-Defendant, Bytemark, Inc., ("Counter-Defendant") has alleged in its complaint that it is a Delaware corporation organized and existing under the laws of the State of Delaware with a place of business at 268 W 44th Street, 3rd Floor, New York, New York 10036.

## JURISDICTION AND VENUE

165.    These Counterclaims arise under the United States patent laws, 35 U.S.C. § 101 et seq. This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

166.    Counter-Defendant is subject to personal jurisdiction in this District because it has availed itself of the jurisdiction of this Court, and has engaged in acts giving rise to this controversy in this judicial district.

167.    Venue is improper according to 28 U.S.C. § 1391 and 1400(b) and pursuant to Rule 13 of the Federal Rules of Civil Procedure.  The Amended Complaint, and each purported

claim contained therein with respect to Masabi, should be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, transferred to a proper venue.

168.   Counterclaimants have a justiciable controversy with Counter-Defendant over the validity and infringement of the '967 and '993 patents. More specifically, Counter-Defendant contends that the '967 and '993 Patents are valid and that Counterclaimants have infringed and continue to infringe the '967 and '993 Patents. Counterclaimants dispute these contentions and seek a declaration of their rights that the '967 and '993 Patents are invalid, unenforceable and not infringed.

## COUNTER CLAIM I
### (The '967 Patent Is Invalid)

169.   Counterclaimants incorporate by reference paragraphs 1-168 above as set forth here in full.

170.   On information and belief, the claims of the '967 patent are invalid for failure to meet the patentability requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

171.   Accordingly, Counterclaimants are entitled to a judgment that the claims of the '967 patent are invalid and not enforceable.  Counterclaimants seek entry of a judgment that the claims of the '967 patent are invalid and not enforceable.

## COUNTER CLAIM II
### (The '967 Patent Is Not Infringed)

172.   Counterclaimants incorporate by reference paragraphs 1-171 above as set forth here in full.

173.    Counterclaimants do not infringe and have not infringed, induced the infringement of, or contributed to the infringement of any valid enforceable claim of the '967 patent.

174.    Accordingly, Counterclaimants are entitled to a judgment that they have not infringed and do not infringe any claim of the '967 patent.  Counterclaimants seek entry of a judgment that they have not infringed and do not infringe any claim of the '967 patent.


**COUNTER CLAIM III**
**(The '993 Patent Is Invalid)**

175.    Counterclaimants incorporate by reference paragraphs 1-174 above as set forth here in full.

176.    On information and belief, the claims of the '993 patent are invalid for failure to meet the patentability requirements of one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

177.    Accordingly, Counterclaimants are entitled to a judgment that the claims of the '993 patent are invalid and not enforceable.  Counterclaimants seek entry of a judgment that the claims of the '993 patent are invalid and not enforceable.


**COUNTER CLAIM IV**
**(The '993 Patent Is Not Infringed)**

178.    Counterclaimants incorporate by reference paragraphs 1-177 above as set forth here in full.

179.    Counterclaimants do not infringe and have not infringed, induced the infringement of, or contributed to the infringement of any valid enforceable claim of the '993 patent.

180.     Accordingly, Counterclaimants are entitled to a judgment that they have not infringed and do not infringe any claim of the '993 patent.  Counterclaimants seek entry of a judgment that they have not infringed and do not infringe any claim of the '993 patent.

## DEMAND FOR JURY TRIAL

Defendants hereby rely upon Plaintiff's jury demand previously requested for all issues triable by jury.

## PRAYER FOR RELIEF APPLICABLE TO ALL COUNTS

For the reasons stated, Counterclaimants respectfully pray that the Court:

181.     Enter a take nothing judgment in favor of Counterclaimants and against Counter-Defendant on the Complaint and dismiss all of Counter-Defendant's claims with prejudice.

182.     Enter a declaratory judgment declaring that:

a.     the '967 Patent registration was granted improperly;

b.     the '967 Patent is invalid and unenforceable;

d.     Counterclaimants do not infringe the '967 Patent;

e.     the '993 Patent registration was granted improperly;

f.     the '993 Patent is invalid and unenforceable; and

g.     Counterclaimants do not infringe the '993 Patent.

183.     Award Counterclaimants their respective damages incurred on their counterclaims I-IV including lost business and sales along with reasonable attorneys' fees and costs.

184.    Award Counterclaimants compensatory damages, punitive damages, costs, expenses and attorneys' fees pursuant to 15 U.S.C. § 1117(a), 28 U.S.C. § 1927, and the inherent authority of the Court.

185.    Award costs, expenses and attorneys' fees against Counter-Defendant pursuant to 28 U.S.C. § 1927 for vexatious, unreasonable and excessive litigation.

186.    Enter such other and further relief that Counterclaimants may be justly entitled.


Dated:  October 15, 2018                    Respectfully submitted,


                                            FISHMAN STEWART PLLC

                            By:    /s/ Douglas P. LaLone (P45751)
                                   Douglas P. LaLone (P45751)
                                   Thomas E. Donahue (P57089)
                                   39533 Woodward Ave., Suite 140
                                   Bloomfield Hills, MI 48304
                                   Tel.: (248) 594-0600
                                   Fax: (248) 594-0610
                                   dlalone@fishstewip.com

                                   *Attorneys for Defendants*


/s/David Dehoney                             /s/David Sochia
David Dehoney                                David Sochia
McKool Smith                                 McKool Smith
One Bryant Park                              300 Crescent Court
47th Floor                                   Suite 1500
New York, NY 10036                           Dallas, Texas 75201
Tel: (212) 402-9424                          Tel: (214) 978-4245
Fax: (212) 402-9444                          Fax: (214) 978-9444
ddehoney@mckoolsmith.com                     dsochia@mckoolsmith.com

### CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of Defendants' Answer to Second Amended Complaint via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 15th day of October 2018.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission.


By:     /s/ Gayna Lee Mellema
             Gayna Lee Mellema