# MᴄKᴏᴏʟ Sᴍɪᴛʜ

Ashley Moore
Direct Dial: 214.978.6337
amoore@mckoolsmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

July 26, 2019

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 10007

RE:     *Bytemark, Inc. v. Xerox Corp. et al.*, 1:17-cv-01803-PGG, Defendants
          Opposition to Bytemark's Motion to Amend Complaint

Defendants oppose Bytemark's anticipated motion for leave to file a third amended complaint. Bytemark's original complaint alleged infringement of two patents; the '993 patent and the '967 patent. Both patents were dismissed in this case because they were invalidated in a co-pending Eastern District of Texas litigation. Bytemark now attempts to add two new patents (the '764 and '567 patents) that are direct descendants of the invalid and dismissed '993 and '967 patents. But much like the parent patents, these new patents are facially invalid and unenforceable. Thus, amendment is futile and should be denied.

There are at least two reasons why Bytemark's proposed claims of patent infringement are futile.[1] First, the '764 and '567 patents are invalid because they are directed to abstract ideas. More specifically, these two patents attempt to claim the same subject matter as their parents; subject matter already found unpatentable by a district court. Second, the '764 and '567 patents are unenforceable due to inequitable conduct. Specifically, Bytemark intentionally withheld from the Patent Office that the parent patents were invalidated by the Eastern District of Texas.

## A.     Patent invalidity under 35 U.S.C. § 101.

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[2] The exception is that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable."[3] There is a two-step

---

[1] For brevity, Defendants outline only two reasons why Bytemark's proposed claims are futile. But the claims are also legally insufficient because Bytemark cannot establish infringement. Applying the plain language of the '764 and '567 patents, the accused products do not contain a "validation visual object" as required by every claim.
[2] 35 U.S.C. § 101.
[3] *Mayo Collaborative Servs. V. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).

test for determining patentability under § 101.[4] First, the Court must determine whether a patent claim is directed to a patent-ineligible concept, such as an abstract idea. Second, if the claims are directed to an ineligible concept, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."[5] Applying the invention to a generic computer is not enough.[6] Nor is adding "well-understood, routine, conventional activities previously known to the industry."[7]

### B.    Infringement claims regarding the '764 patent are futile because the patent is invalid under § 101.

The '764 patent would not survive a motion to dismiss. The '764 patent claims a method and system of validating a ticket by showing a ticket taker a human-readable visual object. This is an abstract idea that can be performed manually by a human. The claims recite the use of a "remote display device" and a "central computing system." But rather than improve the functioning of these computer components, the claims reference the components in terms of their conventional functions, such as sending, receiving, storing, and verifying data. "[C]laims directed to the collection, storage, and recognition of data are directed to an abstract idea."[8] Though the claims may improve the efficiency of the abstract idea of verifying tickets using computers, this is not enough to make them patent eligible.[9]

The second step of the § 101 inquiry does not save the '764 patent from invalidity. Beyond the abstract idea of validating a ticket by showing a ticket taker a human-readable object, the claims recite nothing that could be considered an "inventive concept." The remaining hardware and software features in the claims are conventional, as is the manner in which the features operate and interact. The patent itself teaches that "[t]he software components may, generally, be implemented in hardware, if desired, using conventional techniques." '764 patent at 13:43-46. Simply put, the claims contain no "inventive concept" sufficient to confer patent eligibility on this otherwise abstract idea.

The subject matter claimed in the '764 patent has already undergone—and failed—scrutiny under § 101. The '764 patent is a continuation of the '993 patent originally asserted, but since dismissed, in this case. A continuation patent is a patent that pursues additional claims to an invention disclosed in an earlier (or "parent") application. The '993 and '764 patents have *identical* disclosures and very similar claims.[10]

---

[4] *Id.*
[5] *Id.* at 1291.
[6] *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 22358 (2014).
[7] *Id.* at 2357-59.
[8] *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, No. 2016-1233, 2017 WL 4654964, at *6 (Fed. Cir. Oct. 18, 2017).
[9] *Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").
[10] The only substantive distinction between the claims is that the '764 patent has a limitation where the ticket contains code that destroys the ticket after it has been used. This does not save the claims from abstractness.

The '993 patent was dismissed from this case, in part, because it was invalidated before the Eastern District of Texas in a co-pending litigation.[11] Bytemark argues that it should be allowed to amend because it is appealing the Eastern District's ruling. But multiple judges have already reviewed this ruling and concurred. First, Magistrate Judge Payne issued a Report and Recommendation that the '993 patent should be invalidated under § 101.[12] In the Report, Judge Payne noted that validity was "not a close case." Next, Bytemark objected to the Report and Recommendation, making the same arguments it intends to make on appeal. After considering Bytemark's objection, reviewing Judge Payne's Report, and reviewing the matter *de novo*, Judge Gilstrap granted summary judgment of invalidity under § 101.

The claims of the '764 patent are not materially different from those already invalidated. Thus, the '764 patent is facially invalid and any amendment to add an infringement claim based on said patent is futile.

### C.    Infringement claims regarding the '567 patent are futile because the patent is invalid under § 101.

At a high-level, the '567 patent is directed to the abstract idea of a mobile device sending information to a server. The server then determines if there is "any mismatch" in the data it receives from the mobile device by comparing what it transmitted with what it received. If there is a mismatch, the '567 patent requires that the server store a "data value indicating the fraudulent activity." Based on that data value, the server cancels the ticket.

The steps of the '567 patent can be summarized as the abstract idea of detecting fraudulent activity in a ticketing system. The claimed steps of sending and receiving information, and comparing the sent and received information to determine whether a transaction is authentic, can all be performed in a human mind or with a pen and paper. Moreover, as the examiner noted during the prosecution of the '567 patent, making "a pass, credit card, file, or other such user data . . . unavailable, expired, deleted, or cancelled upon discovery of fraudulent activity" is a well-known process that can be performed by humans.[13] The '567 patent thus fails the first step of the § 101 analysis.

The second step does not save the '567 patent. There is no "inventive concept" that transforms the abstract idea into patent eligible subject matter. The additional elements in the claims of the '567 patent (*e.g.,* the "server computer sub-system," "device," and "network") do not amount to anything more than generic computer systems used to implement the abstract idea.

The prosecution history of the '567 patent also reveals that amendment is futile in view of § 101. While the '567 patent was pending, the examiner rejected the claims *three* times under § 101.[14] Each time the examiner maintained that the claims were directed to the abstract idea of determining fraudulent activity associated with a ticketing system.[15] And each time, Bytemark

---

[11] *Bytemark, Inc. v. Masabi Ltd.*, 2:16-cv-00543-JRG-RSP (E.D. Tex.).

[12] *Bytemark, Inc. v. Masabi Ltd.*, 2:16-cv-00543-JRG-RSP, Dkt. No. 146 (E.D. Tex. Nov. 26, 2018)

[13] U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 11-16-2017 Final Rejection.

[14] U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 04-20-2017 Non-Final Rejection, 11-16-2017 Final Rejection, 02-13-2018 Non-Final Rejection.

[15] *Id*.

responded with arguments paralleling those it made in the Eastern District of Texas.[16] The examiner was not persuaded.

The examiner's reasoning in his first three § 101 rejections closely follows the reasoning applied in the Eastern District of Texas to invalidate the '993 patent. This makes sense. The '567 patent is a continuation-in-part of the '993 patent. This means that the '567 patent shares portions of its disclosure with the invalidated '993 patent.

It was only after the third rejection that the examiner allowed the claims. But the examiner did not allow the claims because Bytemark convinced him the claims were eligible under § 101. The examiner allowed the claims based on "the newest Updated Guidance on subject matter eligibility."[17] On January 7, 2019, the Patent Office's Revised § 101 Guidance became effective. The new § 101 guidance makes finding a patent invalid under § 101 much more difficult. But the USPTO guidance did not change the law.[18] The allowed claims must still be scrutinized under the law set forth by the Supreme Court and the Federal Circuit. And under this law—the same law applied by the examiner in the first three rejections and the same law applied by the Eastern District of Texas—the claims are invalid. Amendment is therefore futile.

### D.    Amendment is futile because the doctrine of inequitable conduct renders the '764 and '567 patents unenforceable.[19]

Inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent and related family patents. To prevail on inequitable conduct, an accused infringer must show that an applicant (1) "failed to disclose material information . . . and (2) intended to deceive the U.S. Patent and Trademark Office."[20]

The duty to disclose material information extends to each inventor and the attorneys who prosecuted the application. 37 C.F.R. § 1.56(c) (1998). The named inventors of the '764 and '567 patents, all of whom are Bytemark employees, filed declarations acknowledging the duty to disclose.[21] The attorney prosecuting the '764 and '567 patents was Jennifer Meredith, a partner of Meredith & Keyhani, PLLC at least as of December 10, 2018. Meredith & Keyhani is the same firm that represented Bytemark in the Eastern District of Texas litigation that invalidated the '993 patent.

---

[16] *See, e.g.*, U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 07-17-2017 Applicant Arguments/Remarks Made in an Amendment.

[17] U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 02-13-2019 Final Rejection.

[18] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 771 (Fed. Cir. 2019) (deciding a patent ineligible under § 101 while making no reference to the new USPTO guidance and applying the two-step § 101 analysis dictated by the Supreme Court); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019) ("While we greatly respect the PTO's expertise on all matters relating to patentability, including patent eligibility, we are not bound by its guidance.").

[19] The duty to disclose also runs to *Inter Partes* Reviews. Bytemark did not disclose to the PTO that the parent patent of the then pending application had been found unpatentable in an IPR proceeding. This failure to disclose also constitutes inequitable conduct.

[20] *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007)

[21] *See, e.g.*, U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 05-29-2019 Oath or Declaration filed.

Bytemark and its attorneys committed inequitable conduct when they did not tell the examiner that a district court had invalidated the '993 patent. The Federal Circuit has held that related litigation involving parent patents is material and should be disclosed during prosecution, even when the parent patent was not ultimately invalidated.[22] "[T]he existence of [] litigation is material information that an examiner needs to have."[23]

But Bytemark didn't just fail to disclose that the parent patent was invalidated, Bytemark didn't disclose the *existence* of the Eastern District litigation. The materiality of this withheld information is magnified by the fact that, before being granted, both of the new patents were repeatedly rejected under § 101. The arguments made by the patent examiners closely mirrored those made in district court. And the arguments Bytemark made to overcome the examiners' rejections shared the same logic as those the Eastern District found unpersuasive.

There can also be no doubt that the Eastern District litigation was withheld with specific intent to deceive the Patent Office. The law firm prosecuting the '764 and '567 patents was the same firm that argued and lost the § 101 issue in the Eastern District. The Report and Recommendation issued just weeks or months before Bytemark responded to the examiner's rejection on the same exact legal principle—§ 101.

Moreover, Bytemark's prosecution counsel certainly knew that disclosure of the Eastern District's decision would be the death knell to the new patents. After all, the examiners were already making the same arguments as the district court. The Eastern District ruling that it was "not a close case" would have affirmed the examiners' position that the applications were not patentable. Put simply, there is no explanation for Bytemark's failure to disclose the Eastern District litigation other than intent to deceive the Patent Office.

Because there is clear evidence of inequitable conduct, Bytemark's proposed claims of patent infringement are futile and leave to amend should be denied.

Best regards,

*/s/ Ashley N. Moore*

Ashley N. Moore

ANM

---

[22] *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1362 (Fed. Cir. 2010); 37 C.F.R. § 1.556(a) (1998) ("In any reexamination proceeding before the Office, the patent owner shall call the attention of the Office to any prior or concurrent proceedings in which the patent is or was involved such as interferences, reissue, reexaminations, or litigation and the results of such proceedings); MPEP § 2001.06(c) (6th Ed. Rev. 2, July 1996) ("Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office").

[23] *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1234, 84 USPQ2d 1811, 1819 (Fed. Cir. 2007).