# KEYHANI LLC

1050 30th Street NW
Washington, DC 20007
'

T. 202.748.8950
F. 202.318.8958
www.keyhanillc.com
———————

Direct Email: dkeyhani@keyhanillc.com
Direct Dial: 202.903.0326

July 30, 2019

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 10007

Re:  *Bytemark, Inc. v. Xerox Corp. et al., 1:17-cv-01803-PGG,* motion to amend complaint.

       We represent Plaintiff Bytemark, Inc. ("Plaintiff"), in the above-referenced matter.  We write to address the meritless allegations and arguments made in Defendants' July 26, 2019 letter (Dkt. No. 99).  For at least the following reasons, Plaintiff respectfully requests leave to amend its complaint.

### A.       Defendants' allegations of inequitable conduct are entirely without merit.[1]

       Defendants' assertion that "Bytemark and its attorneys committed inequitable conduct" is not only frivolous, it misrepresents both the factual record and governing law.  Defendants' spurious allegations fail to establish that Plaintiff's patent infringement claims would be futile, and Defendants' bad-faith attempt at gamesmanship should be wholly rejected.

### 1.       Defendants misrepresent the factual record.

       Defendants' characterization of the events before the USPTO is incorrect and omits key factual information.  Contrary to Defendants' assertion, the patent examiner for the '764 and '567 patents was on notice of the litigation relating to the '967 and '993 patents ("the parent patents") based, in significant part, on actions taken by Bytemark's counsel.  First, at the commencement of the lawsuit against Masabi Ltd. in the Eastern District of Texas, Bytemark's counsel sent notice of the action to the USPTO.  Additionally, during the IPR of the '967 patent,[2] Masabi disclosed the Eastern

---

[1] During the parties' meet and confer, Defendants did not raise the issue of inequitable conduct as a reason for opposing Plaintiff's request for leave to amend its complaint.

[2] *See* IPR2017-01449.

District litigation in its opening petition, and Bytemark advised the Board of the litigation in its response brief.  Likewise, during the CBMs of the parent patents,[3] Xerox et al. (Defendants in this case) disclosed the Eastern District litigation in their opening petitions, and Bytemark again advised the Board of the litigation in its preliminary responses.  Indeed, the PTAB acknowledged that it had notice of the Eastern District litigation, referencing it in all three of its final written decisions.

Importantly, all of these IPR and CBM decisions became part of the file wrappers of the parent patents, and, therefore, part of the record of the child continuation applications that resulted in the newly issued patents.  Bytemark's counsel's actions were in full accordance with M.P.E.P. § 609.02, which states that "[t]he examiner will consider information which has been considered by the Office in a parent application when examining" a continuation, divisional, or continuation-in-part application filed under 37 C.F.R. § 1.53(b), and "[a] listing of the information need not be resubmitted in the continuing application."  Further, according to the Federal Circuit, "In view of § 609 it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 547 (Fed. Cir. 1998) (citing *Transmatic, Inc. v. Gulton Indus., Inc.,* 849 F. Supp. 526 (E.D. Mich. 1994), *aff'd in pertinent part, rev'd in part,* 53 F.3d 1270 (Fed. Cir. 1995) for the same proposition with regard to a continuing application).  "[T]he applicable regulations presume that some material information that previously was disclosed need not be resubmitted because that information remains of record . . . and thus presumably available to the examiner." *Bone Care Int'l, LLC v. Pentech Pharms., Inc.,* 741 F. Supp. 2d 854, 862 (N.D. Ill. 2010).

Moreover, in addition to these actions taken by Bytemark's counsel, on February 7, 2019, the Eastern District of Texas sent a notice to the Director of the USPTO informing him that the court had found the parent patents were invalid under § 101.  *See Bytemark, Inc. v. Masabi Ltd.*, 2:16-cv-00543-JRG-RSP (E.D. Tex.), Dkt. No. 151.  Bytemark was aware of this correspondence and that the USPTO, as a result, had knowledge of the court's invalidity finding.  In sum, Defendants' allegations that Bytemark "withheld" and "didn't disclose the existence of the Eastern District litigation" are demonstrably untrue.

      **2.**      **Defendants misrepresent the law and cannot establish inequitable conduct under the governing *Therasense* test.**

In their letter, Defendants cite only pre-2011 cases[4] to support their allegation of inequitable conduct, wholly ignoring the demanding test set forth by the Federal Circuit in its landmark case, *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc).  This suggests that Defendants are either unaware of the correct legal standard or are attempting to mislead the Court.  In *Therasense*, the Federal Circuit sought to curb abuses of the inequitable conduct doctrine in the courts and patent system.[5] *Id.* at 1289-90.  The en banc court set forth a new, more exacting standard

---

[3] *See* CBM2018-00011 and CBM2018-00018.

[4] Aside from not being governing law, the facts in these cases are not analogous to the present case.

[5] As the court explained,

> While honesty at the PTO is essential, low standards for intent and materiality have inadvertently led to many unintended consequences, among them, increased

requiring defendants to prove by clear and convincing evidence that "(1) the patentee acted with the specific intent to deceive the PTO; and (2) the non-disclosed reference was but-for material." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-91).

Under prong one, "to show that the patentee acted with the specific intent to deceive the PTO, defendants must prove "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. "A failure of proof on any element precludes a finding of inequitable conduct." *1st Media*, 694 F.3d at 1372. "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91. "A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Id.* at 1290. "[A] patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence." *1st Media*, 694 F.3d at 1373.

Here, Defendants make no credible argument that this element is satisfied, offer no evidence of Bytemark's specific intent to deceive (nor can they), and thus fail to meet their burden of proving this element by clear and convincing evidence. Accordingly, Bytemark need not offer any good faith explanation for its conduct. *See id.* Nevertheless, as discussed above, the record establishes that Bytemark was transparent with the USPTO throughout the patent prosecution process, informing it of the Eastern District litigation on numerous occasions and ensuring that the USPTO had notice of all relevant developments with respect to the '967 and '993 patents. Defendants' baseless and conclusory statement that "[t]here can . . . be no doubt that the Eastern District litigation was withheld with specific intent to deceive the Patent Office" is meritless and should be rejected.

As to the second prong, "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291. This requires that "the PTO would not have allowed a claim had it been aware of" the alleged misconduct. *Id.* Defendants similarly fail to establish that this element is met. Contrary to Defendants' assertion, the Eastern District's decision on the § 101 patentability of the parent patents' claims is not material to the subject matter of the continuation patents' claims. For example, the '764 and '567 patents (1) recite different claim language from the parent patents (*Alice*'s § 101 subject matter analysis looks to the language of the claims), (2) were found by the USPTO to be patentably distinct from the parent patents,[6] and (3) are subject to the new 2019 § 101 USPTO guidelines, unlike the parent patents.

---

adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality. This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.

*Therasense*, 649 F.3d at 1290.

[6] In its March 18, 2019 office action, in withdrawing its double patenting rejection, the examiner concluded that the claims of application 14/823,157 (which issued as the '764 patent) were "patentably distinct from those of" the '967 patent. The claims of the '567 patent were presumed to be patentably distinct on their face and did not receive a double patenting rejection by the USPTO.

Defendants make no credible argument that the *Therasense* elements are satisfied, let alone that Plaintiff's patent infringement claims would be futile based on an inequitable conduct defense. Moreover, Defendants' baseless accusations are reckless and improper. As courts have explained, "Inequitable conduct is a serious charge against an individual, indeed it amounts to an allegation of fraud. It can be a career-ending finding by the court for those against whom it is alleged, if proven on the merits." *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 803 F. Supp. 2d 409, 434 (E.D. Va.), *amended*, 803 F. Supp. 2d 464 (E.D. Va. 2011). Defendants' attempt to bring such a serious charge based on a complete lack of evidence and numerous misrepresentations to the Court is inappropriate, unethical, and has no place in this litigation.[7]

### B.     Defendants have not established that Plaintiff's proposed infringement claims arising from its newly issued patents are futile.

Defendants' arguments regarding the validity of the '764 and '567 patents[8] are also without merit. The burden of establishing futility falls to the party opposing a motion to amend a complaint. *BroadSign Int'l, LLC v. T-Rex Prop. AB*, No. 16-CV-04586-LTS-HBP, 2018 WL 3418778, at *2 (S.D.N.Y. July 13, 2018). A proposed amendment is futile if it cannot "withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 515 (S.D.N.Y. 2018). Therefore, to establish futility, Defendants must show that Plaintiff's proposed amendment cannot survive a motion to dismiss pursuant to Rule 12(b)(6). *Id.* Defendants have not done so.

Step one of the *Alice* § 101 patent eligibility test considers whether the *claims* at issue are directed to a patent-ineligible concept. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (emphasis added). Step two considers the *claim elements of each claim both individually and as an ordered combination* to determine whether the additional elements transform the nature of the claim into a patent-eligible application. *Id.* (emphasis added). The Federal Circuit has held that the question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact that must be proved by clear and convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Each claim of a patent enjoys the presumption of validity. 35 U.S.C. § 282; *Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 413 (S.D.N.Y. 2013).

In their letter, Defendants only challenge Plaintiff's proposed amendments on the bases of unenforceability due to inequitable conduct and patent validity under 35 U.S.C. § 101.[9] Thus, to establish futility, Defendants must show that the claims of Plaintiff's newly issued patents are invalid under § 101. Despite the high burden of establishing futility, Defendants do not discuss any specific claims of the newly issued patents (individually or as an ordered combination), and instead, relying on the Eastern District of Texas decision, make unfounded generalizations about the patent specifications and select claim terms. Further, Defendants ignore precedent that determining whether a claim

---

[7] Defendants' unfounded allegations made without a proper inquiry into the facts and the law may be sanctionable under Federal Rule of Civil Procedure 11.

[8] Defendants argue that "the patents"—and not any particular patent claims—are invalid.

[9] Aside from a conclusory statement made in a footnote, Defendants do not argue Plaintiff's allegations that Defendants are *infringing* Plaintiff's patent claims are futile.

element or combination of elements is well-understood, routine and conventional is a question of fact.[10]  As the *Alice* test requires an examination of patent claims and claim elements (individually and in combination) and Defendants wholly fail to address the claims or claim elements of the '764 and '567 patents, Defendants cannot establish futility.

Furthermore, given that the '764 and '567 patents involve different claims and claim limitations (which Defendants do not address), Defendants' arguments relating to the '967 and '993 patents are not relevant.  Notwithstanding, Defendants' assertion that "multiple judges have already reviewed [the Eastern District opinion] and concurred" is entirely false.  Magistrate Judge Payne's Report and Recommendation was *only* reviewed and concurred with by District Court Judge Gilstrap (presiding over the same case) in the Eastern District of Texas.  Contrary to Defendants' false statements, the claims of the '967 and '993 patents have withstood all other § 101 scrutiny they have faced, including by a § 101 subject matter expert during prosecution and by this Court.  Indeed, this Court already determined that the '967 and '993 patents would likely survive a motion to dismiss during a pre-motion conference (initiated by Defendants earlier in this case) held on October 17, 2017.  With respect to the patents at issue, the USPTO made an explicit finding that the claims of the '764 and '567 patents were subject matter eligible in light of current law and new guidelines and with full knowledge of the Eastern District decision.

Accordingly, Defendants have not met their burden of establishing futility and Plaintiff respectfully requests leave to file a motion to amend its complaint.

Very Truly Yours,

/s/Dariush Keyhani
Dariush Keyhani

cc: Defendants' counsel of record

---

[10] Similarly, Defendants do not (nor can they) establish an absence of a factual dispute with respect to this issue.  In the case of the '967 and '993 patents (upon which Defendants base their arguments), this Court has previously stated that Plaintiff pled an inventive concept likely to survive a motion to dismiss.