**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BYTEMARK, INC.,

     Plaintiff,

     v.

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and
NEW JERSEY TRANSIT CORP.,

     Defendants.

Case No. 1:17-cv-01803-PGG

**PLAINTIFF BYTEMARK, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR
LEAVE TO AMEND ITS COMPLAINT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.      AMENDMENT WOULD NOT BE FUTILE.......................................................1

   A.   Defendants' inequitable conduct defense is meritless ....................................1

      1.    All material information was disclosed to the PTO..................................1

      2.    Bytemark did not act with specific intent to deceive the PTO…………………3

      3.    The alleged nondisclosure was not "but-for material"……………………………3

      4.    Defendants' inequitable conduct allegation cannot be resolved on a motion to dismiss………………………………………………………………………4

   B.   Bytemark's proposed patent infringement claims cannot be disposed of under § 101 on a motion to dismiss. ………………………………………………..………….…4

      1.    There is no merit to Defendants' arguments that the proposed patent infringement claims are futile because the parent patents' claims were found unpatentable……5

      2.    There is no merit to Defendants' arguments that the claims of the children patents are abstract. …………………………………………………………………6

      3.    There is no merit to Defendants' arguments that the claims of the children patents lack an inventive concept.…………………………………………………………7

      4.    Defendants cannot establish that any other patent claim asserted by Bytemark in its Proposed Amended Complaint is futile. …………………………………………8

II.     DEFENDANTS FAIL TO ESTABLISH UNDUE PREJUDICE, UNDUE DELAY, OR BAD FAITH.……………………………………………………………………10

III.    CONCLUSION...................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*002152706 Ontario Ltd. v. Changer & Dresser, Inc.*, No. 15-CV-20S(F), 2017 WL 11441754
(W.D.N.Y. Nov. 13, 2017)...................................................................................................9

*1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367 (Fed. Cir. 2012)..........................................1, 3

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014)......................................................................4

*Ancora Techs., Inc. v. HTC Am., Inc*., 908 F.3d 1343, 1348 (Fed. Cir. 2018).........................6

*ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998)........................................................2, 3

*Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266
(Fed. Cir. 2012)....................................................................................................................5

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ...................................................5

*Cleveland Clinic Found. v. True Health Diagnostics, LLC*, No. 117CV198L, 2017 WL 3381976
(E.D. Va. Aug. 4, 2017)......................................................................................................6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343
(Fed. Cir. 2014)...................................................................................................................9

*Droplets, Inc. v. E\*Trade Fin. Corp.*, No. 12 Civ. 2326 (CM) (S.D.N.Y. Mar. 25, 2014) ............9

*E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273 (S.D.N.Y. 2006)....................1, 9

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353 (Fed. Cir. 2010) .............3, 4

*Lucente v. IBM Corp.,* 310 F.3d 243 (2d Cir. 2002)......................................................................4

*MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019) ..................................................4, 5

*Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 732 F.2d 903 (Fed. Cir. 1984)..........1

*Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276, 2015 WL 6143697
(E.D.N.Y. Oct. 19, 2015)....................................................................................................9

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ....................1, 3, 4

*TM Patents, L.P. v. Int'l Bus. Machines Corp.*, 121 F. Supp. 2d 349 (S.D.N.Y. 2000)..............1, 2

*Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147, 2017 WL 4081904
(E.D.N.Y. Sept. 13, 2017)..................................................................................................10

**Rules and Other Authorities**

M.P.E.P. § 609.02 ............................................................................................................2

Defendants have not met their burden of establishing futility, prejudice, or bad faith, and provide no basis for why the Court should deviate from Rule 15's instruction that leave to amend be freely granted. *See E\*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 282 (S.D.N.Y. 2006).

## I.      AMENDMENT WOULD NOT BE FUTILE

### A.      Defendants' inequitable conduct defense is meritless.

Defendants' assertion that Bytemark and its attorneys committed inequitable conduct has no basis in the law or factual record.[1] Charges of inequitable conduct are a "much-abused and too often last-resort allegation." *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 732 F.2d 903, 908 (Fed. Cir. 1984). Seeking to curb such abuses, the Federal Circuit in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) set forth a demanding standard requiring defendants to prove by clear and convincing evidence that "(1) the patentee acted with the specific intent to deceive the PTO; and (2) the non-disclosed reference was but-for material." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-91). Defendants fail to demonstrate either of these requirements is met.

### 1.      All material information was disclosed to the PTO.

The record establishes that all material information was in possession of the PTO and that Bytemark was transparent with the PTO throughout the patent prosecution process and complied with all applicable rules. At the commencement of the lawsuit against Masabi Ltd. in the Eastern District of Texas, Bytemark's counsel sent notice of the action to the PTO. *See* Ex. E (Reports of Filing and Determination of Action found in parent patents' PTO file wrappers). Bytemark also

---

[1] As this Court recognized, "The Federal Circuit has long decried the use of charging inequitable conduct in patent litigation." *TM Patents, L.P. v. Int'l Bus. Machines Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000) (citation omitted). Despite this guidance and the clear law and evidence put forth by Bytemark disposing of Defendants' position (*see* Bytemark's 7/30/19 Letter, Dkt. #100), Defendants have chosen to continue pursuing this argument.

brought the Eastern District's patent claim construction ruling to the Board's attention on multiple

occasions. *See Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 6 at 6 (PTAB 2018); *Masabi*

*Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 19 at 8 (PTAB 2018); *Xerox Corp. v. Bytemark,*

*Inc.*, CBM2018-00011, Paper 11 at vii, 35 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*,

CBM2018-00018, Paper 10 at vii, 32 (PTAB 2018).[2]  Further, while the prosecution of the children

patents was still pending, the Eastern District sent a notice to the PTO—which became part of the

prosecution histories of the children patents—informing it that the court had found the parent

patents invalid under § 101. *See* Ex. E.[3]  Bytemark's counsel also received a copy of this notice

and was made aware that the PTO was notified of the court's invalidation of the parent patents.

Bytemark's counsel's conduct fully complied with precedent and M.P.E.P. § 609.02,

which states that "[t]he examiner will consider information which has been considered by the

Office in a parent application when examining" a continuation, divisional, or continuation-in-part

application filed under 37 C.F.R. § 1.53(b), and "[a] listing of the information **need not be**

**resubmitted in the continuing application**."  *See also TM Patents, L.P. v. Int'l Bus. Machines*

*Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000) (stating that applicants need not resubmit

references cited in parent applications—regardless of their materiality—because the examiner is

required to consider information in parent applications and to review them for pertinent

---

[2] The PTAB was also advised by the parties in the IPR briefing of the '993 patent of the litigation
in the Eastern District of Texas, *see Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 1 at 1-
2 (PTAB 2018)), and again during the CBMs of both parent patents, *see Xerox Corp. v. Bytemark,*
*Inc.*, CBM2018-00011, Paper 1 at 2, 67 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*, CBM2018-
00018, Paper 6 at 2 (PTAB 2018)).  The PTAB, which is part of the PTO, acknowledged that it
had notice of the Eastern District litigation, referencing it in all three of its final decisions.  *See*
*Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 38 at 4, 11, 22 (PTAB 2018)); *Xerox Corp.*
*v. Bytemark, Inc.*, CBM2018-00011, Paper 12 at 3 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*,
CBM2018-00018, Paper 11 at 3 (PTAB 2018).
[3] All of the IPR and CBM briefings and decisions became "of record" in the prosecution history
of the parent patents, and thus, part of the record of the child continuation applications that resulted
in the newly issued patents.  *See ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 547 (Fed. Cir. 1998).

information when examining a continuing application).   Thus, Defendants' allegation of inequitable conduct is meritless because "it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 547 (Fed. Cir. 1998).

### 2.     Bytemark did not act with specific intent to deceive the PTO.

Defendants cannot meet their burden of proving, by clear and convincing evidence, a specific intent to deceive the PTO.  To show such intent, Defendants must prove "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290.  "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91.  "[A] patentee need not offer any good faith explanation for his conduct unless and until an accused infringer has met his burden to prove an intent to deceive by clear and convincing evidence." *1st Media*, 694 F.3d at 1373.

As discussed above, Defendants' allegations that Bytemark withheld the invalidity decisions with the specific intent to deceive the PTO are false.  At all times, Bytemark acted in good faith, on a reasonable interpretation of the law.  *See Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1362-63 (Fed. Cir. 2010) ("Even if the nondisclosed information is of relatively high materiality, … inequitable conduct cannot be found where the patentee offers a plausible, good faith explanation for why the nondisclosed information was not cited to the PTO.").  Defendants' assertion that Bytemark acted with specific intent to deceive the PTO should be rejected.

### 3.     The alleged nondisclosure was not "but-for material."

"[T]he materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291.  This requires that "the PTO would not have allowed a claim had it been aware of" the alleged misconduct.  *Id.*  The Eastern District's decision on the § 101 patentability of the parent patents' claims is not material to the subject matter of the children

3

patents' claims.  First, the children patents' claims recite different claim language from the parent patents, and *Alice*'s § 101 subject matter analysis looks to the language of the claims.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  Second, the children patents were found by the USPTO to be patentably distinct from the parent patents.  *See* Ex. F, in particular Notice of Allowance at 8 ¶ 3; 18 (adopting Bytemark's argument that the patent claims are patentably distinct).  Third, the children patents are subject to the new 2019 § 101 USPTO guidelines, unlike the parent patents.  *See* Motion at 8-10.  Accordingly, the Eastern District's decision was not material to the patentability of the child patents.

**4.    Defendants' inequitable conduct allegation cannot be resolved on a motion to dismiss.**

An amendment is futile where it is legally insufficient on its face such that the claim could not survive a motion to dismiss.  *Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir. 2002).  In *Leviton Mfg.*, a case relied upon by Defendants (Response at 4), the Federal Circuit *denied* summary judgment of inequitable conduct, explaining that it is a fact-intensive inquiry and that the court denies such motions in cases like this one: "We rarely affirm a grant of summary judgment of inequitable conduct, and in those cases where we have affirmed, the applicants did something other than fail to disclose a commonly owned application or related litigation."[4]  *Leviton Mfg.*, 606 F.3d at 1363.  Because Defendants' assertion of inequitable conduct would not result in a grant of summary judgment against Bytemark, Defendants certainly cannot establish that Bytemark's patent infringement claims would not survive a motion to dismiss.

**B.    Bytemark's proposed patent infringement claims cannot be disposed of under § 101 on a motion to dismiss.**

The Federal Circuit has held that "determining patent eligibility requires a full understanding of the basic character of the claimed subject matter."  *MyMail, Ltd. v. ooVoo, LLC,*

---

[4] Notably, *Leviton* was decided under the *less* demanding pre-*Therasense* standard.

4

934 F.3d 1373, 1379 (Fed. Cir. 2019). Although "claim construction is not an inviolable prerequisite to a validity determination under § 101 ... it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). "[F]actual disputes about whether an aspect of the claims is inventive may preclude dismissal at the pleadings stage under § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019). Patents are presumed valid and patent-eligible and must be proved unpatentable by clear and convincing evidence. *See id.* at 1319.

> 1.    **There is no merit to Defendants' arguments that the proposed patent infringement claims are futile because the parent patents' claims were found unpatentable.**

Defendants rely heavily on the Federal Circuit's Rule 36 affirmation in the Masabi litigation in arguing that Bytemark's proposed amended complaint is futile. This nonprecedential judgment regarding the parent patents is limited to those patent claims and does not have any impact on the patentability of separate, patentably distinct inventions with claim limitations that have never been addressed. Defendants have not pointed to a single case (in this district or elsewhere) where a court found a party's proposed addition of infringement claims based on newly issued, valid patents to be futile. The Eastern District of Virginia case cited by Defendants is inapplicable and does not support finding Bytemark's proposed patent infringement claims futile. Indeed, in that case, the plaintiff's motion to amend its complaint *was granted* by the court despite the defendant's arguments that the newly asserted patents-at-issue were invalid under § 101,

among other substantive arguments.  *See Cleveland Clinic Foundation et al. v. True Health Diagnostics LLC*, 1:17-cv-00198, Dkt. # 33 (Apr. 17, 2017).[5]

Here, the children patents contain claims and claim limitations (both of which are the subject of the *Alice* analysis) that differ from those of the parent patents, and no court has found these claims or their distinct limitations, separate or as ordered in the claims, abstract under *Alice* step one or lacking an inventive concept under step two.  These claims were granted under the PTO's Revised § 101 Guidance, issued after the Eastern District decision, which Defendants acknowledge "make[] finding a patent invalid under § 101 much more difficult."  *See* Response at 13.  Thus, Defendants' arguments that the proposed asserted claims are unpatentable in light of those previously held invalid in the Masabi litigation are unsupported and should be rejected.

### 2.    There is no merit to Defendants' arguments that the claims of the children patents are abstract.

With respect to step one of the *Alice* analysis, Defendants fail to address recent relevant Federal Circuit precedent and oversimplify and misconstrue the inventions disclosed and claimed in the children patents.  Defendants ignore that "improving security ... can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem."  *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018).  In its Motion, Bytemark demonstrated that claim 1 of the '567 patent is consistent with *Ancora.  See Ancora Techs.*, 2018 WL 6005021, at *4 ("[I]mproving security ... can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem.").

---

[5] Only later, on a motion to dismiss, did the court address the parties' substantive issues and granted the defendant's motion, in part, relying on explicit findings the Federal Circuit made with respect to the parent patents claims.  *See Cleveland Clinic Found. v. True Health Diagnostics, LLC*, No. 117CV198, 2017 WL 3381976, at *7 (E.D. Va. Aug. 4, 2017), aff'd, 760 F. App'x 1013 (Fed. Cir. 2019).  In contrast, in its Rule 36 judgment, the Federal Circuit in the Masabi litigation did not provide any opinion or analysis regarding the claims of the parent patents.

Defendants' example of "ticket holders disposing of their physical tickets after they have been used" is inapposite and, in fact, illustrates that the challenges addressed by Bytemark are *technological problems* that simply do not arise outside of mobile electronic ticketing. *See* Response at 11. To the contrary, unlike the purported "conventional step" discussed by Defendants, the ticket is *never* physically given to the ticket taker or venue to be disposed of, thus creating a technological problem where the mobile device user could exploit its continued possession of the ticket and commit various acts of fraud or piracy addressed by the claims of Bytemark's newly issued patents. Consistent with *Ancora*, the claims of the children patents are directed to a non-abstract computer-functionality improvement that departs from earlier approaches to solve a specific computer problem.

### 3. There is no merit to Defendants' arguments that the claims of the children patents lack an inventive concept.

Defendants' arguments relating to *Alice* step two are similarly untenable. The specifications of the children patents describe the technological challenges that existed in mobile ticketing systems at the time of the invention:

> existing systems distribute information that can constitute a ticket, but the verification problem is difficult…The problem with these systems is that the scanning process is fraught with error … Barcode scanners were not designed to read a lit LCD screen displaying a bar code…therefore, there is a need for an electronic ticketing system that provides a human-perceivable visual display that the venue can rely on to verify the ticket. *See* Ex. A at 1:29-49; Ex. B at 1:23-44.

The children patents disclose and claim an inventive concept. The recited security features implement Bytemark's solution to a problem specifically arising in the mobile electronic ticketing technology field. With respect to the '567 patent, the abstract explains that the invention "discloses a novel system and method for distributing electronic ticketing to mobile devices such that the ticket stored on the device is checked for its integrity from tampering and the device periodically reports on ticket usage with a central server." *See* Ex. B, Abstract. The specification describes specific, concrete security

features -- that are captured in the claims -- that overcome the challenges of mobile ticketing systems at the time of the invention.  For example, the specification of the '567 patent explains that "data integrity checking is to be sure that the pass data and the software managing that pass data on the user's device has not been altered improperly" and identifies various related embodiments.  *See, e.g., id.* at 13:20-14:25; 17:48-19:12 (*See, e.g.,* claim 1 preamble: A mobile ticketing system for detecting fraudulent activity of tickets using **data integrity**, comprising ") (emphasis added).

Similarly, for example, claim 1 of the '764 patent teaches: "wherein the ticket payload contains code that destroys the validating visual object in a predetermined period of time after initial display or upon some pre-determined input event."  Ex. A at 14:61-64.  In the Notice of Allowance of the application that resulted in the '764 patent, the examiner confirmed that the independent claims are patentably distinct from all of the claims of its parent patent (the '967 patent) in part because the '967 patent did not recite "the ticket payload contains code that destroys the validating visual object in a predetermined period of time after initial display or upon some pre-determined input event."  Ex. F, at 8 ¶ 3; 18.  Accordingly, Defendants' arguments that the claims of the children patents lack an inventive concept are without merit, and Defendants have failed to demonstrate that Bytemark's proposed infringement claims relating to claim 1 of each of the children patents are futile.

> **4.     Defendants cannot establish that any other patent claim asserted by Bytemark in its Proposed Amended Complaint is futile.**

In addition to failing to demonstrate that Bytemark's infringement allegations with respect to claim 1 of each of the children patents are futile, Defendants also have not addressed any other claims or claim elements of either of the children patents.  In its proposed amended complaint, Bytemark alleges that Defendants infringe "at least claim 1" of the '567 and '764 patents respectively.  *See, e.g.*, Ex. D, ¶¶ 45, 48-50, 58, 62-66.  In their Response, Defendants only address the limitations of claim 1 of the children patents, despite their burden to establish that all of

Bytemark's infringement claims would be futile.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  The dependent claims of the children patents provide meaningful limitations that are not abstract and provide an unconventional inventive concept under the *Alice* analysis.[6]  As Defendants wholly failed to address any asserted dependent claims or their limitations, Defendants have not met their burden of demonstrating that Bytemark's proposed amendment is futile.

## II.   DEFENDANTS FAIL TO ESTABLISH UNDUE PREJUDICE, UNDUE DELAY, OR BAD FAITH

Defendants have not met their burden of showing undue prejudice.  Defendants' assertion that addition of the new patent infringement claims would mandate a Markman hearing, broaden the scope of discovery, and add a new claim to explain to a jury (Response at 15), even if true,[7] does not establish undue prejudice sufficient to deny the amendment.  *See, e.g.*, *002152706 Ontario Ltd. v. Changer & Dresser, Inc.*, No. 15-CV-20S(F), 2017 WL 11441754, at *2 (W.D.N.Y. Nov. 13, 2017); *Droplets, Inc. v. E*Trade Fin. Corp.*, No. 12 Civ. 2326 (CM) (S.D.N.Y. Mar. 25, 2014).  Further, there is minimal chance of undue prejudice or delay here because the "[t]he new claims all arise from the same facts as the original claims contained in plaintiffs' original complaint."  *Speedfit LLC v. Woodway USA, Inc.*, No. 13-CV-1276, 2015 WL 6143697, at *4 (E.D.N.Y. Oct. 19, 2015).  The concerns alleged by Defendants are far outweighed by the Court's substantial interest in adjudicating this entire dispute in one action.  *See id.*  (stating that "[i]f a separate action were brought for the new claims … it would

---

[6] For example, claim 6 of the '567 patent teaches: "The system of claim 4, where the integrity check is to determine whether a time stamp associated with stored pass data is inconsistent with other storage time stamp data."  *See* Ex. B at 18:19-27.  Claim 16 of the '764 patent discloses: "The system of claim 15, wherein the transmitted validating display object is further comprised of data parameters that are configured to be used by the remote display device to perform the purchase validation."  *See* Ex. A at 16:19-26.

[7] To the extent a Markman hearing would be necessary, it would not impact the scheduling of the case in any material way.  Additionally, discovery regarding how the accused systems work with respect to the trade secrets substantially, if not completely, overlaps with discovery with respect to the patent infringement claims.

require the parties and the court to duplicate their efforts," and "[t]he parties and the court should not be put to the burden of litigating two separate cases with identical or overlapping factual predicates").

Defendants' contention that Bytemark has "substantially failed to prosecute its case" (Response at 14-15) is baseless. [8] Although no scheduling order has been entered in this case, on February 14, 2019, Bytemark sent a letter to Defendants advising them of their failure to provide documents in response to Plaintiff's First Set of Requests including documents regarding the creation and development of the accused systems and on February 4, 2020, Bytemark served its Second Set of Requests for Production requesting all versions of the New Jersey Transit app and MyTix app, the original API documentation for the MyTix app, and the mobile application source code for the first released version of the MyTix app. As of the filing of this brief, Defendants have not produced any documents responsive to any of these requests. On December 23, 2019, the Court entered its protective order. Bytemark subsequently produced documents covered under the order on February 3, 2020. Defendants, however, have produced no discoverable information aside from a batch of nonresponsive, publicly available documents over one year ago. Accordingly, Defendants' argument should be rejected.

### III.   CONCLUSION

For these reasons, Bytemark requests that the Court grant it leave to amend its complaint.

Dated: May 29, 2020                                    Respectfully submitted,

                                                       s/ Dariush Keyhani
                                                       Dariush Keyhani

---

[8] Defendants' allegation that Bytemark has "refuse[d] to disclose what trade secrets it contends Defendants have misappropriated" (Response at 15) is not only irrelevant to the instant Motion, it is false. Bytemark provided sufficient notice of its trade secrets in its pleading. *See Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) ("Courts have recognized that a very general showing [of trade secrets information] may be sufficient, particularly in the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated or cannot determine the full scope of its claims until it gains a better understanding of how a defendant operates.").

Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Plaintiff*

11