UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:17-cv-01803 |
| | § | (PGG) |
| XEROX CORP., ACS TRANSPORT | § | ECF CASE |
| SOLUTIONS, INC., XEROX | § | |
| TRANSPORT SOLUTIONS, INC., | § | |
| CONDUENT INC., and NEW JERSEY | § | |
| TRANSIT CORP., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT

## Table of Contents

I.      Amendment is Futile...........................................................................................2

        A.      Bytemark's newly issued patents are unenforceable due to
                inequitable conduct. ................................................................................2

        B.      The Children Patents are invalid under § 101.......................................8

                1.      Infringement claims regarding the '764 Child Patent
                        are futile because the patent is invalid under § 101. ....................9

                2.      Infringement claims regarding the '567 Child Patent
                        are futile because the patent is invalid under § 101. ..................11

II.     Undue Prejudice, Undue Delay, and Bad Faith. ................................................14

i

# Table of Authorities

**Page(s)**

CASES

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014) ........................................................9

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ...............................................................................................14

*Bytemark, Inc. v. Masabi Ltd.*,
  No. 216CV00543JRGRSP, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), aff'd,
  792 F. App'x 952 (Fed. Cir. 2020) ...............................................................................3, 6, 7

*Cargill, Inc. v. Canbra Foods, Ltd.*,
  476 F.3d 1359 (Fed. Cir. 2007).............................................................................................2

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)..............................................................................................13

*City of Los Angeles v. San Pedro Boat Works*,
  635 F.3d 440 (9th Cir. 2011) ...............................................................................................14

*Cleveland Clinic Found. v. True Health Diagnostics, LLC*,
  760 F. App'x 1013 (Fed. Cir. 2019) ...............................................................................11, 14

*Cleveland Clinic Found. v. True Health Diagnostics, LLC*,
  No. 117CV198LMBIDD, 2017 WL 3381976 (E.D. Va. Aug. 4, 2017), aff'd,
  760 F. App'x 1013 (Fed. Cir. 2019)...........................................................................10, 11, 14

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018)................................................................................................3

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014)..............................................................................................6

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
  282 F.3d 83 (2d Cir. 2002)......................................................................................................2

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)..............................................................................................6

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)............................................................................................12

*Health-Chem Corp. v. Baker*,
  915 F.2d 805 (2d Cir. 1990)....................................................................................................2

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) ......................................................................12

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) .......................................................................9

*Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*,
   606 F.3d 1353 (Fed. Cir. 2010) .......................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012) ................................8

*Nilssen v. Osram Sylvania, Inc.*,
   504 F.3d 1223, 84 USPQ2d 1811 (Fed. Cir. 2007) .........................................4

*Pure Data Sys., LLC v. Ubisoft, Inc.*,
   329 F.Supp.3d 1054 (N.D. Cal. 2018) .............................................................9

*Regeneron Pharm., Inc. v. Merus N.V.*,
   864 F.3d 1343 (Fed. Cir. 2017) ....................................................................3, 4

*Ricciuti v. N.Y.C. Transit Auth.*,
   941 F.2d 119 (2d Cir. 1991) ............................................................................2

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   No. 2016-1233, 2017 WL 4654964 (Fed. Cir. Oct. 18, 2017) ........................9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc) .....................................................2, 4

## STATUTES

35 U.S.C. § 101 .......................................................................................... passim

## OTHER AUTHORITIES

37 C.F.R. § 1.56(c) (1998) ................................................................................5

Bytemark's motion for leave to amend its complaint is futile and should be denied. Bytemark's original complaint alleged infringement of two patents: U.S. Patent No. 9,239,993 and U.S. Patent No. 8,494,967. Both patents were dismissed in this case because they were invalidated in a co-pending Eastern District of Texas litigation.[1] The Federal Circuit recently affirmed the decision invalidating those patents. Bytemark now attempts to add two other patents (U.S. Patent Nos. 10,360,567 and 10,346,764) (together the "Children Patents," singularly "Child Patent") that are direct descendants of the invalid and dismissed '993 and '967 patents (the "Invalid Parent Patents"). But much like the Invalid Parent Patents, the Children Patents are facially invalid and unenforceable. Thus, Bytemark's request to amend is futile and should be denied.

Bytemark's proposed claims of patent infringement are futile for two reasons. First, the Children Patents are unenforceable due to inequitable conduct. When seeking the Children Patents, Bytemark intentionally withheld from the Patent Office that the Invalid Parent Patents were, in fact, invalidated by the Eastern District of Texas. Second, the Children Patents are invalid because they are directed to abstract ideas and lack any inventive concept. More specifically, the Children Patents attempt to claim the same subject matter as their parents; subject matter already found unpatentable by the Federal Circuit.

In addition, Bytemark's motion for leave to amend should be denied because it is prejudicial, and the product of undue delay, bad faith, and/or dilatory motive. Having voluntarily dismissed its prior patent claims from this litigation, Bytemark should not be permitted to transform this trade secret and breach of contract case back into a patent lawsuit. That is particularly true here because Bytemark has refused to disclose its alleged trade secrets so that

---

[1] Bytemark, Inc. v. Masabi Ltd., 2:16-CV-543-JRGRSP (E.D. Tex.) ("the *Masabi* litigation").

Defendants may evaluate Bytemark's claims and has failed to prosecute its case over the past three years (apparently waiting for the Children Patents to issue). In other words, Bytemark has kept this case at a standstill so its claims can remain a moving target. The Court should decline to reward Bytemark's gamesmanship by denying Bytemark's motion for leave to amend.

## I.  Amendment is Futile.

A motion to amend should be denied when the proposed amendment is futile. *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied."). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The adequacy of the proposed amended complaint, however, is to be judged by the same standards as those governing the adequacy of a filed pleading."). Here, Bytemark's patent claims could not withstand a motion to dismiss because the patents were obtained via inequitable conduct and they are invalid under § 101.

### A.  Bytemark's newly issued patents are unenforceable due to inequitable conduct.

Inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent and related family patents. To prevail on inequitable conduct, an accused infringer must show that an applicant (1) "failed to disclose material information . . . and (2) intended to deceive the U.S. Patent and Trademark Office." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007). "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc). Determining but-for materiality "requires that the court place itself in the shoes of a patent examiner" and decide whether, had the information

2

been before the examiner at the time, the claims of the patent would have still issued. *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1351 (Fed. Cir. 2017). In assessing but-for materiality, the Court applies the preponderance of the evidence standard. *Id.* at 1350.

Despite being aware of this allegation, Bytemark chose not to address the substance of inequitable conduct in its Motion. However, it is clear that when prosecuting the Children Patents Bytemark failed to disclose material information to the Patent Office. In particular, Bytemark withheld the Eastern District of Texas decisions invalidating the Invalid Parent Patents. *See Bytemark, Inc. v. Masabi Ltd.*, No. 216CV00543JRGRSP, 2018 WL 7272023, at *5 (E.D. Tex. Nov. 26, 2018), report and recommendation adopted, No. 216CV00543JRGRSP, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), aff'd, 792 F. App'x 952 (Fed. Cir. 2020).

The Children Patents would not have issued without Bytemark's misconduct. Before being granted, both patents were repeatedly rejected under § 101. *See* Exhibit A (Office Action, Appl. No. 14/286,622[2] (Apr. 13, 2017)) at 3 ("Claims 1-16 are rejected under 35 U.S.C. 101 because the claimed invention is directed to a judicial exception (i.e., a law of nature, a natural phenomenon, or an abstract idea) without significantly more."); Exhibit B (Office Action, Appl. No. 14/286,622 (Nov. 7, 2017)) at 2-6; Exhibit C (Office Action, Appl. No. 14/286,622 (Aug. 10, 2018)) at 4-8 and 17-20;  Exhibit D (Office Action, Appl. No. 14/823,157[3] (Oct. 6, 2017)) at 3-5; Exhibit E (Office Action, Appl. No. 14/823,157 (June 1, 2018)) at 3-15.[4] In each of these Office Actions the patent examiners made arguments closely mirroring those made by the

---

[2] Appl. No. 14/286,622 is the application that issued as the '567 patent.

[3] Appl No. 14/823,157 is the application that issued as the '764 patent.

[4] At the pleading stage "the court may consider 'matters of public record.'" *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008, n. 2 (Fed. Cir. 2018). "Prosecution histories constitute public records." *Id.* (citing *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)).

*Masabi* court. Had the examiners learned that a Federal Court agreed with their analysis, the Children Patents would not have issued. As a result, the decisions invalidating the Invalid Parent Patents are but-for material information for the patent examiner.

In addition, Bytemark withheld the invalidity decisions with the specific intent to deceive the Patent Office. "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Therasense*, 649 F.3d at 1290. Direct evidence of intent is not, however, required. *Regeneron Pharm.*, 864 F.3d at 1351 (Fed. Cir. 2017). "A court may infer intent from circumstantial evidence." *Id.* "An inference of intent to deceive is appropriate where the applicant engages in 'a pattern of lack of candor.'" *Id.* (quoting *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014).

The evidence here shows that Bytemark and its attorneys made the deliberate decision to withhold the *Masabi* decisions from the Patent Office examiners. Bytemark and its attorneys had a duty to disclose the *Masabi* decisions to the Patent Office. MPEP § 2001.06(c) (6th Ed. Rev. 2, July 1996) ("Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office"). The Federal Circuit has held that related litigation involving parent patents is material and should be disclosed during prosecution, even when the parent patent was not ultimately invalidated. *See Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1362 (Fed. Cir. 2010). "[T]he existence of [] litigation is material information that an examiner needs to have." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1234, 84 USPQ2d 1811, 1819 (Fed. Cir. 2007). Here, Bytemark not only failed to disclose that the parent patents were invalidated, Bytemark did not even disclose the

*existence* of the *Masabi* litigation which the MPEP and Federal Circuit case law requires. Withholding the *Masabi* litigation and invalidity decisions is even more egregious because the examiners of the Children Patents continued to issue § 101 rejections mirroring the reasoning used by the *Masabi* court.

The duty to disclose material information extends to each inventor and the attorneys who prosecuted the application. 37 C.F.R. § 1.56(c) (1998). The named inventors of the Children Patents, all of whom are Bytemark employees, filed declarations acknowledging the duty to disclose.[5] The attorney prosecuting the Children Patents was Jennifer Meredith, a partner of Meredith & Keyhani, PLLC at least as of December 10, 2018. Meredith & Keyhani is the same firm that represented Bytemark in the *Masabi* litigation and the same firm that represents Bytemark in this lawsuit. Thus, there is no question that the Bytemark inventors and attorneys had a duty to disclose material information, were aware of the Masabi litigation and the invalidity decisions, and nevertheless chose not to disclose this material information to the U.S. Patent Office.

This is particularly egregious here as the law firm prosecuting the Children Patents was the same firm that argued and lost the validity issue for the Invalid Parent Patents in the *Masabi* litigation. The *Masabi* invalidity decision issued just weeks before Bytemark responded to the examiner's rejection in one of the Children Patents on the same exact legal principle.

In the *Masabi* invalidity decision, the Eastern District of Texas Magistrate Judge even discussed the rejections of the '567 Child Patent:

> Although the claims of the [Invalid Parent Patents] eventually overcame scrutiny [during prosecution] under then-existing interpretations of § 101 and *Alice*, a number of related applications remained in prosecution, and these applications

---

[5] *See, e.g.*, U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 05-29-2019 Oath or Declaration filed.

> have not fared as well. These applications have specifications that are similar to those of the [Invalid Parent Patents], and many of these claims are remarkably similar to those recited in the [Invalid Parent] [P]atents. In April of 2017, the claims in one of these applications were rejected under § 101 as being "directed to abstract idea of determining fraudulent activity associated with a ticketing system." *See* Office Action, Appl. No. 14/286,622, at 3 (Apr. 13, 2017). This idea, according to the examiner, was similar to the idea found abstract and patent-ineligible in *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089 (Fed. Cir. 2016). *See id.* The additional elements recited in the those [*sic*] claims, including a "server computer sub-system," a "device," and a "network" were not significant enough, in the examiner's view, to take the claims away from the abstract idea. *See id.*

*Bytemark, Inc. v. Masabi Ltd.*, No. 216CV00543JRGRSP, 2018 WL 7272023, at *5 (E.D. Tex. Nov. 26, 2018), report and recommendation adopted, No. 216CV00543JRGRSP, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), aff'd, 792 F. App'x 952 (Fed. Cir. 2020).

Despite this discussion and the identical § 101 arguments being asserted by the examiners of the Children Patents, Bytemark withheld the existence of the *Masabi* litigation from the Patent Office. Two weeks after the Magistrate Judge issued his opinion, Bytemark and its counsel submitted amended claims in connection with the '622 application that would ultimately issue as the '567 Child Patent. Alongside those amended claims, Bytemark submitted a lengthy discussion of the Federal Circuit's holdings in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) and *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) to argue that the amended claims should survive under § 101. Exhibit F (Office Action Response, Appl. No. 14/286,622 (Dec. 10, 2018)) at 6-10. But nowhere in these remarks did Bytemark disclose the far-more relevant § 101 analysis from the *Masabi* court. Similarly, several months after the *Masabi* Magistrate Judge's invalidity opinion, Bytemark and its attorneys explicitly discussed one of the Invalid Parent Patents during the prosecution of its '764 Child Patent. Exhibit G (Office Action Response, Appl. No. 14/823,157 (Apr. 10, 2019)) at 8. But once again, Bytemark and its attorneys chose to hide the status of the Invalid Parent Patents.

On February 7, 2019, the *Masabi* district court adopted the Magistrate Judge's Report and Recommendation invalidating the Invalid Parent Patents. *Bytemark, Inc. v. Masabi Ltd.*, No. 216CV00543JRGRSP, 2019 WL 7882728, at *1 (E.D. Tex. Feb. 7, 2019), aff'd, 792 F. App'x 952 (Fed. Cir. 2020). At that point Bytemark had exhausted its options in front of the district court and its case was dismissed with prejudice. Yet Bytemark and its attorneys continued to withhold the *Masabi* invalidity decisions from the Patent Office. Six days later, the '567 Child Patent examiner withdrew his § 101 rejections, having never learned of the *Masabi* litigation or the invalidity decisions. Exhibit H (Office Action, Appl. No. 14/286,622 (Feb. 13, 2019)) at 4. To this day, as far as Defendants are aware, neither Bytemark nor its attorneys have ever disclosed the *Masabi* decisions to the Patent Office in connection with the Children Patents.[6]

Bytemark's intent to deceive the Patent Office is further revealed by its appellate brief in the *Masabi* litigation. There it tried to argue that the Magistrate Judge's Report and Recommendation erred by considering the Children Patents because those patents were still undergoing examination. Appellant Br., *Bytemark, Inc. v. Masabi Ltd.*, Case 19-1628, Dkt No. 16 at ECF pages 41-43 (Fed. Cir. May 6, 2019). Bytemark even informed the Federal Circuit that the "USPTO has withdrawn the § 101 rejection with respect to the ['764 Child Patent]." *Id*. at ECF page 42. Bytemark then used this fact to claim that "because the USPTO ultimately determined that claims of these related patents (which share the specification of the patents-in-suit) are indeed § 101 eligible under the 'law as it stands today,' these pending applications *support*—not undermine—the validity of the patents-in-suit." *Id*. at ECF page 43 (emphasis in

---

[6] Despite Defendants raising the issue of inequitable conduct in the pre-motion letter briefing, Bytemark almost entirely ignores it in its motion. Its sole response is a single sentence offered without support: "the USPTO granted the patents with full knowledge that the earlier patents had been held unpatentable." Memorandum at 2. After an exhaustive search through the file histories for the Children Patents, Defendants have found no evidence that Bytemark ever notified the examiners of the *Masabi* litigation or the decisions finding the Parent Patents invalid.

original). Bytemark was thus disclosing its positive developments in front of the Patent Office, while withholding the very information that would have ended those prosecutions. And Bytemark's argument presumes that the validity of the Parent Patents should rise and fall with those of the Children Patents. If true, Bytemark has conceded that the Children Patents are invalid as the Federal Circuit has now confirmed the invalidity of the Invalid Parent Patents.

Bytemark and its attorneys chose not to inform the Children Patent examiners of the *Masabi* decisions because they knew those decisions would be the death knell to the new patents. After all, the examiners were already making the same arguments as the district court. The Eastern District ruling that it was "not a close case" would have affirmed the examiners' position that the applications were not patentable. Put simply, there is no explanation for Bytemark's failure to disclose the Eastern District litigation other than intent to deceive the Patent Office.

Because there is clear evidence of inequitable conduct in the public record, Bytemark's proposed claims of patent infringement are futile and leave to amend should be denied.

### B.     The Children Patents are invalid under § 101.

Bytemark's proposed amendment is also futile because the Children Patents are invalid under § 101 for the same reasons articulated by the Eastern District of Texas in the *Masabi* litigation, as affirmed by the Federal Circuit. A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The exception is that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012). There is a two-step test for determining patentability under § 101. *Id*. First, the Court must determine whether a patent claim is directed to a patent-ineligible concept, such as an abstract idea. Second, if the claims are directed to an ineligible concept, the court must "consider the elements of each claim both individually and 'as

an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347, 2355, 189 L. Ed. 2d 296 (2014) (quoting *Mayo*, 566 U.S. at 79). Applying the invention to a generic computer is not enough. *Id*. at 223. Nor is adding "well-understood, routine, conventional activities previously known to the industry." *Id*. at 225.

Bytemark incorrectly claims that Defendants "must prove by clear and convincing evidence that a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan." Memorandum at 9. That *evidentiary* "standard, however, is inapplicable to motions at the pleadings stage (such as this one) where no extrinsic evidence is considered and facts in dispute are viewed in the light most favorable to the non-moving party." *Pure Data Sys., LLC v. Ubisoft, Inc.*, 329 F.Supp.3d 1054, (N.D. Cal. 2018).

### 1. Infringement claims regarding the '764 Child Patent are futile because the patent is invalid under § 101.

The '764 Child Patent would not survive a motion to dismiss. It claims a method and system of validating a ticket by showing a ticket taker a human-readable visual object. This is an abstract idea that can be performed manually by a human. The claims recite the use of a "remote display device" and a "central computing system." But rather than improve the functioning of these computer components, the claims reference the components in terms of their conventional functions, such as sending, receiving, storing, and verifying data. "[C]laims directed to the collection, storage, and recognition of data are directed to an abstract idea." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, No. 2016-1233, 2017 WL 4654964, at *6 (Fed. Cir. Oct. 18, 2017). Though the claims may improve the efficiency of the abstract idea of verifying tickets using computers, this is not enough to make them patent eligible. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[M]erely adding

computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

The second step of the § 101 inquiry does not save the '764 Child Patent from invalidity. Beyond the abstract idea of validating a ticket by showing a ticket taker a human-readable object, the claims recite nothing that could be considered an "inventive concept." The remaining hardware and software features in the claims are conventional, as is the way the features operate and interact. The patent itself teaches that "[t]he software components may, generally, be implemented in hardware, if desired, using conventional techniques." '764 Child Patent at 13:43-46. Simply put, the claims contain no "inventive concept" sufficient to confer patent eligibility on this otherwise abstract idea.

In its Motion, Bytemark relies on a single distinction between the '764 Child Patent claims and those of the Invalid Parent Patents: that the ticket contains code that destroys the ticket after it has been used. Memorandum at 11, n. 3. This does not save the claims from abstractness.

Where, as here, the Federal Circuit has previously invalidated a parent patent under § 101, it is appropriate to dispose of the child patent at the pleading stage. *See Cleveland Clinic Found. v. True Health Diagnostics, LLC*, No. 117CV198LMBIDD, 2017 WL 3381976, at *1 (E.D. Va. Aug. 4, 2017), aff'd, 760 F. App'x 1013 (Fed. Cir. 2019) ("*Cleveland Clinic II*"). *Cleveland Clinic II* involved a patent plaintiff asserting two child patents from the same parent. *Id*. at *1. The Federal Circuit held the parent patent invalid under § 101 in separate litigation, and so the defendant in *Cleveland Clinic II* moved to dismiss the child patents on § 101 grounds as well. *Id*. The Eastern District of Virginia granted the motion, finding the child patents similarly

invalid. *Id.* The Federal Circuit affirmed. *Cleveland Clinic Found. v. True Health Diagnostics, LLC*, 760 F. App'x 1013 (Fed. Cir. 2019).

The way the Eastern District of Virginia reached its decision in *Cleveland Clinic II* is illustrative. The court began by looking for differences between the invalidated parent and the asserted child patents. *Cleveland Clinic II*, No. 117CV198LMBIDD, 2017 WL 3381976, at *6. Finding a few such differences, the court "conduct[ed] an additional § 101 analysis" specific to those differences. *Id.*

Applying that same process here makes clear that the '764 Child Patent is invalid under § 101. Its claims are not materially different from those of the Invalid Parent Patents. The only difference that Bytemark identified is the '764 Child Patent's claim limitation providing for the destruction of the ticket after it has been used. Memorandum at 11, n. 3. This conventional step has existed for hundreds, if not thousands, of years in the form of ticket holders disposing of their physical tickets after they have been used. The '764 Child Patent specification even describes "the old system" of ticket verification as "looking at the paper ticket and tearing it in half." '764 patent at col. 1, ll. 40. Moving this routine step to a generic computer cannot save the '764 Child Patent. It is facially invalid and any amendment to add said patent is futile.

### 2. Infringement claims regarding the '567 Child Patent are futile because the patent is invalid under § 101.

At a high-level, the '567 Child Patent is directed to the abstract idea of a mobile device sending information to a server. The server then determines if there is "any mismatch" in the data it receives from the mobile device by comparing what it transmitted with what it received. If there is a mismatch, the '567 Child Patent requires that the server store a "data value indicating the fraudulent activity." Based on that data value, the server cancels the ticket.

The steps of the '567 Child Patent can be summarized as the abstract idea of detecting fraudulent activity in a ticketing system.[7] The claimed steps of sending and receiving information, and comparing the sent and received information to determine whether a transaction is authentic, can all be performed in a human mind or with a pen and paper. Moreover, as the examiner noted during the prosecution, making "a pass, credit card, file, or other such user data . . . unavailable, expired, deleted, or cancelled upon discovery of fraudulent activity" is a well-known process that can be performed by humans. Exhibit C (Office Action, Appl. No. 14/286,622 (Aug. 10, 2018)) at 8. The Federal Circuit found similar claims abstract in *FairWarning IP, LLC v. Iatric Systems*, 839 F.3d 1089 (Fed. Cir. 2016) (finding the claim at issue were abstract where the patented method "collects information regarding accesses of a patient's personal health information, analyzes the information according to one of several rules … to determine if the activity indicates improper access, and provides notification if it determines that improper access has occurred."). The '567 Child Patent thus fails the first step of the § 101 analysis.

The second step fares no better. There is no "inventive concept" that transforms the abstract idea into patent eligible subject matter. The additional elements in the claims of the '567 Child Patent (*e.g.,* the "server computer sub-system," "device," and "network") do not amount to anything more than generic computer systems used to implement the abstract idea. *See In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (holding patent invalid where the claimed "server is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data.").

---

[7] Bytemark relies on the three claim limitations of "receiv[ing]," "block[ing]," and "determin[ing]" at the end of claim 1 of the '567 patent to argue that the claims are not abstract. Memorandum at 10-11.

The prosecution history of the '567 Child Patent also reveals that amendment is futile in view of § 101. While pending, the examiner rejected the claims <u>three</u> times under § 101.[8] Each time the examiner maintained that the claims were directed to the abstract idea of determining fraudulent activity associated with a ticketing system.[9] And each time, Bytemark responded with arguments paralleling those it made—and ultimately rejected by the court—in the *Masabi* litigation.[10] The examiner was not persuaded.

The examiner's reasoning in his first three § 101 rejections closely follows the reasoning applied in the *Masabi* litigation to invalidate the Invalid Parent Patents. This makes sense because  the '567 Child Patent shares portions of its disclosure with the one of the Invalid Parent Patents (the '993 patent).

It was only after the third rejection that the examiner allowed the claims. But the examiner did not allow the claims because Bytemark convinced him the claims were eligible under § 101. The examiner allowed the claims based on "the newest Updated Guidance on subject matter eligibility." Exhibit H (Office Action, Appl. No. 14/286,622 (Feb. 13, 2019)). On January 7, 2019, the Patent Office's Revised § 101 Guidance became effective. The new § 101 guidance makes finding a patent invalid under § 101 much more difficult. But the USPTO guidance did not change the law. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 771 (Fed. Cir. 2019) (deciding a patent ineligible under § 101 while making no reference to the new USPTO guidance and applying the two-step § 101 analysis dictated by the Supreme Court);

---

[8] Exhibit A (Office Action, Appl. No. 14/286,622 (Apr. 13, 2017)); Exhibit B (Office Action, Appl. No. 14/286,622 (Nov. 7, 2017)); Exhibit C (Office Action, Appl. No. 14/286,622 (Aug. 10, 2018)).

[9] *Id*.

[10] *See, e.g.*, Exhibit I (Office Action Response, Appl. No. 14/286,622 (July 17, 2017)).

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019) ("While we greatly respect the PTO's expertise on all matters relating to patentability, including patent eligibility, we are not bound by its guidance."); *Cleveland Clinic II*, No. 117CV198LMBIDD, 2017 WL 3381976, at *7 (disregarding the guidelines because they have not been through "formal adjudication or notice and comment rule making."). The allowed claims must still be scrutinized under the law set forth by the Supreme Court and the Federal Circuit. And under this law—the same law applied by the examiner in the first three rejections and the same law applied in the *Masabi* invalidity decisions upheld by the Federal Circuit—the claims are invalid. Amendment is therefore futile.

## II.     Undue Prejudice, Undue Delay, and Bad Faith.

The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith. "However, the longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). In determining what constitutes prejudice, courts in the Second Circuit "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id*.

Bytemark's motion for leave to amend should be denied because it would unduly prejudice Defendants and delay resolution of this lawsuit. Bytemark filed this lawsuit more than three years ago, on March 10, 2017, and has already amended its complaint multiple times. *See City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (reciting the proposition that "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Other than amending its complaint, Bytemark

has substantially failed to prosecute its case, having done little more than serve boiler plate discovery requests, all while refusing to disclose what trade secrets it contends Defendants have misappropriated. Now Bytemark has further delayed the case by once again seeking to amend its complaint, this time to add on a separate cause of action for patent infringement (having voluntarily dismissed its previous patent infringement claims). Adding on this new cause of action will significantly expand the scope of the case by mandating a *Markman* hearing and corresponding briefing, broadening the scope of discovery, and adding a new claim to explain and try to a jury.  Bytemark's delays unduly prejudice Defendants by risking that they will lose access to key witnesses or employees who were involved in developing the MyTix mobile application.

In addition, having voluntarily dismissed its prior patent claims from this litigation, Bytemark should not be permitted to transform this trade secret and breach of contract case back into a patent lawsuit. That is particularly true here because Bytemark first filed this lawsuit more than three years ago but has done little more than bide its time while apparently waiting for the issuance of the Children Patents. The Court should decline to reward Bytemark's gamesmanship by denying Bytemark's motion for leave to amend.

Dated:  May 15, 2020

Respectfully submitted,

*/s/ Ashley N. Moore*
Ashley N. Moore (admitted *pro hac vice*)
David Sochia (admitted *pro hac vice*)
Douglas A. Cawley (admitted *pro hac vice*)
Marcus L. Rabinowitz (admitted *pro hac vice*)
Jonathan Powers (admitted *pro hac vice*)

McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel:     (214) 978-4000
Fax:     (214) 978-4044
amoore@mckoolsmith.com
dsochia@mckoolsmith.com
dcawley@mckoolsmith.com
mrabinowitz@mckoolsmith.com
jpowers@mckoolsmith.com

David R. Dehoney (4616595)
McKool Smith, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Tel:     (212) 402-9424
Fax:     (212) 402-9444
ddehoney@mckoolsmith.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 15th day of May, 2020.  Any other known counsel of record will be served with a copy of this document by e-mail and/or facsimile transmission.


By:     */s/ David R. Dehoney*
        David R. Dehoney