# KEYHANI LLC

1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
www.keyhanillc.com

Direct Email: dkeyhani@keyhanillc.com
Direct Dial: 202.903.0326

December 10, 2020

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 10007

      RE:     *Bytemark, Inc. v. Xerox Corp. et al.*, 1:17-cv-01803-PGG, Discovery Dispute

Dear Judge Gardephe:

In accordance with your Individual Rule of Practice IV(E), we submit this joint letter on behalf of Plaintiff Bytemark, Inc. ("Bytemark") and Defendants Xerox Corp., ACS Transport Solutions, Inc. ("ACS Transport"), Xerox Transport Solutions, Inc. (collectively, the "Xerox Entities"), Conduent, Inc., and New Jersey Transit Corp. ("NJ Transit") (collectively, "Defendants") to request a pre-motion conference. After several meet and confers, the parties have reached an impasse in a discovery dispute. The parties' respective positions are set forth below.

## I.    Bytemark's Position.

Bytemark seeks an Order compelling Defendants to produce information and documents responsive to its requests for production (RFPs), including request numbers 38-40 and 60-62. Bytemark also opposes Defendants' unsupported requests for an order compelling it to produce a disclosure statement or response to contention Interrogatory #1—which is inappropriate at this stage of the litigation—and for a protective order. *See* Ex. A at Interrogatory No. 1 (Defendants' First Set of Amended Interrogatories, served December 12, 2018).

Federal Rule 26 broadly provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."[1] Fed. R. Civ. 26(b)(1); *United States ex rel. Bilotta v. Novartis Pharm. Corp.*, No. 11 CIV. 0071 (PGG), 2015 WL 13649823, at *2 (S.D.N.Y. July 29, 2015). Defendants provide no tenable reason for their refusal to comply with Bytemark's RFPs, and Bytemark requests that the Court compel them to do so.

---

[1] The source code and documents requested by Bytemark are relevant not only to its trade secrets claims but to its allegations of, e.g., breach of contract, unfair competition, and unjust enrichment.

On February 14, 2019, Bytemark sent a letter to Defendants advising them of their failure to provide documents in response to Plaintiff's First Set of RFPs, including documents regarding the creation and development of the accused systems. On December 23, 2019, the Court entered its protective order. Bytemark subsequently produced documents covered under the order on February 3, 2020, and, the next day, served its Second Set of RFPs requesting all versions of the accused New Jersey Transit app and MyTix app, the original API documentation for the MyTix app, and the mobile application source code for the first released version of the MyTix app. On June 6, 2020, Bytemark emailed Defendants about their refusal to produce any of these requested documents and met and conferred with them shortly thereafter. Following the meeting, Bytemark also agreed to make available for inspection on or around August 14, 2020 its source code and confidential documents that include proprietary and trade secret-protected information—an offer that Bytemark extended several times and which Defendants ultimately rejected on August 11. To date, Defendants have not produced documents responsive to any of these requests.

Defendants' refusal to produce the requested documents is unjustified. Defendants have taken the position that they will not produce their source code or confidential information until Bytemark "identif[ies] the allegedly misappropriated trade secrets that form Bytemark's good-faith basis for filing its lawsuit (via **document production**,[2] a specific trade secret disclosure statement, and/or in response to Defendants' Interrogatory No. 1)" (emphasis added). However, as discussed above, Bytemark has repeatedly offered to produce *all* of the source code and confidential information that forms the basis of its trade secrets allegations and set a specific time and place to do so. Thus, if this is indeed Defendants' position,[3] their request for an order to compel Bytemark is unnecessary.

Defendants' alternative demands for "a specific trade secret disclosure or a response to Defendants' Interrogatory No. 1" contravene this Court's Local Rules and precedent and are improper, however. Interrogatory No. 1 contravenes Local Rule 33.3(a) (which limits interrogatories at the beginning of discovery to "names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents" and 33.3(b).[4] Further, the Interrogatory—which seeks Bytemark's "claims and contentions" regarding its trade secrets at the onset of discovery—violates the timetable set forth in Local Rule 33.3(c): "**At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date**, interrogatories seeking

---

[2] Defendants included this specific language in earlier drafts of this letter. In the third version, they appear to have withdrawn it.

[3] This position is markedly different from that taken by Defendants during the parties' discussions. For example, in their proposed stipulation of July 21, Defendants stated as a condition of their production of documents response to Bytemark's RFPs that Bytemark "shall serve on Defendants a Trade Secrets Disclosure that identifies with particularity each and every alleged trade secret Plaintiff claims Defendant misappropriated." Defendants made similar demands for "specific identification" in "some kind of document" in, e.g., their emails of July 11, July 29, and August 7.

[4] Defendants' assertion that Bytemark must respond to the interrogatory pursuant to Local Rule 33.3(b)(1) is inconsistent not only with precedent and the Rule's other provisions, it is inappropriate given that the parties are in the early stages of discovery, prior, e.g., to any depositions. *See, e.g.*, *In re Weatherford*, 2013 WL 5788680, at *2.

the claims and contentions of the opposing party may be served unless the Court has ordered otherwise."[5]

This Court's precedent confirms that Bytemark has identified its trade secrets with sufficient particularity for this stage of the litigation.[6] "This district's local rules establish a sequence for discovery and a presumptive preference for certain discovery tools." *In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646, 2013 WL 5788680, at *2 (S.D.N.Y. Oct. 28, 2013). "[A] very general showing [of trade secrets] may be sufficient, particularly in the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated or cannot determine the full scope of its claims until it gains a better understanding of how a defendant operates." *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017). Indeed, any obligation by the plaintiff to further specify its trade secrets occurs *after* substantial discovery—*not* as a precondition to receiving responsive documents or information. *See, e.g.*, *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292, 2008 WL 463884, at *6 (S.D.N.Y. Feb. 20, 2008) (requiring plaintiff to specify its trade secrets after substantial discovery had taken place); *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (requiring plaintiff to identify its trade secrets in detail "after nearly a year of pre-trial discovery"); *see also Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*, No. 15CV2926, 2019 WL 5694256, at *17 (E.D.N.Y. July 22, 2019) ("[T]he level of [trade secrets] specificity increases as the case and discovery proceeds.").

Finally, Defendants cannot establish that good cause exists for a protective order or that Bytemark's interests would not be impermissibly harmed. Not only does the existing protective order shield Defendants' information from disclosure, Bytemark's complaint defines the bounds of its allegations such that any concerns of a "fishing expedition" are unfounded. Bytemark's offer to make its trade secrets information available for inspection prior to production of Defendants' confidential information further ensures that Bytemark will not (nor has any desire to) improperly benefit from Defendants' disclosures. Conversely, Bytemark's need for Defendants' information is critical, because, until now, Bytemark has had to rely entirely on publicly available information to support its case. Bytemark cannot know what trade secrets have been misappropriated until it knows how Defendants and their accused system operate. Further, Defendants' suggested procedure could easily become a tool of delay, with protracted disputes arising over, e.g., the sufficiency of Bytemark's trade secrets identification or whether the identified trade secrets actually qualify as trade secrets.

For these reasons, Bytemark respectfully requests that the Court grant an Order compelling Defendants to produce the information requested in its RFPs, including source code and documents regarding the creation and development of the accused systems, and to deny Defendants' requests for a motion to compel a response to Interrogatory No. 1 and for a protective order.

---

[5] Defendants mischaracterize Bytemark's position as a refusal to "identify its alleged trade secrets until 30 days before the close of fact discovery." Bytemark has consistently stated that it will "identify" its trade secrets through document production immediately, and that it will further specify its trade secrets in a contention document/response to Interrogatory #1 after "substantial discovery" and "at the conclusion of other discovery," in accordance with Local Rule 33.3(c).

[6] Bytemark's complaint defines the trade secrets-at-issue so as to put Defendants sufficiently on notice of the nature of these claims, and allows Defendants to discern the relevancy of its discovery requests. *See* Dkt. #74, ¶¶ 86, 101; *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (stating requirements of trade secrets "reasonable particularity" standard).

## II.     Defendants' Position.

Defendants seek an Order compelling Bytemark to identify the allegedly misappropriated trade secrets that form Bytemark's good-faith basis for filing its lawsuit (via a disclosure statement, and/or in response to Defendants' Interrogatory No. 1). Consistent with the case law, Defendants also seek a Protective Order preventing Bytemark from conducting a fishing expedition into Defendants' proprietary source code and other confidential engineering documents prior to Bytemark identifying its allegedly misappropriated trade secrets.

Despite filing this trade secret misappropriation lawsuit more than three years ago in March 2017, Bytemark has not even generally identified its  trade secrets. Defendants first  requested that Bytemark identify its allegedly stolen trade secrets in October 2018. Bytemark refused to answer Defendants' interrogatory seeking Bytemark's trade secret information. *See* Ex. A at Interrogatory No. 1; Ex. B at RFP No. 1 (Defendants' First Set of Requests for Production). To date, Bytemark still has not answered these requests. The parties met and conferred repeatedly on these issues, and in March 2019 Defendants' counsel proposed a compromise where it would inspect Bytemark's universe of trade secrets, and then search for, collect, and produce responsive documents once Defendants have a better understanding of the issues in the case. Bytemark rejected that proposal.  Bytemark then sat idle on this issue until June 2020. To avoid burdening this Court, Defendants again proposed a compromise: Bytemark would produce its trade secrets for inspection, Defendants would thereafter produce responsive documents, and within 7 days Bytemark would identify its alleged trade secrets. Bytemark refused, contending that it need not identify its alleged trade secrets until 30 days before the close of fact discovery, long after it reviews Defendants' highly confidential source code and engineering documents.

Bytemark's position that it can put off identifying its trade secrets is contrary to the holdings of numerous courts. Time and time again, courts find that a plaintiff must identify its trade secrets early in discovery. Otherwise, a plaintiff could simply review a *defendant's* trade secret material and claim that material as their own:

> "[I]t would be unfair to allow plaintiffs to discover [defendants'] trade secrets prior to revealing their own. Should defendants remain in the dark as to the explicit portions of the source codes that plaintiffs deem to be trade secrets misappropriated by defendants, plaintiffs, once privy to [defendants'] source codes, could tailor their theory of misappropriation to [defendants'] work. Indeed, [defendants'] work could be misappropriated. For this reason, plaintiffs are precluded from seeking further discovery from defendants until they identify, with reasonable particularity, which of the component parts or sequencing of their source code are not (1) publicly available information, (2) commonly-used algorithms, or (3) third-party licensing."

*MSCI Inc. v. Jacob*, 36 Misc. 3d 211, 214-15, 945 N.Y.S.2d 863, 866 (Sup. Ct. 2012); *see also Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, Civ. No. 3:12CV220 (WWE), 2012 WL 3113162 (D. Conn. 2012); *Power Conversion, Inc. v. Saft America, Inc.*, No. 83 Civ. 9185, 1985 WL 1016, at *2 (S.D.N.Y. May 1, 1985). The risk of this unfairness has even caused California to revise its Rules of Civil Procedure to require a trade secret plaintiff identify its trade secrets before discovery opens. *See* California Civil Procedure Code § 2019.210.

In addition to fairness concerns, Bytemark should be required to identify its trade secrets

because it streamlines litigation. Federal courts have found that pre-discovery identification of trade secrets serves several beneficial purposes:

> "First, [it] promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation."

*Loop AI Labs, Inc. v. Gatti*, 195 F.Supp.3d 1107 (N.D. Cal. 2016). These fairness and efficiency rationales support Defendants' request that Bytemark be compelled to identify its trade secrets with reasonable particularity. This can be done through a specific trade secret disclosure or a response to Interrogatory No. 1. Until Bytemark identifies its alleged trade secrets with reasonable particularity, Defendants respectfully request a Protective Order postponing their production of confidential source code and related documentation until after Bytemark identifies its alleged trade secrets with reasonable particularity.

Bytemark's refusal to identify its trade secrets pursuant to Interrogatory No. 1 is based on a misreading of Local Rule 33.3(a) and (c). *See* Ex. C (Plaintiff's Responses to Defendants' First Set of Interrogatories). While this Local Rule limits the use of interrogatories in certain scenarios, none of them shield Bytemark here. Local Rule 33.3(a) applies "at the commencement of discovery," not three years after a case is filed and more than eighteen months into discovery. More importantly, associated Local Rule 33.3(b) allows for interrogatories other than those permitted by 33.3(a) "if they are a more practical method of obtaining the information sought than a request for production or a deposition." Defendants' Interrogatory No. 1 meets this criterion. It is Bytemark's burden to identify its trade secrets with reasonable particularity, and neither a deposition nor a document production are preferred avenues for that identification. *See, e.g., Big Vision Private v. E.I. DuPont De Nemours & Co.*, 1 F.Supp.3d 224, 263 (S.D.N.Y. 2014) ("[Plaintiff] impermissibly shifts its burden onto [defendant] (and the Court) to sift through 70 pages of abstruse laboratory papers to ascertain [plaintiff's] trade secret.").

Moreover, allowing Bytemark to use Local Rule 33.3(c) to conceal its alleged trade secrets until 30 days before the close of discovery would contradict the very reasons the Rule exists. "In this District, contention interrogatories, unlike other types of discovery, are not designed to reveal new information to the opposing side." *Erchonia Corp. v. Bissoon*, No. 07 CIV. 8696 DLC, 2011 WL 3904600, at *8 (S.D.N.Y. Aug. 26, 2011), *aff'd*, 458 F. App'x 58 (2d Cir. 2012). Yet under Bytemark's proposal, new information (the trade secrets that form the basis of this case) would not be revealed until Defendants can no longer follow up with additional discovery. That is the opposite of what Local Rule 33.3(c) contemplates. *Id.* ("Therefore, the Local Rules do not anticipate that parties will use contention interrogatories to develop new information or provide notice of claims that could be followed by new rounds of other discovery.").

For the reasons explained above, Defendants request that the Court order Bytemark to identify its trade secrets with reasonable particularity either via a trade secret disclosure or a response to Interrogatory No. 1. Until Bytemark makes this identification, Defendants also seek a Protective Order preventing Bytemark from pursuing the entirety of Defendants' proprietary technical information in an attempt to tailor its trade secrets to fit what it finds in Defendants' own trade secrets.

Respectfully submitted,

/s/ Dariush Keyhani                              /s/ Ashley N. Moore
Dariush Keyhani                                  Ashley N. Moore
Keyhani LLC                                      McKool Smith, P.C.
1050 30th Street NW                              300 Crescent Court, Suite 1500
Washington, DC 20007                             Dallas, Texas 75201
Tel: (202) 748-8950                              Tel: (214) 978-4000
Fax: (202) 318-8958                              Fax: (214) 978-4044
dkeyhani@keyhanillc.com                          amoore@mckoolsmith.com
*Attorneys for Plaintiff*                        *Attorneys for Defendants*