UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 1:17-cv-01803 |
| § | (PGG) |
| XEROX CORP., ACS TRANSPORT § | ECF CASE |
| SOLUTIONS, INC., XEROX § | |
| TRANSPORT SOLUTIONS, INC., § | |
| CONDUENT INC., and NEW JERSEY § | |
| TRANSIT CORP., § | |
| § | |
| Defendants. § | |
| § | |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO BYTEMARK'S MOTION TO COMPEL DOCUMENT PRODUCTION

**Table of Contents**

| | | |
|---|---|---|
| **I.** | **Introduction**................................................................................................................2 | |
| **II.** | **Factual Background**...................................................................................................3 | |
| | A. | Defendants serve the first discovery in this case and request Bytemark produce documents identifying and embodying Bytemark's alleged trade secrets. ........................................................3 |
| | B. | Bytemark refuses to produce documents responsive to Defendants' requests....................................................................3 |
| | C. | Bytemark produces documents non-responsive to Defendants' requests and withholds documents identifying or embodying its trade secrets..........................................................4 |
| | D. | Defendants produce non-confidential documents responsive to Bytemark's requests and promise to produce all responsive documents *after* Bytemark identified its trade secrets.........................................................................................5 |
| | E. | The parties' negotiations fail because Bytemark is unwilling to identify its trade secrets with reasonable particularity. ...................................................................................6 |
| **III.** | **Argument**....................................................................................................................6 | |
| | A. | This jurisdiction and others require plaintiffs to disclose trade secrets with reasonable particularity prior to discovery. ..................................................................................6 |
| | B. | Bytemark has not identified its trade secrets with reasonable particularity. ...................................................................8 |
| | C. | Defendants have produced non-confidential documents responsive to Bytemark's requests but seek a protective order until Bytemark identifies its trade secrets with reasonable particularity. ...................................................................9 |
| **IV.** | **Conclusion** ................................................................................................................10 | |

## I. Introduction

Bytemark's motion paints an incomplete picture of the facts surrounding the parties' production efforts and discussions. First, contrary to Bytemark's assertions, Defendants have produced non-public documents responsive to Bytemark's discovery requests. Defendants produced meeting minutes between Defendants and Bytemark, meeting agendas, and communications between Defendants and Bytemark, among other responsive documents. Bytemark, on the other hand, ignored for over 13 months Defendants' requests for a multitude of documents, including requests for documents identifying or embodying Bytemark's alleged trade secrets. Even today, Bytemark has produced only a handful of contractual agreements. The bulk of Defendants' discovery requests remain unanswered. And, in particular, Bytemark has steadfastly refused to produce any documents identifying or embodying its alleged trade secrets.

Second, as Defendants have repeatedly told Bytemark, Defendants are ready and willing to produce its source code and confidential engineering documents (collectively, "confidential information") *after* Bytemark identifies its alleged trade secrets with reasonable particularity. In the spirit of compromise, Defendants have even agreed to show its confidential information to Bytemark on the condition the Bytemark will subsequently identify its trade secrets with reasonable particularity. Yet Bytemark has refused any agreement that would require identification of its alleged trade secrets with reasonable particularity. Bytemark's position, however, is contrary to the overwhelming precedent set by this jurisdiction and others. Notions of fairness compel a plaintiff like Bytemark to identify its trade secrets prior to gaining access to a defendant's confidential information. Otherwise, Bytemark could tailor its broad, malleable trade secret allegations to Defendants' confidential information. For these reasons, Bytemark's Motion should be denied and Defendants concurrently filed Motion requesting a Protective

Order until Bytemark identifies its trade secrets with reasonable particularity should be granted.

## II.   Factual Background

    A.    **Defendants serve the first discovery in this case and request Bytemark produce documents identifying and embodying Bytemark's alleged trade secrets.**

On October 23, 2018, Defendants served on Bytemark its first set of Requests for Production. Ex. A (Defendants' First Set of Requests for Production). A significant portion of Defendants Requests sought documents detailing Bytemark's alleged trade secrets. For example, Request No. 1 sought:

> **REQUEST NO. 1:** Documents identifying and describing in detail every trade secrets Plaintiff alleges has been stolen by Bytemark

*Id*. at 10. Similarly, Request Nos. 2 and 3 sought documents "embodying" Bytemark's alleged proprietary information and documents "provided to any of Defendants that were marked as trade secret or confidential." *Id*. Additional requests sought documents supporting Bytemark's efforts to maintain the secrecy of it alleged confidential information (No. 11) and documents supporting its allegations of misappropriation (No. 39). *Id*. at 11, 16.

    B.    **Bytemark refuses to produce documents responsive to Defendants' requests.**

On December 20, 2018, Bytemark served its response to Defendants' Requests for Production. Ex. B (Bytemark's Response and Objections to Defendants' Requests for Production). Bytemark produced no documents. Instead, Bytemark levied multiple objections, including objections that requests for documents identifying and embodying Bytemark's alleged trade secrets are "vague and ambiguous" and that the documents requested need not be produced to the extent they "are in Defendants' possession." *See, e.g., id*. at 4. Finally, Bytemark promised that it was "in the process of searching for documents" and would "produce the

3

documents as they are located." Bytemark serves its first discovery requests on Defendants and Defendants produce publicly available responsive documents.

On December 27, 2018, 7 days after Bytemark failed to provide a single document responsive to Defendants' Requests, Bytemark served its First Set of Requests for Production. Ex. D (Bytemark's First Set of Requests for Production). Bytemark's Requests sought, *e.g.*, detailed information regarding the development and operation of Defendants' system. *See, e.g.*, *id*. at 9.

On January 28, 2019 Defendants' promptly produced a handful of documents responsive to Bytemark's Requests. Bytemark complains that Defendants' production was "nonresponsive" and consisted of only "publicly available documents." Mot. at 2. However, there was no protective order in place at the time Defendants' response was due. *See, e.g.*, Dkt. No. 102 (Protective Order entered on December 23, 2019) As such, Defendants could not produce the requested confidential information. Defendants further reiterated that Bytemark must identify its trade secret information before Defendants produce their confidential information. Nevertheless, Defendants agreed to perform an in-person inspection of Bytemark's alleged trade secret material. Ex. E. Even though the in-person inspection would be an inferior to a trade secret disclosure for concretely identifying Bytemark's alleged trade secrets, Defendants agreed to this framework to avoid burdening the Court. Bytemark sat idle on the issue.

### C. Bytemark produces documents non-responsive to Defendants' requests and withholds documents identifying or embodying its trade secrets.

Finally, on February 3, 2020—more than 13 months after Defendants served its Requests, Bytemark made its first production. The production consisted primary of agreements between Defendants and Bytemark. None of Bytemark's produced documents even hinted at the content of Bytemark's alleged trade secrets.

### D. Defendants produce non-confidential documents responsive to Bytemark's requests and promise to produce all responsive documents *after* Bytemark identified its trade secrets.

On February 4, 2020, Bytemark served on Defendants its Second Set of Requests for Productions. Ex. F (Bytemark's Second Set of Requests for Production). Bytemark's Second Requests sought Defendants' source code and all version of Defendants' product, *i.e.*, the very information Defendants promised to produce *after* Bytemark responded to Defendants' first-served Requests for Production and identified its trade secrets with reasonable particularity. *Id*. at 8. Bytemark's Second Requests also sought communications between the parties; documents that are in Bytemark's possession and documents that would allow Bytemark to tailor its alleged trade secrets to match the information it provided to Defendants. *Id*. at 5-6.

On June 22, 2020, Defendants informed Bytemark that it would be producing documents responsive to Bytemark's Second Requests, including financial information and communications between Defendants and Bytemark. Ex. G (June 2020 Email Chain) at 17-18. Moreover, Defendants again reiterated that it would produce additional responsive confidential information when Bytemark "identif[ies] its trade secrets and make[s] them available for inspection." *Id*. On June 24, 2020, Bytemark, ignoring its obligation to produced documents responsive to Defendants Requests, made it clear that "the question of whether Plaintiff needs to further specify its trade secrets is inappropriate at this time and should be addressed only after there has been substantial discovery." *Id*. at 15.

On July 14, 2020, Defendants made a Supplemental Production that included over 70 documents and 800 pages. Defendants produced many of the categories of documents Bytemark of which Bytemark now complains. For example, Defendants produced minutes from a meeting with Bytemark on September 14, 2012 (CONDUENT0000294), internal notes to prepare for negotiations with Bytemark (CONDUENT0000296), communications with Bytemark regarding

5

joint projects (CONDUENT0000310), and email communications with Bytemark (CONDUENT000378 and CONDUENT0000436). As indicated in its June 22, 2020 communication with Bytemark, however, Defendants withheld confidential information pending inspection or disclosure of Bytemark's alleged trade secrets.

      **E.**    **The parties' negotiations fail because Bytemark is unwilling to identify its trade secrets with reasonable particularity.**

Over the next few months, the parties attempted to reach an agreement on this discovery dispute. Ignoring, for the sake of compromise, that Bytemark had still failed to provide documents responsive to Defendants' October 23, 2018 Requests, Defendants proposed a compromise. Defendants' compromise permitted Bytemark to *first* review Defendants' confidential information, *then* identify its trade secrets with reasonable particularity. Ex. G at 7. Bytemark even refused this framework where it could review Defendants' confidential information prior to identifying its trade secrets. *Id*. at 5. Simply put, Bytemark was "not willing" to identify its trade secrets with reasonable particularity before the conclusion of other discovery. *Id*. at 2.

On December 10, 2020, due to the impasse, the parties filed a joint letter to the Court detailing the dispute. On December 14, the Court order the parties to file separate motions. Therefore, Defendants filed the co-pending Motion to Compel and Motion for Protective Order respectfully requesting that the Court order Bytemark to identify its trade secrets with reasonable particularity and prevent Bytemark from pursuing Defendants' confidential information until Bytemark makes such trade secret disclosure.

### III.   Argument

      **A.**    **This jurisdiction and others require plaintiffs to disclose trade secrets with reasonable particularity prior to discovery.**

As explained in further detail in Defendants' co-pending Motion to Compel and Motion for Protective Order, New York courts require a trade secret plaintiff like Bytemark to disclose its trade secrets with reasonable particularity before discovering a defendant's confidential information. *See, e.g.*, *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147KAMCLP, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (noting that "federal courts regularly require trade secrets plaintiffs to identify alleged trade secrets with 'reasonable particularity' and requiring trade secret plaintiff to do the same). For example, in *MSCI Inc. v. Jacob*, the New York state court noted the inherent unfairness if plaintiffs were allowed "discover [defendants'] trade secrets prior to revealing their own." 36 Misc. 3d 211, 214-15, 945 N.Y.S.2d 863, 866 (Sup. Ct. 2012). Since plaintiffs brought the action for trade secret misappropriation, the plaintiffs "bear the burden of proving their allegation." *Id*. at 865. If "defendants remain in the dark as to the explicit [information] that plaintiffs deem to be trade secrets misappropriated by defendants, plaintiffs, once privy to [defendants'] source codes, could tailor their theory of misappropriation to [defendants'] work." *Id*. at 866. Thus, to prevent this unfairness, the court precluded plaintiffs "from seeking further discovery from defendants until they identify, with reasonable particularity," the alleged trade secrets. *Id*.

Recognizing the high risk of unfairness if a plaintiff like Bytemark can conceal its trade secrets until late in discovery, other jurisdictions require trade secret disclosures with reasonable particularity. Connecticut courts have ordered plaintiffs "to provide defendants with a description that defines with reasonable specificity the alleged trade secrets which form the basis of its misappropriation claim." *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, Civ. No. 3:12CV220 (WWE), 2012 WL 3113162 at *2 (D. Conn. 2012). Delaware's common law requires a trade secret plaintiff to "identify with reasonable particularity the matter which it claims constitutes a

7

trade secret" before discovery defendant's confidential information. *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986). Illinois and Florida likewise require trade secret identification before discovery. *See AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (prohibiting discovery until the plaintiff "particularize[d] which of its secrets were allegedly misappropriated"); *Del Monte Fresh Produce Co. v. Dole Food Co. Inc.*, 148 F. Supp. 2d 1322, 1326 (S.D. Fla. 2001) (requiring plaintiff to "list and reasonably describe the trade secrets it seeks to protect"). California has even mandated trade secret disclosures to prevent unfairness to defendants *See* California Civil Procedure Code § 2019.210 ("[B]efore commencing discovery relating to the trade secret, the party alleging he misappropriation shall identify the trade secret with reasonable particularity subject to any [protective] orders.").

### B.     Bytemark has not identified its trade secrets with reasonable particularity.

Despite being nearly three years into this litigation, the only description of Bytemark's alleged trade secrets appear in three nearly-identical paragraphs in its Complaint. Ex. H (Bytemark's Original Complaint) at ¶¶ 26, 66, 76. These paragraphs merely state the Bytemark's trade secrets encompass generic categories such as "back-end application and system management." *Id*. Throughout this discovery dispute, Defendants have repeatedly requested that Bytemark identify its trade secrets with reasonable particularity—even agreeing to provide its confidential information to Bytemark on the promise that Bytemark would subsequently identify its trade secrets. Bytemark has systematically refused. Under New York law, Bytemark's "generic descriptions of [trade secret] categories are insufficient to provide defendants with information sufficient to satisfy the 'reasonable particularity' standard" required of a trade secret plaintiff. *Uni-Sys., LLC*, 2017 WL 4081904 at *4. Thus, Bytemark has *prima facie* failed to identify its trade secrets with reasonable particularity.

C.  **Defendants have produced non-confidential documents responsive to Bytemark's requests but seek a protective order until Bytemark identifies its trade secrets with reasonable particularity.**

Unlike Bytemark, who has still refused to produce documents responsive to Defendants Requests, Defendants have produced non-confidential document responsive to Bytemark's requests. The additional documents Bytemark seeks in its motion are of the type that should be produced only after Bytemark identifies its trade secrets with reasonable particularity. For example, Bytemark seeks Defendants' source code and APIs. However, without forcing Bytemark to concretely identify its trade secrets, "once privy to [Defendants'] source code, [Bytemark] could tailor [its] theory of misappropriation to [Defendants'] work." *MSCI Inc.*, 945 N.Y.S.2d at 866.

Similarly, Bytemark requests documents and communications shared between Bytemark and Defendants. As an initial matter, documents and communications shared between the parties should be in Bytemark's possession. As Bytemark stated in its objections to Defendants' Requests, the documents requested need not be produced to the extent they "are in [Plaintiff's] possession." Ex. B at 4. More importantly, just like the source code, Bytemark could unfairly use communications between the parties to carefully tailor its broad trade secret allegations to match the information transmitted to Defendants.

To be clear, Defendants do not dispute that the requested documents are relevant to Bytemark's claims. Nor do Defendants contend that it need not produce the requested document. Rather, as Defendants have repeatedly indicated to Bytemark, Defendants will produce the requested confidential information *after* Bytemark identifies its trade secrets with reasonable particularity. Bytemark should have done this via a trade secret disclosure, as required by this and many other courts, or by producing the trade secret documents identified in Defendants' Requests. Defendants even agreed to *first* give Bytemark its confidential information on the

9

condition that Bytemark would subsequently provide a trade secret disclosure. But Bytemark has rejected any compromise that requires it to identify its trade secrets with reasonable particularity. No basis exists for Bytemark's failure to produce documents responsive to Defendants Requests, and no basis exists for Bytemark's unwillingness to identify its trade secrets with reasonable particularity.

## IV. Conclusion

For these reasons, Bytemark's Motion to Compel should be denied and Defendants' co-pending Motion to Compel and Motion for Protective Order should be granted.

Dated: January 4, 2021

Respectfully submitted,

/s/ Ashley N. Moore
Ashley N. Moore (admitted *pro hac vice*)
David Sochia (admitted *pro hac vice*)
Douglas A. Cawley (admitted *pro hac vice*)
Marcus L. Rabinowitz (admitted *pro hac vice*)
Jonathan Powers (admitted *pro hac vice*)

McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel:   (214) 978-4000
Fax:   (214) 978-4044
amoore@mckoolsmith.com
dsochia@mckoolsmith.com
dcawley@mckoolsmith.com
mrabinowitz@mckoolsmith.com
jpowers@mckoolsmith.com

David R. Dehoney (4616595)
McKool Smith, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Tel:   (212) 402-9424
Fax:   (212) 402-9444
ddehoney@mckoolsmith.com

***Attorneys for Defendants***