## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., | |
|     Plaintiff, | |
| v. | Case No. 1:17-cv-01803-PGG |
| XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP., | |
|     Defendants. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... 1

TABLE OF AUTHORITIES ................................................................................................... 2

I.      INTRODUCTION ........................................................................................................ 3

II.     FACTUAL BACKGROUND ....................................................................................... 3

III.    ARGUMENT ................................................................................................................ 5

       A.     Defendants mischaracterize Bytemark's position in the instant dispute. ................ 5

       B.     Defendants have not met their burden of establishing that a protective order is necessary or appropriate. ........................................................................................ 7

       C.     Bytemark has identified its trade secrets with sufficient particularity. ................. 10

            1.     Bytemark's position is supported by the Local Rules. .............................. 10

            2.     Bytemark's position is supported by this Court's precedent. .................... 12

IV.    CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*, No. 15CV2926, 2019 WL 5694256
(E.D.N.Y. July 22, 2019)..................................................................................................13

*Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc.*, No. 15CV8681, 2016 WL 1364942
(S.D.N.Y. Mar. 28, 2016)...............................................................................................8, 9

*Erchonia Corp. v. Bissoon*, No. 07 Civ. 8696, 2011 WL 3904600
(S.D.N.Y. Aug. 26, 2011).................................................................................................10

*In re Parmalat Secs. Litig.*, 258 F.R.D. 236 (S.D.N.Y. 2009) ...........................................8

*In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006) ...........9

*In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646, 2013 WL 5788680
(S.D.N.Y. Oct. 28, 2013)....................................................................................10, 11, 12

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020) ...................6

*Madanes v. Madanes,* 186 F.R.D. 279 (S.D.N.Y. 1999)...........................................11, 12

*MSCI Inc. v. Jacob,* 945 N.Y.S.2d 863 (Sup. Ct. 2012).........................................14, 15

*Power Conversion, Inc. v. Saft Am., Inc.*, No. 83 CIV. 8971, 1985 WL 1016
(S.D.N.Y. May 1, 1985) ...................................................................................................14

*Qube Films Ltd. v. Padell,* No. 13-CV-8405, 2015 WL 109628
(S.D.N.Y. Jan. 5, 2015) .....................................................................................................8

*Schiller v. City of N.Y.*, No. 04 CIV. 7921, 2007 WL 136149
(S.D.N.Y. Jan. 19, 2007)....................................................................................................8

*Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292, 2008 WL 463884
(S.D.N.Y. Feb. 20, 2008)...............................................................................................6, 13

*Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147, 2017 WL 4081904
(E.D.N.Y. Sept. 13, 2017) ....................................................................................12, 13, 14

*Weiss v. Nat'l Westminster Bank, PLC,* 242 F.R.D. 33 (E.D.N.Y. 2007)....................11

*Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367 (S.D.N.Y. 1974) ....................6, 7, 13, 15

**Rules**

Fed R. Civ. P. 26 .........................................................................................................passim

Local Rule 33.3 ...........................................................................................................passim

## I.      INTRODUCTION

Bytemark's position in this dispute is clear: Bytemark has agreed to immediately disclose *all* of the source code and confidential information in its possession that forms the basis of its trade secret misappropriation and other asserted claims.  Further, it will make such a production *prior to* any production of confidential or proprietary materials by Defendants.  Once Bytemark has had a full opportunity to conduct discovery of the accused systems, it will then provide Defendants with a response to Defendants' contention Interrogatory No. 1 in accordance with the Court's Local Rules.  Aware that they are violating the Federal Rules and the Local Rules, Defendants engage in obfuscation and mischaracterization, falsely claiming that Bytemark is not willing to identify its trade secrets.  In their briefing, Defendants conflate the notion of identifying/disclosing trade secrets (which would be presented through document production) with a demand for a response to their contention interrogatory prior to providing any discovery of the accused systems.  Bytemark objects to this unreasonable demand and to Defendants' proposed protective order that prevents Bytemark from obtaining the relevant discovery as to *any* of its claims, including the specifics of what trade secrets and proprietary information Defendants are misappropriating.  For the reasons discussed herein, the Court should deny Defendants' requests for (1) a protective order and (2) a response to contention Interrogatory No. 1 (or similar document) prior to any substantial discovery of the accused systems.  *See* Defendants' Motion to Compel and Motion for Protective Order ("Def. Motion").

## II.     FACTUAL BACKGROUND

At the onset of the case, Bytemark and Defendants' former counsel stipulated to how the parties would conduct discovery in this case where Defendants would first provide the requested information regarding the accused systems and then Bytemark would identify the misappropriated

trade secrets with sufficient particularity after it had an opportunity to conduct discovery of the accused systems.  Def. Motion, at Ex. E (1-2).  On March 11, 2019, contravening Defendants' former counsel's agreement with Bytemark, Defendants' current counsel reneged and only offered to provide "limited, responsive discovery" on the condition that Bytemark would need to first specifically identify which trade secrets were misappropriated before completing full discovery of the accused systems.  *See* **Ex. D** (March 2019 Email Chain).

After the Court entered the protective order on December 23, 2019 (Dkt. #102), Bytemark produced, on February 3, 2020, documents covered under the protective order.  The next day, Bytemark served its Second Set of Requests for Production, requesting, *inter alia*, all versions of the accused New Jersey Transit app and MyTix app, the original API documentation for the MyTix app, and the mobile application source code for the first released version of the MyTix app. Defendants produced no documents and objected to all the requests.  *See* **Ex. E** (Defendants' Objections and Responses to Plaintiff's Second Set of RFPs); **Ex. F** (June 2020 Email Chain).

On June 2, 2020, Bytemark emailed Defendants about their refusal to produce any of these documents and met and conferred with them shortly thereafter.  *See* Ex. F, at 4-7.  **Bytemark informed Defendants that it would not be withholding any discoverable material, and Bytemark further agreed—pursuant to Defendants' request—to make available for inspection on or around August 14th *all* of its source code and confidential documents that include proprietary and trade secret-protected information**.  *Id.* at 1-5.  Bytemark extended this offer to Defendants several times.  *Id.*  Despite Bytemark's offer, Defendants continued to deny Bytemark access to the requested discovery.  *Id.*

On July 21, 2020, Defendants agreed to produce their documents but conditioned their production on Bytemark only having two weeks to review *all* of Defendants' source code and confidential information and only seven days after that to "serve on Defendants a Trade Secrets

Disclosure that identifies with particularity each and every alleged trade secret that Plaintiff claims Defendant misappropriated." *See* Def. Motion, at Ex. F (6-7).  At present, Defendants' position appears to be that they will not produce the requested information unless and until Bytemark agrees to respond to contention Interrogatory No. 1 (identifying each and every trade secret misappropriated by the Defendants with particularity), before Bytemark has the opportunity to conduct full discovery of the accused systems. *See* **Ex. G** (June/August 2020 Email Chain), at 1-3.

The parties filed a joint discovery dispute letter to the Court on December 10, 2020.  Dkt. #108. Defendants' position up until the final draft was that Bytemark's identification of trade secrets could be satisfied "**via document production**." *See* **Ex. H** (September/October 2020 Emails and Attachments), at 3-4, 11; Dkt. #108, at 2, n.2.  Pursuant to the Court's December 14, 2020 order, Bytemark filed its motion to compel production of documents ("Bytemark's Motion") on December 28, 2020.

## III.   ARGUMENT

Defendants' unilateral refusal to produce any discovery aside from a handful of publicly available documents is in clear violation of the Federal Rules. *See* Fed. R. Civ. P.  26(b)(1); *see generally* Bytemark Motion.  Defendants have not met their burden of establishing that a protective order is necessary or appropriate, and there is no justification—legal or otherwise—for their withholding of *all* confidential information relating to *all* of Bytemark's claims unless and until Bytemark responds to contention Interrogatory No. 1 (or similar disclosure) that identifies with particularity each and every trade secret that Bytemark claims Defendants misappropriated.

### A.    Defendants mischaracterize Bytemark's position in the instant dispute.

As an initial matter, Defendants falsely assert that Bytemark's position is "that it need not identify its alleged trade secrets until the close of fact discovery, long after it reviews Defendants'

confidential information." Def. Motion at 7.  This is not so.  Bytemark has repeatedly offered to identify its trade secrets immediately through production of *all* of the source code and confidential information in its possession that forms the basis of its trade secrets claims.  *See, e.g.*, Ex. F, at 1-5.  This is a position that Defendants themselves endorsed.  *See* Ex. H, at 4 (stating "Defendants seek an Order compelling Bytemark to identify the allegedly misappropriated trade secrets that form Bytemark's good-faith basis for filing its lawsuit (**via document production**, a disclosure statement, and/or in response to Defendants' Interrogatory No. 1)") (emphasis added); Dkt. #108, at 2, n.2.

Bytemark has further stated that it would make such a production *prior* to any production of confidential or proprietary materials by Defendants and set a specific time and place for this production.  *See, e.g.*, Ex. F, at 1-5.  Bytemark additionally agreed that, once it has had a full opportunity to conduct discovery of the accused systems, it would provide Defendants with a response to contention Interrogatory No. 1, in accordance with the Court's Local Rules.  *See, e.g.*, Def. Motion, at Ex. F (1); L.R. 33.3(c).  It is *not* Bytemark's position that it will wait "until the close of fact discovery, long after it reviews Defendants' confidential information." Def. Motion at 7.  Rather, Bytemark has told Defendants that it will follow the timeline for contention interrogatories set forth in Local Rule 33.3(c) and this Court's precedent.  LR. 33.3(c); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 CIV. 9292, 2008 WL 463884, at *6 (S.D.N.Y. Feb. 20, 2008) (requiring plaintiff to specify its trade secrets after substantial discovery had taken place); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662–63 (9th Cir. 2020) (in analyzing *Sit-Up*, stating there had been "massive document discovery" and explaining that "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification"); *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367,

371 (S.D.N.Y. 1974) (requiring plaintiff to identify its trade secrets in detail *after* the parties had "engaged in extensive discovery" and "after nearly a year of pre-trial discovery").

What Bytemark *does not* agree to do is to provide at this time a response to Defendants' contention Interrogatory No. 1 (or similar disclosure) "that identifies with particularity each and every alleged trade secret that Plaintiff claims Defendant misappropriated."  Nor will Bytemark do so "within seven days" of a rushed review of confidential trade/secrets information provided by Defendants that does not allow Bytemark any opportunity to take follow-up discovery, evaluate the facts, depose any witnesses, or determine whether Defendants have actually produced the entire universe of information responsive to Bytemark's discovery requests.  Def. Motion, at Ex. F (1-2, 6-7).  As discussed *infra*, Defendants' unreasonable demands violate the Federal Rules, the Local Rules, and this Court's precedent.

The record is clear that Bytemark has, in fact, offered to identify its trade secrets in a manner and time frame consistent with the governing law.  Defendants' attempt to obfuscate the facts and misrepresent Bytemark's position should be rejected.

      **B.**     **Defendants have not met their burden of establishing that a protective order is necessary or appropriate.**

Despite the Court's entry of its protective order over a year ago, Defendants have yet to produce *any* documents or information to Bytemark aside from a handful of publicly available documents comprised mostly of annual reports and SEC filings (which were produced almost two years ago).  In response to Bytemark's repeated requests for discoverable information that is key evidence in this litigation, Defendants now seek a blanket protective order shielding them from producing all of the relevant source code and confidential information pertaining to the accused systems.  Def. Motion, at 4; *see generally* Bytemark Motion.  No good cause exists for this protective order, which would violate the purpose of the Federal Rules.

In determining the grant and nature of a protective order, "the court seeks to balance the interests of both the discovering party and the party from whom the discovery is sought ... without losing sight of the purpose of the federal rules, which is to 'secure the just, speedy, and inexpensive determination' of the case." *Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc.*, No. 15CV8681, 2016 WL 1364942, at *4 (S.D.N.Y. Mar. 28, 2016) (quoting Fed. R. Civ. P. 1); *see also* Fed. R. Civ. P. 26. "It is well established that '[t]the party seeking a protective order [under Rule 26(c)] has the burden of showing that good cause exists for issuance of that order.'" *Schiller v. City of N.Y.*, No. 04 CIV 7921, 2007 WL 136149, at *2 (S.D.N.Y. Jan. 19, 2007) (quoting *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 (2d Cir. 2004)). "Good cause" is established "when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order." *Qube Films Ltd. v. Padell,* No. 13-CV-8405, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (citation omitted); *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009).

Defendants' requested protective order would bar Bytemark from obtaining highly relevant and crucial evidence that it needs to prove its claims in this case—not only its trade secrets misappropriation claims, but also its claims for breach of contract, unfair competition, and unjust enrichment. *See* Bytemark Motion, at 5-8. This information is critical, because, until now, Bytemark has had to rely entirely on publicly available information (and information in its possession) to support its case. As Bytemark discussed in its motion to compel, although Bytemark is aware of what confidential and proprietary information it has shared with Defendants, and although Bytemark believes that Defendants are using its proprietary technology and trade-secret protected information, Defendants alone have in their possession key information regarding the workings of their accused systems. *See id.* Defendants also have in their possession all the

information shared by the parties on Privia project management software (and other file-sharing systems controlled and/or operated by Defendants), which Bytemark cannot currently access.

Defendants' desire not to disclose their confidential information does not outweigh Bytemark's need for this information and its entitlement to this information under Rule 26's broad mandate.  Not only does the Court's existing protective order shield Defendants' information from disclosure by Bytemark, Bytemark's complaint defines the bounds of its allegations such that any concerns of a "fishing expedition" are unfounded.  Specifically, Bytemark alleged that its trade secrets include:

> a unique compilation of information which includes proprietary mobile ticket development technology and know-how, design and implementation of mobile ticketing technology applications including those relating to its patented visual validation systems, back-end application and system management, maintenance and service, user data and account management and associated security features, and aspects of Bytemark's pricing, sales initiatives and profit generation paradigm.

*See* Dkt. #1, 74, ¶¶ 86, 101.  Bytemark's offer to make all of the trade secret information in its possession available for inspection *prior to* production of Defendants' confidential information further ensures that Bytemark will not—nor has any desire to—improperly benefit from Defendants' disclosures.

Defendants' nebulous and unjustified fears of a "fishing expedition" do not outweigh the considerable harm to Bytemark's interests that would result from the proposed protective order. *Closed Joint Stock*, 2016 WL 1364942, at *4; *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) ("Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury.").  Defendants' requested protective order would allow them to continue to hold hostage discoverable information that Bytemark needs to prove *all* of its claims unless and until Bytemark provides an answer to

contention Interrogatory No. 1 (or similar document) "that identifies with particularity each and every alleged trade secret that Plaintiff claims Defendant misappropriated"—a demand that contravenes the governing law (see further discussion in III.C, *infra*).  Defendants have not met their burden of establishing that a protective order is appropriate or necessary, and their request should be denied.

## C.    Bytemark has identified its trade secrets with sufficient particularity.

As discussed in III.A., *supra*, Defendants are demanding as a precondition to production of *any* of their confidential information that Bytemark provide a response to Defendants' contention Interrogatory No. 1 (or similar document) "that identifies with particularity each and every alleged trade secret that Plaintiff claims Defendant misappropriated."   This position contravenes the Federal Rules, Local Rules, and this Court's precedent and should be rejected.

### 1.    Bytemark's position is supported by the Local Rules.

"This district's local rules 'establish a sequence for discovery and a presumptive preference for certain discovery tools.'"  *In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646, 2013 WL 5788680, at *2 (S.D.N.Y. Oct. 28, 2013) (internal quotation marks, alteration, and citation omitted); *Erchonia Corp. v. Bissoon*, No. 07 Civ. 8696, 2011 WL 3904600, at *7 (S.D.N.Y. Aug. 26, 2011), *aff'd*, 458 F. App'x 58 (2d Cir. 2012) ("The Local Rules reflect a preference for … forms of discovery [other than interrogatories], such as depositions and document requests."). Defendants' demand for "a specific trade secret disclosure or a response to Defendants' Interrogatory No. 1" in the early stages of discovery and as a precondition to producing *any* confidential information to Bytemark contravenes these rules.

Interrogatory No. 1 violates Local Rule 33.3(a), which limits interrogatories at the beginning of discovery to "names of witnesses with knowledge of information relevant to the

subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents." Additionally, Defendants' assertion that Bytemark must respond to the interrogatory pursuant to Local Rule 33.3(b)(1) is inconsistent not only with precedent and the Rule's other provisions, it is inappropriate given that the parties are in the early stages of discovery, prior, e.g., to any production of any documents relating to the accused systems or to any depositions. *See, e.g.*, *In re Weatherford*, 2013 WL 5788680, at *2. Further, Interrogatory No. 1—which seeks Bytemark's "claims and contentions" regarding its trade secrets at the onset of discovery—violates the timetable set forth in Local Rule 33.3(c): "At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the Court has ordered otherwise."

Defendants' arguments to the contrary are unavailing. For example, Defendants' characterization of this case as being deep into discovery is incorrect. Defendants have not produced any information aside from a handful of publicly available documents. The Court entered its protective order on December 23, 2019, and Defendants have produced *nothing* since then—confidential or otherwise. Neither party has conducted any depositions. *Cf. In re Weatherford*, 2013 WL 5788680, at *2; *Weiss v. Nat'l Westminster Bank, PLC,* 242 F.R.D. 33, 65 (E.D.N.Y. 2007) (describing discovery as "well-underway" when defendants had produced "a mass of documents" and the parties had "conducted several depositions"). Defendants' stonewalling does not change this fact, nor does it provide an excuse to evade Local Rule 33.3(a)'s requirements. Defendants' attempt to invoke Local Rule 33.3(b) is similarly untenable given that the parties are still in the early stages of discovery. *See, e.g.*, *Madanes v. Madanes,* 186 F.R.D. 279, 290 (S.D.N.Y. 1999) (explaining that the provisions of Local Rule 33.3(b) apply where

"discovery has progressed well beyond the initial stages"); *In re Weatherford*, 2013 WL 5788680, at *3.

For these reasons, Defendants' demand for "a specific trade secret disclosure or a response to Defendants' Interrogatory No. 1" at the onset of discovery contravenes the Court's Local Rules. Contrary to Defendants' misrepresentations, Bytemark has repeatedly stated that, once it has had a full opportunity to conduct discovery of the accused systems, as set forth in Local Rule 33.3(c), it will provide Defendants with a response to contention Interrogatory No. 1.

**2.    Bytemark's position is further supported by this Court's precedent.**

Bytemark's position is consistent not only with the Local Rules but with this Court's precedent. Defendants attempt to sidestep the law in this jurisdiction by focusing on various state law and out-of-district holdings. However, it is well-established that jurisdictions take divergent approaches to trade secret identification (California's approach, for example, is governed by its Uniform Trade Secrets Act, which requires the alleging party to identify trade secrets with reasonable particularity *before* commencing discovery). It is telling that Defendants must rely on nonprecedential, out-of-jurisdiction decisions to justify their position.

"[F]ederal courts regularly require trade secrets plaintiffs to identify alleged trade secrets with 'reasonable particularity.'" *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No. 17CV147, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017). The "reasonable particularity" standard "generally requires that the plaintiff provide enough information about the alleged trade secrets (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow the defendant to discern the relevancy of any discovery requests." *Id.* "***[A] very general showing [of trade secrets] may be sufficient, particularly in the common scenario where the trade secrets plaintiff may not know which parts of its trade secrets have been misappropriated or cannot determine the full scope of***

*its claims until it gains a better understanding of how a defendant operates."* *Id*. (emphasis added). Indeed, in this district, any obligation by the plaintiff to further specify its trade secrets occurs after substantial discovery—not as a precondition to receiving responsive documents or information. *See, e.g.*, *Sit-Up*, 2008 WL 463884, at *6 (requiring plaintiff to specify its trade secrets after substantial discovery had taken place); *Xerox*, 64 F.R.D. at 371 (requiring plaintiff to identify its trade secrets in detail after parties had "engaged in extensive discovery"); *see also Capricorn Mgmt. Sys., Inc. v. Gov't Employees Ins. Co.*, No. 15CV2926, 2019 WL 5694256, at *17 (E.D.N.Y. July 22, 2019) ("[T]he level of [trade secrets] specificity increases as the case and discovery proceeds.").

Bytemark has identified its trade secrets with sufficient particularity for this stage of the litigation. Bytemark's complaint defines the trade secrets-at-issue so as to put Defendants sufficiently on notice of the nature of these claims, and allows Defendants to discern the relevancy of its discovery requests. *See* Dkt. #74, ¶¶ 86, 101; *Uni-Sys.*, 2017 WL 4081904, at *4. This Court previously agreed that Bytemark's pleadings provided sufficient notice to survive a motion to dismiss (and Defendants subsequently never moved to dismiss these claims). *See* October 16, 2017 Hearing Transcript (**Ex. I**), at 16:17-18:10 (stating, in response to Defendants' assertion that Bytemark failed to specify which categories of trade secrets were allegedly misappropriated, that it "believe[d] … a motion to dismiss the misappropriation of trade secrets claims [wa]s not likely to prevail"). Bytemark has further agreed to identify its trade secrets immediately through production of *all* of the source code and confidential information in its possession (a position that Defendants themselves have endorsed, *see* Ex. H, at 3-4, 11), and to do so prior to any production of confidential or proprietary materials by Defendants. Once Bytemark has had a full opportunity to conduct discovery of the accused systems, it will provide Defendants with a response to

contention Interrogatory No. 1, in accordance with the Court's Local Rules.  *See* L.R. 33.3(c).

Bytemark has sufficiently put Defendants on notice of the nature of its claims, and Defendants are

able to discern the relevancy of any discovery requests.  *See Uni-Sys.,* 2017 WL 4081904, at *4.

The cases cited by Defendants are inapposite.  *Power Conversion* is irrelevant to the issue

at hand.  There, the parties *accused one another* of misappropriating trade secrets concerning the

design and manufacture of lithium batteries.  *Power Conversion Inc. v. Saft Am., Inc.*, No. 83 Civ.

9185, 1985 WL 1016, at *2 (S.D.N.Y. May 1, 1985).  The discovery dispute involved the relevance

of certain proprietary information to the trade secret misappropriation claims.  *Id*.  To address their

mutual concerns, the Court revived a discovery procedure (that had previously been rejected by

the Magistrate Judge) where the parties would jointly select an independent expert, who would

review ex parte confidential *written descriptions* submitted **by each party** of its own lithium

battery technology.  *Id*. at *4.  Plaintiff was not, as Defendants claim, required to identify its

misappropriated trade secrets.  *Id*. at *2.  Here, there is no dispute about what Bytemark's

technology or the subject matter of its trade secrets are given the high pleading standard

(*Twombly*/*Iqbal*) applied to this case (and not to the 1985 *Power Conversion* case), and the Court's

previous rejection of Defendants' arguments (made in requesting leave to file a motion to dismiss)

that Bytemark failed to specify which categories of trade secrets were allegedly misappropriated.

Additionally, the concerns addressed by *Power Conversion* and claimed by Defendants (e.g.,

tailoring a theory of misappropriation to a defendant's work) are not at issue here, where Bytemark

already agreed to produce its proprietary information—including its trade secrets—before

Defendants would produce theirs.   Additionally, *MSCI Inc. v. Jacob*, 36 Misc. 3d 211, 214-15,

945 N.Y.S.2d 863, 866 (Sup. Ct. 2012), a decision from a state trial court, is obviously non-

binding.  Regardless, it supports Bytemark's position, not Defendants'.  In stating that trade secrets

must be "identif[ied] with reasonable particularity early in the case," the trial court relied on this Court's *Xerox* decision.  *Id.* at 213-14.  However, in *Xerox*, both parties had already "engaged in extensive discovery"—which is clearly not the case here.  *See Xerox*, 64 F.R.D. at 369, 371.

Defendants' proposal would not streamline the litigation.  Defendants ignore that the requested discovery is relevant to all of Bytemark's other claims in this case, and, until Defendants stop their obstruction, Bytemark cannot sufficiently investigate any of them.  Further, it is likely that Defendants' suggested procedure will become a tool of delay, with Defendants, e.g., challenging the sufficiency of Bytemark's trade secrets identification.  Defendants have already blocked discovery for over a year and changed their position numerous times, requiring the parties and the Court to expend time and resources on this unnecessary discovery dispute.  If Defendants truly want to streamline the litigation, they will end their stonewalling and produce the requested information as required under the Federal Rules and this Court's precedent.

## IV.    CONCLUSION

For the foregoing reasons, Bytemark respectfully requests that Defendants' Motion be denied in full.

Dated: January 4, 2021                              Respectfully submitted,

                                                   s/ Dariush Keyhani
                                                   Dariush Keyhani
                                                   Keyhani LLC
                                                   1050 30th Street NW
                                                   Washington, DC 20007
                                                   Telephone: (202) 748-8950
                                                   Fax: (202) 318-8958
                                                   dkeyhani@keyhanillc.com
                                                   *Attorneys for Plaintiff*