# KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
www.keyhanillc.com

Direct Email: dkeyhani@keyhanillc.com
Direct Dial: 202.903.0326

May 19, 2021

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 10007

      RE:    *Bytemark, Inc. v. Xerox Corp. et al.*, 1:17-cv-01803-PGG-KNF: Request for pre-motion conference

Dear Judge Gardephe:

    We represent Plaintiff Bytemark, Inc. ("Bytemark"). On April 28, 2021, Defendants Xerox Corp., ACS Transport Solutions, Inc., Xerox Transport Solutions, Inc., Conduent, Inc., and New Jersey Transit Corp. (collectively, "Defendants") filed their Answer to Plaintiff's Third Amended Complaint (Dkt. #140) with the Court. In accordance with Individual Rule of Practice IV(A), and for the reasons discussed herein, Bytemark respectfully requests a pre-motion conference with regard to its proposed opposed motion to (1) dismiss Defendants' Counter Claim V ("Unenforceability of the '567 and '764 Patents") for failure to state a claim and (2) strike Defendants' Twelfth Affirmative Defense ("Unenforceability of the Patents in Suit").[1] Defendants' allegations of inequitable conduct and unclean hands lack any plausible legal or factual basis, and if allowed to remain, would distract from the real issues in this case and waste the Court's and the parties' time and resources.

### I. Rule 12(b)(6) Motion to Dismiss Counter Claim V

    Defendants' counterclaim for unenforceability of the '567 and '764 Patents is facially implausible and fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Defendants, without basis, allege that Bytemark engaged in inequitable conduct and unclean hands. "The Federal Circuit has long decried the use of charging inequitable conduct in patent litigation,"

---

[1] Pursuant to Individual Rule of Practice IV(A), we note that because this pre-motion letter concerns a motion to dismiss, submission of this letter will stay Bytemark's time to answer or otherwise move with respect to Defendants' counterclaims.

1

*TM Patents, L.P. v. Int'l Bus. Machines Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000) (citation omitted), and inequitable conduct claims have "aptly been described as "the 'atomic bomb' of patent law'" and a "plague[] not only the courts but also the entire patent system," *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, at *5 (S.D.N.Y. June 25, 2020) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011)). The Court should remove this frivolous and distracting issue from the litigation.

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013). In reviewing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"[A] party attempting to plead inequitable conduct faces a daunting task …." *Town & Country*, 2020 WL 3472597, at *6. Because "[a] finding of inequitable conduct 'renders the entire patent unenforceable'" and "can spread … to render unenforceable other related patents and applications," "the standards for making out such a claim are stringent." *Id.* at *5 (quoting *Therasense*, 649 F.3d at 1289). Seeking to curb the abuse of inequitable conduct claims, the Federal Circuit's demanding standard requires defendants to prove by clear and convincing evidence that "(1) the patentee acted with the specific intent to deceive the PTO; and (2) the non-disclosed reference was but-for material." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-91). Further, a claim of patent unenforceability premised on inequitable conduct sounds in fraud, and it must therefore be pled with particularity as mandated by Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1331 (Fed. Cir. 2009). This Court has dismissed inequitable conduct claims when these standards are not met. *See, e.g., Town & Country*, 2020 WL 3472597, at *7; *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 18 CIV. 11098, 2020 WL 1331919, at *7 (S.D.N.Y. Mar. 23, 2020); *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 628 (S.D.N.Y. 2012).

Defendants' counterclaim fails to satisfy these requirements. First, Defendants have not adequately pled that Bytemark or its counsel acted with specific intent to deceive the PTO. To show such intent, Defendants must prove, by clear and convincing evidence, "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91. Moreover, "[a]ctivities that seem 'inconsistent with knowledge of illegality or fear of a lawsuit' do not support an inference of fraudulent intent, even at this preliminary stage." *Signify*, 2020 WL 1331919, at *4 (citation omitted). In their counterclaim, Defendants offer only the false and conclusory accusation that Bytemark had intent to deceive the PTO because the prosecuting attorney "knowingly and deliberately fail[ed] to disclose non-cumulative information that

2

is material to the patentability of the asserted claims of the Patents-in-Suit," Dkt. #140 ¶ 219, and that both she and the named inventors failed to disclose certain information, Dkt. #140 ¶¶ 220, 222.[2]

Defendants' accusation of specific intent to deceive the PTO is implausible on its face and fails as a matter of law. The '567 and '764 Patents are the children patents of the '967 and '993 Patents that were the subject of the IPRs and Eastern District of Texas litigation. As Bytemark previously explained in its Reply in Support of Its Motion for Leave to Amend Its Complaint (Dkt. #106, 1-3), M.P.E.P. § 609.02 states that "[t]he examiner will consider information which has been considered by the Office in a parent application when examining" a continuation, divisional, or continuation-in-part application filed under 37 C.F.R. § 1.53(b), and "[a] listing of the information **need not be resubmitted in the continuing application**." *See also TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000) (stating that applicants need not resubmit references cited in parent applications—regardless of their materiality—because the **examiner is required to consider information in parent applications and to review them for pertinent information** when examining a continuing application). "[I]t **cannot be inequitable conduct** for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998).

Thus, the IPR decisions and other information cited by Defendants as non-disclosures became part of the parent patents' file history and did not need to be resubmitted by Bytemark. *See* M.P.E.P. § 609.02. Further, the patents' file histories containing these documents—which are not only publicly available but were brought directly to Defendants' and the Court's attention during the parties' Motion to Amend briefing and is part of the record of this case[3]—establishes that all material information was in possession of the PTO, Bytemark was transparent with the PTO throughout the entire prosecution process for all of the patents, and Bytemark acted in compliance with the applicable rules and precedent. At the commencement of the lawsuit against Masabi Ltd. in the Eastern District of Texas, Bytemark's counsel sent notice of the action to the PTO. *See* Dkt. #106, Ex. E (Reports of Filing and Determination of Action found in parent patents' PTO file wrappers). Bytemark also brought the

---

[2] Specifically, they allegedly failed to disclose: "(1) the institution decision in the Inter Partes Review of the '967 patent (IPR2017-01449); (2) the final written decision in the Inter Partes Review of the '967 patent (IPR2017-01449); (3) the invalidity contentions submitted in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.); (4) the Magistrate Judge's Report and Recommendation finding that the '967 and '993 patent[s] were. invalid under 35 U.S.C. § 101 in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.); and (5) the adoption of the Magistrate Judge's Report and Recommendation in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.)."

[3] The Court, in adjudicating a Rule 12(b)(6) motion, may consider not only the factual allegations in the complaint, but "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," or "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Jannazzo v. United States*, No. 15-CV-3506, 2016 WL 1452392, at *3 (E.D.N.Y. Apr. 13, 2016) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). The documents cited by Bytemark fall into these exceptions, as they are both publicly available and were previously brought to Defendants' attention in Bytemark's motion to amend briefing. Moreover, "relying upon evidence that is extrinsic to the complaint in ruling on a Rule 12(b)(6) motion is far less problematic when the plaintiff has notice of the evidence and an opportunity to respond," as Defendants-counterclaimants have here. *Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 450–51 (E.D.N.Y. 2007).

Eastern District's patent claim construction ruling to the PTO Patent Trial and Appeal Board's attention on multiple occasions.[4] Also, while the prosecution of the children patents was still pending, the Eastern District sent a notice to the PTO—which became part of the prosecution histories of the children patents—informing it that the court had found the parent patents invalid under § 101. *See* Dkt. #106, Ex. E. Defendants' claim of inequitable conduct thus fails as a matter of law, because "it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp.*, 159 F.3d at 547. Even if this Court were to find that some or all of these documents should have been resubmitted to the PTO in connection with the prosecution of the children patents, there are other equally plausible inferences that can be drawn from the facts other than fraudulent intent or intent to deceive; and "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91.

Additionally, Defendants have failed to adequately plead that the alleged non-disclosures were "but-for material." *See id.* Defendants allege that "a reasonable examiner would not have allowed the claims of the '567 or '764 patents" had he or she known about the IPR of the '967 patent, the invalidity contentions provided in the Eastern District case, and the invalidity decision in the Eastern District case. Dkt. #140 ¶¶ 216-218. But the record establishes that the examiner *did* have this information (or, at the very least, knowledge that this information existed, had he wished to consider it). Further, the Eastern District's decision on the § 101 patentability of the parent patents' claims is not material to the subject matter of the children patents' claims because (1) the children patents' claims recite different claim language from the parent patents (and *Alice Corp. v. CLS Bank Int'l*'s § 101 subject matter analysis looks to the language of the claims) and (2) the children patents were found by the PTO to be patentably distinct from the parent patents. Thus, Defendants' assertion that the non-disclosures were but-for material and would have led to a different result is facially implausible.

For these reasons, Defendants' allegation of "unclean hands" also fails as a matter of law. "[U]nclean hands prohibits awarding equitable relief to a party that has acted fraudulently or deceitfully to gain an unfair advantage." *City of N.Y. v. FedEx Ground Package Sys., Inc.*, 314 F.R.D. 348, 356-57 (S.D.N.Y. 2016). It is well-established that "an unclean hands defense requires a finding of bad faith." *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001). Because Defendants have not adequately pled that Bytemark acted fraudulently or deceitfully or otherwise engaged in bad faith, Defendants have failed to state a claim as to this issue. Accordingly, Defendants' Counter Claim V for "Unenforceability of the '567 and '764 Patents" should be dismissed under Rule 12(b)(6).

## II.     Rule 12(f) Motion to Strike Twelfth Affirmative Defense

Defendants' "counterclaim and affirmative defense for inequitable conduct rise or fall together." *Town & Country*, 2020 WL 3472597, at *7 (striking inequitable conduct affirmative defense after assessing counterclaim and affirmative defense together); *Signify*, 2020 WL 1331919, at *10 (same). For the reasons discussed, *supra*, Bytemark asks that the Court also strike Defendants' affirmative defense of unenforceability.

---

[4] *See, e.g.*, *Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 6 at 6 (PTAB 2018); *Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 19 at 8 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*, CBM2018-00011, Paper 11 at vii, 35 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*, CBM2018-00018, Paper 10 at vii, 32 (PTAB 2018).

Rule 12(f) provides that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To succeed on a motion to strike an affirmative defense, a party must "show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Town & Country*, 2020 WL 3472597, at *5. "[A]ffirmative defenses alleging fraud must be pled with particularity as required by Rule 9(b), or be struck as inadequately pled." *Signify*, 2020 WL 1331919, at *4 (citations omitted). Allegations that are conclusory or unsupported by factual assertions are insufficient. *Town & Country*, 2020 WL 3472597, at *5.

As discussed in Section I, *supra*, there is no question of law or fact which might allow Defendants' affirmative defense to succeed. Further, Bytemark would be prejudiced by inclusion of this defense: it would necessitate additional discovery and motion practice, wasting the parties' and the Court's time and resources and and distracting from the real issues in the case. As the Federal Circuit explained in *Therasense*, the inequitable conduct doctrine has "ruinous consequences for the reputation of [the] patent attorney," "paints the patentee as a bad actor," "discourages settlement and deflects attention from the merits of validity and infringement issues," and "increas[es] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost." *Therasense*, 649 F.3d at 1288. Defendants' unsupported allegations have no place in this litigation.

For the foregoing reasons, Bytemark respectfully asks that the Court grant its request for leave to file a motion to dismiss Defendants' Counter Claim V and to strike Defendants' Twelfth Affirmative Defense.

Sincerely,

/s/Dariush Keyhani

Dariush Keyhani
Keyhani LLC
*Attorneys for Plaintiff*

cc: Defendants' Counsel of Record (via ECF)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 19th day of May, 2021, with a copy of the foregoing document via electronic mail.

/s/ Anya Engel
Anya Engel