# McKool Smith

Ashley Moore
Direct Dial: (214) 978-6337
amoore@McKoolSmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

May 21, 2021

*via ECF*

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 1007

        RE:    *Bytemark, Inc. v. Xerox Corp. et al.*, No. 1:17-cv-01803-PGG-KNF, Response to Bytemark's Request for Pre-Motion Conference

Dear Judge Gardephe:

    I represent Defendants Xerox Corp., ACS Transport Solutions, Inc., Xerox Transport Solutions, Inc., Conduent Inc., and New Jersey Transit Corp. (collectively "Defendants"). Bytemark's pre-motion conference letter (Dkt. 141) regarding dismissal of Defendants' inequitable conduct affirmative defense and counterclaim should be denied for the reasons below.

**I.**    **Defendants Adequately Plead Inequitable Conduct.**

    Contrary to Bytemark's protestations, inequitable conduct remains an important tool today, as it prevents those who obtain their patents through fraud from using those ill-gotten gains against their competitors. *See, e.g., Energy Heating, Ltd. Liab. Co. v. Heat On-The-Fly, Ltd. Liab. Co.*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) (ruling patent unenforceable due to inequitable conduct); *GS CleanTech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1332 (Fed. Cir. 2020) (same); *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1346 (Fed. Cir. 2013) (same).

    This is such a case. Shortly before suing Defendants in this action, Bytemark also sued Masabi for patent infringement of USPs 8,494,967 and 9,239,993 (the "Parent Patents"). Counterclaims at ¶ 183. The *Masabi* case did two things. It provided Bytemark with invalidity contentions detailing how the Parent Patents were invalid over the prior art, and it resulted in a § 101 invalidity ruling that was recently affirmed by the Federal Circuit. *See id.* at ¶¶183-190. Based on these rulings, Bytemark dismissed the Parent Patents from the case against Defendants, and has now replaced them with USPs 10,346,764 and 10,360,567, which are children to the Parent Patents. The children patents share the same disclosure, subject matter, and "remarkably similar" claims to the Parent Patents. Despite the remarkable similarity, Bytemark chose not to provide any of the Masabi information noted here to the PTO during prosecution of the children patents (the "'764 patent" and "'567 patent" respectively). *Id.* at ¶¶ 215-223. It was withheld deliberately so that the Examiner would be unaware of the prior art and adverse § 101 rulings when deciding whether to allow the '567 and '764 patents. *Id*. The reason for doing so is clear. The similarity in

**McKool Smith**
**A Professional Corporation • Attorneys**
Austin | Dallas | Houston | Los Angeles | Marshall | New York

NG-9J84MDUI 4813-8901-3464v2

May 21, 2021
Page 2

subject matter and claim language would have caused the Examiner not to allow the '764 and '567 patents. *Id.* at ¶¶ 217-218. This is a hallmark of inequitable conduct, and Defendants should be allowed to raise it as both an affirmative defense and counterclaim. Defendants therefore ask the Court to deny Bytemark's request.

## II.  Bytemark's Arguments to the Contrary Fail.

Bytemark makes two arguments for dismissal of Defendants' inequitable conduct allegations. They are: (1) "Defendants have not adequately pled that Bytemark or its counsel acted with specific intent to deceive the PTO" and/or (2) Defendants have not "adequately plead that the alleged non-disclosures were 'but-for material.'" Dkt. 141 at pp. 2, 4. Both of these arguments fail.

### A.  Defendants Sufficiently Plead that Bytemark Acted with Specific Intent to Deceive.

Bytemark alleges that the PTO already had all of the withheld information such that Bytemark could not have had an intent to mislead the PTO. Dkt. 141 at pp. 2-3. However, this is incorrect. First, Bytemark's letter is strangely silent regarding its failure to submit the invalidity contentions and related prior art from the *Masabi* litigation to the PTO. In late 2016 Masabi provided invalidity contentions to Bytemark detailing how the Parent Patents were invalid over the prior art. *See* Counterclaim at ¶¶183-187. Bytemark does not address this art, suggest it was provided to the PTO during prosecution of the '567 and '764 patents, suggest Bytemark or counsel were unaware of it, or argue that Bytemark or counsel did not intend to deceive the PTO by failing to submit the prior art. Given Bytemark's failure to address—much less challenge the inequitable conduct allegations relating to the *Masabi* invalidity contentions—Bytemark's request must be denied.

Second, Bytemark argues that the PTO had the § 101 rulings from the Eastern District of Texas *during prosecution of the '567 and '764 patents* and therefore could not have had a specific intent to deceive the PTO. Dkt. 141 at p. 4. This is also wrong. As shown in the timeline below, the PTO was not informed of the § 101 rulings until February 19, 2020, more than 6 months *after* the '567 and '764 patents had issued. *See* Exhibits A and B.[1]



It was therefore impossible for the PTO to consider the § 101 rulings because the '567 and '764 patents were no longer pending at that time. This delay is inexcusable as Bytemark had the Magistrate Judge's invalidity recommendation by November 26, 2018 and the District Judge's adoption of that recommendation by February 7, 2019. Counterclaim at ¶¶ 188-89. Bytemark nevertheless withheld this information from the PTO for months so that the '567 and '764 patents

---

[1] The notice of invalidity (Exhibit A) was provided to the PTO on February 19, 2020 (Exhibit B). As Bytemark concedes, the file history (as shown with dates in Exhibit B) is a matter of public record and the Court may take judicial notice of it. Dkt. 141 at p. 3, n.3.

May 21, 2021
Page 3

could issue without consideration of these very relevant § 101 decisions. This is precisely the kind of conduct that can form the basis of an inequitable conduct counterclaim. *See, e.g., Synqor, Inc. v. Cisco Sys.*, No. 2:11CV54, 2012 U.S. Dist. LEXIS 129463, at *25-27 (E.D. Tex. Aug. 7, 2012) (holding there is a plausible inference that the examiner would not have allowed the claims if he had been aware of a reexamination decision); *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 550-51 (D.N.J. 1999) (finding inequitable conduct where patentee withheld litigation materials even though it had disclosed the prior art).

Third, Bytemark ignores that "smoking gun evidence is not required in order to establish an intent to deceive. . . . Rather, this element of inequitable conduct[] must generally be inferred from the facts and circumstances surrounding the applicant's overall conduct." *Paragon Podiatry Lab., Inc. v. KLM Lab., Inc.*, 984 F.2d 1182, 1189-90 (Fed. Cir. 1993)). In fact, Defendants need only plead facts supporting a reasonable inference that a specific individual had the specific intent to deceive the PTO. *See Sanders v. Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011). In other words, specific intent to deceive should be a reasonable inference—not the single most reasonable inference—from the alleged facts. The Federal Circuit has defined a reasonable inference as "one that is plausible and that flows logically from the facts alleged . . . ." *Id*.

In this case, given the "remarkable similarity" of the '567 and '764 claims to the Parent Patents, and the similarity of subject matter between the two, it is reasonable to assume the § 101 rulings and prior art directed to the Parent Patents would have a similar impact on the '567 and '764 patents. Coupling this inference with the long delay in bringing the § 101 rulings to the PTO's attention (so that the '567 and '764 patents could issue), it is reasonable to infer that Bytemark and/or its counsel had a specific intent to deceive the PTO. Similarly, Bytemark's failure to submit the invalidity contentions and related prior art from the *Masabi* litigation despite having several years to do so, suggests it is reasonable to infer a specific intent to deceive the PTO. Indeed, these are the most reasonable inferences from the pleaded facts. Thus, when the Court takes all of Defendants' allegations as true, and draws all reasonable inferences in their favor, Defendants' inequitable conduct allegations are sufficient to survive a motion to dismiss. *FSP, Inc. v. Societe Generale*, 2005 U.S. Dist. LEXIS 3081, at *24-25 (S.D.N.Y. Feb. 28, 2005) (stating that "the Court must accept the factual allegations in the answer and counterclaims as true and draw all reasonable inferences in the claimant's favor.").

Finally, all of Bytemark's cases and rhetoric on this point are inapplicable as they presume the PTO was in possession of the withheld information. More specifically, Bytemark alleges that intent to deceive is implausible because Bytemark was under no obligation to "resubmit" references that were part of the parent applications. Dkt. 141 at p. 3 (citing cases regarding "resubmission" of information). As noted above, the withheld information was not submitted during prosecution in the first instance; thus, it cannot trigger the presumption that Bytemark need not "resubmit" the material during prosecution of the '764 and '567 patents.

   B. <u>Defendants Sufficiently Plead that the Withheld Information is But-For Material.</u>

Bytemark also argues that the withheld information is not but-for material because (1) the PTO already had all of the withheld information and (2) the claims of the '764 and '567 patents are different from the Parent Patents. Dkt. 141 at p. 4. Both of these allegations are false.

As explained above, the PTO did not have the withheld information during prosecution of the '567 and '764 patents. Thus, Bytemark cannot use this as a basis for arguing lack of but-for materiality.

Moreover, it is improper for Bytemark to ask the Court to make factual determinations about the differences between the Parent Patent claims and those of the '567 and '764 patents. *See Depomed, Inc. v. Purdue Pharma L.P.*, No. 13-571 (MLC), 2017 U.S. Dist. LEXIS 99721, at *16 (D.N.J. June 28, 2017) (holding that a decision on materiality is "a factual disagreement [that] cannot support dismissal of [the] counterclaim at the pleading stage."). But even if it were to do so, the Eastern District of Texas has already ruled that the '567 and '764 patent claims are "remarkably similar to those recited in the [Parent] [P]atents." *Bytemark, Inc. v. Masabi Ltd.*, No. 216cv00543JRGRSP, 2018 WL 7272023, at *5 (E.D. Tex. Nov. 26, 2018), report and recommendation adopted, No. 216cv00543jrgrsp, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), aff'd, 792 F. App'x 952 (Fed. Cir. 2020). As such, Bytemark also cannot use this as a basis for arguing lack of but-for materiality.

And at the most fundamental level, litigation materials—such as a § 101 invalidity ruling and related invalidity contentions—are material *per se*. *See* MPEP § 2001.06(c) (6th Ed. Rev. 2, July 1996) ("Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office."); *see also Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1362 (Fed. Cir. 2010) (holding that related litigation involving parent patents is material and should be disclosed during prosecution.").

    C.    <u>Defendants Adequately Pled Unclean Hands.</u>

Bytemark also challenges the sufficiency of Defendants' unclean hands allegations on the same basis as inequitable conduct. Thus, for the same reasons expressed above, Defendants' unclean hands affirmative defense also survives dismissal under Fed. R. Civ. P. 12(b)(6).

**III.** **Defendants' Inequitable Conduct Affirmative Defense Should Not be Stricken.**

A motion to strike an affirmative defense, pursuant to Fed. R. Civ. P. 12(f), is governed by the same standard applicable to a 12(b)(6) motion to dismiss. *See United States v. Portrait of Wally*, 2002 U.S. Dist. LEXIS 6445, 2002 WL 553532, *4 n.3 (S.D.N.Y. Apr. 12, 2002). An affirmative defense should not be stricken "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." *Salcer v. Enicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), cert. granted and judgment vacated on other grounds, 478 U.S. 1015 (1986). Nor can an affirmative defense be stricken if it presents disputed and substantial questions of law, the resolution of which might support the defendant's contention. *State of New York v. Almy Bros., Inc.*, 971 F. Supp. 69, 72 (N.D.N.Y. 1997) (citing *Salcer*, 744 F.2d at 939).

For all the reasons explained above, Bytemark has, at best, presented disputes of law and fact that are improper for resolution in a motion to dismiss. Defendants therefore ask the Court to deny Bytemark's request.

**IV.** **Defendants' Counterclaim and Affirmative Defense are Not Frivolous.**

While it is true that inequitable conduct, if found, may render an entire patent unenforceable, that does not mean that every charge of inequitable conduct is frivolous, a plague

May 21, 2021
Page 5

on the patent system, or otherwise unworthy of consideration. Courts today continue to find inequitable conduct when the circumstances so merit. This is particularly true at the motion to dismiss stage where all facts and inferences must be drawn in Defendants' favor. Since Bytemark's request cannot succeed, any further briefing on the issue is a waste of judicial resources and should be denied.

Sincerely,

Ms. Ashley Moore