# KEYHANI LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958

January 28, 2022

Hon. Paul G. Gardephe (**VIA ECF**)
United States District Judge
Thurgood Marshall
United States Courthouse, Courtroom 705
40 Foley Square
New York, NY 10007
Fax: (212) 805-7986

   RE: *Bytemark, Inc. v. Xerox Corp., et al.*, in the United States District Court for the Southe District of New York; Civil Action No. 1:17-cv-01803-PGG

Dear Judge Gardephe:

The parties submit this joint letter to address the following issues raised by the Court during the January 21, 2022 conference: (1) a brief description of the case, including the factual and legal bases for the claims and defenses; (2) the status of discovery; (3) any disputes with regards to the case management plan; (4) any contemplated motions; (5) the prospect for settlement; and (6) Defendants' position regarding their Twelfth Affirmative Defense and Counterclaim V on inequitable conduct.

### 1. Brief Description of the Case

**Plaintiff's position:** This case involves federal and state law claims asserted by Plaintiff Bytemark Inc. ("Plaintiff" or "Bytemark") against Defendants including patent infringement, breach of contract, misappropriation of trade secrets, unfair competition, and unjust infringement. Bytemark is the owner of all rights, title, and interest in and to United States Patent Nos. U.S. Patent Nos. 10,346,764 and 10,360,567 and trade secret and confidential information relating to the design and development of the systems and applications and technical support and back-end management and service of Plaintiff's visual validation mobile ticketing technology. The Parties had previously entered into a series of Nondisclosure Agreements and Teaming Agreements (the "Confidentiality Agreements) for the purpose of potentially developing joint proposals and/or bids relating to providing mobile ticketing solutions to prospective clients in the mass transit industry. Pursuant to these agreements, Bytemark disclosed its proprietary and confidential information to Defendants. Bytemark's claims arise out of Defendants' violation of these agreements and subsequent sales and offers to sell visual validation mobile ticketing applications and systems that infringe the asserted claims of the Patents-in-Suit and unlawful use of Bytemark's trade secret and confidential information.

**Defendants' position:** Defendants' deny Plaintiff's allegations. Defendants have not violated any agreements with Bytemark. Bytemark has no trade secrets, and Defendants have not misappropriated or unlawfully used Bytemark's information. The patents-in-suit are unenforceable, invalid, and Defendants do

not infringe. Bytemark's unfair competition and unjust enrichment claims are baseless as well. Bytemark has not been harmed by Defendants.

## 2.      The Status of Discovery

The parties have served Initial Disclosures and various Requests for Production, Requests for Admission, and Interrogatories.  No depositions have taken place and none are currently scheduled.

**Plaintiff's position:** Plaintiff has made its source code and trade secret protected information available for inspection.  Defendants have produced documents, which Plaintiff is in the process of reviewing.  At this time Plaintiff is unable to confirm whether these documents are fully responsive to Plaintiff's requests or whether Defendants' production complies with the Court's order or moots any of the parties' previous issues (Dkt. No. 146, 148).  Based on presently available information, Plaintiff expects to depose eight to ten fact witnesses (including Rule 30(b)(6) representatives) and to designate one or two technical expert witnesses and one damages expert witness.

**Defendants' position:** Pursuant to the Court's January 11, 2022 order (Dkt. No. 148), Defendants have produced or made available for inspection all information of which they are currently aware that responds to Plaintiff's Requests for Production Nos. 38–40 and 60–62. In response to Request for Production No. 62, Defendants have made a source code computer available at McKool Smith's Dallas office. Defendants are also in the process of supplementing their responses to Plaintiff's Third Set of Requests for Production, thereby mooting the issues raised in the parties' November 29, 2021 joint letter (Dkt. No. 146).

## 3.      Agreements and Disputes with Regards to the Case Management Plan

The parties are in agreement with respect to the time periods required for fact discovery, the time period to complete the deposition of fact witnesses, expert discovery, the time periods for advising the court of potential post discovery dispositive motions, and the length of time required for trial as required under the Court's Civil Case Management Plan and Discovery Order ("Case Management Plan").  However, Defendants disagree with Plaintiff on whether this case should proceed at this time and Defendants intend to file a motion to request that the case be stayed.  Defendants also request that the Court include patent disclosure requirements.  Below are the parties respective positions on these issues.

**Plaintiff's position:** Plaintiff proposes the parties follow the Court's Case Management Plan.  Plaintiff has prepared a proposed case management plan that incorporates the time periods for completing the various litigation events consistent with the parties' agreement.  See attached Exhibit A.  Given the posture of this case, which the Court notes "has gone on for too long" and the Court's direction to present a "fairly rigorous plan for how we're going to complete discovery in this case," no additional disclosures are needed and departing from the Court's model Case Management Plan is not necessary.  January 21, 2022 Hearing Tr. at 8:8-11, 7:1–6.

With respect to Defendants' proposal of additional infringement contention disclosures (which are not contemplated by this Court's model Case Management Plan), Plaintiff's pleading sufficiently puts Defendants on notice of Plaintiff's infringement claims by identifying a specific claim of each asserted patent and specifically identifying the accused MyTix system.  *See* Dkt. No. 139 at 10-14.  Indeed, the model Local Patent Rules for the Southern and Eastern Districts of New York, which were part of the federal pilot patent program that ended in July 2021, merely require a party asserting infringement disclose the same information already identified by Plaintiff.  *See* Local Patent Rule No. 6.  Defendants have

sufficient knowledge of Plaintiff's claims for purposes of fact discovery and any further detail is in the purview of expert opinions. The parties will be fully apprised of each other's detailed infringement and invalidity theories at the time of expert disclosures, which Plaintiff proposes occur in September and October of this year.

Further, Defendants' proposed case management plan is based on a premise that this case will be stayed despite no bases for such an assumption. No IPR has been filed in this case and no petition for IPR has been instituted. *See, e.g.*, *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669 NSR, 2014 WL 2854656, at *3 (S.D.N.Y. June 20, 2014) (denying a motion to stay because "it is unclear at this stage whether the PTO will institute proceedings on any or all of the petitions"). Moreover, consistent with this Court's direction that the parties propose a rigorous schedule, Plaintiff's proposed Case Management Plan would allow for a trial date within a year. Given this timeline, any petition for IPR would likely not be instituted based on the anticipated trial date occurring before the PTAB's statutory deadline. *See, e.g.*, *Apple, Inc v. Fintiv, Inc.*, IPR2020-00019, Paper 15, pp. 12-13 (PTAB May 13, 2020) (designated precedential); *NHK Spring Co. v. Intri-Plex Technologies, Inc.*, IPR2018-00752, Paper 8 (PTAB Sept. 12, 2018) (designated precedential). Even if an IPR were instituted in this case, it would not meaningfully simplify or dispose of this case—only two of the eight claims Plaintiff is asserting against Defendants in this case involve Bytemark's patents. Therefore, Defendants' assumption that this case will be stayed is without support and their proposed case management plan premised on this assumption is not appropriate.

**Defendants' position:** The parties have submitted competing case management plans. Defendants' proposed case management plan is attached as Exhibit B, along with a chart listing Defendants' proposed deadlines in Exhibit C. In Defendants' proposal, the case deadlines are tied to their forthcoming motion to stay. As will be described more fully in that motion, courts consider three factors when determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party; (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set; and (3) whether the stay will likely result in simplifying the case before the court. *Uniloc United States v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2017 U.S. Dist. LEXIS 168855 (E.D. Tex. Apr. 19, 2017). Each of these factors warrant a stay here, and so Defendants believe that any schedule entered by the Court should not begin until the Patent and Trademark Office ("PTO") can reconsider the validity of the patents-in-suit in light of Defendants' prior art references. And contrary to Plaintiff's representation, it is highly unlikely that the PTO will decline to institute the IPRs based on the schedule in this case. *See*, *e.g.*, https://www.law360.com/articles/1458064/attachments/0 at Slide 3 (showing the PTO denies institution of only a tiny fraction of IPRs on that basis).

Defendants also propose that the Court set deadlines for infringement contentions, trade secret disclosures, and invalidity contentions. Exhibit B, ¶¶ 16–19; *see also* Eastern District of Texas Patent Rules at 3-1, 3-3, and 3-6 (available at https://www.txed.uscourts.gov/?q=patent-rules). Plaintiff claims that these disclosures are unnecessary because its "claims of infringement are pretty straightforward. They're in the pleading." January 21, 2022 Hearing Tr. at 6:9–10. But that is inaccurate. In Counts One and Two of its Third Amended Complaint, Plaintiff tells the Defendants only that they infringe "by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications including the exemplary product/system the MyTix mobile application in the State of New York and elsewhere in the U.S." Dkt. No. 139, ¶ 48; *see also* Dkt. No. 139, ¶ 61. That is the entirety of Plaintiff's disclosure in its Third Amended Complaint.

3

That bare-bones disclosure does not adequately inform Defendants of Plaintiff's infringement theories. Requiring Plaintiff's to disclose those theories is vital to efficiently moving this case to resolution. Courts around the country recognize as much:

- "Serving infringement contentions on opposing parties before discovery has begun serves to narrow and focus the subsequent discovery. The Patent Rules require parties to evaluate their infringement contentions early in litigation, so the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 707 (E.D. Tex. 2008) (internal quotations and citations omitted).
- "[The rule requiring infringement contentions] is designed to hasten resolution on the merits by providing structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute. It is also intended to require the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1024 (N.D. Cal. 2010) (internal quotations and citations omitted).
- "The purpose of [the Rules] is in fact to be nit picky, to require a plaintiff to crystallize its theory of the case and patent claims. Plaintiff has the burden of providing infringement contentions that identify specifically and in detail where each claim element is found in the accused products, so that the Court can make a principled decision on whether discovery will proceed." *Yama Cap. LLC v. Canon Inc.*, No. 12 CIV. 7159 KPF, 2013 WL 6588589, at *3 (S.D.N.Y. Dec. 13, 2013) (internal quotations and citations omitted).

Plaintiff's current "disclosure" invites all of the problems that infringement contentions and trade secrets disclosures would solve. As such, Defendants request that the Court require Plaintiff to make those disclosures early in discovery so that the parties can efficiently and effectively resolve this dispute. In return, Defendants agree that it is appropriate that they be required to disclose their invalidity theories shortly thereafter. *See* Exhibit B, ¶ 17.

4.      **Contemplated Motions**

**Plaintiff's contemplated motions:**

Plaintiff contemplates filing a motion to dismiss Defendants' Counter Claim V ("Unenforceability of the '567 and '764 Patents") for failure to state a claim and a motion to strike Defendants' Twelfth Affirmative Defense ("Unenforceability of the Patents in Suit") in the event Defendants do not agree to dismiss their inequitable conduct counterclaim and affirmative defense.  This issue is the subject of Plaintiff's May 19, 2021 letter (Dkt. No. 141) and the Court's finding that Defendants did not demonstrate in opposing the motion to amend that Plaintiff had engaged in inequitable conduct (Dkt. No. 147 at 18-21).

With respect to Defendants' contemplated motions regarding dismissal of the NJ Transit defendant based on immunity under the 11th Amendment and stay discovery against NJ Transit, the parties have not yet had a meet and confer on this issue.  With respect to Defendants' motion to compel regarding documents Plaintiff has made available for inspection, Plaintiff has advised Defendants that they are looking into the issue and the parties have not had a meet and confer on the issue.

**Defendants' Currently Contemplated Motions**

- A motion to stay based on petitions for *inter partes* review for the asserted patents. Defendants contemplate filing these petitions for *inter partes* review by February 18, 2022, and seeking a stay of this litigation shortly thereafter.
- A motion to dismiss Plaintiff's claims against Defendant NJ Transit, because as held by the Third Circuit, NJ Transit is an arm of the State of New Jersey and thus entitled to immunity under the Eleventh Amendment. *See Karns v. Shanahan*, 879 F.3d 504 (3rd Cir. 2018). Defendants raised this issue with Plaintiff on January 18, 2022. A few hours before filing this letter, Plaintiff responded indicating it opposes the motion.
- A motion to stay discovery against NJ Transit while the motion to dismiss is pending.
- A motion to compel Plaintiff to produce non-trade secret documents that Plaintiff is currently only making available for inspection at Plaintiff's offices. Defendants raised this issue with Plaintiff on January 19, 2022, and on January 25, 2022, Defendants requested to meet and confer today (January 28, 2022). Plaintiff responded a few hours before filing this letter indicating it opposes the motion and asking to meet and confer next week.
- A motion for judgment on the pleadings that the asserted patents are invalid under 35 U.S.C. § 101.
- Motions for summary judgment of invalidity and non-infringement.
- Motions for summary judgment regarding Plaintiff's trade secret misappropriation, unfair competition, and unjust enrichment claims.

**5.    Prospect for Settlement**

The prospect for settlement is presently unknown.

**6.    Defendants' position with respect to their inequitable conduct counterclaim and affirmative defense**

Respectfully, Defendants do not agree to dismiss their inequitable conduct defense and counterclaim in light of the Court's finding that Defendants did not demonstrate — in opposing Plaintiff's motion to amend — that Plaintiff had engaged in inequitable conduct. *See* Dkt. No. 147 at 18–21. In that context, Defendants bore the burden of proving the futility of Plaintiff's amendment. *Ferring B.V. v. Serenity Pharm., LLC*, No. 17 CIV. 9922, 2019 WL 117316, at *2 (S.D.N.Y. Jan. 7, 2019). But in Plaintiff's proposed motion to strike Defendants' inequitable conduct defense and counterclaim, Plaintiff now bears the burden. *See United States v. Portrait of Wally*, 2002 U.S. Dist. LEXIS 6445, 2002 WL 553532, at *4 n.3 (S.D.N.Y. Apr. 12, 2002). And, in that context, the standard is much more favorable to Defendants. *See Salcer v. Enicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), cert. granted and judgment vacated on other grounds, 478 U.S. 1015 (1986) (holding that an affirmative defense should not be stricken "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense."). Defendants thus cannot agree to withdraw their inequitable conduct defense and counterclaim at this juncture.

Very Truly Yours,

S/Darius Keyhani