IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., <br><br> Plaintiff, <br><br> v. <br><br> XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP., <br><br> Defendants. | Civil Action No. 1:17-cv-01803-PGG-JW <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF BYTEMARK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTER CLAIM V AND STRIKE DEFENDANTS' TWELFTH AFFIRMATIVE DEFENSE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.   BACKGROUND ...............................................................................................................1

II.  LEGAL STANDARDS .....................................................................................................4

    A.   Rule 12(b)(6) Motion to Dismiss ............................................................................4

    B.   Rule 12(f) Motion to Strike .....................................................................................5

III. ARGUMENT .....................................................................................................................6

    A.   Defendants' counterclaim for unenforceability of the '567 and '764 Patents should be dismissed. ...............................................................................................6

        1.   Defendants fail to state a claim of inequitable conduct. ............................7

            a.   Defendants have not sufficiently pled that Bytemark acted with specific intent to deceive the PTO. ................................................8

            b.   Defendants have not sufficiently pled that the alleged non-disclosures were but-for material. ..................................................11

        2.   Defendants fail to state a claim of unclean hands. ....................................12

    B.   Defendants' affirmative defense of inequitable conduct should be stricken. ........14

IV.  CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367 (Fed. Cir. 2012) .......................................... 7, 14

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ....................................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................................................. 5

*ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed. Cir. 1998) ....................................................... *passim*

*Belcher Pharms., LLC v. Hospira, Inc.*, 11 F.4th 1345 (Fed. Cir. 2021) ........................................ 8

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) ......................................................... 11

*Bytemark, Inc. v. Masabi Ltd.*, No. 216CV00543JRGRSP, 2018 WL 7272023
    (E.D. Tex. Nov. 26, 2018) ............................................................................................................ 2

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ......................................................... 5

*City of N.Y. v. FedEx Ground Package Sys., Inc.*, 314 F.R.D. 348 (S.D.N.Y. 2016) .............. 12, 14

*Edge Sys. LLC v. Cartessa Aesthetics, LLC*, No. 20-CV-6082, 2021 WL 5563751
    (E.D.N.Y. Nov. 29, 2021) .......................................................................................................... 13

*Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ...................................... 8

*Gilead Scis., Inc., v. Merck & Co.*, 888 F.3d 1231 (Fed. Cir. 2018) ............................................. 13

*Jannazzo v. United States*, No. 15-CV-3506, 2016 WL 1452392 (E.D.N.Y. Apr. 13, 2016) ....... 11

*Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591 (S.D.N.Y. 2012) ............................................ 8

*Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371 (S.D.N.Y. 2001) ......................... 12, 14

*Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538, 2013 WL 4016302
    (S.D.N.Y. Aug. 7, 2013) .............................................................................................................. 4

*Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530 (S.D.N.Y. 2015) .......................... 7, 8

*Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365 (E.D.N.Y. 2007) .................. 11

*Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 18 CIV. 11098, 2020 WL 1331919
    (S.D.N.Y. Mar. 23, 2020) .................................................................................................. *passim*

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) .................... passim

*TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349 (S.D.N.Y. 2000)................7, 10

*Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597
    (S.D.N.Y. June 25, 2020)..................................................................................5, 7, 8, 14

**Rules and Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................................5, 6, 11

Fed. R. Civ. P. 12(f)...................................................................................................................5, 14

MPEP § 609.02 ....................................................................................................................... passim

Plaintiff Bytemark, Inc. ("Bytemark") respectfully requests that the Court: (1) dismiss Defendants Xerox Corp., ACS Transport Solutions, Inc., Xerox Transport Solutions, Inc., Conduent Inc., and New Jersey Transit Corp. (collectively, "Defendants")'s Counter Claim V ("Unenforceability of the '567 and '764 Patents") for failure to state a claim, and (2) strike Defendants' Twelfth Affirmative Defense ("Unenforceability of the Patents in Suit"). *See* Dkt. #140. In its January 10, 2022 Memorandum Opinion ("1/10/22 Opinion"), this Court determined that Defendants' allegations of inequitable conduct and unclean hands lack a legal or factual basis. Dkt. #147, at 18-21. Specifically, the Court explained, "it [cannot] be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application," and concluded that "[b]ecause Bytemark adequately disclosed the *Masabi* litigation to the PTO in connection with the parent patent applications, Defendants have not demonstrated that their inequitable conduct defense is meritorious."[1] Dkt. #147, at 20-21.

The Court has considered and ruled on this issue, and Defendants' meritless allegations—if permitted to remain—would only distract from the real issues in this case, waste the Court's and the parties' time and resources, and result in prejudice against Bytemark. Accordingly, Bytemark asks that the Court, consistent with its prior ruling, dismiss Defendants' Counter Claim V and strike Defendants' Twelfth Affirmative Defense.

I.   BACKGROUND

Bytemark sued Defendants on March 10, 2017, alleging infringement of U.S. Patent Nos.

---

[1] Although the Court now reviews these allegations under the motion to dismiss and motion to strike standards, the Court's finding that "Bytemark adequately disclosed the *Masabi* litigation to the PTO in connection with the parent patent applications" is fatal to Defendants' counterclaim and affirmative defenses under the applicable law. This is because Defendants' inequitable conduct allegations, as pled, require nondisclosure to the PTO. *See* Dkt. #140, ¶¶ 152-231, 267-70. Based on the applicable law, Bytemark has made the required disclosure to the PTO, and there is no dispute of fact or law as to this issue.

1

8,494,967 ("the '967 patent") and 9,239,993 ("the '993 patent") (collectively, the "Parent Patents"), along with seven other causes of action involving Defendants' same infringing mobile ticketing applications and systems. Dkt. #1. Bytemark subsequently filed a First Amended Complaint and a Second Amended Complaint. Dkt. #40; Dkt. #74. The Parent Patents were later found invalid in an unrelated action in the Eastern District of Texas. *Bytemark, Inc. v. Masabi Ltd.*, No. 216CV00543JRGRSP, 2018 WL 7272023, at *1 (E.D. Tex. Nov. 26, 2018), *report and recommendation adopted*, No. 216CV00543JRGRSP, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), *aff'd*, 792 F. App'x 952 (Fed. Cir. 2020). Bytemark then stipulated to the dismissal of its patent infringement claims, based on the Parent Patents, in the instant case. Dkt. #94; Dkt. #95.

On May 29, 2020, Bytemark moved for leave to amend its Second Amended Complaint to add patent infringement claims for newly issued U.S. Patent Nos. 10,346,764 ("the '764 patent") and 10,360,567 ("the '567 patent") (collectively, the "Children Patents"). *See* Dkt. #104-105 ("Motion to Amend"). Defendants opposed the motion, arguing in part that amendment would be futile because "Bytemark's newly issued patents are unenforceable due to inequitable conduct." Dkt. #107, at 2-8. According to Defendants, "[I]t is clear that when prosecuting the Children Patents Bytemark failed to disclose material information to the Patent Office. In particular, Bytemark withheld the Eastern District of Texas decisions invalidating the Invalid Parent Patents." Dkt. #107, at 3. Defendants argued that "[t]he Children Patents would not have issued without Bytemark's misconduct." Dkt. #107, at 3.

In its reply brief, Bytemark dispelled these assertions, detailing, *inter alia*, how all material information was disclosed to and in possession of the U.S. Patent and Trademark Office ("PTO"). Dkt. #106, at 1-5. Bytemark explained and submitted evidence that, at the commencement of its lawsuit against Masabi Ltd. in the Eastern District of Texas, Bytemark's counsel sent notice of the

action to the PTO.  Dkt. #106, at 1 & Ex. E.  Bytemark also cited numerous instances on which it brought the Eastern District of Texas's patent claim construction ruling to the attention of the Patent Trial and Appeal Board ("PTAB").  Dkt. #106, at 1-2.  Bytemark further stated that while the prosecution of the Children Patents was still pending, the Eastern District sent a notice to the PTO—which became part of the prosecution histories of the children patents—informing it that the court had found the Parent Patents invalid.  Dkt. #106, at 2 & Ex. E.  Thus, Bytemark's conduct fully complied with the Manual for Patent Examining Procedure ("MPEP") and case law stating "it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application."  *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998).

On March 31, 2021, the Court granted Bytemark's Motion to Amend and stated that "[t]he reasons for the Court's decision will be explained in a forthcoming opinion."  Dkt. #138.  Bytemark filed its Third Amended Complaint ("TAC") on April 14, 2021.  Dkt. #139.  On April 28, Defendants filed their Answer to Plaintiff's Third Amended Complaint ("Answer").  Dkt. #140.  Included in the answer was Defendants' Twelfth Affirmative Defense of "Unenforceability of the Patents in Suit" based on inequitable conduct and unclean hands.  Dkt. #140, ¶¶ 152-231.  Also in Defendants' answer was a counterclaim for "Unenforceability of the '567 and '764 Patents" ("Counter Claim V") premised on the same allegations set forth in the Twelfth Affirmative Defense.  Dkt. #140, ¶¶ 267-70.  The allegations of inequitable conduct in Defendants' Answer echoed those in Defendants' opposition to Bytemark's Motion to Amend.  *See* Dkt. #107, at 2-8.  On May 19, 2021, Bytemark filed a letter with the Court requesting a pre-motion conference with regard to its proposed motion to (1) dismiss Defendants' Counter Claim V for failure to state a claim and (2) strike Defendants' Twelfth Affirmative Defense.  Dkt. #141.

3

On January 10, 2022, the Court issued its Memorandum Opinion ("1/10/22 Opinion"), explaining its reasoning for granting Bytemark leave to amend. Dkt. #147. The Court determined, pursuant to MPEP § 609, "that information concerning the Texas litigation was before the PTO when it considered the '764 and '567 applications, by virtue of the disclosures in the parent patents' applications" and stated that "it is undisputed that Bytemark disclosed the *Masabi* litigation in connection with the parent patent applications." Dkt. #147, at 20-21. The Court further explained, "[i]n view of [MPEP § 609 it [cannot] be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." Dkt. #157, at 20. Accordingly, "Because Bytemark adequately disclosed the *Masabi* litigation to the PTO in connection with the parent patent applications, Defendants have not demonstrated that their inequitable conduct defense is meritorious." Dkt. #147, at 21.

On January 21, 2022, the Court issued an order stating, "In light of the Court's finding that Defendants did not demonstrate in opposing the motion to amend that Plaintiff had engaged in inequitable conduct (Dkt. No. 147), Defendants are directed to state whether they agree to the dismissal of their Twelfth Affirmative Defense and Counterclaim V." Dkt. #155. Defendants did not agree to these dismissals, and on January 31, the Court granted Bytemark leave to file the instant motion. Dkt. #160.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(6) Motion to Dismiss

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13 CIV. 0538, 2013 WL 4016302, at *2 (S.D.N.Y. Aug. 7, 2013). In reviewing a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences

4

in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

        **B.**        **Rule 12(f) Motion to Strike**

Rule 12(f) provides that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To succeed on a motion to strike an affirmative defense, a party must "show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, at *5 (S.D.N.Y. June 25, 2020). "[A]ffirmative defenses alleging fraud must be pled with particularity as required by Rule 9(b), or be struck as inadequately pled." *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, No. 18 CIV. 11098, 2020 WL 1331919, at *4 (S.D.N.Y. Mar. 23, 2020) (citations omitted). Allegations that are conclusory or unsupported by factual assertions are insufficient. *Town & Country*, 2020 WL 3472597, at *5.

Defendants' "counterclaim and affirmative defense for inequitable conduct rise or fall together." *Id.* at *7 (striking inequitable conduct affirmative defense after assessing counterclaim and affirmative defense together); *Signify*, 2020 WL 1331919, at *10 (same).

5

### III.   ARGUMENT

####   A.   Defendants' counterclaim for unenforceability of the '567 and '764 Patents should be dismissed.

Defendants' counterclaim for unenforceability of the '567 and '764 Patents, based on inequitable conduct and unclean hands, should be dismissed because it is facially implausible and fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Indeed, the Court effectively made this determination in granting Bytemark's Motion to Amend and rejecting Defendants' argument of futility based on an inequitable conduct defense. *See* Dkt. #147, at 18-21. Defendants' claim of inequitable conduct hinges on their allegation that Bytemark and its counsel failed to disclose to the PTO "information material to the patentability of the Patents-in-Suit, their knowledge of the Inter Partes Review, the knowledge of the invalidity contentions, and their knowledge of the Eastern District's § 101 finding, and their knowledge of the materiality of the same" during prosecution of the '567 and '764 Patents. Dkt. #140, ¶ 215. In its 1/10/22 Opinion, however, this Court determined that these very allegations failed to raise a meritorious inequitable conduct defense, because "pursuant to MPEP § 609 – that information concerning the Texas litigation was before the PTO when it considered the '764 and '567 applications, by virtue of the disclosures in the parent patents' applications," and "'[i]n view of [MPEP] § 609 **it [cannot] be inequitable conduct** for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application. *ATD Corp., v. Lydall, Inc.*, 159 F.3d 534, 547 (Fed. Cir. 1998) (citation omitted)." Dkt. #147, at 20-21 (emphasis added).

The Court's finding that "Bytemark adequately disclosed the *Masabi* litigation to the PTO in connection with the parent patent applications" is fatal to Defendants' counterclaim under the applicable law, because Defendants' inequitable conduct and unclean allegations, as pled, require nondisclosure to the PTO. *See* Dkt. #147, at 21; Dkt. #140, ¶¶ 152-231. The Court has considered

6

and decided this issue, and Defendants' frivolous and distracting counterclaim—which is implausible on its face and fails as a matter of law—should be dismissed from the litigation.

### 1. Defendants fail to state a claim of inequitable conduct.

"The Federal Circuit has long decried the use of charging inequitable conduct in patent litigation," *TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000) (citation omitted), and inequitable conduct claims have "aptly been described as "the 'atomic bomb' of patent law'" and a "plague[] not only the courts but also the entire patent system," *Town & Country*, 2020 WL 3472597, at *5 (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011)). "[A] party attempting to plead inequitable conduct faces a daunting task …." *Id*. at *6. Because "[a] finding of inequitable conduct 'renders the entire patent unenforceable'" and "can spread … to render unenforceable other related patents and applications," "the standards for making out such a claim are stringent." *Id.* at *5 (quoting *Therasense*, 649 F.3d at 1289).

Seeking to curb the abuse of inequitable conduct claims, the Federal Circuit's demanding standard requires defendants to prove by clear and convincing evidence that "(1) the patentee acted with the specific intent to deceive the PTO; and (2) the non-disclosed reference was but-for material." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-91). The accused infringer bears the burden of proof on each of these elements. *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 559 (S.D.N.Y. 2015), *aff'd sub nom. Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343 (Fed. Cir. 2017). Where a defendant's inequitable conduct argument is premised on the non-disclosure of information, the accused infringer must prove by "clear and convincing evidence" that the applicant "(1) knew of the withheld material information ... , and (2) withheld ... this information with a specific intent to

7

deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328-29, 1329 n.5 (Fed. Cir. 2009).

Further, a claim of patent unenforceability premised on inequitable conduct sounds in fraud, and it must therefore be pled with particularity as mandated by Federal Rule of Civil Procedure 9(b). *Id.* at 1331. This Court has dismissed inequitable conduct claims when these standards are not met. *See, e.g., Town & Country*, 2020 WL 3472597, at *7; *Signify*, 2020 WL 1331919, at *7; *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 628 (S.D.N.Y. 2012).

As discussed above, the MPEP and Federal Circuit precedent establish that none of the allegations made by Defendants against Bytemark constitute inequitable conduct as a matter of law. Furthermore, Defendants have not pled, with particularity or otherwise, that (a) Bytemark acted with specific intent to deceive the PTO and (b) the allegedly non-disclosed reference was but-for material.

> **a.  Defendants have not sufficiently pled that Bytemark acted with specific intent to deceive the PTO.**

To show such intent to deceive the PTO, Defendants must prove, by clear and convincing evidence, "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. The specific intent to deceive "must be the single most reasonable inference able to be drawn from the evidence." *Belcher Pharms., LLC v. Hospira, Inc.*, 11 F.4th 1345, 1353 (Fed. Cir. 2021) (citation omitted). "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91. Moreover, "[a]ctivities that seem 'inconsistent with knowledge of illegality or fear of a lawsuit' do not support an inference of fraudulent intent, even at this preliminary stage." *Signify*, 2020 WL 1331919, at *4 (citation omitted). Defendants' accusation of specific intent to deceive the PTO is implausible on its face and fails as a matter of law.

8

In their counterclaim, Defendants offer only the false and conclusory accusation that Bytemark had intent to deceive the PTO because the prosecuting attorney "knowingly and deliberately fail[ed] to disclose non-cumulative information that is material to the patentability of the asserted claims of the Patents-in-Suit," and that both she and the named inventors failed to disclose certain information. Dkt. #140, ¶¶ 219-23.[2] The Court previously determined, however, that "it is undisputed that Bytemark disclosed the *Masabi* litigation in connection with the parent patent applications." Dkt. #147, at 21.

As Bytemark previously explained in its Reply in Support of Its Motion for Leave to Amend Its Complaint, the '567 and '764 Patents are the children patents of the '967 and '993 Patents that were the subject of the IPRs and Eastern District of Texas litigation. Dkt. #106, at 1-3. It is undisputed that the Child Patents are related to the Parent Patents. Dkt. #147, at 21. MPEP § 609.02 states that "[t]he examiner will consider information which has been considered by the Office in a parent application when examining" a continuation, divisional, or continuation-in-part application filed under 37 C.F.R. § 1.53(b), and "[a] listing of the information need not be resubmitted in the continuing application." *See also TM Patents*, 121 F. Supp. 2d at 372 (stating that applicants need not resubmit references cited in parent applications—regardless of their materiality—because the examiner is required to consider information in parent applications and to review them for pertinent information when examining a continuing application). "[I]t cannot

---

[2] Specifically, Defendants allege Bytemark failed to disclose: "(1) the institution decision in the Inter Partes Review of the '967 patent (IPR2017-01449); (2) the final written decision in the Inter Partes Review of the '967 patent (IPR2017-01449); (3) the invalidity contentions submitted in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.); (4) the Magistrate Judge's Report and Recommendation finding that the '967 and '993 patent[s] were invalid under 35 U.S.C. § 101 in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.); and (5) the adoption of the Magistrate Judge's Report and Recommendation in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.)." Dkt. #140, ¶ 222.

be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp.*, 159 F.3d at 547.

At the commencement of the lawsuit against Masabi Ltd. in the Eastern District of Texas, Bytemark's counsel sent notice of the action to the PTO.[3] *See* Dkt. #106, Ex. E (Reports of Filing and Determination of Action found in Parent Patents' PTO file wrappers). Bytemark also brought the Eastern District's patent claim construction ruling to the PTO Patent Trial and Appeal Board's attention on multiple occasions.[4] Also, while the prosecution of the Children Patents was still pending, the Eastern District sent a notice to the PTO—which became part of the prosecution histories of the Children Patents—informing it that the court had found the Parent Patents invalid under § 101. *See* Dkt. #106, Ex. E. Bytemark's counsel also received a copy of this notice and was made aware that the PTO was notified of the court's invalidation of the Parent Patents.

Thus, the law and the record make clear that the IPR decisions and other information cited by Defendants as non-disclosures became part of the Parent Patents' file history and did not need to be resubmitted by Bytemark. *See* M.P.E.P. § 609.02. Further, the patents' file histories containing these documents—which are not only publicly available but were brought directly to Defendants' and the Court's attention during the parties' Motion to Amend briefing and are part of the record of this case[5]—establish that all material information was in possession of the PTO,

---

[3] Defendants do not argue that Bytemark, in connection with the Parent Patent applications, withheld from the PTO information concerning the Texas litigation. Dkt. #147, at 21; Dkt. #140.

[4] *See, e.g.*, *Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 6 at 6 (PTAB 2018); *Masabi Ltd. v. Bytemark, Inc.*, IPR2017-01449, Paper 19 at 8 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*, CBM2018-00011, Paper 11 at vii, 35 (PTAB 2018); *Xerox Corp. v. Bytemark, Inc.*, CBM2018-00018, Paper 10 at vii, 32 (PTAB 2018).

[5] The Court, in adjudicating a Rule 12(b)(6) motion, may consider not only the factual allegations in the complaint, but "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," or "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Jannazzo v. United*

Bytemark was transparent with the PTO throughout the entire prosecution process for all of the patents, and Bytemark acted in compliance with the applicable rules and precedent. Defendants' claim of inequitable conduct thus fails as a matter of law, because "it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." *ATD Corp.*, 159 F.3d at 547.[6]

Defendants thus fail to adequately plead that Bytemark acted with specific intent to deceive the PTO.

### b.   Defendants have not sufficiently pled that the alleged non-disclosures were but-for material.

Even assuming arguendo that Bytemark failed to disclose any materials to the PTO—which it did not—Defendants have failed to adequately plead that the alleged non-disclosures were "but-for material." "[I]n assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291. Defendants allege that "a reasonable examiner would not have allowed the claims of the '567 or '764 patents" had he or she known about the IPR of the '967 patent, the invalidity contentions provided in the Eastern District case, and the invalidity decision

---

*States*, No. 15-CV-3506, 2016 WL 1452392, at *3 (E.D.N.Y. Apr. 13, 2016) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). The documents cited by Bytemark fall into these exceptions, as they are both publicly available and were previously brought to Defendants' attention in Bytemark's motion to amend briefing. Moreover, "relying upon evidence that is extrinsic to the complaint in ruling on a Rule 12(b)(6) motion is far less problematic when the plaintiff has notice of the evidence and an opportunity to respond," as Defendants have here. *Republic of Colombia v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 450-51 (E.D.N.Y. 2007).

[6] Even, assuming arguendo, that the Court had found that some or all of these documents should have been resubmitted to the PTO in connection with the prosecution of the Children Patents, there are other equally plausible inferences that can be drawn from the facts other than fraudulent intent or intent to deceive; and "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense*, 649 F.3d at 1290-91.

11

in the Eastern District case. Dkt. #140 ¶¶ 216-18. But the record establishes that the examiner did have this information (or, at the very least, knowledge that this information existed, had he wished to consider it). Further, the Eastern District's decision on the § 101 patentability of the Parent Patents' claims is not material to the subject matter of the Children Patents' claims because (1) the Children Patents' claims recite different claim language from the Parent Patents (and the *Alice* § 101 subject matter analysis[7] looks to the language of the claims), (2) the Children Patents were found by the PTO to be patentably distinct from the Parent Patents, and (3) the Children Patents are subject to the new 2019 § 101 USPTO guidelines, unlike the Parent Patents. Thus, Defendants' assertion that the nondisclosures were but-for material and would have led to a different result is facially implausible.

### 2. Defendants fail to state a claim for unclean hands.

For the same reasons Defendants' inequitable conduct allegations are insufficient, Defendants' counterclaim of unclean hands also fails as a matter of law. "[U]nclean hands prohibits awarding equitable relief to a party that has acted fraudulently or deceitfully to gain an unfair advantage." *City of N.Y. v. FedEx Ground Package Sys., Inc.*, 314 F.R.D. 348, 356-57 (S.D.N.Y. 2016). It is well-established that "an unclean hands defense requires a finding of bad faith." *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001). "The Federal Circuit has cautioned against 'the potential for misuse' of the unclean hands doctrine, and the need to 'ensure that [it] operates in harmony with, and does not override' inequitable conduct." *Edge Sys. LLC v. Cartessa Aesthetics, LLC*, No. 20-CV-6082, 2021 WL 5563751, at *5 (E.D.N.Y. Nov. 29, 2021) (citing *Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1240 n.3 (Fed. Cir.

---

[7] *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

2018)).[8]

No finding of fraud, deceit, or bad faith can be made from Defendants' allegations.  As this Court previously determined, Bytemark acted in accordance with the MPEP and Federal Circuit precedent.  *See* Dkt. #147, at 18-21.  Because Defendants have not adequately pled that Bytemark acted fraudulently or deceitfully or engaged in bad faith, Defendants have failed to state a claim as to this issue.

In sum, Defendants' Counter Claim V for unenforceability does not state a claim for relief, either under the Rule 9 particularity standard or regular pleading standards.  Defendants have not pled "factual content that allows the court to draw the reasonable inference that [Bytemark] is liable for the misconduct alleged," *see Iqbal*, 556 U.S. at 678, as the governing law makes clear that the conduct alleged by Defendants cannot be inequitable conduct, *see* MPEP § 609; *ATD Corp.*, 159 F.3d at 547.  Even assuming arguendo that Bytemark neglected to disclose relevant information to the PTO, Defendants have not sufficiently pled allegations, showing by clear and convincing evidence, that (1) Bytemark acted with specific intent to deceive the PTO and (2) the non-disclosed reference was but-for material.  *1st Media*, 694 F.3d at 1372 (citing *Therasense*, 649 F.3d at 1290-91).  Nor have Defendants sufficiently pled, with particularity or otherwise, that Bytemark acted "fraudulently or deceitfully to gain an unfair advantage" or acted in bad faith.  *See*

---

[8] The Federal Circuit further cautioned:

> We are conscious, as any court presented with a defense of unclean hands must be, both of the judicial system's vital commitment to the standards of probity protected by the doctrine and, also, of the potential for misuse of this necessarily flexible doctrine by parties who would prefer to divert attention away from dry, technical, and complex merits issues toward allegations of misconduct based on relatively commonplace disputes over credibility.

*Gilead*, 888 F.3d at 1240.

13

*City of N.Y.*, 314 F.R.D. at 356-57; *Obabueki*, 145 F. Supp. 2d at 401. Accordingly, Defendants' Counter Claim V should be dismissed in full.

> B. **Defendants' affirmative defense of inequitable conduct should be stricken.**

Defendants' "counterclaim and affirmative defense for inequitable conduct rise or fall together." *Town & Country*, 2020 WL 3472597, at *7 (striking inequitable conduct affirmative defense after assessing counterclaim and affirmative defense together); *Signify*, 2020 WL 1331919, at *10 (same). For the reasons discussed, *supra*, Bytemark asks that the Court also strike Defendants' affirmative defense of unenforceability as insufficient and inadequately pled.

Rule 12(f) provides that a court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To succeed on a motion to strike an affirmative defense, a party must "show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." *Town & Country*, 2020 WL 3472597, at *5. "[A]ffirmative defenses alleging fraud must be pled with particularity as required by Rule 9(b), or be struck as inadequately pled." *Signify*, 2020 WL 1331919, at *4 (citations omitted). Allegations that are conclusory or unsupported by factual assertions are insufficient. *Town & Country*, 2020 WL 3472597, at *5.

All of the requirements for striking Defendants' affirmative defense are satisfied here. As discussed, *supra*, there is no question of law or fact which might allow Defendants' inequitable conduct defense to succeed. Pursuant to MPEP § 609, "information concerning the Texas litigation was before the PTO when it considered the '764 and '567 applications, by virtue of the disclosures in the parent patents' applications," and "it is undisputed that Bytemark disclosed the *Masabi* litigation in connection with the parent patent applications." Dkt. #147, at 20-21. "[I]t

14

cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application," *ATD Corp.*, 159 F.3d at 547, and "[b]ecause Bytemark adequately disclosed the *Masabi* litigation to the PTO in connection with the parent patent applications, Defendants have not demonstrated that their inequitable conduct defense is meritorious," Dkt. #147, at 21.  Accordingly, there is no question of law or fact that Bytemark disclosed the required information to the PTO.

Additionally, Bytemark would be highly prejudiced by inclusion of this defense: it would necessitate additional discovery, including multiple depositions, as well as additional motion practice.  Inclusion of this defense would not only waste the parties' and the Court's time and resources, it would distract from the real issues in the case—including at trial—and it would discourage settlement.  As the Federal Circuit explained in *Therasense*, the inequitable conduct doctrine has "ruinous consequences for the reputation of [the] patent attorney," "paints the patentee as a bad actor," "discourages settlement and deflects attention from the merits of validity and infringement issues," and "increas[es] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost." *Therasense*, 649 F.3d at 1288. All of these concerns are implicated here.  Accordingly, Defendants' Twelfth Affirmative Defense should be stricken.

## IV.    CONCLUSION

For the foregoing reasons, Bytemark respectfully asks that the Court dismiss Defendants' Counter Claim V and strike Defendants' Twelfth Affirmative Defense.

Dated: February 14, 2022                                        Respectfully submitted,

                                                                                s/ Dariush Keyhani
                                                                                Dariush Keyhani

Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Plaintiff*