IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 1:17-cv-01803-PGG-JW |
| XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP., | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTER CLAIM V AND STRIKE DEFENDANTS' TWELFTH AFFIRMATIVE <u>DEFENSE</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES........................................................................................ii

I.  PRELIMINARY STATEMENT ......................................................................1

II.  ARGUMENT....................................................................................................2

    A.  Defendants' factual assertions regarding the alleged nondisclosures are demonstrably false. ...............................................................................2

        1.  The *Masabi* § 101 rulings were before the PTO prior to the issuance of the Children Patents........................................................................2

        2.  Masabi's invalidity contentions, which are not relevant, were submitted to the PTO........................................................................4

    B.  Defendants' allegations of specific intent to deceive are wholly implausible.........6

    C.  Defendants fail to sufficiently allege but-for materiality........................................8

III.  CONCLUSION ................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367 (Fed. Cir. 2012)..................................................7

*Dig. Control Inc. v. Charles Mach. Works,* 437 F.3d 1309 (Fed. Cir. 2006)..................................9

*Hill-Rom Servs., Inc. v. Matal*, 716 F. App'x 996 (Fed. Cir. 2017) ................................................5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..................................................................5

*Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530 (S.D.N.Y. 2015) ..........................7, 9

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ....................*passim*

*TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349 (S.D.N.Y. 2000) ....................6

*Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597
(S.D.N.Y. June 25, 2020) ........................................................................................................2

**Other Authorities**

MPEP § 609.02................................................................................................................................6

## I.     PRELIMINARY STATEMENT

Plaintiff Bytemark, Inc. submits this Reply in Support of Its Motion to Dismiss Defendants'

Counter Claim V and Strike Defendants' Twelfth Affirmative Defense ("Motion to Dismiss").

Defendants' Response in Opposition to Plaintiff's Motion to Dismiss ("Response") is filled with

factual inaccuracies and fails to establish that Defendants' Counter Claim V can survive a motion

to dismiss under Rule 12(b)(6) or that their Twelfth Affirmative Defense should not be stricken.

In fact, Defendants' meritless allegations of inequitable conduct and misrepresentation of the

factual record are precisely the type of abuse the Federal Circuit contemplated, and sought to

prevent, in *Therasense*.  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-

90 (Fed. Cir. 2011) (stating that overuse of the inequitable conduct doctrine—"the 'atomic bomb'

of patent law"—"has become an absolute plague").

In their Response, Defendants state the basis for their inequitable conduct counterclaim

and defense as follows:

> [D]efendants' inequitable conduct counterclaim and defense are not based on
> nondisclosure of the existence of the *Masabi* litigation.  Instead, the inequitable
> conduct claim arises from Bytemark's specific nondisclosure of the *Masabi* § 101
> rulings and invalidity contentions.  *See*, *e.g.*, Dkt. 140 ¶ 215.  And, as discussed
> more fully below, the *Masabi* § 101 rulings were not before the PTO until after the
> Children Patents issued, and the invalidity contentions have never been submitted
> to the PTO.

Response, at 6.   However, the factual record plainly establishes that (1) the *Masabi* § 101 rulings

***were*** before the PTO long before the Children Patents issued, as demonstrated by a basic PACER

search, and (2) the invalidity contentions—though not even relevant—***were*** submitted to the PTO,

***by Defendants' own counsel***.   Thus, all of the information that forms the basis of Defendants'

inequitable conduct claim, whether relevant or not, was disclosed to the PTO.

Given these facts, and given Defendants' "daunting task" of showing by clear and

1

convincing evidence not only nondisclosure of a known material reference but (1) specific intent to deceive the PTO <u>and</u> (2) but-for materiality, *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, at \*6 (S.D.N.Y. June 25, 2020), there is no conceivable way Defendants have stated a claim for inequitable conduct—under Rule 9's heightened pleading standard or otherwise.  Accordingly, Bytemark's Motion to Dismiss should be granted in full.

## II.    ARGUMENT

### A.    Defendants' factual assertions regarding the alleged nondisclosures are demonstrably false.

In attempting to allege that Bytemark failed to disclose known material references to the PTO, Defendants' Response relies on blatant misrepresentations that are easily disproven by the factual record.  Defendants falsely assert, first, that "the *Masabi* § 101 rulings were not before the PTO until after the Children Patents issued" and, second, that "the invalidity contentions have never been submitted to the PTO."  Response, at 6.

### 1.    The *Masabi* § 101 rulings were before the PTO prior to the issuance of the Children Patents.

Defendants state, incorrectly, that the PTO did not have notice of the *Masabi* § 101 rulings while the Children Patents were pending.  Response, at 7-10.  Specifically, Defendants assert:

> Bytemark falsely claimed that the PTO had notice of the *Masabi* § 101 rulings while the Children Patents were pending …. Because Bytemark made that misrepresentation for the first time in its reply, Defendants did not have a chance to address it.  The Court then relied on that misrepresentation to conclude that "the record makes clear that Bytemark notified the PTO of the Texas litigation with respect to the '967 and '993 patents."
> ….
>
> Bytemark now repeats the same false claim in its Motion …. But both Exhibit E (Dkt. 106-4) (the "*Masabi* § 101 notice") and the file histories make abundantly clear that the PTO did not receive the *Masabi* § 101 notice until **after** the Children Patents issued.

Response, at 7-8.  In support of this assertion, Defendants point to entries in the PTO's electronic

file showing the date (February 19, 2020) the PTO entered the § 101 invalidity ruling into its system. *Id.* at 8-9.

The date the PTO entered the notice of the *Masabi* § 101 rulings into its electronic filing system does not equate to the date the PTO actually received the notice of the rulings from the Eastern District of Texas. This is confirmed by a simple review of the *Bytemark v. Masabi* docket on PACER, which clearly shows that on February 7, 2019, the district court mailed form AO 120 to the Director of the PTO (Dkt. #151):

| 02/07/2019 | 150 | JUDGMENT. Ordered that Masabi Ltd's Motoin for summary judgment of invalidity of US Patent Nos 8,494,967 and 9,239,993 (Dkt No 113) is granted under 35 USC 101 and this action is dismissed with prejudice. Signed by District Judge Rodney Gilstrap on 2/7/2019. (bjc, ) (Entered: 02/07/2019) |
| 02/07/2019 | 151 | Notice of Filing of Patent/Trademark Form (AO 120) at termination of case. AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (bjc, ) (Entered: 02/07/2019) |
| 03/06/2019 | 152 | NOTICE OF APPEAL - FEDERAL CIRCUIT as to 150 Judgment, by Bytemark, Inc.. Filing fee $ 505, receipt number 0540-7167848. (Tindel, Andy) (Entered: 03/06/2019) |
| 03/06/2019 | | Transmission of Notice of Appeal, Judgment and Certified Docket Sheet to US Court of Appeals, Federal Circuit by separate email. re 152 Notice of Appeal - FEDERAL CIRCUIT (nkl, ) (Entered: 03/06/2019) |

*See* **Ex. A** (Civil docket for *Bytemark, Inc. v. Masabi Ltd.*, No. 2:16-cv-00543-JRG-RSP (E.D. Tex.)).

Form AO 120, with the heading "REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK," is addressed to the Director of the PTO's address in Arlington, Virginia. *See* **Ex. B** (Form AO 120, *Masabi* Dkt. #151). The form clearly states that Bytemark's '967 and 993 Patents (the Parent Patents) have been found invalid under § 101 and the action has been dismissed with prejudice:

3

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
| --- |
| ORDERED that Masabi Ltd.'s Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 8,494,967 and 9,239,993 [Dkt. No. 113] is granted under 35 U.S.C. § 101 and this action is dismissed with prejudice.. |

| CLERK | (BY) DEPUTY CLERK | DATE |
| --- | --- | --- |
| David A. O'Toole | | **2/7/19** |

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**

In addition, on February 7, 2019, counsel for Bytemark received an email via ECF notifying them that "AO 120 mailed to the Director of the U.S. Patent and Trademark Office" and linking to the document itself.  *See* **Ex. C** (2/7/19 Email to Bytemark's Counsel from ECF).  Thus, Bytemark was aware that notice of the district court's *Masabi* § 101 invalidity rulings had been sent to the Director of the PTO and that the PTO had been put on notice of those rulings.  Bytemark had no reason to doubt that the PTO received the notice that was mailed to it by the district court, on the date specified by the district court, which was more than five months *before* the Children Patents issued.[12]  The date the PTO actually entered the rulings into its electronic filing system is irrelevant.  Nothing in the factual record or in Defendants' allegations supports that Bytemark misled the PTO in any way with respect to these rulings.

> **2.    Masabi's invalidity contentions, which are not relevant, were submitted to the PTO.**

Similarly, Defendants' assertion that Masabi's invalidity contentions were withheld from the PTO is demonstrably false.  Defendants state that "the invalidity contentions have never been submitted to the PTO," and because "Bytemark's failure to address—much less challenge—the

---

[1] The '764 Patent issued on July 9, 2019, and the '567 Patent issued July 23, 2019.
[2] Even if, hypothetically, the district court's notice had gotten lost in the mail such that the PTO did not receive it until over one year later, this would not come close to satisfying *Therasense*'s requirement that Bytemark and/or its counsel acted with specific intent to deceive the PTO.

inequitable conduct allegations relating to the *Masabi* invalidity contentions, Bytemark's Motion must be denied." *See, e.g.*, Response, at 6, 12. However, ***Defendants' own counsel*** submitted the invalidity contentions to the PTO's Patent Trial and Appeal Board as exhibits in January 2018, during the covered business method reviews (CBMs) of the Parent Patents. *See* **Ex. E-H** (invalidity contentions, Exhibits 1015-18 of *Xerox Corp. v. Bytemark, Inc.*, CBM2018-00011 (PTAB 2018)); **Ex. I** (invalidity contentions, Exhibit 1011 of *Xerox Corp. v. Bytemark, Inc.*, CBM2018-00018 (PTAB 2018)).

Masabi, in challenging the validity of the Parent Patents in the Eastern District, and Xerox, in challenging the validity of the Parent Patents in the CBMs, retained the *same counsel* and the *same technical expert*, Dr. Sigurd Meldal. Xerox's counsel disclosed its final version of invalidity contentions and arguments in its petitions for CBM of the Parent Patents, which presumably included all prior art references that Xerox's—and Masabi's—counsel and technical expert deemed material.[3] Despite the PTO ultimately finding these invalidity contentions being immaterial and the PTO declining to institute Xerox's CBMs, the invalidity contentions and prior art references—which became part of the Children Patents' prosecution histories—were before the PTO nearly a year and a half before the Children Patents issued. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("the prosecution history… consists of the complete record of the proceedings before the PTO"); *see also Hill-Rom Servs., Inc. v. Matal*, 716 F. App'x 996, 1002 (Fed. Cir. 2017).

Bytemark was fully aware that the invalidity contentions were part of the prosecution history of the Children Patents, and there was no reason for Bytemark to resubmit them. *See* MPEP

---

[3] Dr. Meldal's expert declarations in connection with Xerox's CBMs were submitted on January 10 and 12, 2018, *after* his expert declarations in connection with the Masabi case were submitted on August 16, 2017, and thus represent the final version of Masabi/Xerox's counsel's invalidity contentions/arguments.

§ 609.02 (stating that "[t]he examiner will consider information which has been considered by the Office in a parent application when examining" a continuation, divisional, or continuation-in-part application filed under 37 C.F.R. § 1.53(b), and "[a] listing of the information need not be resubmitted in the continuing application); *TM Patents, L.P. v. Int'l Bus. Machs. Corp.*, 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000) (stating that applicants need not resubmit references cited in parent applications—regardless of their materiality—because the examiner is required to consider information in parent applications and to review them for pertinent information when examining a continuing application).[4]  Furthermore, the prior art references raised by Masabi were disclosed to the PTO by Bytemark's counsel and included in the Information Disclosure Statements of the Children Patent applications themselves; the PTO examiner confirmed that all of these references were considered in 2017—well before the Children Patents issued.  *See* **Ex. D & J** (Information Disclosure Statements of '157 and '622 Patent applications).

Defendants' misrepresentation of the facts shows, at best, a lack of diligence and proper investigation and, at worst, an intentional attempt to mislead the Court.  The fact remains that Defendants have not, and *cannot*, allege that Bytemark failed to disclose any known material reference to the PTO, and Defendants' counterclaim and affirmative defense should therefore be dismissed and stricken.  *See* Motion to Dismiss, at n.1, 6-7.

### B.      Defendants' allegations of specific intent to deceive are wholly implausible.

---

[4] Even assuming arguendo that the invalidity contentions had not been submitted to the PTO, such an omission would be immaterial to the inequitable conduct analysis.  First, the claims and claim elements of the Parent Patents—which were the subject of Masabi's invalidity contentions—are distinct from those of the Children Patents, and Defendants can point to no authority where such contentions would be deemed material and required to be disclosed to the PTO.  Furthermore, Defendants do not identify anywhere in their Answer what particular information in Masabi's invalidity contentions was known by Bytemark and but-for material, as is their burden to plead under Rule 9(b).

Defendants cannot come close to meeting their burden of proving by clear and convincing evidence that (1) Bytemark acted with the requisite deliberate intent to withhold known material references and deceive the PTO, and (2) the nondisclosed information was but-for material. *Regeneron Pharms., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 559, 561 (S.D.N.Y. 2015) (citing *Therasense,* 649 F.3d at 1290).

"[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Therasense,* 649 F.3d at 1290 (citation and quotation marks omitted). "Indeed, the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." *Id.* (citation and quotation marks omitted). "Because the party alleging inequitable conduct bears the burden of proof, the patentee need not offer any good faith explanation unless the accused infringer first proves a threshold level of intent to deceive by clear and convincing evidence." *Id.* at 1291.

Even if, hypothetically, Bytemark had failed to disclose the information alleged by Defendants, Defendants still could not meet their burden with the facts they have alleged. This is because specific intent to deceive is not "the single most reasonable inference to be drawn from" Defendants' allegations, nor do the allegations "*require* a finding of deceitful intent in the light of all the circumstances." *Id.* at 1290. Moreover, "it is not enough to argue carelessness, lack of attention, poor docketing or cross-referencing, or anything else that might be considered negligent or even grossly negligent." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374–75 (Fed. Cir. 2012). Furthermore, an alleged violation of the duty of candor (of which there is no evidence here) is not in itself sufficient, as the Federal Circuit has made clear "that the statutory duties of candor and disclosure and the caselaw doctrine of 'inequitable conduct' are not always coextensive." *Regeneron Pharms.*, 144 F. Supp 3d at 559 (citing *Therasense*, 649 F.3d at 1291–92).

In reality, however, Bytemark fully satisfied all of its disclosure obligations to the PTO. At the commencement of its lawsuit against Masabi, Bytemark's counsel sent notice of the action to the PTO; Bytemark brought the district court's patent claim construction ruling to the PTAB's attention on numerous occasions; and, as discussed *supra*, Bytemark was aware that the district court sent a notice to the PTO, while the prosecution of the Children Patents was still pending, informing it that the court had found the Parent Patents invalid.  *See* Motion to Dismiss, at 2-3. Additionally, Bytemark went above and beyond its obligation to disclose prior art to the PTO during prosecution of the Children Patents, disclosing an exhaustive list of references—including the references disclosed in the *Masabi* case—in the interest of full transparency.  *See* Ex. D; Ex. J; **Ex. K** (List of References Cited, '764 Patent), at 2-4; **Ex. L** (List of References Cited, '567 Patent), at 2-4.  There was nothing further that Bytemark needed to disclose, and flooding the PTO with information—as Defendants seem to advocate for—is exactly the result courts have sought to prevent:

> With inequitable conduct casting the shadow of a hangman's noose, it is unsurprising that patent prosecutors regularly bury PTO examiners with a deluge of prior art references, most of which have marginal value …. Applicants disclose too much prior art for the PTO to meaningfully consider, and do not explain its significance, all out of fear that to do otherwise risks a claim of inequitable conduct …. This tidal wave of disclosure makes identifying the most relevant prior art more difficult …. This flood of information strains the agency's examining resources and directly contributes to the backlog …. This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public.

*Therasense*, 649 F.3d at 1289–90 (citations and quotation marks omitted).

Accordingly, Defendants have failed to sufficiently plead that Bytemark acted with specific intent to deceive the PTO.

### C.    Defendants fail to sufficiently allege but-for materiality.

Additionally, Defendants' allegations do not, and cannot, satisfy the but-for materiality requirement of inequitable conduct. "[I]n assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Therasense*, 649 F.3d at 1291. Courts are "unwilling[] to extinguish the statutory presumption of validity where the patentee made a misrepresentation to the PTO that did not affect the issuance of the patent." *Id.* "A reference is not but-for material if it is merely cumulative." *Regeneron Pharms.*, 144 F. Supp. 3d at 560; *see also Dig. Control Inc. v. Charles Mach. Works,* 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("[A] withheld otherwise material prior art reference is *not* material for purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner."). "A reference is cumulative when it teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO." *Regeneron Pharms.*, 144 F. Supp. 3d at 561 (citation and internal quotation marks omitted).

Defendants allege that "a reasonable examiner would not have allowed the claims of the '567 or '764 patents" had he or she known about the IPR of the '967 patent, the invalidity contentions provided in the Eastern District case, and the invalidity decision in the Eastern District case. Dkt. #140 ¶¶ 216-18. As discussed in Bytemark's Motion to Dismiss and *supra*, all of the supposedly undisclosed materials cited by Defendants—including the *Masabi* § 101 rulings and Masabi's invalidity contentions[5]—were, in fact, disclosed to the PTO prior to the issuance of the Children Patents. Also, Bytemark disclosed all relevant prior art references to the PTO. *See* Ex. K, at 2-4; Ex. L, at 2-4. Defendants have not pointed to *any* undisclosed information—including

---

[5] Given the overlap of counsel and technical expert between Masabi and Xerox, to the extent Masabi's earlier invalidity contentions include any prior art references/arguments not included in Xerox's later-submitted CBM invalidity contention charts and expert declarations, those references cannot arguably satisfy the but-for materiality requirement of inequitable conduct when Xerox itself did not find them relevant enough to include in its CBMs.

any particular piece of prior art or other reference—that would not have been cumulative and that would have changed the PTO's decision to issue the Children Patents.  Defendants' pleadings, which must comply with Rule 9(b), are entirely deficient.

Further, as previously discussed, the *Masabi* § 101 rulings on the patentability of the Parent Patents' claims and Masabi's invalidity contentions are not even material to the subject matter of the Children Patents' claims because (1) the Children Patents' claims recite different claim language from the Parent, (2) the Children Patents were found by the PTO to be patentably distinct from the Parent Patents, and (3) the Children Patents are subject to the new 2019 § 101 USPTO guidelines, unlike the Parent Patents.  *See* Motion to Dismiss, at 11-12.  For these additional reasons, Defendants' assertion that the nondisclosure of such information—which was, in fact, disclosed—would be but-for material and would have affected the issuance of the Children Patents is implausible on its face.

## III.   CONCLUSION

For the foregoing reasons, Bytemark requests that the Court dismiss Defendants' counterclaim and strike their affirmative defense of inequitable conduct.  Bytemark further asks that Defendants not be permitted to amend their pleadings.  It is apparent from Defendants' briefing in their Response and in their opposition to Bytemark's motion to amend, and in close to twenty pages pleading their counterclaim and defense of unenforceability of the patents-in-suit in their Answer, that there does not exist any set of facts that can support Defendants' allegations of inequitable conduct under the *Therasense* standard.  To allow Defendants to continue pursuing these baseless claims would be a waste of the parties' and the Court's time and resources and would only lead to further harassment of Bytemark and its counsel.  Accordingly, Defendants' Counter Claim V and Twelfth Affirmative Defense should be dismissed with prejudice.

Dated: March 7, 2022                              Respectfully submitted,

                                                  s/ Dariush Keyhani
                                                  Dariush Keyhani
                                                  Keyhani LLC
                                                  1050 30th Street NW
                                                  Washington, DC 20007
                                                  Telephone: (202) 748-8950
                                                  Fax: (202) 318-8958
                                                  dkeyhani@keyhanillc.com
                                                  *Attorneys for Plaintiff*