# EXHIBIT G

Invalidity Chart for U.S. Patent No. 8,494,967

GROUND 3 – TERRELL IN VIEW OF WHEELER

| U.S. Patent No. 8,494,967 | | | WO 2009/141614 A1 to TERRELL | Pub. No.: US 2005/0137889 A1 to Wheeler | Grounds for Invalidity |
|---|---|---|---|---|---|
| Claim 1 | Claim 17 | Claim 18 | Published November 26, 2009 | Published June 23, 2005 | |
| [a] A method by a server system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker comprising: | [a] A non-transitory computer readable data storage medium containing computer program code that when loaded and executed by a computer system causes the computer system to perform a method for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker comprising the steps of: | [a] A system for obtaining visual validation of the possession of a purchased electronic ticket on a user's computer device for presentation to a ticket taker comprising one or more computers operatively connected that are configured to: | "a method of electronic ticketing in which the image is displayed by a mobile device that is eye-readable for inspection purposes.") (Ex. 1010, pg. 20, ln 1-2)<br><br>"request, from the server 101, the validation of a ticket having a specific unique ticket number… the server responds by assembling the required data, including… code for the day") (*Id.* at pp. 18, ln 29- pp. 19, ln 1). | [0001] Often in the physical world, people carry objects that give permissions, but they do not have the ability or authority to modify or duplicate the permissions. In some cases, there is not even an ability to examine the contents of these objects, nor are individuals aware of (nor care) about the contents. Examples include a subscriber identity module (SIM) card used in a cellular telephone, or a magnetic stripe on subway tickets. These objects act as tickets that grant access, in one case to a cellular network, in the other case to a subway.<br><br>[0002] In the digital world, it is convenient to be able to construct these types of objects for use. Several crypto-graphic techniques have been used to create non-forgeable tokens. Such tokens are used in certain computing platforms to limit access of the platform to a given user. A need exists to remotely bind data such as a token to a user device while preventing improper access to the token, even by the device user.<br><br>FIG. 1 | *Terrell's* disclosure of an "eye-readable" image on a mobile ticketing method discloses the "visual validation" recited in the '967 patent. In addition, *Terrell* discloses "a person such as… ticket inspector can easily, by viewing the code for the day 1107 and/or the decrementing timer 1104 observe that the ticket appears to be a valid ticket." (*Id.* at p. 13, ln 18-20). Thus, *Terrell* also teaches that "visual validation of the possession of a purchased electronic ticket" can be obtained by "a ticket taker." For at least these reasons, *Terrell* teaches every recitation of element [a] of claims 1, 17 and 18 of the '967 patent. |

Invalidity Chart for U.S. Patent No. 8,494,967

**GROUND 3 – TERRELL IN VIEW OF WHEELER**

| | | | |
|---|---|---|---|
| [b] receiving from the user's computer device a request to verify purchase of a previously purchased electronic ticket | "In addition, in place of the button 1109 (shown in Figure 11) the nonvalidated ticket of Figure 16 has a validation button 1602 allowing the user of the mobile device to request, from the server 101, the validation of a ticket having a specified unique ticket number. Upon receiving the request the server responds by assembling the required data, including date, code for the day, "valid to" time, and generating the corresponding barcode data, as previously described. The assembled data and the barcode data are then transmitted to the requesting mobile device, so that the application can update the pre-validation ticket to a validated ticket (such as that shown in Figures 11 and 12." (*Id*. at pp. 18, ln 27- pp. 19, ln 5).<br><br>*Terrell* discloses a nonvalidated ticket on the mobile device (*Id*.), a request from the mobile device to the server (*Id*.), and the server responding to the request by providing to the mobile device a validated ticket that my include an "eye-readable" image (*Id*. at col.1, ln 8-10). | [0026] Referring now to FIG. 3, shown is a flow diagram of an electronic ticket redemption method in accordance with one embodiment of the present invention. As shown in FIG. 3, method 200 begins by providing an electronic redemption request to a redemption agent (block 205). For example, a user may begin the ticket redemption process by sending the ticket redemption stub and ticket manifest to the ticket redemption agent. In such manner, the manifest may act as a ticket claim by the device user, claiming that he holds the ticket described in the manifest. In one embodiment, the redemption request may be generated and sent by a mobile device, such as a 3G phone, a PDA or the like. | *Terrell* discloses a nonvalidated ticket on the mobile device (*Id*.), a request from the mobile device to the server (*Id*.), and the server responding to the request by providing to the mobile device a validated ticket that my include an "eye-readable" image (*Id*. at col.1, ln 8-10). For at least these reasons, *Terrell* teaches every recitation of element [b] of claims 1, 17 and 18 of the '967 patent. |
| [c] and to obtain a visual validation display object that confirms that the user possesses the previously purchased electronic ticket | "request, from the server 101, the validation of a ticket having a specific unique ticket number… the server responds by assembling the required data, including… code for the day" (*Id*. at pp. 18, ln 29- pp. 19, ln 1).<br><br>*Terrell* further discloses the validated ticket may include "a non-text graphic 1108, which may be a logo of the service provider. Such a graphic may also be animated, providing further complexity to the ticket, to prevent fraudulent copying." (*Id*. at pg. 13, | *Wheeler* does not disclose use of a visual validation display element. | *Terrell* discloses the entire recitation of element [c] of claims 1, 17 and 18 of the '967 patent wherein it discloses the request from the server of a validation of a pre-purchased ticket prior to the server "assembling the required data" and delivering the ticket to the mobile device. |

Invalidity Chart for U.S. Patent No. 8,494,967

**GROUND 3 – TERRELL IN VIEW OF WHEELER**

|  |  |  |  |
|---|---|---|---|
|  | ln 21-23, Figure 11).<br><br>Figure 11 |  |  |
| [d] for utilization of a service monitored by the ticket taker | *Terrell* discloses this recitation wherein it discloses the mobile electronic ticket is "[f]or the purposes of speed and economy, at times it may preferable for such a ticket inspection to be merely done by the inspector's eyes." (*Id*. at pg. 4, ln 16-17). | *Id*. | *Terrell* teaches every recitation of element [d] of claims 1, 17 and 18 of the '967 patent. |
| [e] the visual validation display object configured to be readily recognizable visually by the ticket taker | *Terrell* discloses mobile ticketing that "[f]or the purposes of speed and economy, at times it may preferable for such a ticket inspection to be merely done by the inspector's eyes." (*Id*. at pg. 4, ln 16-17). Moreover, *Terrell* discloses "[T]he graphical information part comprises data that is to be presented as human-readable information on the mobile device display." (*Id*. at pg. 9, ln 19-20). *Terrell* discloses the validated ticket may include "a non-text graphic 1108, which may be a logo of the service provider. Such a graphic may also be animated, providing further complexity to the ticket, to prevent fraudulent copying." (*Id*. at pg. 13, ln 21-23, Figure 11). | *Id*. | *Terrell* teaches every recitation of element [e] of claims 1, 17 and 18 of the '967 patent. |
| [f] receiving from the user's computer device a token associated with the received request | *Terrell* discloses this wherein it describes "the mobile device to request, from the server 101, the validation of a ticket having a specific unique | [0002] In the digital world, it is convenient to be able to construct these types of objects for use. Several crypto-graphic techniques have been used to create | *Terrell's* disclosure of the mobile device seeking validation from the server of a |

| | | | |
|---|---|---|---|
| | ticket number." (*Id*. at pg. 18, ln 29-30). *Terrell* further teaches that "[T]he tickets supplied by the server 101 to the mobile devices such as device 102 each comprise a unique ticket number." (*Id*. at pg. 5, ln 1-4). Thus, *Terrell's* disclosure of the mobile device seeking validation from the server of a "unique ticket number" would be understood by a person skilled in the art as being identical to a "token." | non-forgeable tokens. Such tokens are used in certain computing platforms to limit access of the platform to a given user. A need exists to remotely bind data such as a token to a user device while preventing improper access to the token, even by the device user.<br><br>[0019] Next, a migratable key may be created in the mobile device (block 120). In one embodiment, such a migratable key may be created in accordance with commands in compliance with TCPA TPM specifications ("TCPA TPM commands"). For example, a TPM_CreateWrapKey command may be used. This ticket key may be a storage key, encrypted using Rivest Shamir Adelman (RSA) or Advanced Encryption Standard (AES) cryptographic algorithms, in certain embodiments. The migratable key may be sent to a ticket granting agent via a migratable blob generated by the mobile device (block 130). In one embodiment, a TPM_CreateMigration Blob command may be used to create the migratable blob.<br><br>[0020] Still referring to FIG. 2, the ticket granting agent may securely modify an authentication value of the migratable key (block 140). Such modification may be performed in a secure manner. In one embodiment, a TPM ChangeAuth command may be sent from the ticket granting agent to the TPM of the mobile device to modify the authentication value. | "unique ticket number" could be understood by a person skilled in the art as being identical to a "token." However, *Terrell* is weak in this element as the term "token" is not actually discussed or referenced within the specification.<br><br>*Wheeler*, however, teaches the use of tokens in the communication of electronic tickets between a server and a mobile phone device in order to provide secure communication between the server and the mobile device. Both *Wheeler* and *Terrell* are directed towards systems involving the security and validation of mobile electronic ticketing. One skilled in the art would be motivated to combine the teachings of *Wheeler* with those of *Terrell* as they are directed towards the same art (the security of mobile electronic ticketing), are directed towards the same goal (providing methodologies to validate the electronic tickets and prevent fraud), and are |

Invalidity Chart for U.S. Patent No. 8,494,967

GROUND 3 – TERRELL IN VIEW OF WHEELER

| | | | |
|---|---|---|---|
| | | | directed to technology utilizing the same central components (server systems in communication with mobile phones). One skilled in the art would be motivated to combine the request for validation as taught by *Terrell* with the use of tokens as taught by *Wheeler* as the use of representational transmissions (using tokens) as taught by *Wheeler* would further improve the security of communications between the server and the mobile device. For at least this reason, *T*errell in view of *Wheeler* discloses all the recitations of element [f] of claims 1, 17 and 18 of the '967 patent. |
| [g] determining whether a token associated with the purchased electronic ticket has been stored in a data record associated with the received request, and if it has, whether the received token is valid | *Terrell* provides that "a token associated with the purchased electronic ticket has been stored in a data record" wherein it teaches that "[D]etails of the tickets sold, including the unique ticket number are stored in the verification database." (*Id*. at p. 5, ln 3-4). Furthermore, *Terrell* discloses "determining whether a token associated with the purchased electronic ticket has been stored in a data record" and "whether the received token is valid" wherein it describes "the mobile device to request, from the server 101, the | | *Terrell* discloses the comparison of a pre-purchased electronic ticket with a verification database stored in a "verification database". *Terrell* is weak on the linguistic specifics of the comparison to the server database comprising the comparison of a token representing the pre-purchased electronic ticket with a token |

| | | | |
|---|---|---|---|
| | validation of a ticket having a specific unique ticket number." (*Id*. at pg. 18, ln 29-30) and "The server 101 may also have access to a verification database 111." (*Id*. at pg. 4, ln 30). | | stored in the server database. Specifically, *Terrell* does not specifically recite the term "token" in the comparison of the ticket information stored on the mobile phone when matched to the information stored in the "verification database". *Wheeler*, however, teaches the use of tokens in the communication of electronic tickets between a server and a mobile phone device in order to provide secure communication between the server and the mobile device. Both *Wheeler* and *Terrell* are directed towards systems involving the security and validation of mobile electronic ticketing. One skilled in the art would be motivated to combine the teachings of *Wheeler* with those of *Terrell* as they are directed towards the same art (the security of mobile electronic ticketing), are directed towards the same goal (providing methodologies to validate the electronic tickets and prevent fraud), and are |

Invalidity Chart for U.S. Patent No. 8,494,967

**GROUND 3 – TERRELL IN VIEW OF WHEELER**

| | | | |
|---|---|---|---|
| | | | directed to technology utilizing the same central components (server systems in communication with mobile phones).<br><br>One skilled in the art would be motivated to combine the comparison of the pre-valid pre-purchased ticket with a verification database on a server as taught by *Terrell* with the use of tokens as a representative of the ticket content as taught by *Wheeler* as it further increases the similar goal of security and fraud prevention in mobile electronic ticketing to wit both references are directed. Therefore, the recitations of section [g] of claims 1, 17 and 18 of the '967 patent are obvious over *Terrell* in view of *Wheeler*. |
| [h] in dependence on the determination that the received token is valid, causing an activation of the purchased electronic ticket | *Terrell* discloses validating a specific unique ticket number (token) and in response replacing a nonvalidated ticket on a mobile phone with a validated ticket:<br><br>"In addition, in place of the button 1109 (shown in Figure 11) the nonvalidated ticket of Figure 16 has a validation button 1602 allowing the user of the mobile device to request, from the server 101, the validation of a ticket | [0022] Next, the ticket granting agent may create an electronic ticket (block 150). The ticket may be created using the migratable key received from the TPM of the mobile device. In various embodiments, the ticket may be created such that upon delivery to the mobile device, it is bound to the TPM and is protected from modification and/or duplication. That is, access to the ticket may be restricted only to the user | *Terrell* discloses in dependence on validating a unique ticket number replacing a non-validated ticket with a validated ticket on a mobile device. *Terrell* further discloses this validated ticket comprising eye-readable validation information. *Terrell* is weak |

**Invalidity Chart for U.S. Patent No. 8,494,967**

**GROUND 3 – TERRELL IN VIEW OF WHEELER**

| | | | |
|---|---|---|---|
| | having a specified unique ticket number. Upon receiving the request the server responds by assembling the required data, including date, code for the day, "valid to" time, and generating the corresponding barcode data, as previously described. The assembled data and the barcode data are then transmitted to the requesting mobile device, so that the application can update the pre-validation ticket to a validated ticket (such as that shown in Figures 11 and 12." (*Id*. at pp. 18, ln 27- pp. 19, ln 5).<br><br>The validated ticket may include an animated image (*Id*. at pg. 13, ln 21-23, Figure 11). *Terrell*, therefore, discloses activation of a purchased electronic ticket upon validation of the unique ticket number. | who requested the ticket and only upon compliance with certain conditions (e.g., time and place). Similarly, in embodiments relating to digital rights management, access to a token may be restricted to a given user and only upon compliance with conditions such as, for example, date and number of times the content may be accessed. In one embodiment, the ticket may be provided in three distinct parts: a ticket manifest; a ticket portion; and a ticket redemption stub. | in that it does not specifically recite verbiage regarding the database comparison comprising a token representing the ticket rather than more concrete ticket information.<br><br>*Wheeler*, however, teaches the use of tokens in the communication of electronic tickets between a server and a mobile phone device in order to provide secure communication between the server and the mobile device. Both *Wheeler* and *Terrell* are directed towards systems involving the security and validation of mobile electronic ticketing. One skilled in the art would be motivated to combine the teachings of *Wheeler* with those of *Terrell* as they are directed towards the same art (the security of mobile electronic ticketing), are directed towards the same goal (providing methodologies to validate the electronic tickets and prevent fraud), and are directed to technology utilizing the same central |

**GROUND 3 – TERRELL IN VIEW OF WHEELER**

| | | | |
|---|---|---|---|
| | | | components (server systems in communication with mobile phones).<br><br>One skilled in the art would be motivated to combine validation steps disclosed in *Terrell* with the token representation disclosed in *Wheeler* to further the security and anti-fraud aspects for which both references are directed. Therefore, the recitations of section [h] of claims 1, 17 and 18 of the '967 patent are obvious over *Terrell* in view of *Wheeler*. |
| [i] by transmitting to the user's computer device a data file comprising the visual validation display object | *Terrell* discloses after validation of the specified unique ticket number, having the server assemble the ticket data, including an animated graphic, and send to the mobile device. (*Id*. at pp. 18, ln 27- pp. 19, ln 5). | *Wheeler* does not disclose use of a visual validation display element. | *Terrell* discloses, upon verification, sending to the mobile device a visual validation display object in accordance with the recitations of section [i] of claims 1, 17 and 18 of the '967 patent. |
| [j] that causes upon visual recognition by the ticket taker, the user to be permitted to utilize the service monitored by the ticket taker. | *Terrell* discloses the validated ticket sent to the mobile phone may include a visually validating element "[f]or the purposes of speed and economy, at times it may preferable for such a ticket inspection to be merely done by the inspector's eyes." (*Id*. at pg. 4, ln 16-17) | *Id*. | *Terrell* discloses a visual validation display object that causes visual recognition by a ticket taker in accordance with the recitations of section [j] of claims 1, 17 and 18 of the '967 patent. |

Invalidity Chart for U.S. Patent No. 8,494,967

**GROUND 3 – TERRELL IN VIEW OF WHEELER**

| U.S. Patent No. 8,494,967 | | WO 2009/141614 A1 to TERRELL | Pub. No.: US 2005/0137889 A1 to Wheeler | Grounds for Invalidity |
|---|---|---|---|---|
| **Claim 3** | **Claim 20** | Published November 26, 2009 | Published June 23, 2005 | |
| [a] The method of claim 1 further comprising:<br><br>storing in the data record associated with the purchased electronic ticket a data value representing a predetermined lock time; | | *Terrell* discloses this recitation wherein it teaches the graphical information part 702 of the ticket data 701 as including "a "valid to" time (an expiry time for the validation of the ticket." (Ex. 1010, pg. 9, ln 23-24).<br><br>In addition, *Terrell* discloses that the ticket information is stored on the server: "Details of the tickets sold, including the unique ticket number, are stored in the verification database." (*Id.* at pg. 5, ln 3-4)<br><br>Finally, *Terrell* discloses: "According to a second aspect of the present invention, there is provided an apparatus for electronic ticketing, comprising, a wireless application server and a database, wherein said wireless application server is configured to: retrieve booking information from said database to facilitate the booking of an event; <u>write details of an event to said database</u> in response to a purchase made by a customer using a mobile device having a viewable screen; and supply ticket specific data defining a ticket to said mobile device <u>including a ticket expiry time</u>, such that at said mobile device: said mobile device (i) displays graphical information comprising textual information and animated graphics." (*Id.* at pg. 2, ln 18-27)<br><br>A person of skill in the art would understand from *Terrell* that the electronic tickets include information related to expiration that is stored in the data record of the server. | [0022] Next, the ticket granting agent may create an electronic ticket (block 150). The ticket may be created using the migratable key received from the TPM of the mobile device. In various embodiments, the ticket may be created such that upon delivery to the mobile device, it is bound to the TPM and is protected from modification and/or duplication. That is, access to the ticket may be restricted only to the user who requested the ticket and only upon compliance with certain conditions (e.g., time and place). Similarly, in embodiments relating to digital rights management, access to a token may be restricted to a given user and only upon compliance with conditions such as, for example, date and number of times the content may be accessed. In one embodiment, the ticket may be provided in three distinct parts: a ticket manifest; a ticket portion; and a ticket redemption stub. | A person of skill in the art would understand from *Terrell* that the electronic tickets include information related to expiration that is stored in the data record of the server. *Terrell* discloses all the recitations of element [a] of claims 2 and 19 of the '967 patent. |
| [b] determining | | *Terrell* further discloses | *Id.* | One skilled in the art would |

Invalidity Chart for U.S. Patent No. 8,494,967

## GROUND 3 – TERRELL IN VIEW OF WHEELER

| | | | |
|---|---|---|---|
| whether a duration of time from the transmission of the visual validation display object to the predetermined lock time has expired; and | "[i]t will be understood that as the graphical information is displayed at step 902 the steps 1001 and 1002 are repeatedly performed resulting in the "valid for" time being a decrementing timer." (*Id*. at pg. 12, ln 1-5).<br><br>One skilled in the art would understand from *Terrell* that an electronic ticket and an associated visual validation display object may be tied to a predetermined time of activity that could be controlled by either the server or the mobile device. The decrementing visual indication of validity time period in *Terrell* discloses the recitations of section [b]. | | understand from *Terrell* that an electronic ticket and an associated visual validation display object may be tied to a predetermined time of activity that could be controlled by either the server or the mobile device. The decrementing visual indication of validity time period in *Terrell* discloses the recitations of section [b]. |
| [C] in dependence on such determination, permitting or not permitting the visual validation display object to be transmitted to the user's computer device | *Terrell* discloses "[i]t will be understood that as the graphical information is displayed at step 902 the steps 1001 and 1002 are repeatedly performed resulting in the "valid for" time being a decrementing timer." (*Id*. at pg. 12, ln 3-5).<br><br>The decrementing visual indication of validity time period in *Terrell* discloses a time restricted control over the visual validation display on the mobile device. A person skilled in the art would understand from *Terrell* that a time restriction may be placed on activation or transmission of the electronic ticket as the temporal restrictions in the recitations of section [c] are clearly encompassed in the *Terrell* disclosure. | That is, access to the ticket may be restricted only to the user who requested the ticket and only upon compliance with certain conditions (e.g., time and place). Similarly, in embodiments relating to digital rights management, access to a token may be restricted to a given user and only upon compliance with conditions such as, for example, date and number of times the content may be accessed. In one embodiment, the ticket may be provided in three distinct parts: a ticket manifest; a ticket portion; and a ticket redemption stub. [0022] | The decrementing visual indication of validity time period in *Terrell* discloses a time restricted control over the visual validation display on the mobile device. A person skilled in the art would understand from *Terrell* that a time restriction may be placed on activation or transmission of the electronic ticket as the temporal restrictions in the recitations of section [c] are clearly encompassed in the *Terrell* disclosure. |

| U.S. Patent No. 8,494,967 | | WO 2009/141614 A1 to TERRELL | Pub. No.: US 2005/0137889 A1 to Wheeler | Grounds for Invalidity |
|---|---|---|---|---|
| Claim 4 | Claim 21 | Published November 26, 2009 | Published June 23, 2005 | |
| [a] The method of claim 1 further comprising: transmitting an | | *Terrell* discloses "Consequently, at step 302 the mobile device 102 | [0013] Next, a migratable key (e.g., a storage key) may be securely exported | The '967 patent does not disclose any detailed description of encryption |

Invalidity Chart for U.S. Patent No. 8,494,967

GROUND 3 – TERRELL IN VIEW OF WHEELER

| | | | |
|---|---|---|---|
| authorization key to the user's computer device that transmitted the received request. | receives the application, along with a public encryption key that is for subsequent asymmetric encryption." (Ex. 1010, pg. 6, ln 7-9).<br><br>*Terrell* further discloses that the "graphical information" may include both "graphics to be animated" as well as "machine-readable code defining at least a unique ticket number and a means of authentication." (*Id*. at pg. 2, ln 12-13).<br><br>The '967 patent does not disclose any detailed description of encryption technology but rather relies on existing technologies and methodologies. A person skilled in the art would recognize that the encryption methodologies as disclosed in *Terrell* encompasses the "authorization key" as recited in claims 4 and 21. | to the remote agent (block 30). Such a migratable key may be, for example, a wrap key created in accordance with TCPA TPM commands. The key may be extracted securely in a migratable blob and shipped to the remote agent.<br><br>[0014] Upon receipt of the migratable key, a ticket granting agent may change the authentication value of the migratable key in a secure manner (block 40). Then the remote agent may create a token using the key it received from the user device through migration (block 50).<br><br>[0015] This token may be encrypted and sent to the user device for storage in an encrypted manner (block 60). Via such encryption, the token may be bound to the user device and remain protected from modification, duplication, and other unauthorized access. In such manner a device user may thus give control over a portion of the device (i.e., the token) to a third party. | technology but rather relies on existing technologies and methodologies. A person skilled in the art would recognize that the encryption methodologies as disclosed in *Terrell* encompasses the "authorization key" as recited in claims 4 and 21.<br><br>In addition, *Wheeler* clearly discloses the use of an encryption key [0013-14] in delivering electronic ticket information to the mobile device. Both *Wheeler* and *Terrell* are directed towards systems involving the security and validation of mobile electronic ticketing. One skilled in the art would be motivated to combine the teachings of *Wheeler* with those of *Terrell* as they are directed towards the same art (the security of mobile electronic ticketing), are directed towards the same goal (providing methodologies to validate the electronic tickets and prevent fraud), and are directed to technology utilizing the same central components (server systems in communication with mobile phones).<br><br>*Terrell* in view of *Wheeler* teaches each and every recitation of element [a] of claims 4 and 21 of the '967 patent. |

| U.S. Patent No. 8,494,967 | | WO 2009/141614 Al to TERRELL | Pub. No.: US 2005/0137889 Al to Wheeler | Grounds for Invalidity |
|---|---|---|---|---|
| Claim 5 | Claim 22 | Published November 26, 2009 | Published June 23, 2005 | |
| [a] The method of claim 4 further comprising: encrypting the visual validation display object using the authorization key. | | *Terrell* discloses the ticket data being "digitally signed using a private authentication key of an asymmetric (public) key pair." (Ex. 1010, pg. 10, ln 4-5).<br><br>*Terrell* further discloses the validated ticket sent to the mobile phone may include a visually validating | [0015] This token may be encrypted and sent to the user device for storage in an encrypted manner (block 60). Via such encryption, the token may be bound to the user device and remain protected from modification, duplication, and other unauthorized access. In such manner a device user may thus give | It would be clear to a person of skill in the art that *Terrell* discloses graphical ticket information that includes an animated element that is encrypted by the server and decrypted by the mobile device. The '967 patent does not disclose any detailed description of encryption technology but rather relies on existing |

Invalidity Chart for U.S. Patent No. 8,494,967

GROUND 3 – TERRELL IN VIEW OF WHEELER

| | | | |
|---|---|---|---|
| | element "[f]or the purposes of speed and economy, at times it may preferable for such a ticket inspection to be merely done by the inspector's eyes." (*Id.* at pg. 4, ln 16-17)<br><br>Finally, *Terrell* discloses "The step 803 of displaying a ticket is further detailed in Figure 9. Initially, the graphical information part of the ticket data 702 that was <u>decrypted</u> at step 605 is retrieved at step 901. … Specifically, the application requires at least one graphic element to be animated." (*Id.* at pg. 10, ln 19-27)<br><br>It would be clear to a person of skill in the art that *Terrell* discloses graphical ticket information that includes an animated element that is encrypted by the server and decrypted by the mobile device. The '967 patent does not disclose any detailed description of encryption technology but rather relies on existing technologies and methodologies. A person skilled in the art would recognize that the encryption methodologies as disclosed in *Terrell* encompasses the encryption of the transmitted ticket data, which may include visual validation, using a private and public key pair as recited in claims 5 and 22. | control over a portion of the device (i.e., the token) to a third party. | technologies and methodologies. A person skilled in the art would recognize that the encryption methodologies as disclosed in *Terrell* encompasses the encryption of the transmitted ticket data, which may include visual validation, using a private and public key pair as recited in claims 5 and 22.<br><br>In addition, *Wheeler* clearly discloses the use of an encryption key [0013-14] in delivering electronic ticket information to the mobile device. Both *Wheeler* and *Terrell* are directed towards systems involving the security and validation of mobile electronic ticketing. One skilled in the art would be motivated to combine the teachings of *Wheeler* with those of *Terrell* as they are directed towards the same art (the security of mobile electronic ticketing), are directed towards the same goal (providing methodologies to validate the electronic tickets and prevent fraud), and are directed to technology utilizing the same central components (server systems in communication with mobile phones).<br><br>*Terrell* in view of *Wheeler* teaches each and every recitation of element [a] of claims 5 and 22 of the '967 patent. |

| U.S. Patent No. 8,494,967 | | WO 2009/141614 Al to TERRELL | Pub. No.: US 2005/0137889 Al to Wheeler | |
|---|---|---|---|---|
| Claim 6 | Claim 23 | Published November 26, 2009 | Published June 23, 2005 | |
| [a] The method of claim 4 further comprising: encrypting the visual validation display object with a public key of a public/private key pair for which the transmitted authorization key is an associated private key. | | *Terrell* discloses the ticket data being "digitally signed using a private authentication key of an asymmetric (public) key pair." (Ex. 1010, pg. 10, ln 4-5).<br><br>*Terrell* further discloses the | [0024] The ticket redemption stub may be used to authenticate the source of the TPM, and may contain the authentication value for the ticket key stored in the TPM, and a ticket identifier. In certain embodiments, the | The '967 patent does not disclose any detailed description of encryption technology but rather relies on existing technologies and methodologies. A person skilled in the art would recognize that the encryption methodologies |

Invalidity Chart for U.S. Patent No. 8,494,967

GROUND 3 – TERRELL IN VIEW OF WHEELER

|  |  |  |  |
|---|---|---|---|
|  | validated ticket sent to the mobile phone may include a visually validating element "[f]or the purposes of speed and economy, at times it may preferable for such a ticket inspection to be merely done by the inspector's eyes." (*Id*. at pg. 4, ln 16-17) | stub may also contain an AIK certificate that may be used to authenticate the TPM prior to ticket redemption. The ticket redemption stub may be encrypted with a public key of the ticket redemption agent, in certain embodiments. Alternately, a communication between a ticket granting agent and a ticket redemption agent may occur to verify that the ticket redemption stub is authentic. | as disclosed in *Terrell* encompasses the encryption of the transmitted ticket data, which may include visual validation, using a private and public key pair as recited in claims 6 and 23. |

| U.S. Patent No. 8,494,967 | WO 2009/141614 Al to TERRELL | Pub. No.: US 2005/0137889 Al to Wheeler | Grounds for Invalidity |
|---|---|---|---|
| **Claim 34** | **Published November 26, 2009** | **Published June 23, 2005** |  |
| [a] The system of claim 18 where the visual validation display object is an animation that operates in reaction to a touch of the user's computer device screen. | *Terrell* discloses the mobile device having a validation button 1602 that serves to retrieve the validation display object (*Id*. at pg. 18, ln 27- pg. 19, ln 5)<br><br>In addition, *Terrell* discloses that this validation display object may include "graphics to be animated" (*Id*. at claim 1, pg. 20).<br><br>It would be clear to a person of skill in the art that pressing the validation button to retrieve the "graphics to be animated", as disclosed in *Terrell*, would read on the "visual validation display object is an animation that operates in reaction to a touch of the user's computer device screen" as recited in claim 34. | *Wheeler* does not disclose a visual validation display element. | It would be clear to a person of skill in the art that pressing the validation button to retrieve the "graphics to be animated", as disclosed in *Terrell*, would read on the "visual validation display object is an animation that operates in reaction to a touch of the user's computer device screen" as recited in claim 34. |