# EXHIBIT H

Invalidity Chart for U.S. Patent No. 8,494,967

## GROUND 4 – TERRELL IN VIEW OF WHEELER IN VIEW OF ROSEN

| U.S. Patent No. 8,494,967 | | WO 2009/141614 Al to TERRELL | Pub. No.: US 2005/0137889 Al to Wheeler | US Patent No. 5,621,797 to Rosen | Grounds for Invalidity |
|---|---|---|---|---|---|
| Claim 2 | Claim 19 | Published November 26, 2009 | Published June 23, 2005 | Issued April 15, 1997 | |
| [a] The method of claim 1 further comprising:<br><br>in response to the determining whether a token associated with the purchased electronic ticket has been stored results in a determination that no such token has been stored, initiating confirmation that the purchased electronic ticket has been purchased; | | *Terrell* discloses this recitation wherein it teaches updating a database to include information of ticket purchases – "write details of an event to said database in response to a purchase made by a customer using a mobile device having a viewable screen." (Ex. 1010, pg. 22, ln 17-18). | | With respect to Bytemark's interpretation of the claim limitation, *Rosen* disclose "Tickets 8 may be transferred between trusted agents 120 (aside from the initial issuing of the ticket). There are several reasons an owner may wish to do this. For example, if a ticket 8 was purchased via a desktop transaction device 122 (e.g., a CTD 188 embedded in a personal computer), then the owner may wish to transfer it to a portable device (e.g., an electronic wallet). Or, if the owner buys a ticket 8 for a friend or relative, then the owner can transfer the ticket to the other party for their use. Another situation is when the owner purchases a new transaction device 122 and wishes to transfer his credentials to the new device." (*Id*. at col. 26 ln. 14-24).<br><br>*Rosen* teaches that "[A] trusted agent is a combination of hardware and software components." (*Id.* at col. 4 ln. 14-16).<br><br>*Rosen* also discloses "[A] Receiver ID's field 28 contains the receiving trusted agent's identification number. A Sender ID's field 30 contains the sending trusted agent's identification number. (*Id*. at col. 7 ln. 49-62). In addition, *Rosen* also discloses "whenever a ticket 8 is transferred between trusted agents, the sender digitally signs the ticket over the five preceding ticket sections using a private key | Claims 2 and 19 are invalid for indefiniteness as set forth in preceding arguments. However, the patent owner has attempted to construe the recitations of claims 2 and 19 during third party litigation as definite based on the interpretation the tokens recited in claims 1 and 18 may be construed as any token including merely a user ID: "there are many tokens associated with the previously purchased electronic tickets. The login ID is one such token, the password is another, the App ID is another, the User ID token is another and the session ID token as an alias for the User ID token is another. These tokens are associated with each other and thereby with each of the purchased tickets in an account." (Ex 1014. p. 17 of Exhibit F-'967 Chart B-2). The patent owner has further asserted |

**GROUND 4 – TERRELL IN VIEW OF WHEELER IN VIEW OF ROSEN**

| | | | | |
|---|---|---|---|---|
| | | | belonging to the sender's trusted agent. The Sender Signatures section 20 is then updated by appending the newly created digital signature, thus forming a list of sender signatures." (*Id*. at col. 7 ln. 64-67).<br><br>Moreover, *Rosen* refers to Fig. 25, which shows "the procedure followed when the owner of trusted agent A wants to transfer one or more tickets 8 to trusted agent B (step 836). Initially, HTA connects to HTB (step 838). HTA then instructs its trusted agent to "Transfer Ticket(s)" and HTB instructs its trusted agent to "Receive Ticket(s)" (steps 840-842). Next, the trusted agents establish a secure session (step 844). To Host A then sends an inquiry to the transaction device owner via HTA whether to check the identifying credential of the party to receive the ticket(s) (steps 846-848). If there is no credential check or a credential check is performed successfully (steps 850-854), then Ticket Holder A requests the ID's of the tickets to be transferred (step 856). Tickets are selected from a list of tickets held by trusted agent A. To Host A sends the message to HTA with the ticket list, the owner chooses, and To Host A receives the response identifying the selected ticket(s) (steps 858-862)." (*Id*. at col. 26 ln. 25-41).<br><br>*Rosen* teaches that a secure session between a trusted agent and a trusted server can be established using cryptographic means, such as symmetric key cryptographic functions. | that this recitation is directed towards a situation wherein a ticket holder logs into his account with a new phone and his existing ticket wallet is transferred over where, after the server confirms the login ID and the associated password, the server checks the App ID to "determine whether a record associated with the provided App ID exists in the account associated with the login ID." (Id. p. 18 of Exhibit F- '967 Chart B-2).<br><br>The patent owner further alleges that "[T]he differences in App IDs between the second phone and the first phone initiates the process by which reassignment and aggregation of tickets occurs," which corresponds to a process of confirmation that the purchased electronic ticket(s) have been purchased. (Id. p. 18 of Exhibit F- '967 Chart B-2). (Verify this is not under seal)<br><br>*Rosen* discloses |

**Invalidity Chart for U.S. Patent No. 8,494,967**

**GROUND 4 – TERRELL IN VIEW OF WHEELER IN VIEW OF ROSEN**

| | | | | |
|---|---|---|---|---|
| | | | (*Id*. claim 1 and at col. 9 ln. 67-68). | the recitations of element [a], in accordance with the patent owners interpretation to avoid indefiniteness, wherein it discloses "Tickets 8 may be transferred between trusted agents 120 (aside from the initial issuing of the ticket)… Another situation is when the owner purchases a new transaction device 122 and wishes to transfer his credentials to the new device." (Ex. 1012. at col. 26 ln. 14-24). In addition, *Rosen* also discloses "whenever a ticket 8 is transferred between trusted agents, the sender digitally signs the ticket over the five preceding ticket sections using a private key belonging to the sender's trusted agent. The Sender Signatures section 20 is then updated by appending the newly created digital signature, thus forming a list of sender signatures." (*Id*. at col. 7 ln. 64-67). *Rosen* teaches that a secure session between a trusted agent and a trusted server can be |

**GROUND 4 – TERRELL IN VIEW OF WHEELER IN VIEW OF ROSEN**

|  |  |  |  | established using cryptographic means, such as symmetric key cryptographic functions. (Id. claim 1 and at col. 9 ln. 67-68). *Rosen* discloses the recitations of element [a] within the patent owners own interpretation to avoid indefiniteness. Further, it would be obvious to one skilled in the art that the recitations of elements [a-c] would be obvious over *Terrell* in view of *Wheeler* in further view of *Rosen*. As taught in *Rosen*, it is a well-known scenario that owners of mobile electronic tickets may acquire new devices that would need to be synced with the server and the ticketing data would need to be associated with the new device. One skilled in the art would be motivated to combine *Rosen* with the disclosures of *Terrell* and *Wheeler* as it is well known that customers lose or obtain new phones and it would be desirable for an electronic |

**Invalidity Chart for U.S. Patent No. 8,494,967**

**GROUND 4 – TERRELL IN VIEW OF WHEELER IN VIEW OF ROSEN**

| | | | | | |
|---|---|---|---|---|---|
| | | | | ticketing system to accommodate this scenario | |
| [b] in dependence on such confirmation, storing a token in the data record associated with the purchased electronic ticket; and | *Terrell* discloses this recitation wherein it teaches updating a database to include information of ticket purchases – "write details of an event to said database in response to a purchase made by a customer using a mobile device having a viewable screen." (Ex. 1010, pg. 22, ln 17-18). | *Id*. | *Rosen* discloses "the trusted agents establish a secure session (step 844). To Host A then sends an inquiry to the transaction device owner via HTA whether to check the identifying credential of the party to receive the ticket(s) (steps 846-848). If there is no credential check or a credential check is performed successfully (steps 850-854), then Ticket Holder A requests the ID's of the tickets to be transferred (step 856)." (*Id*. at col. 26 ln. 30-34). | *Rosen* discloses the recitations of element [b] within the patent owners own interpretation to avoid indefiniteness. Further, it would be obvious to one skilled in the art that the recitations of elements [a-c] would be obvious over *Terrell* in view of *Wheeler* in further view of *Rosen*. As taught in *Rosen*, it is a well-known scenario that owners of mobile electronic tickets may acquire new devices that would need to be synced with the server and the ticketing data would need to be associated with the new device. One skilled in the art would be motivated to combine *Rosen* with the disclosures of *Terrell* and *Wheeler* as it is well known that customers lose or obtain new phones and it would be desirable for an electronic ticketing system to accommodate this scenario | Terrell disc[...] information[...] purchase v[...] that it does[...] storage of t[...] information[...] Wheeler, h[...] tokens in th[...] electronic t[...] mobile pho[...] secure com[...] server and [...] Wheeler ar[...] systems inv[...] validation [...] One skilled[...] motivated t[...] Wheeler w[...] directed tov[...] security of [...] are directed[...] (providing [...] electronic t[...] are directed[...] same centra[...] systems in [...] phones). It is my opi[...] art would b[...] database up[...] purchased t[...] taught be T[...] associated [...] specific tic[...] Wheeler. [...] so motivate[...] utilization [...] ticket ident[...] security an[...] the Terrell [...] directed. T[...] *Wheeler* the[...] claims 2 an[...] |
| [c] transmitting to the user's computer device a visual | *Terrell* discloses this recitation wherein it teaches "supply ticket | *Id*. | *Rosen*, with respect to this limitation, discloses "[T]icket Holder A | *Rosen* discloses the recitations of element [c] | Terrell clea[...] "eye-reada[...] user's devi[...] |

**Invalidity Chart for U.S. Patent No. 8,494,967**

**GROUND 4 – TERRELL IN VIEW OF WHEELER IN VIEW OF ROSEN**

| | | | | | |
|---|---|---|---|---|---|
| validation display object corresponding to the purchased electronic ticket. | specific data defining a ticket to said mobile device including a ticket expiry time." (Ex. 1010, pg. 22, ln 19-20) and "[f]or the purposes of speed and economy, at times it may preferable for such a ticket inspection to be merely done by the inspector's eyes." (*Id.* at pg. 4, ln 16-17). | | receives the acknowledgement and deletes the ticket(s) (step 884). Trusted agent A informs Ticket Holder B that the tickets are deleted (steps 884-886) and commits (step 888). Ticket Holder B receives the message (step 890) and then trusted agent B commits (step 892)." (Id. at col. 26 ln. 53-56). | within the patent owners own interpretation to avoid indefiniteness. Further, it would be obvious to one skilled in the art that the recitations of elements [a-c] would be obvious over *Terrell* in view of *Wheeler* in further view of *Rosen*. As taught in *Rosen*, it is a well-known scenario that owners of mobile electronic tickets may acquire new devices that would need to be synced with the server and the ticketing data would need to be associated with the new device. One skilled in the art would be motivated to combine *Rosen* with the disclosures of *Terrell* and *Wheeler* as it is well known that customers lose or obtain new phones and it would be desirable for an electronic ticketing system to accommodate this scenario | claims 2 an |