UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CASE NO. 1:17-CV-01803 (PGG) (JW) |
| | § |
| XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP., | § § § § § |
| | § |
| Defendants. | § |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM V AND STRIKE
<u>DEFENDANTS' TWELFTH AFFIRMATIVE DEFENSE</u>**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. Background ................................................................................................................. 2

III. Legal Standard ............................................................................................................ 3

    A. Motion to Strike ............................................................................................... 3

    B. Inequitable Conduct ......................................................................................... 3

IV. Argument .................................................................................................................... 4

    A. Bytemark's Motion Misstates the Law and Facts and Should be Denied. ............................................................................................................ 4

        1. The Court's Opinion granting Bytemark leave to amend does not address the inequitable conduct allegations in Defendants' Counterclaim/Defense. ..................................... 4

        2. Bytemark's duty of candor requires more than simply notifying the PTO of the existence of pending litigation. ............................................................................................. 6

        3. Bytemark's claim that it notified the PTO of the *Masabi* § 101 rulings before the Children Patents issued is false. .................................................................................... 7

    B. Defendants' Answer Sufficiently Pleads its Counterclaims and Defenses. ...................................................................................................... 10

        1. Bytemark acted with a specific intent to deceive. ...................................... 10

        2. The withheld information was but-for material. ........................................ 14

V. Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apotex Inc. v. UCB, Inc.*,
  763 F.3d 1354 (Fed. Cir. 2014) .................................................................................................10

*Bytemark, Inc. v. Masabi Ltd.*,
  No. 16-CV-00543, 2018 WL 7272023 (E.D. Tex. Nov. 26, 2018) .........................................13

*Bytemark, Inc. v. Masabi Ltd.*,
  No. 16-CV-00543, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019),
  *aff'd*, 792 F. App'x 952 (Fed. Cir. 2020) ............................................................................13, 14

*Cargill, Inc. v. Canbra Foods, Ltd.*,
  476 F.3d 1359 (Fed. Cir. 2007) ...................................................................................................3

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ...................................................................................................11

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) .................................................................................................13

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
  222 F.3d 951 (Fed. Cir. 2000) ...................................................................................................11

*Regeneron Pharm., Inc. v. Merus N.V.*,
  864 F.3d 1343 (Fed. Cir. 2017) ..............................................................................................4, 10

*Salcer v. Enicon Equities Corp.*,
  744 F.2d 935 (2d Cir. 1984),
  *vacated on other grounds*, 478 U.S. 1015 (1986) ...................................................................3, 5

*New York v. Almy Bros., Inc.*,
  971 F. Supp. 69 (N.D.N.Y. 1997) ............................................................................................3, 5

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (en banc) ..............................................................................3, 10

*United States v. Portrait of Wally*,
  2002 WL 553532 (S.D.N.Y. Apr. 12, 2002) ...............................................................................3

**STATUTES**

35 U.S.C. § 101 ........................................................................................................... passim

**OTHER AUTHORITIES**

37 C.F.R. § 1.56(c)..................................................................................................................11

Fed. R. Civ. P. 12(f)..................................................................................................................3

Fed. R. Civ. P. 15(a) ...............................................................................................................15

Manual of Patent Examining Procedure (6th Ed. Rev. 2, July 1996).................................... passim

I.      **Introduction**

Bytemark Inc.'s Motion to Dismiss Defendants'[1] affirmative defense and counterclaim should be denied. Bytemark makes two main arguments to support its Motion: (1) because it submitted the existence of the *Masabi* litigation during prosecution of the Bytemark parent patents, it had no obligation to re-submit this notice for the children patents; and (2) the *Masabi* materials[2] are not but-for material. Bytemark is wrong on both counts.

First, Bytemark's assertion that it submitted the existence of the *Masabi* litigation is irrelevant at best, and incomplete at worst. The Patent & Trademark Office ("PTO") requires more than mere notification of pending litigation. Specifically, it requires patent owners to make the PTO aware of "the existence of [pending] litigation **and any other material information arising therefrom**." Manual of Patent Examining Procedure ("MPEP") § 2001.06(c) (6th Ed. Rev. 2, July 1996) (emphasis added). Bytemark was therefore required to submit the *Masabi* materials to the PTO even if the PTO was aware of the existence of the underlying litigation. But Bytemark waited until **after** both children patents had issued to do so and, as a result, the PTO had no ability to consider this material information while Bytemark's children patents were pending.

Second, the *Masabi* materials are but-for material as a matter of law. There is no question that the existence of litigation of related patents (such as Bytemark's parent patents in the *Masabi* litigation) is but-for material to Bytemark's children patents at issue in this litigation. However, the PTO goes even further to require "any other material information arising []from" the litigation.

---

[1] "Defendants" refers to Xerox Corp., ACS Transport Solutions, Inc., Xerox Transport Solutions, Inc., Conduent Inc., and New Jersey Transit Corp.

[2] The "*Masabi* materials" include the items referenced in Bytemark's Motion at footnote two, specifically the § 101 rulings in the district court, the invalidity contentions served by Masabi on Bytemark during that litigation, and the IPR materials for the parent patents.

*Id.* The PTO even specifies that material information includes "any assertion that is made during litigation and/or trial proceeding which is contradictory to assertions made to the examiner." *Id.* This makes sense as assertions of this nature are typically not publicly available. And even if they were, it is the patent owner's burden—not the patent examiner's—to bring that information to the PTO's attention. *Id.* The *Masabi* materials include § 101 and invalidity assertions made during litigation that are contrary to Bytemark's validity assertions made to the examiner, and are thus but-for material. By electing to withhold this information, Bytemark has committed inequitable conduct and its Motion to Dismiss these claims should be denied.

## II.     Background

Shortly before suing Defendants in this action, Bytemark also sued Masabi for patent infringement of Patent Nos. 8,494,967 and 9,239,993 (the "Parent Patents"). *See* Dkt. 140 ¶ 183. As relevant here, the *Masabi* case did two things. It provided Bytemark with invalidity contentions detailing how the Parent Patents are invalid, and it resulted in a § 101 invalidity ruling that the Federal Circuit recently affirmed. *See id.* ¶¶ 183–90. Based on these rulings, Bytemark dismissed the Parent Patents from this case against Defendants.

Bytemark has now replaced the Parent Patents with Patent Nos. 10,346,764 and 10,360,567 (the "'764 patent" and the "'567 patent" and together, the "Children Patents"), which are children to the Parent Patents. The Children Patents share the same disclosure, subject matter, and "remarkably similar" claims to the Parent Patents. Despite this remarkable similarity, Bytemark chose not to provide any of the *Masabi* materials to the PTO during prosecution of the Children Patents. *Id.* ¶¶ 215–23. And, contrary to its representations to this Court, Bytemark also did not provide the *Masabi* materials to the PTO during prosecution. It was not until six months **after** the Children Patents issued that the *Masabi* court notified the PTO that the Parent Patents were invalid. *See* Dkt. 142-2. Bytemark also never provided the *Masabi* invalidity contentions to the PTO.

### III. Legal Standard

#### A. Motion to Strike

A motion to strike an affirmative defense under Rule 12(f) is governed by the same standard applicable to a Rule 12(b)(6) motion to dismiss. *See United States v. Portrait of Wally*, 2002 WL 553532, at *4 n.3 (S.D.N.Y. Apr. 12, 2002). An affirmative defense should not be stricken "unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." *Salcer v. Enicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). Nor can an affirmative defense be stricken if it presents disputed and substantial questions of law, the resolution of which might support the defendant's contention. *New York v. Almy Bros., Inc.*, 971 F. Supp. 69, 72 (N.D.N.Y. 1997) (citing *Salcer*, 744 F.2d at 939).

"Even when the defense presents a purely legal question, . . . courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *Salcer*, 744 F.2d at 939 (quotation marks omitted). "To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts." *Id*.

#### B. Inequitable Conduct

Inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent and related patents. To prevail, an accused infringer must show that an applicant (1) "failed to disclose material information . . . and (2) intended to deceive the [PTO]." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007). "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc). Determining but-for materiality "requires that the court place itself in the shoes of a patent examiner" and decide whether, had the

3

information been before the examiner at the time, the patent claims would have still issued. *Regeneron Pharm., Inc. v. Merus N.V.*, 864 F.3d 1343, 1351 (Fed. Cir. 2017). In assessing but-for materiality, courts apply the preponderance of the evidence standard. *Id.* at 1350.

## IV.     Argument

### A.     Bytemark's Motion Misstates the Law and Facts and Should be Denied.

Bytemark's Motion is premised on three assumptions: (1) the Court's Opinion granting Bytemark leave to amend the Complaint (Dkt. 147) (the "Opinion") has already addressed Defendants' inequitable conduct and unclean hands allegations, (2) Bytemark satisfied its duty of candor by notifying the PTO of the mere existence of the *Masabi* litigation, and (3) Bytemark provided the *Masabi* materials to the PTO. *See* Mot. at 6-7, 10-11. These assumptions are false and, for that reason alone, Bytemark's Motion should be denied.

> 1.     <u>The Court's Opinion granting Bytemark leave to amend does not address the inequitable conduct allegations in Defendants' Counterclaim/Defense.</u>

In its Motion, Bytemark focuses on the Opinion allowing Bytemark to amend its Complaint to add the Children Patents, but that Opinion has little to say about the facts and issues now before the Court. *Id.* at 6-7. In its Opinion, the Court ruled on whether Bytemark's amendment to add the Children Patents would be futile. Importantly, the Opinion and underlying briefing did not include the invalidity contentions that form part of Defendants' inequitable conduct claims. In addition, Defendants had no idea that Bytemark would falsely allege that it had brought this information to the attention of the PTO, and have specifically addressed that falsehood in this Opposition. *See infra* Section IV.A.3. Nor did the Court have the benefit of the details regarding Defendants' actual inequitable conduct defense and counterclaim. *See* Dkt. 140 ¶¶ 152-231, 269–70.

Not only are the facts and issues presented here far different than those considered by the Court in its Opinion, but the standard for the Court's evaluation is different. In its Opinion, the

4

Court held that Defendants had not *proven* their inequitable conduct claims briefly outlined in their response. Dkt. 147 at 21. But now it is Bytemark who must show that it would succeed "despite any set of facts which could be proved in support of [Defendants'] defense." *Salcer*, 744 F.2d at 939; *see also Almy Bros.*, 971 F. Supp. at 72.

Bytemark cannot make that showing now that Defendants have had the chance to provide the complete basis for their inequitable conduct counterclaim and defense. Across 18 pages of their Answer, Defendants explain the specific actions the named inventors and the prosecuting attorney took to deceive the PTO when prosecuting the Children Patents. *See* Dkt. 140 ¶¶ 152–231. For example, Defendants describe several pieces of information that were withheld from the PTO, including: (1) the invalidity contentions submitted in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.), (2) the Magistrate Judge's Report and Recommendation finding the '967 and '993 patent invalid under 35 U.S.C. § 101 in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.), and (3) the adoption of the Magistrate Judge's Report and Recommendation in *Bytemark, Inc. v. Masabi Ltd.* (E.D. Tex.). *Id.* ¶¶ 212–15.

Notably, none of these items relate to a failure to disclose the existence of the *Masabi* litigation generally, which is what the Court relied on in granting Bytemark leave to amend. *See* Dkt. 147 at 21. In particular, the Court held that because "Bytemark notified the PTO of the Texas litigation with respect to the [Parent Patents],"[3] it could not be inequitable conduct for Bytemark not to resubmit the same information for the Children Patents. *Id.* at 20–21.

---

[3] As explained more fully below, the Court, based on Bytemark's misrepresentations, misunderstood Docket Number 106-4. Contrary to the Court's finding, that document was not before the PTO until **after** the Children Patents issued. It was also submitted to the PTO by the *Masabi* court, not by Bytemark.

The Opinion's ruling relied primarily on *ATD Corp. v. Lydall, Inc.* and MPEP § 2001.06(c) for a simple proposition: If a patentee notifies the PTO of the existence of pending litigation for a parent patent, it cannot be inequitable conduct for the patentee to not notify the PTO of the existence of that same pending litigation during the prosecution of a divisional application. But Defendants' inequitable conduct counterclaim and defense are not based on nondisclosure of the existence of the *Masabi* litigation. Instead, the inequitable conduct claim arises from Bytemark's specific nondisclosure of the *Masabi* § 101 rulings and invalidity contentions. *See*, *e.g.*, Dkt. 140 ¶ 215. And, as discussed more fully below, the *Masabi* § 101 rulings were not before the PTO until after the Children Patents issued, and the invalidity contentions have never been submitted to the PTO.

Rather than tackle these issues, Bytemark now asks the Court to extend the Opinion far beyond its actual ruling. Doing so is in direct conflict with the MPEP's requirements and improperly absolves Bytemark of its statutory duty of candor to the PTO.

        2.      <u>Bytemark's duty of candor requires more than simply notifying the PTO of the existence of pending litigation.</u>

Bytemark's decision to disclose only the existence of litigation does not satisfy its duty of candor. The MPEP instructs that "[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation **and any other material information arising therefrom** must be brought to the attention of the . . . [PTO]." MPEP § 2001.06(c) (emphasis added). The MPEP goes on to list the kinds of information that patent owners are required to submit. These items include "pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony." *Id.* They also include "prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure,'" as well as "any assertion that is made during litigation which is contradictory to assertions made to the examiner."

6

*Id.* The MPEP leaves no ambiguity on this score. Bytemark and its attorneys had to disclose both the "existence of" the *Masabi* litigation **and** the other material information that arose from it.

The position urged by Bytemark here is wholly inconsistent with the requirements of MPEP § 2001.06(c), and for good reason. Under Bytemark's view, a patentee could shift its burden of disclosing relevant, highly material information (like an adverse § 101 ruling) onto the PTO. As Bytemark would have it, a disclosure of litigation would impute the PTO with the knowledge of every single ruling in that litigation, and knowledge of contentions and discovery to which the PTO has no access. That would require every PTO examiner to sift through thousands of pages of pleadings, orders, prior art, and confidential discovery in every litigation on any related patent to uncover material information. That is not and cannot be the law. MPEP § 2001.06(c) places the burden on the patent owner to disclose material information rather than on the examiner to uncover it. Bytemark's argument and reliance on the Court's Opinion is therefore misplaced.

        3.        <u>Bytemark's claim that it notified the PTO of the *Masabi* § 101 rulings before the Children Patents issued is false.</u>

The Court's Opinion is also inapplicable here because it was obtained through Bytemark's misrepresentations. Specifically, Bytemark falsely claimed that the PTO had notice of the *Masabi* § 101 rulings while the Children Patents were pending. Dkt. 106 at 2 (stating that "while the prosecution of the children patents was still pending, the Eastern District sent a notice to the PTO . . . informing it that the court had found the parent patents invalid under § 101"). Because Bytemark made that misrepresentation for the first time in its reply, Defendants did not have a chance to address it. The Court then relied on that misrepresentation to conclude that "the record makes clear that Bytemark notified the PTO of the Texas litigation with respect to the '967 and '993 patents." Dkt. 147 at 21.

7

Bytemark now repeats the same false claim in its Motion. Mot. at 10 (citing Dkt. 106-4). But both Exhibit E (Dkt. 106-4) (the "*Masabi* § 101 notice") and the file histories make abundantly clear that the PTO did not receive the *Masabi* § 101 notice until **after** the Children Patents issued. The *Masabi* litigation notices show that the PTO is provided with up to three copies of the notice at different times (the fourth being kept on file at the district court). The first notice ("Copy 1") is filed with the PTO "[u]pon initiation of the action":



Dkt. 106-4 at 2 (annotated). At this point, the "Decision/Judgement" section is empty, which makes sense because no decisions or judgments have been entered at the initiation of the action. "Copy 2" was never created in the *Masabi* litigation because no patents were added to that case. "Copy 3"—the one that notifies the PTO of a decision/judgment—is sent to the PTO "upon termination of [the *Masabi*] action." *Id*. This was the first time the PTO was made aware of the § 101 rulings, and it was not filed with the PTO until February 2020 when the case terminated upon the Federal Circuit's affirmance of the *Masabi* § 101 rulings. By that time, the Children Patents had already issued (in July 2019):

8

Although the notice was dated February 7, 2019, it was not filed until the case terminated in February 2020. This is shown in the file histories, which reflect the definitive date on which the PTO received the *Masabi* § 101 notice. *See* MPEP § 719. As shown in the '993 patent file history (Dkt 142-2), the only correspondence to the PTO between November 26, 2018 (the date of the magistrate judge's *Masabi* § 101 ruling) and February 19, 2020, were two changes of address:

| Mail Room Date | Document Code | Document Description | Document Category | Page Count |
|---|---|---|---|---|
| 04-23-2021 | MF.AD.PAIR | Maintenance Fee Address Change for PAIR | PROSECUTION | 1 |
| 04-23-2021 | C.AD.PAIR | Change of Address via PAIR | PROSECUTION | 1 |
| 04-08-2021 | SOL.NTC.SUIT | Report on the filing or determination of an action regarding a patent | PROSECUTION | 2 |
| 12-11-2020 | SOL.NTC.SUIT | Report on the filing or determination of an action regarding a patent | PROSECUTION | 1 |
| 06-08-2020 | SOL.NTC.SUIT | Report on the filing or determination of an action regarding a patent | PROSECUTION | 2 |
| 02-19-2020 | SOL.NTC.SUIT | Report on the filing or determination of an action regarding a patent | PROSECUTION | 1 |
| 03-30-2019 | C.AD.PAIR | Change of Address via PAIR | PROSECUTION | 1 |
| 03-30-2019 | C.AD.PAIR | Change of Address via PAIR | PROSECUTION | 1 |

Dkt. 142-2 at 2. Then, as highlighted above, on February 19, 2020, the PTO received the *Masabi* § 101 notice. This is first time the PTO received the completed notice listing the final judgment:

> In the above—entitled case, the following decision has been rendered or judgement issued:
>
> **DECISION/JUDGEMENT**
>
> ORDERED that Masabi Ltd.'s Motion for Summary Judgment of Invalidity of U.S. Patent Nos. 8,494,967 and 9,239,993 [Dkt. No. 113] is granted under 35 U.S.C. § 101 and this action is dismissed with prejudice..
>
> CLERK: David A. O'Toole (BY) DEPUTY CLERK DATE 2/7/19
>
> Copy 1—Upon initiation of action, mail this copy to Director   Copy 3—Upon termination of action, mail this copy to Director
> Copy 2—Upon filing document adding patent(s), mail this copy to Director   Copy 4—Case file copy

The same scenario and timing played out for the '967 patent. *See* Ex. A ('967 file history) (annotated). Both file histories conclusively prove that the PTO did not receive the *Masabi* § 101 notices until after the Children Patents issued.

9

Of course, Bytemark and its counsel know this to be true. Not only were they copied on the PTO notices, as they acknowledge,[4] but Defendants explained the relevant timing in opposing Bytemark's letter for a pre-motion conference. *See* Dkt. 142 at 2–3. Bytemark nevertheless chose to double down on its misrepresentations here.

  **B.**  **Defendants' Answer Sufficiently Pleads its Counterclaims and Defenses.**

Bytemark claims that Defendants' pleadings are deficient in two respects: (1) "Defendants have not sufficiently pled that Bytemark acted with specific intent to deceive the PTO" and (2) "Defendants have not sufficiently pled that the alleged nondisclosures were 'but-for material.'" Mot. at 8, 11. Both of these arguments fail.

    1.  <u>Bytemark acted with a specific intent to deceive.</u>

"In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Therasense*, 649 F.3d at 1290. Direct evidence of intent is not required; instead "[a] court may infer intent from circumstantial evidence." *Regeneron Pharm.*, 864 F.3d at 1351. Such an inference of intent to deceive is "appropriate where the applicant engages in 'a pattern of lack of candor.'" *Id.* (quoting *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014)).

Defendants have plausibly pled that the named inventors and the prosecuting attorney deliberately withheld the *Masabi* materials from the PTO. *See* Dkt. 140 ¶¶ 219–23. Those individuals had a duty to disclose the *Masabi* materials. *See* MPEP § 2001.06(c) ("[M]aterial information" arising from litigation "must be brought to the attention of the examiner" including information disclosed in "pleadings, admissions, discovery including interrogatories, depositions,

---

[4] *See* Mot. at 10 (admitting "Bytemark's counsel also received a copy of this notice and was made aware that the PTO was notified of the court's invalidation of the Parent Patents.").

10

and other documents and testimony" and "any assertion that is made during litigation . . . which is contradictory to assertions made to the examiner"). Withholding the *Masabi* materials is even more egregious because the examiners of the Children Patents continued to issue § 101 rejections mirroring the reasoning used by the *Masabi* court. *See* Dkt. 107-1 (Office Action, Appl. No. 14/286,622[5] (Apr. 13, 2017)) at 3 ("Claims 1-16 are rejected under 35 U.S.C. 101 because the claimed invention is directed to a judicial exception (i.e., a law of nature, a natural phenomenon, or an abstract idea) without significantly more."); Dkt. 107-2 (Office Action, Appl. No. 14/286,622 (Nov. 7, 2017)) at 2–6; Dkt. 107-3 (Office Action, Appl. No. 14/286,622 (Aug. 10, 2018)) at 4–8 and 17–20; Dkt. 107-4 (Office Action, Appl. No. 14/823,157[6] (Oct. 6, 2017)) at 3–5; Dkt. 107-5 (Office Action, Appl. No. 14/823,157 (June 1, 2018)) at 3–15.[7]

The duty to disclose material information extends to each inventor and the attorneys who prosecuted the application. 37 C.F.R. § 1.56(c). The named inventors of the Children Patents, all of whom are Bytemark employees, filed declarations acknowledging this obligation.[8] The attorney prosecuting the Children Patents was a partner of Meredith & Keyhani, PLLC at least as of December 10, 2018. Meredith & Keyhani is the same firm that represented Bytemark in the *Masabi* litigation and the former firm of Bytemark's lead counsel in this lawsuit. Thus, there is no question

---

[5] Appl. No. 14/286,622 is the application that issued as the '567 patent.

[6] Appl No. 14/823,157 is the application that issued as the '764 patent.

[7] At the pleading stage "the court may consider 'matters of public record.'" *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008, n. 2 (Fed. Cir. 2018). "Prosecution histories constitute public records." *Id*. (citing *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)).

[8] *See, e.g.*, U.S. Patent Application No. 14/286,622, Publication No. 2015-0088563 at 05-29-2019 Oath or Declaration filed.

11

that the Bytemark inventors and attorneys had a duty to disclose material information, were aware of the *Masabi* materials, and nevertheless chose not to disclose it to the PTO.

Moreover, Bytemark's Motion is entirely silent about its failure to submit the *Masabi* invalidity contentions to the PTO. These contentions were provided to Bytemark in late 2016 an detailed how the Parent Patents were invalid over the prior art. *See* Dkt. 140 ¶¶ 183–87. Bytemark does not address this point or suggest that the contentions were provided to the PTO during prosecution of Bytemark's patents, suggest that Bytemark or its counsel were unaware of the contentions, or argue that Bytemark or its counsel did not intend to deceive the PTO by failing to submit this information. Given Bytemark's failure to address—much less challenge—the inequitable conduct allegations relating to the *Masabi* invalidity contentions, Bytemark's Motion must be denied.

With respect to the *Masabi* § 101 rulings, Bytemark's and its counsel's conduct was particularly egregious. The law firm prosecuting the Children Patents was the same firm that argued and lost the validity issue for the Parent Patents in the *Masabi* litigation. Moreover, the *Masabi* § 101 ruling issued just weeks before Bytemark responded to the examiner's rejection in one of the Children Patents on the same legal principle.

The Eastern District of Texas Magistrate Judge even discussed the § 101 rejections of the '567 patent:

> Although the claims of the [invalid Parent Patents] eventually overcame scrutiny [during prosecution] under then-existing interpretations of § 101 and *Alice*, a number of related applications remained in prosecution, and these applications have not fared as well. These applications have specifications that are similar to those of the [invalid Parent Patents], and many of these claims are remarkably similar to those recited in the [invalid Parent] [P]atents. In April of 2017, the claims in one of these applications were rejected under § 101 as being "directed to abstract idea of determining fraudulent activity associated with a ticketing system." *See* Office Action, Appl. No. 14/286,622, at 3 (Apr. 13, 2017). This idea, according to the examiner, was similar to the idea found abstract and patent-ineligible in

12

> *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089 (Fed. Cir. 2016). The additional elements recited in . . . those claims, including a "server computer sub-system," a "device," and a "network" were not significant enough, in the examiner's view, to take the claims away from the abstract idea.

*Bytemark, Inc. v. Masabi Ltd.*, No. 16-CV-00543, 2018 WL 7272023, at *5 (E.D. Tex. Nov. 26, 2018) (citations omitted), *report and recommendation adopted*, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), *aff'd*, 792 F. App'x 952 (Fed. Cir. 2020).

Despite this discussion and the identical § 101 arguments being asserted by the examiners of the Children Patents, Bytemark withheld the existence of the *Masabi* § 101 rulings from the PTO. Two weeks after the Magistrate Judge issued his opinion, Bytemark and its counsel submitted amended claims in connection with the '622 application that would ultimately issue as the '567 patent. Alongside those amended claims, Bytemark submitted a lengthy discussion of the Federal Circuit's *Enfish* and *DDR Holdings* cases to argue that the amended claims should survive under § 101. Dkt. 107-6 (Office Action Response, Appl. No. 14/286,622 (Dec. 10, 2018)) at 6–10. But nowhere in these remarks did Bytemark disclose the far-more relevant § 101 analysis from the *Masabi* court, as it was required to do based on the MPEP's demand for any assertion that is made "during litigation . . . which is contradictory to assertions made to the examiner." MPEP § 2001.06(c). Similarly, several months after the *Masabi* Magistrate Judge's invalidity opinion, Bytemark and its attorneys explicitly discussed one of the invalid Parent Patents during the prosecution of its '764 patent. Dkt. 107-7 (Office Action Response, Appl. No. 14/823,157 (Apr. 10, 2019)) at 8. But once again, Bytemark and its attorneys chose to hide the status of the Parent Patents.

On February 7, 2019, the *Masabi* district court adopted the Magistrate Judge's Report and Recommendation invalidating Bytemark's Parent Patents. *Bytemark*, 2019 WL 7882728, at *1.

Six days later, the '567 patent examiner withdrew his § 101 rejections, having never learned of the *Masabi* materials. Dkt. 107-8 (Office Action, Appl. No. 14/286,622 (Feb. 13, 2019)) at 4.

Bytemark, the named inventors, and their attorneys chose not to inform the PTO of the *Masabi* materials because they knew those decisions would be the death knell to their new patents. After all, the examiners were already making the same arguments as the district court. The Eastern District ruling that it was "not a close case" would have affirmed the examiners' position that the applications were not patentable. Put simply, there is no explanation for Bytemark's failure to disclose the *Masabi* materials other than intent to deceive the Patent Office.

2.      The withheld information was but-for material.

As explained above, the PTO has already confirmed that material information includes "any assertion that is made during litigation . . . which is contradictory to assertions made to the examiner." MPEP § 2001.06(c). The *Masabi* materials are just that. For example, the *Masabi* invalidity contentions contain Masabi's assertions about invalidity that are made during litigation. These assertions are contradictory to Bytemark's assertions of validity that it made to the examiner. The § 101 rulings are even more powerful as they are not just a contradictory assertion, but a ruling that is contradictory to Bytemark's assertions of validity made to overcome the examiner's repeated § 101 rejections. *See* Dkt. 107-1 (Office Action, Appl. No. 14/286,622 (Apr. 13, 2017)) at 3 ("Claims 1-16 are rejected under 35 U.S.C. 101 because the claimed invention is directed to a judicial exception (i.e., a law of nature, a natural phenomenon, or an abstract idea) without significantly more."); Dkt. 107-2 (Office Action, Appl. No. 14/286,622 (Nov. 7, 2017)) at 2–6; Dkt. 107-3 (Office Action, Appl. No. 14/286,622 (Aug. 10, 2018)) at 4–8, 17–20;  Dkt. 107-4 (Office Action, Appl. No. 14/823,157 (Oct. 6, 2017)) at 3–5; Dkt. 107-5 (Office Action, Appl. No. 14/823,157 (June 1, 2018)) at 3–15. In each Office Action, the examiners made arguments closely mirroring those made by the *Masabi* court. Had the examiners learned that a Federal Court agreed

14

with their analysis, the Children Patents would not have issued. As a result, Defendants have adequately pled that the decisions invalidating the Parent Patents are but-for material information.

Defendants have also adequately pled that the *Masabi* invalidity contentions and related prior art are but-for material. Dkt. 140 ¶ 217. Had the prosecuting attorney or the named inventors of the Children Patents submitted those materials, given the "remarkably similar" nature of their claims to the Parent Patents, the examiners would not have issued the Children Patents. Bytemark does not argue otherwise in its Motion, other than an odd claim that "the record establishes that the examiner did have this information (or, at the very least, knowledge that this information existed, had he wished to consider it)." Mot. at 12. But the fact is, the Children Patent examiners could not consider the *Masabi* invalidity contentions because Bytemark never submitted them.

## V.     Conclusion

For the reasons set forth above, Bytemark's Motion to Dismiss should be denied.[9] To the extent the Court disagrees, Defendants request leave to amend their allegations once discovery on these matters has been taken. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave when justice so requires."); *see also, e.g.*, *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. 19-CV-622, 2020 WL 4794576, at *4 (D. Del. Aug. 18, 2020) ("[I]n many cases, the most important evidence of inequitable conduct is in the possession of the patentee.").

---

[9] Defendants agree that their unclean hands allegations rise and fall with their inequitable conduct allegations, *see* Counterclaim ¶ 231, and therefore do not address these allegations separately.

Dated:  February 28, 2022

                                      Respectfully submitted,

                                      */s/ Ashley N. Moore*
Ashley N. Moore (admitted *pro hac vice*)
David Sochia (admitted *pro hac vice*)
Douglas A. Cawley (admitted *pro hac vice*)
Jonathan Powers (admitted *pro hac vice*)
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel:    (214) 978-4000
Fax:    (214) 978-4044
amoore@mckoolsmith.com
dsochia@mckoolsmith.com
dcawley@mckoolsmith.com
jpowers@mckoolsmith.com

Eliza Beeney
McKool Smith, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Tel:    (212) 402-9424
Fax:    (212) 402-9444
ebeeney@mckoolsmith.com

*Attorneys for Defendants*

16