UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CASE NO. 1:17-CV-01803 (PGG) (JW) |
| | § |
| XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP., | § |
| | § |
| Defendants. | § |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW OF U.S. PATENT NOS. 10,346,764 AND 10,360,567**

# **TABLE OF CONTENTS**

**Page(s)**

I. Introduction ..................................................................................................................1

II. A Stay Will Simplify the Issues In This Case ..............................................................2

III. The Early Stage of Litigation Favors a Stay ................................................................4

IV. A Stay Will Not Prejudice Bytemark ...........................................................................5

    A. The Timing of the Review Request .................................................................6

    B. The Timing of the Request for a Stay ..............................................................7

    C. The Status of the Review Proceedings ............................................................7

    D. The Relationship of the Parties ........................................................................8

    E. Tactical Advantage ...........................................................................................9

V. Conclusion ....................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. GNC Corp. v. LG Elecs. Inc.*,
   No. 17-CV-01090, 2018 U.S. Dist. LEXIS 40240 (S.D. Cal. Mar. 12, 2018) ........................3

*Brixham Sols. Ltd. v. Juniper Networks, Inc.*,
   No. 13-CV-00616, 2014 WL 1677991 (N.D. Cal. Apr. 28, 2014) ..........................................3

*Bytemark, Inc. v. Masabi Ltd.*,
   No. 16-CV-00543, 2018 WL 7272023 (E.D. Tex. Nov. 26, 2018) ......................................3, 8

*Bytemark, Inc. v. Xerox Corp.*,
   2018 U.S. Dist. LEXIS 164674 (S.D.N.Y. Sep. 21, 2018) ...................................................3, 4

*Document Dynamics, LLC v. Xerox Corp.*,
   No. 20-CV-6519, 2021 WL 2009897 (W.D.N.Y. May 20, 2021) ...........................................9

*Goodman v. Samsung Elecs. Am., Inc.*,
   No. 17-CV-5539, 2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017) ............................................3

*Kannuu Pty Ltd. v. Samsung Elecs. Co.*,
   No. 19-CV-4297, 2021 WL 195163 (S.D.N.Y. Jan. 19, 2021) ...................................4, 6, 7, 8

*Karl Storz Endoscopy-Am., Inc. v. Synaptive Med., Inc.*,
   No. 17-CV-5607, 2018 WL 11220832 (S.D.N.Y. Aug. 8, 2018) ............................................7

*Lodge Mfg. Co. v. Gibson Overseas, Inc.*,
   No. 18-CV-8085, 2019 WL 9443180 (C.D. Cal. Sept. 24, 2019) ...........................................8

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
   No. 13-CV-01356, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014) ............................................8

*PopSockets LLC v. Quest USA Corp.*,
   No. 17-CV-3653, 2018 WL 4660374 (E.D.N.Y. Sept. 28, 2018) ................................... 2-3, 4

*PopSockets LLC v. Quest USA Corp.*,
   No. 17-CV-3653, 2018 WL 5020172 (E.D.N.Y. Sept. 12, 2018) .......................................4, 8

*Rovi Guides, Inc. v. Comcast Corp.*,
   No. 16-CV-9278, 2017 WL 4876305 (S.D.N.Y. Oct. 27, 2017) .........................................4, 5

*UPL NA, Inc. v. Tide Int'l (USA), Inc.*,
   No. 19-CV-1201, 2021 WL 663128 (C.D. Cal. Feb. 19, 2021) ..............................................9

*Versata Software, Inc. v. Callidus Software, Inc.*,
   771 F.3d 1368 (Fed. Cir. 2014 ................................................................................................5

iii

*VirtualAgility Inc. v. Salesforce.com*,
    759 F.3d 1307 (Fed. Cir. 2014)......................................................................................9

**I.     Introduction**

Because the relevant factors unquestionably weigh in favor of a stay, Bytemark's opposition largely declines to analyze them. Instead, Bytemark focuses on hyperbolic attacks and irrelevant facts. First, Bytemark accuses Defendants of "stonewalling" and engaging in a "campaign of obstruction," Opp. at 1, 7, but the activities that it points to—like opposing overly broad and irrelevant discovery requests and filing a motion to dismiss—constitute Defendants' efforts to defend themselves in this litigation. *See, e.g.*, *id.* at 13 n.5 (arguing that a motion to dismiss is evidence that Defendants are "trying to delay the progress of the proceedings"). Much as it tries, Bytemark cannot transform these routine litigation efforts into bad faith "obstruction" that would warrant denying Defendants' motion to stay.

Next, Bytemark devotes a full seven pages of its brief to painstakingly detailing almost all of the parties' interactions to date. *See id.* at 2–6, 19–21. But most of these interactions are entirely irrelevant to the instant motion. For example, it matters not that "[o]n February 14, 2019, Bytemark advised Defendants of their failure to provide documents in response to its requests" or that "[o]n August 11, 2020, [Defendants] rejected Bytemark's offer to inspect its confidential and trade secrets information." *Id.* at 19, 5. The relevant benchmarks of procedural progress include whether the parties have completed discovery, exchanged experts reports, taken depositions, and whether a claim construction hearing or trial date has been set. Bytemark ignores this, and instead details insignificant interactions to give the impression that this case has progressed farther than it actually has.

For the same reason, Bytemark falsely claims that the parties have been "embroiled in discovery disputes for over three years." *Id.* at 4. While true that certain discovery disputes have materialized since 2017, the parties have hardly been "embroiled" in such disputes. As but one metric demonstrating this, in the past year, the parties have had ***just two*** short discovery-related

meet and confers (on August 31, 2021 and October 13, 2021). From those two meet and confers, the parties had only one dispute requiring the Court's intervention. *See* Dkt. No. 146.

When properly focused on the three relevant factors—(1) whether a stay will simplify the issues, (2) the stage of the proceedings, and (3) whether a stay will prejudice plaintiff—it is clear that each factor weighs in Defendants' favor. The Court should therefore grant Defendants' motion and stay this case pending resolution of their petitions for *inter partes* review ("IPR") by the Patent Trial and Appeal Board ("PTAB").

## II.   A Stay Will Simplify the Issues In This Case

Bytemark argues that the first factor, whether a stay will simplify the case, weighs in its favor because (1) the patent infringement claims are "only part of the case," (2) the IPRs have not yet been instituted, and (3) this Court is "the only forum" in which all of the patent claims and defenses can be decided. Opp. at 8, 11. Defendants anticipated—and fully rebutted—Bytemark's first two arguments in their motion, Mot. at 7–8, and its third ignores the relevant focus of the first factor.

In their motion, Defendants explained that, while Bytemark has asserted non-patent claims, the case will nonetheless be simplified by a stay. *Id.* The factual underpinnings of each of Bytemark's claims are the same. Bytemark alleges that after it allegedly shared confidential information with Defendants, they cut Bytemark out of the bidding process and used its information to secure third party contracts. *See* Third Am. Compl. ("TAC") ¶¶ 29–33, Dkt. No. 139. Although Bytemark states that it has served a "multitude of discovery requests . . . specifically directed to [its] non-patent-infringement causes of action," Opp. at 8, it neglects to identify a single such request. This is because, in reality, all of the asserted causes of action are based on the same set of facts and the same set of discovery. Accordingly, even though Bytemark has asserted non-patent claims, a stay will still simplify the issues in this case. *See, e.g.*, *PopSockets LLC v. Quest*

*USA Corp.*, No. 17-CV-3653, 2018 WL 4660374, at *1, 2 (E.D.N.Y. Sept. 28, 2018); *Am. GNC Corp. v. LG Elecs. Inc.*, No. 17-CV-01090, 2018 U.S. Dist. LEXIS 40240, at *11 (S.D. Cal. Mar. 12, 2018).

Bytemark also ignores the argument and case law cited in Defendants' motion supporting the notion that, even though the PTAB has not yet instituted review, the first factor nonetheless favors of a stay. Mot. at 7. This is because the Asserted Patents are "remarkably similar" to the '967 patent, and the PTAB previously instituted review of this patent and found certain of its claims invalid over the same Terrell reference presented in Defendants' IPRs. *Bytemark, Inc. v. Masabi Ltd.*, No. 16-CV-00543, 2018 WL 7272023, at *5 (E.D. Tex. Nov. 26, 2018), *report and recommendation adopted*, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), *aff'd*, 792 F. App'x 952 (Fed. Cir. 2020). Institution is therefore likely, and it makes little sense to litigate this case over the next several months, just to stay it in September after institution and after the parties have spent significant resources litigating claims that may be rendered moot. *See, e.g.*, *Goodman v. Samsung Elecs. Am., Inc.*, No. 17-CV-5539, 2017 WL 5636286, at *3 (S.D.N.Y. Nov. 22, 2017); *Brixham Sols. Ltd. v. Juniper Networks, Inc.*, No. 13-CV-00616, 2014 WL 1677991, at *1 (N.D. Cal. Apr. 28, 2014).

Finally, Bytemark's argument that "[t]his Court is the only forum in which all of the asserted patent claims and all of the defenses and legal issues raised by the parties . . . can be decided" misses the mark. Opp. at 11. The test of the first factor is ***not*** whether the PTAB can resolve every claim and defense at issue in the parallel litigation. Instead, it is "whether a stay will simplify the issues in question and trial of the case." *Bytemark, Inc. v. Xerox Corp.*, 2018 U.S. Dist. LEXIS 164674, at *16 (S.D.N.Y. Sep. 21, 2018). Here, it unquestionably will. For example, if the PTAB grants review and cancels all claims of the Asserted Patents (which is likely), two of

Byetmark's claims will be moot, and this case will be significantly less complex. Even if the PTAB does not do so, the IPR proceedings will shed light on the meaning of the claims and the scope of the patented technology, and narrow the prior art issues ultimately presented to this Court. The IPRs will therefore simplify this case regardless of their outcome and the first factor weighs in favor of a stay.

### III.   The Early Stage of Litigation Favors a Stay

Relegated to the back of its brief is Bytemark's analysis of the second factor, the stage of litigation. Courts in this district almost universally hold that where the parties have engaged in some discovery but "neither a claim construction hearing nor a trial has been scheduled," the second factor "strongly favors a stay." *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, No. 19-CV-4297, 2021 WL 195163, at *10 (S.D.N.Y. Jan. 19, 2021), *aff'd*, 15 F.4th 1101 (Fed. Cir. 2021); *PopSockets LLC v. Quest USA Corp.*, No. 17-CV-3653, 2018 WL 5020172, at *3 (E.D.N.Y. Sept. 12, 2018), *report and recommendation adopted*, 2018 WL 4660374 (E.D.N.Y. Sept. 28, 2018); *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278, 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017). Although Bytemark entirely ignores this standard, the Court need look no further than this precedent and the case schedule to conclude that, because no claim construction hearing or trial has been scheduled, factor two weighs in favor of a stay.

To give the impression that the parties have engaged in substantial litigation efforts to date, Bytemark chronicles nearly every interaction between the parties over the last five years and then concludes that this "record" shows that "substantial process has taken place." Opp. at 19-22. But, in applying factor two, these interactions are irrelevant. The critical benchmarks of litigation progress include whether depositions have occurred, whether a claim construction hearing has been held, whether expert discovery has commenced, and whether a trial has been scheduled. *See, e.g.*, *Kannuu Pty Ltd.*, 2021 WL 195163, at *10; *Bytemark, Inc.*, 2018 U.S. Dist. LEXIS 164674,

4

at *16; *Rovi Guides, Inc.*, 2017 WL 4876305, at *3. None of these events have occurred yet. Factor two thus heavily weighs in favor of a stay.

Bytemark also claims that Defendants' position that the parties have far more left to do in this litigation than they have done already is "disingenuous" because Defendants have allegedly "consistently attempted to slow the pace of this litigation." Opp. at 21. Bytemark's evidence of this purported "disingenuousness" is that Defendants have done things like "file the instant motion" and "withhold discoverable information." Opp. at 22. Bytemark's argument is nonsensical and wrong for at least two reasons. First, the law is clear that second factor focuses on what is left to be done in the litigation, not on what the parties have already accomplished. *See, e.g.*, *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1375 (Fed. Cir. 2014), *vacated on other grounds*, 780 F.3d 1134 (Fed. Cir. 2015). It is hardly "disingenuous" to apply this law to the facts of this case by comparing what has already happened versus what the parties must still do. Second, Defendants' efforts to defend themselves in this litigation by, for example, objecting to overly broad and irrelevant discovery requests, is not "disingenuous" or an effort to "slow the pace" of the case. Opp. at 21. Bytemark's hyperbolic claims cannot transform Defendants' reasonable litigation efforts into anything "disingenuous" or improper.

## IV. A Stay Will Not Prejudice Bytemark

Bytemark's overarching argument as to prejudice is that it "has an interest in the timely and cost-effective enforcement of its rights." Opp. at 11. This is a peculiar argument for a plaintiff who has done little to prosecute its case over the last five years. As Defendants detailed in their motion, Bytemark itself is largely responsible for the long pendency of this case and the limited procedural progress that has been made. For example, Bytemark waited almost a year after the Asserted Patents issued to seek leave to amend the Complaint, more than a year and a half after filing the Complaint to serve requests for production, and a full two years to move to compel after

serving these requests. *See* Mot. at 2–4, 12–13. Bytemark does not even try to defend itself in opposing Defendants' motion; it is completely silent on this point. Bytemark should not be allowed to neglect prosecution of this case for half a decade, and now, faced with Defendants' motion to stay, claim prejudice in the form of delay.

### A.     The Timing of the Review Request

Bytemark claims that the timing of Defendants' IPR petitions weighs against a stay because Defendants have had "notice" of the Asserted Patents and the Terrell reference for two years. Opp. at 11. Unsurprisingly, Bytemark cites no case law for the proposition that ***notice*** of the asserted patents or prior art is the relevant benchmark for the first prejudice sub-factor.[1] This is because the law in this Circuit is crystal clear that when a party files an IPR petition within the one-year statutory deadline, *i.e.*, one year after being served with a complaint asserting infringement, this factor weighs in favor of a stay. *See, e.g.*, *Kannuu Pty Ltd.*, 2021 WL 195163, at *10.

Moreover, there are good reasons why Defendants did not file their IPR petitions soon after learning of the existence of the Asserted Patents or the Terrell reference. In July 2019, the Asserted Patents had not yet been asserted against Defendants, and they therefore had no reason to spend the enormous sums of time and money required to prepare two IPR petitions. As to Terrell, Bytemark oversimplifies the process of preparing an IPR petition to support its argument. Drafting an IPR petition is not as easy as plucking Terrell out of the '967 patent IPR petition, assuming it

---

[1] Bytemark cites just one case in support of its position, along with the following parenthetical: "The fact that an accused infringer waits until one year after being served with a complaint . . . at least raises the possibility that it was a dilatory tactic." Opp. at 11 (citing *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-CV-0633, 2014 WL 201965, at *4 (N.D.N.Y. Jan. 15, 2014)). This case supports Defendants, not Bytemark. It is consistent with the bulk of authority holding that, as long as an IPR petition is filed within the one-year statutory deadline, the first prejudice sub-factor weighs in favor of a stay. *See, e.g.*, *Kannuu Pty Ltd.*, 2021 WL 195163, at *10.

applies to the Asserted Patents, and dropping it into new IPR petitions. Instead, preparing Defendants' petitions required detailed review of the file histories of both Asserted Patents, sifting through hundreds of prior art references, analyzing whether each of those references applies to one or more limitation of each of the 44 asserted claims of the Asserted Patents, and drafting the petitions and accompanying declarations (which total almost 300 pages). Ultimately, this process takes hundreds of hours of attorney and expert time. Defendants' filing of the petitions earlier this year was therefore reasonable, and does not suggest any effort to delay.

### B.     The Timing of the Request for a Stay

Because the timing of the stay request (several weeks after the filing of the IPR petitions) indisputably weighs in Defendants' favor, Bytemark declines to analyze this factor and instead pivots attention to other sub-factors. Specifically, under its heading for this sub-factor, Bytemark argues that "Defendants delayed in submitting these petitions." Opp. at 13. But, any delay in ***filing*** the IPR petition is the subject of the first sub-factor (addressed above), the "the timing of the review request," not the second sub-factor, "the timing of the request for a stay."

Here, applying the correct law to the facts of this case, the filing of Defendants' motion several weeks after the IPR petitions weighs in Defendants' favor. *See, e.g.*, *Karl Storz Endoscopy-Am., Inc. v. Synaptive Med., Inc.*, No. 17-CV-5607, 2018 WL 11220832, at *1 (S.D.N.Y. Aug. 8, 2018) (sub-factor weighed in favor of granting motion where defendant "moved for a stay only nineteen days after its IPR filing"); *Kannuu Pty Ltd.*, 2021 WL 195163, at *10.

### C.     The Status of the Review Proceedings

Bytemark argues that because the PTO has not yet instituted review of the IPRs, the status of the review proceedings suggests prejudice. However, as explained in Defendants' opening brief, courts routinely grant pre-institution motions to stay. Mot. at 11–12. Doing so is particularly appropriate here, where there is good reason to believe the PTAB will institute review based on its

7

review of the '967 patent, which is "remarkably similar" to the Asserted Patent claims. *Bytemark, Inc.*, 2018 WL 7272023, at *5.

Bytemark also argues that this sub-factor should weigh in its favor because a stay would delay this case and Bytemark would lose "the benefit promised by the Federal Rules of Civil Procedure—a 'just, speedy, and inexpensive determination of every action and proceeding.'" Opp. at 15. This is a bold claim. After filing this case five years ago, Bytemark has largely waited on the sidelines as the months have gone by. Bytemark does not offer and explanation for this delay. Now, years later, Bytemark cannot invoke the Federal Rules and claim that it would be prejudiced by a short delay that would significantly simplify this case.

Finally, even if the delay caused by the IPRs were significant, it is clear that "mere delay" is not enough to establish prejudice. *See, e.g.*, *Kannuu Pty Ltd.*, 2021 WL 195163, at *10; *see also, e.g.*, *Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. 18-CV-8085, 2019 WL 9443180, at *4 (C.D. Cal. Sept. 24, 2019); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 13-CV-01356, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014). The third prejudice sub-factor therefore favors a stay.

### D.   The Relationship of the Parties

Bytemark argues that it is a "director competitor" of Defendants, and the relationship of the parties therefore weighs against a stay. Opp. at 15–18. But Bytemark does not even identify which of the five Defendants it purportedly competes with. And, although Bytemark alleges that it will "lose market share" if a stay is granted, it provides not a single specific fact to support that conclusion, as the law requires. *Kannuu Pty Ltd.*, 2021 WL 195163, at *7 (prejudice allegation requires "explanation and support"); *PopSockets LLC*, 2018 WL 5020172, at *4 (same). As explained in Defendants' motion, Defendants are not direct competitors of Bytemark, do not offer the same services or products, and have a different business structure. Mot. at 12. Bytemark therefore cannot show prejudice based on the parties' relationship.

8

In addition, although Bytemark claims that it "continues to lose market share and goodwill" as a result of some unspecified use of its "trade secrets," Opp. at 16, its failure to seek a preliminary injunction—or, at the very least, pursue its claims diligently—"belies its claims of undue prejudice in the marketplace." *UPL NA, Inc. v. Tide Int'l (USA), Inc.*, No. 19-CV-1201, 2021 WL 663128, at *4 (C.D. Cal. Feb. 19, 2021); *see also, e.g.*, *VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) ("[T]he fact that it was not worth the expense to ask for [a preliminary injunction] contradicts VA's assertion that it needs injunctive relief as soon as possible."). This factor therefore weighs in Defendants' favor.

### E.     Tactical Advantage

Although not one of the enumerated factors of the prejudice analysis, Bytemark includes a sub-section alleging that Defendants' motion seeks an inappropriate tactical advantage. Opp. at 18. This sub-section largely focuses on *Document Dynamics, LLC v. Xerox Corp.*, No. 20-CV-6519, 2021 WL 2009897 (W.D.N.Y. May 20, 2021). But the facts of that case in no way mirror those presented here. For example, in that case, the court found dispositive that the IPR petitions were not filed until years after the filing of the complaint asserting infringement of the patents-in-suit. *Id.* at 5-6. In contrast, in this case, the Asserted Patents were asserted for the first time in the Third Amended Complaint, filed less than a year ago. Moreover, in *Document Dynamics*, the Court ***did not even deny Xerox's motion to stay.*** Instead, the court found it appropriate to require the parties to "complete fact discovery" but that "[a]ll other litigation activity in this case will be stayed until further order of the [c]ourt." *Id.* at *7. In short, Bytemark appears to invoke the case only because it involved a Xerox entity. It has no bearing on the facts before the Court now.

### V.     Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to stay this case pending *inter partes* review.

9

Dated:  March 30, 2022	Respectfully submitted,

*/s/ Ashley N. Moore*
Ashley N. Moore (admitted *pro hac vice*)
amoore@mckoolsmith.com
David Sochia (admitted *pro hac vice*)
dsochia@mckoolsmith.com
Douglas A. Cawley (admitted *pro hac vice*)
dcawley@mckoolsmith.com
Jonathan Powers (admitted *pro hac vice*)
jpowers@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Eliza Beeney
ebeeney@mckoolsmith.com
**MCKOOL SMITH, P.C.**
395 9th Avenue, 50th Floor
New York, New York 10001
Telephone: (212) 402-9800
Facsimile: (212) 402-9444

*Attorneys for Defendants*