**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

BYTEMARK, INC.,

     Plaintiff,

    v.

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and
NEW JERSEY TRANSIT CORP.,

    Defendants.

Case No. 1:17-cv-01803-PGG-JW

**PLAINTIFF BYTEMARK, INC.'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY PENDING *INTER PARTES* REVIEW OF U.S. PATENT NOS.
10,346,764 AND 10,360,567**

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................................1

        A.      Bytemark's Claims Against Defendants ....................................................2

        B.      Litigation of the Children Patents ..............................................................2

        C.      Disputes Over Discovery ............................................................................4

III.    LEGAL STANDARD ..............................................................................................7

IV.     ARGUMENT ...........................................................................................................7

        A.      A stay will not simplify the issues in question and trial of the case. ........8

        B.      A stay will unduly prejudice Bytemark and present Defendants with an unfair
                tactical advantage. ...................................................................................11

                1.      The timing of the review request weighs against granting a stay. ............11

                2.      The timing of the request for stay weighs against granting a stay............13

                3.      The status of the review proceedings weighs against granting a stay........14

                4.      The relationship between the parties weighs against granting a stay. .......15

                5.      There is an inference that Defendants are seeking an inappropriate tactical
                        advantage. ............................................................................................18

        C.      A stay is not warranted given the stage of the proceedings...................19

V.      CONCLUSION.......................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669, 2014 WL 2854656
(S.D.N.Y. June 20, 2014) ......................................................................................9, 15, 17

*Cynosure, Inc. v. Cooltouch Inc.*, No. CIV.A. 08-10026, 2009 WL 2462565
(D. Mass. Aug. 10, 2009) ...................................................................................................12

*Document Dynamics, LLC v. Xerox Corp.*, No. 20-CV-6519W, 2021 WL 2009897
(W.D.N.Y. May 20, 2021) ...................................................................................12, 18, 22

*Goodman v. Samsung Elecs. Am., Inc.*, No. 17-CV-5539 (JGK), 2017 WL 5636286
(S.D.N.Y. Nov. 22, 2017) ...................................................................................................14

*Grecia v. MasterCard, Inc.*, No. 15-CV-9059 (RJS), 2017 WL 11566955
(S.D.N.Y. Apr. 3, 2017) .......................................................................................7, 9, 14, 15

*Intell. Ventures II L.L.C. v. JP Morgan Chase & Co.*, No. 13 CIV. 3777 (AKH),
2014 WL 10919562 (S.D.N.Y. Aug. 11, 2014) .....................................................10, 14, 21

*Lederer v. Avotec, Inc.*, No. CV16966, 2017 WL 11113809
(E.D.N.Y. Aug. 15, 2017) ...................................................................................................15

*Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 13-cv-0633, 2014 WL 201965
(N.D.N.Y. Jan. 15, 2014) .......................................................................................9, 10, 11, 14

*Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2017 WL 4876305
(S.D.N.Y. Oct. 27, 2017) ...................................................................................11, 12, 14

*Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236 (AJN),
2016 WL 6094114 (S.D.N.Y. Oct. 18, 2016) ......................................................................7

*Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309 (Fed. Cir. 2016) ..................................10

*TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169 (S.D.N.Y. 2009) ................19

*Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...............................................13

*Xilinx, Inc. v. Invention Inv. Fund I LP*, No. 5:11-CV-00671, 2012 WL 6003311
(N.D. Cal. Nov. 30, 2012) ...................................................................................................13

**Statutes**

35 U.S.C. § 103 .................................................................................................................................10

## I.     INTRODUCTION

Defendants' Motion to Stay Pending *Inter Partes* Review of U.S. Patent Nos. 10,346,764 and 10,360,567 ("Motion") presents yet another attempt to obstruct Bytemark and prevent this case—which involves multiple causes of action, including not only patent infringement but trade secrets misappropriation, breach of contract, unfair competition, and unjust enrichment—from proceeding to trial.  Bytemark sued Defendants over five years ago, and Defendants have had notice for over two and a half years of the '764 and '567 Patents (collectively, the "Children Patents") and the prior art that forms the centerpiece of their IPR petitions.  Moreover, Defendants' petitions have not yet been granted, and it is far from certain that they will be.  The request for a stay—which, as this Court has noted, could potentially delay the proceedings for four years—is merely a dilatory tactic following multiple adverse rulings, the Court's statement that it wants to "bring the case to resolution," and the entry of a scheduling order that accelerates the pace of the litigation toward trial.

A stay would not simplify the issues in the case, which involves six non-patent causes of actions, along with patent-related issues that cannot be resolved by the IPRs, even if instituted.  Additionally, a stay would unduly prejudice Bytemark—which has an interest in the timely and cost-effective enforcement of its rights and will suffer further loss of market share and erosion of goodwill—and present Defendants with an unfair tactical advantage.  Furthermore, a stay is not warranted given the stage of the proceedings which, despite years of stonewalling by Defendants, is moving towards a resolution.  Defendants have not met their burden of establishing that a stay is warranted in this case, and their Motion should be denied in full.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Bytemark's Claims Against Defendants

This case has been pending for over five years, since Bytemark sued Defendants on March

10, 2017.  In its original complaint, Bytemark alleged infringement of certain claims of the '967

Patent and the '993 Patent (collectively, "the Parent Patents"), along with seven other causes of

action—including breach of contract, violation of the Defend Trade Secrets Act, misappropriation

of trade secrets under New York Law and the New Jersey Trade Secret Act, unfair competition,

and unjust enrichment—involving Defendants' same infringing mobile ticketing applications and

systems.  Dkt. #1, 74.  On December 11, 2017, Defendants filed a motion to dismiss under Rule

12(b)(6).  Dkt. #51.  On September 24, 2018, the Court denied in part and granted in part

Defendants' motion with respect to the non-patent claims.  Dkt. #72.

Also on September 24, 2018, the Court stayed Bytemark's patent claims pending resolution

of the *inter partes* review of the '967 Patent.  Dkt. #71.  On February 7, 2019, the Eastern District

of Texas invalidated the asserted claims of the Parent Patents under 35 U.S.C. § 101 as ineligible

subject matter.  *See Bytemark, Inc., v. Masabi Ltd.*, Civ. No. 2:16-cv-00543 (E.D. Tex.).  On March

11, 2019, Bytemark and Defendants stipulated to dismiss without prejudice the patent infringement

claims relating to the Parent Patents pending the outcome of Bytemark's appeals of the patents'

validity to the U.S. Court of Appeals for the Federal Circuit.  Dkt. #94, 95.  One year later, a panel

of the Federal Circuit affirmed the district court's decision in a nonprecedential opinion.  *See

Bytemark, Inc. v. Masabi Ltd.*, 2019-1628 (Fed. Cir.).

### B.      Litigation of the Children Patents

Meanwhile, on July 9, 2019, the United States Patent and Trademark Office ("USPTO")

issued the '764 Patent, and on July 23, 2019, the USPTO issued the '567 Patent.  These Children

Patents have overlapping specifications with the Parent Patents but include different claims and claim limitations. The Children Patents were examined under the most recent law and USPTO guidance, and the USPTO granted the patents with full knowledge that the Parent Patents had been held unpatentable. *See* Dkt. #105-3, at 3.

Defendants have had notice of the Children Patents' claims since at least early July 2019. On July 2, 2019, after an investigation of the newly allowed patent claims and Defendants' MyTix/NJ Transit Application and system, Bytemark notified Defendants that their application and system practices at least claim 1 of the 14/286622 patent application and at least claim 1 of the 14/823157[1] patent application and that Bytemark intended to seek leave to add claims of infringement to the case. On July 9, 2019, Bytemark again notified counsel for Defendants that it intended to add claims of infringement of recently issued U.S. Patent No. 10,346,764 and patent application 14/286622, which was set to issue on July 23, 2019. On July 16, 2019, Defendants stated they would oppose Bytemark's motion to amend. On July 23, Bytemark requested a pre-motion conference with the Court regarding its anticipated motion for leave to file a third amended complaint. Dkt. #98. The Court granted Bytemark's request to file the motion on March 17, 2020. Dkt. #103. Bytemark served its motion on Defendants on April 17, and the Court granted Bytemark's motion on March 31, 2021. Dkt. #138. Two weeks later, on April 14, Bytemark filed its Third Amended Complaint, which included the patent infringement claims. Dkt. #139.

On April 28, 2021, Defendants filed their answer, which included a counterclaim and affirmative defense of inequitable conduct. Dkt. #140. Following the Court's determination that "Defendants have not demonstrated that their inequitable conduct defense is meritorious" (Dkt.

---

[1] The '622 and '157 applications issued as the Children Patents.

#147, at 21), the Court, on January 21, 2022, asked Defendants "to state whether they agree to the dismissal" of their affirmative defense and counterclaim (Dkt. #155). Defendants stated they would not agree. Dkt. #158, at 5. On February 14, Bytemark served Defendants with their motion to dismiss and strike Defendants' inequitable conduct allegations, and that motion is pending before the Court. Dkt. #161-63.

During the parties' January 21, 2022 conference, the Court expressed "concern[] about the age of the case" and that the case "has gone on for too long, and it has my attention now, and we need to come up with a concrete plan for how we can get these tasks done and bring the case to resolution." *See* Tr. at 7:1-2, 8:8-11 (Jan. 21, 2022). On January 31, the Court entered a scheduling order, accelerating the timeline of the case. The Court set dates later this year for the completion of fact discovery, deposition of fact witnesses, and expert discovery. Dkt. #159. The Court also set a deadline later this year for post-discovery motions. Dkt. #159, at 3.

On February 18, 2022, over two and a half years after first receiving notice of the Children Patents, Defendants filed petitions for *inter partes* review before the Patent Trial and Appeal Board (PTAB).

### C.    **Disputes Over Discovery**

Additionally, the parties have been embroiled in discovery disputes for over three years, with Bytemark seeking on multiple occasions to compel production of documents and information withheld by Defendants. On December 27, 2018, Bytemark served its First Set of Requests for Production on Defendants. Dkt. #120-1. Defendants responded with a collection of publicly available documents that was nonresponsive to the vast majority of Bytemark's requests. Consequently, on February 14, 2019, Bytemark advised Defendants of their failure to provide documents in response to its requests, including documents regarding the creation and

development of the accused systems.  Dkt. #120-3.  On March 11, Defendants stated that they would make their "confidential information available promptly after we've had a chance to review and understand Bytemark's alleged trade secret information," and "[o]nce the protective order is entered, Defendants will produce limited, responsive discovery that Defendants can reasonably ascertain is relevant to this case."  Dkt. #120-4.

On December 23, 2019, the Court entered its protective order.  Dkt. #102.  Defendants did not produce any additional discovery.  On February 3, 2020, Bytemark produced documents covered under the protective order, and, the next day, served its Second Set of Requests for Production on Defendants.  Dkt. #120-2.  Once again, Defendants did not produce the requested documents and, instead, objected to all of Bytemark's requests.  Dkt. #120-5, 120-6.  On June 2, 2020, Bytemark emailed Defendants about their refusal to produce any of these documents.  Dkt. #120-6, at 4-7.  Bytemark informed Defendants that it would not be withholding any discoverable material and offered, on multiple occasions, to make available for inspection all of its source code and confidential documents that include proprietary and trade secret-protected information.  Dkt. #120-6, at 1-5.  Defendants continued to deny Bytemark access to the requested discovery, and on August 11, 2020, they rejected Bytemark's offer to inspect its confidential and trade secrets information.  Dkt. #120-6, at 1-5; 120-7, at 1-3.

The parties filed a joint letter to the Court on December 10, 2020, requesting a hearing relating to these discovery issues.  The Court ordered the parties to file discovery motions, and the competing motions to compel were filed on January 6, 2021.  Dkt. #115-24.  On January 13, the Magistrate Judge denied both motions with prejudice, because the parties filed the motions under the "bundling" rule.  Dkt. #129.  The parties filed objections to the Magistrate Judge's order, and Bytemark asked that the Court decide the motion to compel on the merits.  Dkt. #133-37.

Meanwhile, following entry of its Third Amended Complaint, Bytemark served its Third Set of Request for Production on Defendants on July 12, 2021. Dkt. #146. These included requests which were directed to Bytemark's newly added patent infringement claims. On August 11, Defendants served their responses and objections to the requests but did not produce any documents. Over the course of several months, Bytemark met and conferred with Defendants regarding their objections, including Defendants' belief that many of Bytemark's requests were precluded by the Magistrate Judge's January 13, 2021 order. Dkt. #146. Defendants made clear that they would not provide the requested documents absent Bytemark's agreement to withdraw all of its trade secrets claims and/or limit the way it could use the information obtained. On September 29, Bytemark reached out to Defendants in a further attempt to narrow the dispute. The parties met and conferred again on October 13 to discuss Bytemark's requests, but Defendants essentially refused to produce any documents for most of the categories-at-issue. Dkt. #146. On November 29, 2021, Bytemark filed a letter to the Court requesting leave to file a second motion to compel. Dkt. #146.

On January 11, 2022, the Court sustained the parties' objections to the Magistrate Judge's orders, granted Bytemark's motion to compel, and ordered Defendants to respond to Bytemark's requests for production by January 19, 2022. Dkt. #148. While Defendants have produced some documents in response to the Court's order and allowed Bytemark's expert to inspect their source code, Defendants have refused to produce any of the source code designated by the expert. The parties met and conferred on March 8 regarding this issue, and Bytemark has indicated that if Defendants do not produce the requested source code, Bytemark will move to enforce the Court's order.

## III.    LEGAL STANDARD

This Court considers three factors in determining whether a stay pending resolution of IPR proceedings is warranted: (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay will prejudice the nonmoving party; and (3) the stage of the proceedings. *Straight Path IP Grp., Inc. v. Verizon Commc'ns Inc.*, No. 16-CV-4236 (AJN), 2016 WL 6094114, at *2 (S.D.N.Y. Oct. 18, 2016).   The party seeking the stay bears the burden of demonstrating that such relief is warranted.   *Id*.   "These factors are not exclusive, however, and in the end, an overarching consideration of the circumstances in their totality governs." *Grecia v. MasterCard, Inc.*, No. 15-CV-9059 (RJS), 2017 WL 11566955, at *2 (S.D.N.Y. Apr. 3, 2017).   "There is no *per se* rule that patent cases should be stayed pending [IPR], because such a rule would invite parties to unilaterally derail litigation." *Id.* (citation omitted).

## IV.    ARGUMENT

Defendants have not met their burden of showing that the stay factors weigh in favor of halting the proceedings, five years into this case.   Since Bytemark first sued Defendants in 2017, Defendants have engaged in a campaign of obstruction.   Defendants have held up discovery for years, refusing to produce any confidential documents or source code—including information they concede is relevant and that they are obligated to produce.   Defendants fought Bytemark's attempts to bring infringement claims for the Children Patents, insisting they would unnecessarily delay the proceedings and had no place in this lawsuit.   And now that the Court has ordered Defendants to produce the information requested by Bytemark, indicated that it wants to "bring the case to resolution," and set a scheduling order accelerating the pace of the litigation, Defendants are attempting to stay the entire case—for years, potentially—through the filing of two IPR petitions before the PTAB (and this, despite having had notice of the Children Patents and Terrell prior art

7

reference for over two and a half years).  The law and the facts make clear that a stay (1) will not simplify the issues in question and trial of the case, (2) will unduly prejudice Bytemark and present Defendants with an unfair tactical advantage, and (3) is not warranted given the stage of the proceedings.

A.     **A stay will not simplify the issues in question and trial of the case.**

The first factor—whether a stay will simplify the issues in question and trial of the case— is not satisfied here.  There are multiple reasons why staying the case will not simplify the issues or the trial in this litigation.  As an initial matter, the two patent infringement claims are only part of the case, which involves six other causes of action: breach of contract, violation of the Defend Trade Secrets Act, misappropriation of trade secrets under New York law, misappropriation of trade secrets under New Jersey law, unfair competition under New York law, and unjust enrichment under New Jersey law.  Indeed, prior to Bytemark's amendment of its complaint to add infringement of the Children Patents, the case was proceeding without any patent infringement claims.[2]  The IPR proceedings, if instituted, will have no bearing on Bytemark's other causes of action and, e.g., the multitude of discovery requests that have already been served and were specifically directed to these non-patent-infringement causes of action.  Even if the Children Patents were to be invalidated, this would have no impact on Bytemark's other claims, none of which requires a finding of patent infringement or even the existence of a valid patent.

Furthermore, the PTO has not yet even decided whether to institute IPR proceedings for Defendants' petitions.  Thus, "the Court must gauge not only the possibility that IPR will simplify

---

[2] Defendants themselves, in opposing Bytemark's motion for leave to amend the complaint to add claims for patent infringement, characterized this lawsuit as a "trade secret and breach of contract case."  Dkt. #107, at 1 ("[H]aving voluntarily dismissed its prior patent claims from this litigation, Bytemark should not be permitted to transform this trade secret and breach of contract case back into a patent lawsuit.").

the issues presented by these cases but also the likelihood that the PTO will institute IPR in the first place." *Grecia v. MasterCard, Inc.*, No. 15-CV-9059 (RJS), 2017 WL 11566955, at *2 (S.D.N.Y. Apr. 3, 2017). "A number of courts have found that this 'additional layer of doubt' weighs against granting a stay in similar circumstances." *Id.* (citations omitted); *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 13-cv-0633, 2014 WL 201965, at *5 (N.D.N.Y. Jan. 15, 2014) ("Several courts have concluded that the factors relevant to a stay analysis cannot be meaningfully addressed until the PTO determines whether to institute an IPR."). As the court explained in *Rensselaer*,

> Because the PTO has yet to make even an initial determination of the pending IPR petitions, and neither plaintiffs nor [defendant] can be certain of when the PTO may issue that decision, I conclude that this factor weighs against granting a stay. While sensitive to the expense associated with litigating a patent infringement case, I am unable to conclude that there is a sound basis to place this case on hold during the pendency of the IPR petition and preclude the parties from continuing to engage in pretrial discovery. Until the PTO acts on the pending petition, the court is unable to assess with precision the extent, if at all, to which a decision on the petitions may serve to simplify the issues of this case.

*Rensselaer*, 2014 WL 201965, at *6. This Court has similarly stated:

> During the period of time between the filing of IPR petitions and the decision to institute proceedings, the Court and the parties are essentially treading water. If the Court were to issue a stay, this case would be left languishing on the Court's docket with no progress being made. *See Automatic Mfg. Sys.,* 2013 WL 1969247, at *3 ("The patent owner should be able, if it desires, to prosecute its claims, to take discovery, and to set its litigation positions, at least until such a time as the USPTO takes an interest in reviewing the challenged claims.").

*CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669 NSR, 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014).

Moreover, even if the IPRs are instituted—which is far from certain—it is still unlikely that staying this case pending a resolution would simplify the issues or the trial. According to this Court:

> [An] IPR can take up to 18 months' time in the PTAB, and there may be two years of appellate review in the Federal Circuit, creating a three-year delay, or more.  And it would not be unusual for parties to disagree on the scope and significance of a decision, or about the effects of issues not based on prior art, or on different patents, some similar and some different.  One cannot tell, and meanwhile time is wasted, parties' business practices are paralyzed, and expenses mount.

*Intell. Ventures II L.L.C. v. JP Morgan Chase & Co.*, No. 13 CIV. 3777 (AKH), 2014 WL 10919562, at *3 (S.D.N.Y. Aug. 11, 2014).  The only issue that may be potentially resolved in the IPR proceedings is obviousness under 35 U.S.C. § 103, based on the prior art identified by Defendants in their petitions.  *See* **Ex. A** (Excerpt of Petition, IPR2022-00624); **Ex. B** (Excerpt of Petition, IPR2022-00621).  All of the other bases for challenging the validity of the claims which Defendants have asserted in this case, in particular, invalidity of the claims based on 35 U.S.C. §§ 101, 102, 112, 116, and 256 (Dkt. #140, ¶¶ 140, 261-63), cannot be addressed in the IPR proceedings, even if instituted.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016) (explaining that *inter partes* reviews are limited to grounds "that could be raised under section 102 [anticipation] or 103 [obviousness] and only on the basis of prior art consisting of patents or printed publications"); *Rensselaer*, 2014 WL 201965, at *7 ("Even assuming that the PTO institutes IPR on some or all of the … [p]atent claims, the review is limited to invalidity arguments based on anticipation and obviousness, and then only based on prior art consisting of patents or printed publications …. Thus, barring a cancellation of all of the claims challenged by [Defendant], the PTAB's IPR decision will serve to enlighten the parties and the court on a limited number of matters, and estoppel will attach only to the claims [Defendant] asserted or could have reasonably asserted before the PTO.").  Additionally, in the event Defendants' IPR petitions are not granted in full (*i.e.*, some asserted claims survive the IPRs), the Court will still need to resolve Bytemark's patent claims in this case.

This Court is the only forum in which all of the asserted patent claims and all of the defenses and legal issues raised by the parties—e.g., subject matter eligibility, non-obviousness, indefiniteness, and infringement, among others—can be decided.  Thus, the PTAB's rulings, if any, will not simplify the issues or the trial in this case.  For all of these reasons, the first factor strongly weighs against issuing a stay in this case.

### B.    A stay will unduly prejudice Bytemark and present Defendants with an unfair tactical advantage.

The second factor also weighs strongly against a stay, as Defendants' stay request would unduly prejudice Bytemark—which has an interest in the timely and cost-effective enforcement of its rights—and give Defendants the meaningful tactical advantage that they seek.  "The question of undue prejudice or clear tactical advantage is informed by four sub-factors, including (1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties."  *Rovi Guides, Inc. v. Comcast Corp.*, No. 16-CV-9278 (JPO), 2017 WL 4876305, at *4 (S.D.N.Y. Oct. 27, 2017) (citation omitted).  These factors weigh strongly in favor of Bytemark.

### 1.    The timing of the review request weighs against granting a stay.

Defendants have had notice of the Children Patents' claims since July 2, 2019; of Bytemark's intention to amend its complaint to add claims for infringement of the Children Patents since July 16, 2019; and that the Court granted Bytemark's motion to amend on March 31, 2021.  Despite this knowledge, Defendants waited until February 18, 2022, to file its IPR petitions, suggesting a dilatory motive.[3]  *See Rensselaer*, 2014 WL 201965, at *4 ("The fact that an accused

---

[3] Any assertion by Defendants that they were that they were waiting for Bytemark to file the amended complaint is unavailing.  Bytemark has made clear since the Children Patents issued that it would pursue claims of patent infringement against Defendants—either in this case or, if denied leave to amend its complaint, in a separate lawsuit.

infringer waits until one year after being served with a complaint in an infringement action to submit its IPR petition at least raises the possibility that it was a dilatory tactic.") (citation and internal alterations omitted).

Further, Defendants' position is that "the Asserted Patents are 'remarkably similar' to the '967 patent, and the PTAB previously instituted review of this patent and found certain of its claims invalid over the same Terrell reference presented in the IPRs" (Motion at 7), and Defendants' IPR petitions feature as a centerpiece "the same Terrell reference" (Ex. A; Ex. B). Accordingly, there is no justification for Defendants' delay in seeking the IPRs. *See, e.g.*, *Document Dynamics, LLC v. Xerox Corp.*, No. 20-CV-6519W, 2021 WL 2009897, at *5 (W.D.N.Y. May 20, 2021) ("[p]articularly troubling is the fact that defendant waited so long to seek reexamination and a stay notwithstanding the duration of its awareness of the prior art references on which the reexamination is based[;] ... [s]uch delay suggests that it is using the reexamination process as a mere dilatory tactic" (quoting *Cynosure, Inc. v. Cooltouch Inc.*, No. CIV.A. 08-10026, 2009 WL 2462565, *3 (D. Mass. Aug. 10, 2009))); *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, No. 1:15-CV-00892, 2019 WL 5597311, at *4 (N.D. Ga. Sept. 9, 2019) (collecting cases demonstrating that delays of three to eight months after discovering prior art warranted denial of stays pending reexamination).[4] Defendants' delay in filing the IPR petitions— more than two and a half years after they first had notice of the Children Patents, and despite their early awareness of the prior art—creates a plausible inference that Defendants' attempt to stay the

---

[4] *Cf. Rovi Guides*, 2017 WL 4876305, at *2 (stating that where the defendant "filed its first IPR petition in November 2016 and filed its last petition on March 1, 2017, nearly a year after [the plaintiff] filed its complaint," the defendant's "contention that it proceeded with its IPR petitions as quickly as possible is not immediately persuasive," "although made somewhat more plausible by the very large volume of asserted claims" contained in its 45 IPR petitions).

case now, right after the Court accelerated the pace of the litigation and issued rulings adverse to Defendants, is a dilatory tactic.[5]

### 2.     The timing of the request for stay weighs against granting a stay.

Although Defendants may have moved for a stay "a few weeks" after filing their IPR petitions, as discussed in Section IV.B.1, Defendants delayed in submitting these petitions and in requesting the associated stay.  Defendants' request for a stay comes only after significant case events—including the Court's entry of a scheduling order accelerating the timeline of the litigation—and adverse decisions, including granting Bytemark's motion to compel and the Court's determination that "Defendants have not demonstrated that their inequitable conduct defense is meritorious."  Courts have rejected similar attempts to create a tactical advantage.  *See, e.g.*, *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. 5:11-CV-00671, 2012 WL 6003311, *3 (N.D. Cal. Nov. 30, 2012) (denying stay where defendant requested stay only after significant case events, including denial of stay in related case, denial of motion to dismiss, and receipt of invalidity contentions providing insight into opposing parties' theories; "[o]ver a year into this litigation, Defendants have made this request only after the occurrence of [these] three events[;] ... [i]n light of these developments ..., there appears no other reasonable explanation for the delay in seeking this relief"); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 408 (W.D.N.Y. 1999) ("Defendants were aware of the alleged prior art they cited to PTO in the request for reexamination as early as March of 1998, yet chose to continue litigation in this [c]ourt, waiting until October of 1998 (after

---

[5] That Defendants are trying to delay the progress of the proceedings is also supported by Defendants' stated intent to file numerous other motions, including a motion to dismiss Defendant NJ Transit based on Eleventh Amendment immunity—which could have been filed over five years ago, when Bytemark first brought its lawsuit—and a motion to stay discovery against NJ Transit while the motion to dismiss is pending. Dkt. #158, at 4-5.

an adverse decision in their motion for summary judgment) to petition PTO for reexamination.").
Accordingly, this sub-factor weighs against granting a stay.

### 3. The status of the review proceedings weighs against granting a stay.

The "status of the review proceedings" sub-factor also strongly favors Bytemark.  As
discussed in Section IV.A., the PTO has not yet even decided whether to institute IPR proceedings
for Defendants' petitions.  This Court has concluded that this factor weighs against granting a stay
where the PTO "has yet to make even an initial determination of the pending IPR petitions, and
neither plaintiffs nor [the defendant] can be certain of when the PTO may issue that decision."[6]
*Rovi Guides*, 2017 WL 4876305, at *4 (quoting *Rensselaer*, 2014 WL 201965, at *6); *see also*
*Grecia*, 2017 WL 11566955, at *3 ("Where such a stay could result in a tactical advantage to one
party or the other, this Court will not employ its discretion to stay the ordinary course of its
proceedings simply because the outcome of the Patent Office proceedings *may* moot the issues
remanded." (citation omitted)).

Because the PTAB has not yet decided whether to institute the IPRs, staying this case
pending the resolution of the IPRs "could result in substantial delay" and "would interrupt the
work of this Court."   *Intell. Ventures*, 2014 WL 10919562, at *3-4 (further explaining that

---

[6] Defendants cite this Court's decision in *Goodman v. Samsung Elecs. Am., Inc.* to support the
proposition that "courts have repeatedly granted stays before institution."  No. 17-CV-5539 (JGK),
2017 WL 5636286, at *1 (S.D.N.Y. Nov. 22, 2017).  However, *Goodman* is distinguishable for
numerous reasons, including that (1) the IPR petitions in that case challenged the patent claim on
which the plaintiff's "entire suit [wa]s premised"; (2) the plaintiff had filed the case "just over four
months ago" and the court had "not yet held an initial conference" or issued a scheduling order
affixing dates for discovery; (3) the IPR petition was filed "about one month after [the plaintiff]
filed his complaint in th[e] action"; and (4) the PTAB had previously initiated an IPR based on the
same patent, with the same arguments, but did not have an opportunity to decide the IPR because
the parties settled (which led the Court to conclude that "it [was] more likely that the PTAB
w[ould] initiate *inter partes* review on [the] petition to resolve the issues it could not decide
before").  *Id.* at *3.

"[t]he IPR process can take up to 24 months between the filing of a petition for review and the PTAB's issuance of a final decision …. The parties may then appeal the PTAB's decision to the Federal Circuit Court of Appeals, with all the attendant delays of the appellate process, perhaps another two years").  If the Court were to grant a stay pending resolution of the IPRs, Bytemark "would lose the benefit promised by the Federal Rules of Civil Procedure—a 'just, speedy, and inexpensive determination of every action and proceeding,'" and Defendants "would have the advantage of delay and continuing utilization of patented devices and systems that the law suit is intended to regulate." *Id.* at *3; *see also Grecia*, 2017 WL 11566955, at *3.

### 4.    The relationship between the parties weighs against granting a stay.

Finally, the relationship between the parties favors not granting a stay.  "An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors … because there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *CDX Diagnostics*, 2014 WL 2854656, at *4 (citation omitted).  "[T]he extent to which such a relationship ultimately influences a court's decision on whether to grant a stay is largely dependent upon the particular circumstances of the case." *Lederer v. Avotec, Inc.*, No. CV16966, 2017 WL 11113809, at *7 (E.D.N.Y. Aug. 15, 2017).  "[T]he direct competitive relationship of two parties to litigation is a significant, potentially overriding factor in deciding whether to grant a stay, particularly when they are direct competitors in a 'niche market.'" *Id.*

Here, Bytemark and Defendants are direct competitors in the niche mobile ticketing application market.  Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open

APIs.   Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for. consumers and merchants.   Defendants, through the relationships detailed in Bytemark's complaint, have created, offered for sale, and sold visual validation mobile ticketing applications and systems, including the infringing and competing MyTix mobile ticketing project for NJ Transit.   *See, e.g.*, Dkt. #139 ¶¶ 4-16, 25-38.   Bytemark's complaint specifically alleges, for example, that "the Xerox Entities have and continue to use and/or disclose Plaintiff's trade secrets and confidential information to develop and sell a competing mobile ticketing platform."   Dkt. #139 ¶ 132.   Bytemark's complaint also contains specific allegations that Defendants are responsible for its loss of market share and an erosion of goodwill, stating:

> Defendants' use of Bytemark's trade secrets to secure contracts that otherwise would have been awarded to Plaintiff has been detrimental to Plaintiff.   For example, Plaintiff's existing contract with New York Waterway, which was supposed to be renewed in accordance with the terms of the original agreement in early 2017, has not been extended.   Instead, New York Waterway informed Bytemark that it had a better deal with Defendants.

Dkt. #139 ¶ 120; *see also* Dkt. #139 ¶¶ 40-42.   Additionally, Bytemark alleges that:

> Defendants cut Plaintiff out of the joint bidding efforts and improperly used and disclosed Plaintiff's patents and trade secrets to bid on and secure their own contracts, including an integrated transportation contract with New York Waterway.   In so doing, Defendants exploited the exclusive commercial advantage Plaintiff had previously held in the mobile ticketing application market.

Dkt. #139 ¶ 124.

Bytemark has already lost, and continues to lose, market share and goodwill due to Defendants' wrongful conduct, including patent infringement, misappropriation of trade secrets, breach of contract, and unfair competition.   If Bytemark had not partnered with the Xerox Entities, it would have partnered with another entity—as it has on other projects—to secure the NJ Transit Contract.   Instead, Bytemark has suffered monetary damages and loss of goodwill based on

Xerox's sale of the infringing MyTix platform to NJ Transit.  Likewise, Bytemark's existing contract with its first and longtime customer New York Waterway—which was highly publicized and well known in the mobile ticketing market—was not renewed in accordance with the terms of the original agreement in early 2017, because New York Waterway informed Bytemark that it had a better deal with Defendants.  Dkt. #139 ¶¶ 42, 120.  Only after Bytemark initiated this action did New York Waterway agree to temporary short-term extensions to the contract.  Dkt. #139 ¶ 42.  These losses—which will continue during any period of time during which Defendants are allowed to continue selling their products—cannot be remedied by monetary damages alone, and staying this case would be highly prejudicial to Bytemark.  *See CDX Diagnostics*, 2014 WL 2854656, at *5.  This is particularly true because the very existence of an active lawsuit is deterring customers and potential customers, including New York Waterway, from purchasing and using Defendants' infringing platform.

Defendants' assertion that Bytemark will not be prejudiced by a stay because "Defendants have a different business model and product than Bytemark and are not aware of any bid against Bytemark in any of their current projects" (Motion at 12) is without merit.  Defendants' and Bytemark's products—which are both mobile ticketing platforms and both serve the same niche market—are the same.[7]    And as Bytemark's allegations make clear, the parties compete for the

---

[7] Furthermore, in *CDX Diagnostics*, the defendants similarly argued that "the parties are not direct competitors" because plaintiff CDX Diagnostics was a supplier of laboratory services (including brushes it bought from a third-party supplier and then provided to customers as part of a specimen kit), and the defendants were in the business of making endoscopic accessories, including brushes. *CDX Diagnostics*, 2014 WL 2854656, at *5.  Although the Court stated, "[i]t cannot be said that the parties are direct competitors because they each perform different functions within the marketplace," the Court nonetheless held that this factor weighed against granting a stay, "because the prejudice to Plaintiffs[] would not be easily remedied through monetary damages."  *Id.*

same customers.  Bytemark is at serious risk of further loss of market share and erosion of goodwill should the Court grant the requested stay, and this factor leans strongly in favor of Bytemark.

### 5.   There is an inference that Defendants are seeking an inappropriate tactical advantage.

Defendants' filing of the IPR petitions and subsequent request to stay this case create an inference that Defendants are seeking an inappropriate tactical advantage.  In a recent case, Defendant Xerox Corp. sought a stay pending the outcome of reexamination proceedings before the PTO.  *See Document Dynamics*, 2021 WL 2009897, at *2.  The court, weighing the stay factors, determined that "the parties are not competitors in the market place, the reexamination petitions have been granted by the PTO, and Xerox moved for a stay approximately one month after receiving notice that its petitions were granted—all factors which weigh in favor of granting a stay in this matter."  *Id.* at 4.  However, the court explained, "In evaluating prejudice, courts have found that when requests for reexamination are made well after the onset of litigation, coupled with a subsequent request to stay, there is an inference that the moving party is seeking an inappropriate tactical advantage."  *Id.* (citations omitted).  Similar to this case, in *Document Dynamics* (1) Xerox had knowledge of three of the five "prior art references upon which the reexamination petitions rely, yet for almost two years "did not seek reexamination of the patent from the PTO," (2) following an adverse ruling, Xerox then filed "a motion that easily could have been filed much earlier in the litigation" (here, Defendants' proposed motions to dismiss NJ Transit and stay discovery against NJ Transit), (3) Xerox "accus[ed]" the plaintiff of delaying the discovery process, yet "it was [the plaintiff] which moved to compel production of discovery from Xerox," and (4) "[r]ather than promptly seeking reexamination," Xerox, through the use of these tactics, "further expend[ed] the resources of both the court and its opponent."  *Id.* at *4-5.  Given these

considerations, the court found that the undue prejudice factor "weigh[ed] strongly in favor of denial of the stay." *Id.* at 5.

For all of these reasons, a stay will similarly unduly prejudice Bytemark and present Defendants with an unfair tactical advantage, and this factor weighs strongly in favor of Bytemark.

### C.    A stay is not warranted given the stage of the proceedings.

The third and final factor—how far the case has progressed—also weighs against granting a stay.  "[D]istrict courts commonly deny motions to stay pending patent reexamination in cases where substantial proceedings, including discovery, have occurred." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 177 (S.D.N.Y. 2009).  "Even where a case is in its early stages of litigation, a stay should still be denied if it offers limited potential to narrow the issues in the case and the non-moving party will suffer undue prejudice by the delay." *Id.* at 178.

Here, the case has already progressed substantially, despite years of stonewalling by Defendants.  Bytemark filed its lawsuit over five years ago, on March 10, 2017.  Dkt. #1. Defendants filed a motion to dismiss in December of that year, which was denied in part and granted in part on September 24, 2018.  Dkt. #72.  On December 27, 2018, Bytemark served its First Set of Requests for Production on Defendants.  Dkt. #120-1.   On February 14, 2019, Bytemark advised Defendants of their failure to provide documents in response to its requests, including documents regarding the creation and development of the accused systems.  Dkt. #120-3.  On March 11, Defendants stated that they would make their confidential information available "after we've had a chance to review and understand Bytemark's alleged trade secret information," and "[o]nce the protective order is entered, Defendants will produce limited, responsive discovery."  Dkt. #120-4.

On December 23, 2019, the Court entered its protective order, and Defendants did not produce any additional discovery.  On February 3, 2020, Bytemark produced documents covered under the protective order, and, the next day, served its Second Set of Requests for Production on Defendants.  Dkt. #120-2.  Once again, Defendants produced none of the requested documents and, instead, objected to all of Bytemark's requests.  Dkt. #120-5, 120-6.  For months, Bytemark attempted to obtain the requested discovery from Defendants, informing them that Bytemark would not be withholding any discoverable material and agreeing—pursuant to Defendants' demand—to make available for inspection all of its source code and confidential documents that include proprietary and trade secret-protected information.  Dkt. #120-6, at 1-7.  Defendants continued to deny Bytemark the requested discovery.  Dkt. #120-6, at 1-5; 120-7, at 1-3.

The parties filed a letter to the Court on December 10, 2020, requesting a hearing relating to these discovery issues, and the parties filed competing motions to compel on January 6, 2021.  Dkt. #115-24.  On January 13, the Magistrate Judge denied both motions with prejudice, the parties filed objections to the Magistrate Judge's order, and Bytemark asked that the Court consider decide the motion to compel on the merits.  Dkt. #133-37.  Meanwhile, on July 23, 2019, Bytemark requested leave to file a Third Amendment Complaint to add claims for infringement of the Children Patents—which Defendants opposed—and the parties litigated this issue until the Court granted Bytemark's request to file the motion on March 17, 2020.  Dkt. #103.

Following entry of its Third Amended Complaint, Bytemark served its Third Set of Request for Production on Defendants on July 12, 2021.  Dkt. #146.  Defendants once again objected to the requests and, over the course of several months, Bytemark met and conferred with Defendants regarding their objections.  *See* Dkt. #146.  On November 29, 2021, Bytemark filed a letter to the Court requesting leave to file another motion to compel.  Dkt. #146.

On January 11, 2022, the Court sustained the parties' objections to the Magistrate Judge's orders, granted Bytemark's motion to compel, and ordered Defendants to respond to Bytemark's requests for production by January 19, 2022. Dkt. #148. Both sides have retained experts, and these experts have reviewed—and continue to review—source code and confidential documents. During the parties' January 21, 2022 conference, the Court expressed "concern[] about the age of the case" and that the case "has gone on for too long, and it has my attention now, and we need to come up with a concrete plan for how we can get these tasks done and bring the case to resolution." *See* Tr. at 7:1-2, 8:8-11 (Jan. 21, 2022). And, on January 31, the Court entered a scheduling order, accelerating the timeline of this litigation. The Court set dates later this year for the completion of fact discovery, deposition of fact witnesses, and expert discovery. Dkt. #159. The Court also set a deadline later this year for post-discovery motions, Dkt. #159, at 3, setting the stage for trial. *See Intell. Ventures*, 2014 WL 10919562, at *3 ("[T]here is another year, at most, of litigation … before the issues are resolved by trial. I fail to understand why it would be cheaper, or more efficient or quicker to wait for three years and speculate what benefit might be achieved by an IPR.").

Thus, the record makes clear that substantial progress has taken place in this case. Defendant's assertions that "[t]he parties have far more left to do in this litigation than they have done already," "the parties must engage in substantial and costly discovery by way of exchanging further document requests and productions," and "Defendants also anticipate that the parties will expend significant resources meeting and conferring regarding this discovery" (Motion at 9), are disingenuous. Defendants have consistently attempted to slow the pace of this litigation, including by filing the instant Motion. With respect to discovery, Bytemark, since 2018, has served three sets of requests for production on Defendants. Defendants for years refused to produce any

information aside from a handful of publicly available documents. Until the Court granted Bytemark's Motion to Compel, Defendants even refused to produce source code and documents they conceded were relevant and that they were obligated to produce. Dkt. #121, at 1. To date, Defendants continue to withhold discoverable information, including source code. As in *Document Dynamics*, "[w]ith respect to discovery, despite Xerox's accusation that [Bytemark] delayed the process …, it was [Bytemark] which moved to compel production of discovery from Xerox." *Document Dynamics*, 2021 WL 2009897, at *4. Additionally, to the extent Defendants argue there is "far more left to do" based on, e.g., their proposed motion to dismiss NJ Transit from the case, this motion could have been made five years ago, when Bytemark first sued Defendants.

It is apparent that Defendants' attempt to stay this case is merely tactical, and that Defendants are trying to recharacterize the factual record to suit their needs. Indeed, Defendants have reversed their position from the one taken in their opposition to Bytemark's motion for leave to amend, where they urged the Court to press forward with the proceedings—which involve additional claims for trade secrets misappropriation, breach of contract, unfair competition, and unjust enrichment—and asked that the case not be delayed due to the risk that Defendants would "lose access to key witnesses or employees who were involved in developing the MyTix mobile application." Dkt. #107, at 14-15.

Because the stay factors all weigh heavily in favor of Bytemark, a stay would be inappropriate in this case.

## V.    CONCLUSION

For the foregoing reasons, Bytemark respectfully asks that the Court deny Defendants' Motion in full.

Dated: March 25, 2022

Respectfully submitted,

s/ Dariush Keyhani
Dariush Keyhani
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Plaintiff*