# McKool Smith

| | | |
|---|---|---|
| Ashley Moore<br>Direct Dial:  214.978.6337<br>amoore@mckoolsmith.com | 300 Crescent Court<br>Suite 1500<br>Dallas, TX 75201 | Telephone: (214) 978-4000<br>Facsimile: (214) 978-4044 |

May 9, 2022

**VIA ECF**
Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 705
New York, NY 10007

      RE:    *Bytemark, Inc. v. Xerox Corp. et al.*, 1:17-cv-01803-PGG, NJ Transit Motion
              for Summary Judgment based on Eleventh Amendment Immunity

Dear Judge Gardephe:

      In accordance with your Individual Rule of Practice IV(A), Defendant New Jersey Transit Corp. ("NJ Transit") submits this letter to request a pre-motion conference on a motion for summary judgment based on Eleventh Amendment immunity.[1] The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment protects from suit both non-consenting states and "those entities that are so intertwined with them as to render them 'arms of the state.'" *Karns v. Shanahan*, 879 F.3d 504 (3rd Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 545 (3d Cir. 2007), *amended on reh'g* (Mar. 8, 2007)). NJ Transit is an arm of the state of New Jersey and thus immune from suit.

      The Third Circuit held precisely that in *Karns*, 879 F.3d 504. There, two individuals filed civil rights actions against NJ Transit. *Id*. at 510. The district court entered summary judgment in NJ Transit's favor, "concluding that NJ Transit was an 'arm of the state' entitled to claim immunity from suit in federal court under the Eleventh Amendment." *Id*. at 512. The Third Circuit affirmed. *Id*. at 512–19. After an extensive analysis, it found that New Jersey state law considers NJ Transit an arm of the state, and that NJ Transit exhibits little autonomy apart from New Jersey. *Id*. It thus concluded that "NJ Transit is entitled to claim the protections of Eleventh Amendment immunity[.]" *Id*. at 519.

---

[1] In email correspondence and a subsequent meet and confer, counsel for Plaintiff Bytemark, Inc. indicated that Bytemark opposes NJ Transit's requested relief.

Despite *Karns*' unequivocal holding, Bytemark opposes dismissing its claims against NJ Transit. During a meet and confer, Bytemark indicated that it had only one basis for its opposition: that the Third Circuit and Second Circuit apply slightly different factors to determine whether an entity constitutes an arm of the state. Bytemark believes that under the Second Circuit factors, NJ Transit is not an arm of New Jersey. In other words, Bytemark acknowledges that it could not bring its claims against NJ Transit in the United States District Court for the District of New Jersey but contends that by filing suit on the other side of the Hudson, it can skirt the Eleventh Amendment's protections.

Bytemark is mistaken—its forum shopping makes no difference to NJ Transit's Eleventh Amendment status. Reviewing the Second Circuit's "arm of the state" factors—known as the *McGinty* factors—illustrates as much. In the Second Circuit, "whether an entity is an arm of the State depends on six factors: (1) how it is referred to in its documents of origin, (2) how its governing members are appointed, (3) how it is funded, (4) whether its function is traditionally one of local or state government, '(5) whether the state has a veto power over the entity's actions, and (6) whether the entity's financial obligations are binding upon the state.'" *Walker v. City of Waterbury*, 253 F. App'x 58, 60–61 (2d Cir. 2007) (quoting *McGinty v. New York*, 251 F.3d 84, 95–96).[2] Each factor weighs in favor of finding that NJ Transit is an arm of the state.

### 1. NJ Transit's Origin Documents

NJ Transit's origin documents and treatment under New Jersey law heavily favor finding that it acts as an arm of the state.[3] NJ Transit "is statutorily 'constituted as an instrumentality of the State exercising public and essential governmental functions.'" *Karns*, 879 F.3d at 517 (quoting N.J. Stat. Ann. § 27:25-4). It is "allocated within the Department of Transportation," N.J. Stat. Ann. § 27:25-4, which is a principal department within the Executive Branch of the State of New Jersey, N.J. Stat. Ann. § 27:1A-2. "NJ Transit is also considered state property for tax purposes and is exempt from state taxation." *Id*. (quoting N.J. Stat. Ann. § 27:25-16); *see Mancuso v. New York State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996) (finding this factor weighs in favor of Eleventh Amendment immunity where the Legislature has accorded the entity in question "immunity from taxes."). New Jersey state courts also regard NJ Transit as an agency of the state. *See id*. (compiling eight New Jersey state court decisions supporting the proposition that state case law regards NJ Transit as an agency of the state).

---

[2] The Third Circuit considered similar factors in *Karns*: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Karns*, 879 F.3d at 513.

[3] While the plain language of this factor only refers to "how the entity is referred to in its documents of origin," the Second Circuit looks beyond state statutes to how state courts consider the entity in question. *See*, *e.g.*, *McGinty*, 251 F.3d at 96 (finding this factor favors immunity for the New York State and Local Employees' Retirement System based on a decision from the New York Court of Appeals because "New York's highest court tells us how New York courts view the Retirement System."). New Jersey statutes and case law both view NJ Transit as an arm of the state.

### 2. Appointment of Governing Members

The New Jersey Governor is responsible "for appointing the entire NJ Transit governing board, which is composed of several members of the Executive Branch." *Karns*, 879 F.3d at 518 (citing N.J. Stat. Ann. § 27:25-4(b)). This factor thus weighs in favor of finding immunity. *Mancuso*, 86 F.3d at 296 ("This factor is easier to apply than the first, and it favors a finding of immunity: all three board members are appointed by the Governor of New York with the advice and consent of the state Senate.").

### 3. Funding

NJ Transit receives substantial funding from the state of New Jersey. Indeed, it has received state funding in every year of its operation. In 2020, it received more than $450 million from the state. *See* NJ Transit, *2021 NJ Transit Annual Financial Report*, https://data.nj.gov/Transportation/2021-New-Jersey-Transit-Annual-Report/5t6c-4ecu/data, at page 7 (pdf page 94 of 160) (showing "state appropriations" of $457,466,000 for 2020). It received $214 million in 2021. *Id*. Given these substantial State contributions, the funding factor favors immunity. *See McGinty*, 251 F.3d at 97 ("[T]he state makes significant payments each year to the Retirement System for the payment of benefits and expenses. . . . Hence, the third factor also weighs in favor of immunity.").

### 4. Traditional Function of State or Local Government

NJ Transit's operations are those of a state, not local, government. Indeed, in NJ Transit's founding documents, the New Jersey Legislature recognized, "[a]s a matter of public policy, it is the responsibility of **the State** to establish and provide for the operation and improvement of a coherent public transportation system in the most efficient and effective manner." N.J. Stat. Ann. § 27:25-2 (emphasis added). It thus created NJ Transit to achieve that purpose. Today, NJ Transit's operations span the state, providing transportation to nearly a million riders every weekday. It is the nation's third largest provider of bus, rail and light rail transit, "linking major points throughout New Jersey and across State borders to New York and Pennsylvania, with daily service to New York City and Philadelphia." State of New Jersey Department of Transportation, *Comprehensive Strategic, Financial & Operational Assessment of NJ Transit October 5, 2018*, https://www.nj.gov/governor/docs/20181005NJTransitFinalReport.pdf, at page i. Under Second Circuit case law, NJ Transit's state-spanning operations indicate that it performs the work of a state governmental entity. *See Mancuso*, 86 F.3d at 295 (finding this factor favors immunity for the New York State Thruway Authority because "[a]lthough the construction and operation of roads and bridges may be viewed as either a state or local function, the thruway stretches across the entire state and therefore, the Thruway Authority performs a function that a state would normally provide.").

### 5. State veto power

The Governor of New Jersey "can veto any action taken by NJ Transit's governing board." *Karns*, 879 F.3d at 518 (citing N.J. Stat. Ann. § 27:25–4(f)). Indeed, no action taken at an NJ Transit board meeting has "force or effect until approved by the Governor or until 10 days after" any board meeting minutes have been delivered to the Governor and not received a veto.

N.J. Stat. Ann. § 27:25–4(f). Certain of its acquisitions are also subject to legislative veto. N.J. Stat. Ann. § 27:25-13(h). These same facts led the *Karns* court to conclude that NJ Transit exercises limited autonomy apart from the State, 879 F.3d at 518, and they heavily support a finding that NJ Transit operates as an arm of the State.

### 6. The State's obligations for NJ Transit's financial obligations

Admittedly, the State of New Jersey is not under a legal obligation to pay NJ Transit's debts or to reimburse NJ Transit for any judgments that it pays. N.J. Stat. Ann. § 27:25-17. Nonetheless, the State of New Jersey's lack of legal responsibility for any judgment in this case is not dispositive on this factor. Other Circuits have found sovereign immunity for similarly funded public transportation entities for which the states in question disclaimed liability. *See, e.g.*, *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993); *Morris v. Washington Metro. Area Transit Auth.*, 781 F.2d 218 (D.C. Cir. 1986).

In *Alaska Cargo*, the Ninth Circuit held that Alaska Railroad Corporation was entitled to sovereign immunity as an alter ego of the State of Alaska. 5 F.3d at 378. The court came to that conclusion even though Alaska had expressly disclaimed liability for the Alaska Railroad Corporation by statute. *Id.* at 380, 382. The court found it significant that "a money judgment against ARRC likely would impact Alaska's treasury because of the state's strong interest in keeping ARRC operationally and fiscally sound." *Id.* at 382. The State of New Jersey has the same interest with respect to NJ Transit.

The D.C. Circuit came to a similar conclusion in *Morris*. 781 F.2d at 218. The court held that the Washington Metro Area Transit Authority ("WMATA") was entitled to immunity, even though its founding states had expressly disclaimed liability. 781 F.2d at 225. The court looked both to the status of the WMATA under the founding states' law, and to the fact that the founding states anticipated that the WMATA would operate a deficit from its inception. *Id.* at 225–27. The practical effect, then, of a judgment against WMATA would be that the state would need to pay it. *Id.* at 225 ("Because we deal with 'practical consequences,' it is not necessary that the state be obligated to pay a judgment, but only that that would be the result.").

So too here. When creating NJ Transit, the State of New Jersey understood that the entity would operate at a deficit, with the State making up any shortfalls. *See, e.g.*, Senate Bill 3137, Public Transportation Act of 1979, Fiscal Note, June 8, 1979, at 1 (estimating that NJ Transit could save the state $5 million over the existing system, which cost roughly $50 million.). NJ Transit has since operated at a deficit in every year of its existence. Thus, the practical effect of any judgment against NJ Transit and in favor of Bytemark would be the same as a judgment against the State itself. This factor thus favors a finding that NJ Transit is subject to Eleventh Amendment immunity.

* * *

Each of the *McGinty* factors favors holding that NJ Transit is an arm of the state entitled to Eleventh Amendment immunity. That is unsurprising given the Third Circuit's decision in *Karns* after evaluating similar factors. NJ Transit asks that the Court thus grant it leave to file a motion for summary judgment to establish that immunity and receive the same protections to

which it is already entitled in the Third Circuit.

            Respectfully submitted,

            */s/ Ashley N. Moore*

            Ashley N. Moore