UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC.,<br><br>          **Plaintiff,**<br><br>    v.<br><br>XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP.,<br><br>          **Defendants.** | **CIVIL ACTION NO. 1:17-cv-01803 (PGG)**<br>**ECF CASE** |

# XEROX AND CONDUENT'S RESPONSE IN OPPOSITION TO THIRD-PARTY JENNIFER MEREDITH'S MOTION TO QUASH DEFENDANTS' SUBPOENA AND FOR A PROTECTIVE ORDER

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 3

    A. The *Masabi* Litigation ................................................................................................. 3
    B. The Current Litigation ................................................................................................. 3
    C. Bytemark's Motion to Dismiss Defendants' Inequitable Conduct Claims .................. 4

III. LEGAL STANDARDS ..................................................................................................... 7

    A. Rule 45 Subpoenas and Motions to Quash ................................................................. 7
    B. Depositions of Prosecuting Attorneys ........................................................................ 7

IV. ARGUMENTS .................................................................................................................. 9

    A. Meredith cannot avoid producing documents or appearing for deposition based on generic claims of privilege and work product protection. ............................................... 9
    B. Meredith and Bytemark cannot avoid discovery based on a pending motion to dismiss; Defendants' inequitable conduct claims are live and subject to discovery. ............ 11
    C. The subpoena does not unduly burden Meredith. ..................................................... 12

V. CONCLUSION ............................................................................................................... 14

**TABLE OF AUTHORITIES**

**CASES**

*aaiPharma, Inc. v. Kremers Urban Dev. Co.*,
  361 F. Supp. 2d 770, 776 (N.D. Ill. 2005) ................................................................................ 1
*Alcon Labs., Inc. v. Pharmacia Corp.*,
  225 F. Supp. 2d 340, 343 (S.D.N.Y. 2002) ................................................................ 2, 7, 10, 11
*Bowne of New York City, Inc. v. AmBase Corp.*,
  150 F.R.D. 465, 470 (S.D.N.Y.1993) ...................................................................................... 8
*Bytemark, Inc. v. Masabi Ltd.*,
  No. 2:16-cv-543-JRG/RSP, 2018 WL 7272023 (E.D. Tex. Nov. 26, 2018), ............................ 9
*Ema Fin., LLC v. Vystar Corp.*,
  336 F.R.D. 75 (S.D.N.Y. 2020) .............................................................................................. 12
*Hickman v. Taylor*,
  329 U.S. 495, 511, 67 S.Ct. 385 (1947) ............................................................................. 2, 10
*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
  297 F.R.D. 69, 72 (S.D.N.Y. 2013) ........................................................................................ 12
*In re Arthur Treacher's Franchisee Litigation*,
  92 F.R.D. 429, 438 (E.D. Pa. 1981) ....................................................................................... 10
*In re Grand Jury Subpoena Dated Jan. 4, 1984*,
  750 F.2d 223, 224 (2d Cir.1984) .............................................................................................. 8
*Mondis Tech. Ltd. v. LG Electronics, Inc.*,
  Civil Action No. 15-4431 (SRC), Dkt. 247 (D.N.J. Nov. 15, 2017) .................................. 1, 11
*MPT, Inc. v. Marathon Labels, Inc.*,
  1:04 CV 2357, 2006 WL 314435, at *3 (N.D. Ohio Feb. 9, 2006) ................................... 2, 10
*New York v. Almy Bros., Inc.*,
  971 F. Supp. 69, 72 (N.D.N.Y. 1997) .................................................................................... 12
*Nye v. Ingersoll Rand Co.*,
  CIV. 08-3481 DRD, 2011 WL 253957 (D.N.J. Jan. 25, 2011) ............................................... 7
*Perkins v. Gregg City*,
  891 F. Supp. 361, 363 (E.D. Tex. 1995) .................................................................................. 8
*Salcer v. Enicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984),
  *vacated on other grounds*, 478 U.S. 1015 (1986) ................................................................. 12
*Sandvik Intellectual Prop. AB v. Kennametal, Inc.*,
  2012 U.S. Dist. LEXIS 84028, at *6 (W.D. Pa. 2012) ............................................................ 1
*Softview Computer Prod. Corp. v. Haworth, Inc.*,
  No. 97 CIV. 8815, 2000 WL 351411, at *5 (S.D.N.Y. Mar. 31, 2000) .................................. 8
*Terves, LLC v. Yeuyang Aerospace New Materials Co. Ltd.*,
  Case No. 1:19-cv-1611, Dkt. 127 (N.D. Ohio Sept. 8, 2021) ............................................ 1, 11
*United States v. El Paso Co.*,
  682 F.2d 530, 542 (5th Cir. 1982) ........................................................................................... 8
*V. Mane Fils, S.A. v. Int'l Flavors & Fragrances, Inc.*,
  2008 U.S. Dist. LEXIS 63619, at *9 (D.N.J. 2008) ................................................................ 1
*von Bulow v. von Bulow*,
  811 F .2d 136, 144 (2d Cir. 1987) ........................................................................................... 8

*Wiwa v. Royal Dutch Petroleum Co.*,
 392 F.3d 812, 818 (5th Cir. 2004) .......................................................................................... 7
**RULES**

Fed. R. Civ. P. 26(b)(1) ............................................................................................................. 3, 8
Fed. R. Civ. P. 26(b)(3) ........................................................................................................ 2, 9, 11
Fed. R. Civ. P. 30(a)(1) .................................................................................................................. 8
Fed. R. Civ. P. 45 ........................................................................................................................... 3
Fed. R. Civ. P. 45(b)(1) ................................................................................................................ 15
Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................................ 8

I.   **INTRODUCTION**

Jennifer Meredith's Motion to Quash fails to set forth any valid basis for avoiding responding to Conduent and Xerox's subpoena.[1] She provides three reasons allegedly justifying quashing the subpoena: (1) the subpoena "primarily" seeks privileged and protected information; (2) any nonprivileged information she possesses is irrelevant in light of the Court's Memorandum Opinion allowing Bytemark to assert the patents-in-suit; and (3) the subpoena is unduly burdensome because Bytemark has produced the responsive documents already.

None of these arguments hold water. Courts around the country have rejected the first argument and routinely allowed discovery of prosecuting attorneys based on claims of inequitable conduct. *Mondis Tech. Ltd. v. LG Electronics, Inc.*, Civil Action No. 15-4431 (SRC), Dkt. 247 (D.N.J. Nov. 15, 2017) (attached as Exhibit 1) ("What [movant] ignores, but the Magistrate Judge recognized, is that attorneys engaged in patent prosecution are routinely subject to discovery when the prosecution process is placed in issue. See, e.g., V. Mane Fils, S.A. v. Int'l Flavors & Fragrances, Inc., 2008 U.S. Dist. LEXIS 63619, at *9 (D.N.J. 2008); Sandvik Intellectual Prop. AB v. Kennametal, Inc., 2012 U.S. Dist. LEXIS 84028, at *6 (W.D. Pa. 2012); aaiPharma, Inc. v. Kremers Urban Dev. Co., 361 F. Supp. 2d 770, 776 (N.D. Ill. 2005)."). That makes sense because merely prosecuting a patent does not generate protected work product. *Terves, LLC v. Yeuyang Aerospace New Materials Co. Ltd.*, Case No. 1:19-cv-1611, Dkt. 127 (N.D. Ohio Sept. 8, 2021) (attached as Exhibit 2) ("Work product immunity does not extend to attorney work related to ex parte patent application prosecution."). "Just like all other documents, patent prosecution documents are only protected as work product if they are prepared 'in anticipation of litigation.'"

---

[1] Meredith incorrectly describes NJ Transit as a subpoenaing party. *Compare* Dkt. 174 at 1 *with* Dkt. 174-2 (Subpoena) at 1.

*MPT, Inc. v. Marathon Labels, Inc.*, 1:04 CV 2357, 2006 WL 314435, at *3 (N.D. Ohio Feb. 9, 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385 (1947) and citing Fed. R. Civ. P. 26(b)(3)).

On the second argument, that any information Meredith possesses is irrelevant, Meredith impermissibly tries to avoid discovery based on Bytemark's pending motion to dismiss. But a motion to dismiss does not stay discovery and Defendants' inequitable conduct claims are live. Meredith does not and cannot dispute that she possesses documents and information relevant to Defendants' inequitable conduct claims. *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 343 (S.D.N.Y. 2002) ("[T]he prosecuting attorney's mental impressions are crucial to any claim of inequitable conduct in a patent infringement action."). Defendants expressly named Meredith as an individual who committed inequitable conduct. Dkt. 140 (Defendants' Answer to Plaintiff's Third Amended Complaint and Counterclaims) ¶¶ 154, 168, 179–80, 193–95, 196, 198–231. She is the only named attorney on the patents-in-suit. *Id*. ("White was the lead counsel for the prosecution of the '353 patent. His name is the only one that appears on the face of the patent as an attorney. Thus, White is likely the only source for much of the information Alcon seeks and the best source for the rest of the requested information because of his role in the prosecution of the patent."). The Federal Rules of Civil Procedure thus require she provide responsive documents to Defendants and make herself available for a deposition. Fed. R. Civ. P. 45; Fed. R. Civ. P. 26(b)(1).

On the third argument, relating to burden, Meredith incorrectly presumes that Bytemark possesses the documents and information Defendants seek from her. But it apparently does not. Defendants have asked Bytemark for documents relating to the prosecution of the patents-in-suit, but to-date Bytemark has not produced a single responsive document. In any event, Defendants' inequitable conduct claims also directly involve Meredith and put Meredith's state of mind at issue.

Her knowledge of the *Masabi* litigation and intent in withholding relevant materials from that litigation from the Patent Office is directly at the heart of Defendants' inequitable conduct claims. Whatever information Bytemark possesses cannot substitute for Meredith's first-hand knowledge on these issues. *Alcon Labs.*, 225 F. Supp. 2d at 343–44.

## II.   BACKGROUND

### A.   The *Masabi* Litigation

Shortly before suing Defendants in this action, Bytemark also sued Masabi for patent infringement of Patent Nos. 8,494,967 and 9,239,993 (the "Parent Patents"). *See* Dkt. 140 ¶ 183. As relevant here, the *Masabi* case did two things. It provided Bytemark with invalidity contentions detailing how the Parent Patents are invalid, and it resulted in a § 101 invalidity ruling that the Federal Circuit affirmed. *See id.* ¶¶ 183–90. Based on these rulings, Bytemark dismissed the Parent Patents from this case against Defendants.

### B.   The Current Litigation

Bytemark has now replaced the Parent Patents with Patent Nos. 10,346,764 and 10,360,567 (the "'764 patent" and the "'567 patent" and together, the "Children Patents" or "patents-in-suit"), which are children to the Parent Patents. Jennifer Meredith is the sole prosecuting attorney listed on the Children Patents. The Children Patents share the same disclosure, subject matter, and "remarkably similar"[2] claims to the Parent Patents. Despite this remarkable similarity, Meredith and Bytemark chose not to provide any of the *Masabi* materials to the Patent Office at any time during prosecution of the Children Patents. *Id.* ¶¶ 215–23. Contrary to its representations to this Court, it was not Bytemark that provided any of the *Masabi* materials to the Patent Office during

---

[2] *Bytemark, Inc. v. Masabi Ltd.*, 2:16-cv-543, 2018 WL 7272023, at *5 (E.D. Tex. Nov. 26, 2018), *report and recommendation adopted*, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), *aff'd*, 792 F. App'x 952 (Fed. Cir. 2020).

prosecution; six months **after** the Children Patents issued, the ***Masabi* court notified the Patent Office that the Parent Patents were invalid**. *See* Dkt. 142-2. Neither did Bytemark nor Meredith ever provide the *Masabi* invalidity contentions to the Patent Office. Defendants thus allege that Bytemark and Meredith committed inequitable conduct. Dkt. 140 ¶¶ 154, 168, 179–80, 193–95, 196, 198–231.

### C. Bytemark's Motion to Dismiss Defendants' Inequitable Conduct Claims

Bytemark has moved to dismiss these inequitable conduct allegations from the case. Dkts. 162 and 163. In doing so, Bytemark, much like Meredith in the current motion, focused on the Court's Memorandum Opinion ("Opinion") allowing Bytemark to amend its Complaint to add the Children Patents. Dkt. 147. In particular, Bytemark and Meredith rely on the Court's statement from page 21 of the Memorandum Opinion that "Bytemark adequately disclosed the Masabi litigation to the PTO in connection with the parent patent applications, [and so] Defendants have not demonstrated that their inequitable conduct defense is meritorious." Dkt. 147 at 21.

But the Opinion's ruling on that point arose from Bytemark's misrepresentation that the Patent Office had notice of the *Masabi* § 101 rulings while the Children Patents were pending. *See* Dkt. 164 (Defendants' response to Bytemark's motion to dismiss) at 4–10. Bytemark made that misrepresentation for the first time in its reply brief in support of its motion for leave to amend, Dkt. 106, and so Defendants did not have a chance to address it. Now, Defendants have had a chance to address it—in connection with Bytemark's motion to dismiss. And the parties' briefing on that motion confirms that the Patent Office did not receive notice of the *Masabi* § 101 rulings until six months *after* the Children Patents issued:

4



Dkt. 164 at 8. Indeed, in its reply, Bytemark now claims that while there is no evidence the Patent Office learned of the *Masabi* rulings until 2020, Bytemark's conduct did not rise to the level of inequitable conduct because "the district court's notice" of the § 101 ruling had merely "gotten lost in the mail." Dkt. 163 at 4, n.2. It thus says it did not intend to deceive the Patent Office. *Id*.

That argument falls short, for a few reasons that are relevant to discovery from Meredith. **First**, even if Bytemark may have believed the § 101 notice "got lost in the mail," it is not clear that Meredith had any knowledge of the *Masabi* court's § 101 notice in the first place. She was not representing Bytemark in the *Masabi* litigation and so she was not automatically receiving ECF notices. So there is no reason to think she ever thought the Patent Office would learn about the *Masabi* § 101 rulings. **Second**, even if she did believe that the *Masabi* court had mailed the § 101 notice on February 7, 2019, as Bytemark claims it believed, as the prosecuting attorney, Meredith knew the Patent Office never received the notice because it was never reflected on the docket for either of the Children Patents until February 19, 2020. *See* Dkt. 164 at 9. **Third**, even before February 7, 2019, Meredith had an independent obligation to notify the Patent Office of the original ruling from the *Masabi* Magistrate Judge that the Children Patents should be found invalid under § 101.[3] That ruling issued on November 26, 2018, several months before even Bytemark

---

[3] *See* Dkt. 164 at 6–7 ("The MPEP instructs that '[w]here the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation **and any other material information arising therefrom** must be brought to the attention of the . . . [PTO].' MPEP § 2001.06(c) (emphasis added). The MPEP goes on to list the kinds of information that

5

claims it believed the Patent Office learned of the § 101 holding from the district court judge. Yet, on December 10, 2018, Bytemark and Meredith argued to the Patent Office that the '622 application (that would ultimately issue as the '567 patent) should not be held invalid under § 101. Dkt. 107-6 (Office Action Response, Appl. No. 14/286,622 (Dec. 10, 2018)) at 6–10. Bytemark and Meredith submitted a lengthy discussion of the Federal Circuit's *Enfish* and *DDR Holdings* cases to argue that the amended claims should survive under § 101. *Id*. Yet nowhere did Meredith or Bytemark disclose the far more relevant analysis from the *Masabi* Magistrate Judge two weeks prior. *Id*. The MPEP unquestionably required Meredith to disclose the *Masabi* Magistrate Judge's decision in this context. MPEP § 2001.06(c). Meredith's knowledge when she submitted Dkt. 107-6 to the Patent Office thus bears on the issue of inequitable conduct. Even Bytemark concedes that the Patent Office had no knowledge of the *Masabi* § 101 rulings at the time. Dkt. 163.

Bytemark's briefing on the motion to dismiss also raises discovery issues for Meredith regarding the *Masabi* invalidity contentions. For instance, in its reply brief, Bytemark falsely claims that the *Masabi* invalidity contentions were before the Patent Office while the Children Patents were being prosecuted. Dkt. 163 at 5 ("***Defendants' own counsel*** submitted the invalidity contentions to the PTO's Patent Trial and Appeal Board as exhibits in January 2018, during the covered business method reviews (CBMs) of the Parent Patents.") (emphasis in original) (citing Dkts. 163-6–10). But the documents Bytemark points to are *not* the invalidity contentions Masabi produced to Bytemark during the *Masabi* litigation and which Meredith then withheld from the

---

patent owners are required to submit. These items include 'pleadings, admissions, discovery including interrogatories, depositions, and other documents and testimony.' *Id.* They also include 'prior art, allegations of 'fraud,' 'inequitable conduct,' and 'violation of duty of disclosure,'' as well as 'any assertion that is made during litigation which is contradictory to assertions made to the examiner.' *Id.* The MPEP leaves no ambiguity on this score. Bytemark and its attorneys had to disclose both the 'existence of' the *Masabi* litigation **and** the other material information that arose from it.")

6

Patent Office. *Compare* Dkts. 163-6–10 with Ex. 3 (Masabi's invalidity contentions). Instead, they are claim charts submitted in CBM challenges to the Parent Patents. But the *Masabi* invalidity contentions charted additional prior art beyond the references presented during the CBM challenges. *See*, *e.g.*, Ex. 6 at BYTEMARK003480–86 (discussing references referred to as Cruz, Stanford, and Roldan). So, despite Bytemark's misrepresentation, Meredith nor Bytemark ever submitted the *Masabi* invalidity contentions to the Patent Office. Meredith's possession and withholding of these invalidity contentions is directly relevant to Defendants' inequitable conduct claims.

### III. LEGAL STANDARDS

#### A. Rule 45 Subpoenas and Motions to Quash

Under Rule 26,[4] parties may obtain discovery regarding any matter, not privileged, that is relevant to any claim or defense. Fed. R. Civ. P. 26(b)(1). "On a motion to quash a subpoena, '[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.'" *Nye v. Ingersoll Rand Co.*, CIV. 08-3481 DRD, 2011 WL 253957 (D.N.J. Jan. 25, 2011) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *see also* Fed. R. Civ. P. 45(d)(3)(A).

#### B. Depositions of Prosecuting Attorneys

Depositions of prosecuting attorneys are permissible. *See Alcon Labs.*, 225 F. Supp. 2d at 342; Fed. R. Civ. P. 30(a)(1). That is true even where, unlike here, the prosecuting attorney also serves as trial counsel in the litigation. *Id.* "'[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship.'"

---

[4] The scope of a Rule 45 subpoena is the same as the scope of civil discovery under Rule 26. *U.S. v. Intl. Bus. Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

*von Bulow v. von Bulow*, 811 F .2d 136, 144 (2d Cir. 1987), *quoting In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir.1984). Thus, the party seeking to invoke the privilege must establish all elements of the privilege. *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y.1993) (citing cases).

The attorney-client privilege must be interpreted narrowly because "assertions of privilege inhibit the search for truth." *Perkins v. Gregg City*, 891 F. Supp. 361, 363 (E.D. Tex. 1995). "The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). However, some materials may be discovered if the party shows that it has substantial need for the materials and cannot without undue hardship obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii).

Meredith cites *Softview Computer Prod. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815, 2000 WL 351411, at *5 (S.D.N.Y. Mar. 31, 2000), for the proposition that "[d]ocuments pertaining to the patent application process are within the scope of the work-product doctrine." Dkt. 174 at 4. But *Softview* does not offer the sweeping protection Meredith claims. In fact, it stands for exactly the opposite proposition, that patent prosecution documents *are not* given work-product protection unless there is an independent reason to believe they are prepared in anticipation of litigation:

> Documents that are generated in connection with a patent application *are not* protected by the work-product doctrine simply because an issued patent may give rise to an infringement action. However, documents pertaining to the patent application process which were also prepared because of actual or anticipated litigation *may* be protected by the work-product doctrine.

*Softview*, 2000 WL 351411, at *5 (emphasis added).

8

## IV.   ARGUMENTS

### A.   Meredith cannot avoid producing documents or appearing for deposition based on generic claims of privilege and work product protection.

Meredith objects to the document requests in Xerox and Conduent's subpoena because she contends those requests "aim to obtain privileged and protected information outside the scope of discovery." Dkt. 174 at 6. She then quotes three document requests that she contends implicate attorney-client privilege and three that implicate attorney work product. *Id*. at 6–7.

Defendants document requests are not in any way "designed to" seek privileged information. Rather, they are designed to discover Meredith's knowledge relating to the *Masabi* litigation, including what documents she possessed and ultimately withheld from the Patent Office, and when she possessed those documents. For instance, in Request 4, Conduent and Xerox ask Meredith to produce "All Documents related to Your knowledge of the court decisions finding the Parent Patents invalid in Bytemark, Inc. v. Masabi Ltd., No. 2:16-cv-543-JRG/RSP, 2018 WL 7272023 (E.D. Tex. Nov. 26, 2018), report and recommendation adopted, No. 2:16-cv-543-JRG/RSP, 2019 WL 7882728 (E.D. Tex. Feb. 7, 2019), aff'd, 792 F. App'x 952 (Fed. Cir. 2020)." Dkt. 174-2 at ECF Page 17. The next request seeks all documents related to any potential disclosure of those court decisions to the Patent Office. *Id*. (Request 5). Those targeted requests go to the very heart of Defendants' inequitable conduct claims and Meredith should produce non-privileged responsive documents.[5]

---

[5] Given the concerns Meredith identified relating to Requests 8 (relating to communications between Meredith and Bytemark), 9 (relating to communications between Meredith and her employees relating to the patents-in-suit), and 20 (relating to decisions by any applicant to disclose or withhold documents from the Patent Office) for the first time in her motion, Conduent and Xerox agree to withdraw those requests. Conduent and Xerox also agree to withdraw Requests 19, 21, 23, 26, 28, and 29.

9

Meredith has not met her burden of establishing that any of the document requests implicate attorney work product. "Just like all other documents, patent prosecution documents are only protected as work product if they are prepared 'in anticipation of litigation.'" *MPT*, 2006 WL 314435, at *3 (quoting *Hickman*, 329 U.S. at 511 and citing Fed. R. Civ. P. 26(b)(3)). Meredith nor Bytemark have alleged when any such "anticipation of litigation" arose. And of the document requests that Meredith complains of, Requests 2, 17 and 22, it is unclear how the requests implicate work product. For instance, Request 17 simply seeks the prior art Meredith reviewed during the prosecution of the patents-in-suit. That type of review is not tied to litigation or any anticipation of litigation. Similarly, Request 2 seeks prior art documents uncovered *pre*-litigation. Lastly, Request 22 seeks litigation related documents, but not the type that would implicate work-product concerns for prosecution attorneys like Meredith. She was not litigation counsel for Bytemark and there is no evidence that she participated in litigation activities such as drafting or preparing the types of documents listed in Request 22. As such, the Request is reasonably targeted to uncover final versions of those documents which were shared with third parties like Masabi and the *Masabi* court.

For the deposition portion of the subpoena, Meredith does not explain how her relevant knowledge would be entirely protected by the attorney-client privilege or work-product doctrine. When faced with similar arguments, Courts in the district have refused to prevent a prosecuting attorney's deposition. *Alcon*, 225 F. Supp. 2d at 344 ("[T]he Court cannot rule in a vacuum, prior to the deposition, that every question to be asked will seek to elicit privileged information.") (*quoting In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429, 438 (E.D. Pa. 1981)).

Ultimately, Meredith makes only accusations that Defendants seek to burden her with requests for privileged information. But her empty accusations do not overcome the substantial

authority from multiple jurisdictions that depositions of prosecuting attorneys are permissible under these circumstances. *Mondis Tech.*, Civil Action No. 15-4431 (SRC), Dkt. 247 (D.N.J. Nov. 15, 2017) (attached as Exhibit 1) (compiling cases); *Terves*, 1:19-cv-1611, Dkt. 127 (N.D. Ohio Sept. 8, 2021) (attached as Exhibit 2) ("Defendants may question [the prosecuting attorney] regarding the timing of his involvement in litigation, and in the patent prosecution. He may be questioned on what materials he submitted, or had in his possession but failed to submit to the USPTO. He may also be questioned on whether his general practices were followed during the prosecution of this patent, as well as on issues related directly to the disclosure of prior art during the patent prosecution."); *Alcon*, 225 F. Supp. 2d at 343–44.

### B. Meredith and Bytemark cannot avoid discovery based on a pending motion to dismiss; Defendants' inequitable conduct claims are live and subject to discovery.

Meredith argues that any nonprivileged information she can provide is irrelevant in light of the Court's Opinion allowing Bytemark to amend its complaint to add the patents-in-suit. Dkt. 174 at 8–9 (quoting Dkt. 147). But as explained in Section II(C), above, that Opinion was based on Bytemark's misrepresentation that the Patent Office had notice of the *Masabi* § 101 rulings while the Children Patents were pending. *See also* Dkt. 164 (Defendants' response to Bytemark's motion to dismiss) at 4–10.

In addition, the Opinion arose under a different context. In its Opinion, the Court was tasked with deciding whether Bytemark's amendment to add the Children Patents would be futile. The Court held that amendment was not futile because Defendants had not "proven" their inequitable conduct claims. Dkt. 147 at 21. Now, in connection to Bytemark's motion to dismiss, that standard is far different. It is Bytemark who must show that it would succeed "despite any set of facts which could be proved in support of [Defendants'] defense." *Salcer v. Enicon Equities*

*Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986); *see also New York v. Almy Bros., Inc.*, 971 F. Supp. 69, 72 (N.D.N.Y. 1997).

In any event, Bytemark and Meredith cannot avoid discovery based on the pending motion to dismiss. It is black letter law that "[a] motion to dismiss does not automatically stay discovery[.]" *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020) (*quoting Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). Meredith does not dispute that she has relevant, nonprivileged information relevant to Defendants' live inequitable conduct claims. She should be required to provide that information to Defendants.

      **C.**     **The subpoena does not unduly burden Meredith.**

Meredith argues that Conduent and Xerox can just as easily obtain the requested documents from Bytemark or even publicly available sources. Dkt. 174 at 6, 8, 10–11. But that argument misses the point. Defendants' inequitable conduct claims are premised, in part, on Meredith's possession and non-disclosure of documents like the *Masabi* § 101 ruling and *Masabi* invalidity contentions. Dkt. 140 ¶¶ 154, 168, 179–80, 193–95, 196, 198–231. It matters not whether those documents are publicly available. The question is whether *Meredith* possessed them and when, and what she did with them once she had them (such as whether she disclosed them to the Patent Office).

Meredith also incorrectly claims that "[a]ny nonprivileged, relevant information Meredith may provide has already been produced by Bytemark[.]" Dkt. 174 at 11. To justify the claim, Meredith incorrectly implies that Bytemark has already produced the documents Defendants seek from her by quoting Defendants' RFP Nos. 137, 142, and 143 to Bytemark. Dkt. 174 at 10. But Bytemark has not produced a single document responsive to these requests. *See*, *e.g.*, Ex. 4 (Bytemark's Responses and Objections to Defendants' 3rd Set of RFPs) at 53–54, 57–58. It either does not have them, or it is flouting its obligation to provide them. Whatever the reason, Meredith

12

cannot hide behind Bytemark here when Bytemark has not responded to the very RFPs she relies on to claim the subpoena is duplicative.

Lastly, Meredith's burden argument should be rejected because she has sought to increase Conduent and Xerox's costs in this litigation by avoiding service. Conduent and Xerox first tried to serve Meredith on June 6, 2022. However, Meredith does not use the office address listed on her New York state bar profile. So, on June 8, 2022, counsel for Conduent and Xerox emailed counsel for Bytemark asking whether they were representing Meredith in connection with the subpoena and would consent to service via email. Ex. 5 at 2 (June 8, 2022 email from J. Powers to D. Keyhani and F. Stephenson). In response, counsel for Bytemark stated "we object to your subpoena and we intend to move for a protective order" and asked for a meet and confer. *Id*. at 1–2 (June 9, 2022 email from F. Stephenson to J. Powers). Counsel for Conduent and Xerox asked for clarification on who Bytemark's counsel was referring to by the phrase "we" and requesting that, notwithstanding any objections to the subpoena itself, that Bytemark's counsel accept service for Meredith via email. *Id*. at 1 (June 10, 2022 email from J. Powers to F. Stephenson). Counsel met and conferred on the afternoon of June 10. On that meet and confer, counsel for Bytemark represented that it was still in the process of determining whether they would represent Meredith in connection with the subpoena but that they would follow up if they intended to represent her.

Bytemark's counsel never followed up, so Conduent and Xerox were left to effectuate service via hand delivery. Fed. R. Civ. P. 45(b)(1). Ultimately, Conduent and Xerox spent thousands of dollars tracking down Meredith. But once they located her, at the end of June, Meredith refused to answer the door for the process server. Ex. 6 (July 12, 2022 Affidavit of J. Butler). Finally, on July 1, the process server was able to serve Meredith. Ex. 7 (July 1, 2022 Affidavit of Service). Miraculously, despite apparently not representing Meredith for weeks while

13

Defendants tried to serve her, Bytemark's counsel filed the current motion on July 5, the first business day after Meredith was served.

Those who seek equity must do equity. Meredith cannot claim undue burden and ask the Court to reimburse her costs for responding to the subpoena, all while making every effort to increase the burden for Conduent and Xerox.

## V.      CONCLUSION

For the reasons set forth above, Meredith's Motion to Quash and for a Protective Order should be denied.

Dated:  July 12, 2022

        Respectfully submitted,

        */s/ Ashley N. Moore*
        Ashley N. Moore (admitted *pro hac vice*)
        David Sochia (admitted *pro hac vice*)
        Douglas A. Cawley (admitted *pro hac vice*)
        Jonathan Powers (admitted *pro hac vice*)
        McKool Smith, P.C.
        300 Crescent Court, Suite 1500
        Dallas, Texas 75201
        Tel:   (214) 978-4000
        Fax:   (214) 978-4044
        amoore@mckoolsmith.com
        dsochia@mckoolsmith.com
        dcawley@mckoolsmith.com
        jpowers@mckoolsmith.com

        Eliza Beeney
        McKool Smith, P.C.
        One Bryant Park, 47th Floor
        New York, New York 10036
        Tel:   (212) 402-9424
        Fax:   (212) 402-9444
        ebeeney@mckoolsmith.com

        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 12th day of July, 2022. Any other known counsel of record will be served with a copy of this document by e-mail and/or facsimile transmission.


By: */s/ Jonathan Powers*
Jonathan Powers