IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BYTEMARK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>XEROX CORP., ACS TRANSPORT SOLUTIONS, INC., XEROX TRANSPORT SOLUTIONS, INC., CONDUENT INC., and NEW JERSEY TRANSIT CORP.,<br><br>    Defendants. | Civil Action No. 1:17-cv-01803-PGG-JW<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF BYTEMARK, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT<br>NEW JERSEY TRANSIT CORP.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE. . . . . . . . . . . . . . . . . . . . . . .2

III.  LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

IV.  ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Under Second Circuit Law, NJ Transit Cannot Meet its Burden of Demonstrating that it is an Arm of the State Entitled to Sovereign Immunity. . . . . . . . . . . . . . . . . 4

        i.  NJ Transit is not an Arm of the State Because the State is Neither Legally nor Practically Responsible for Satisfying Judgments Against NJ Transit. . . . . . . .5

        ii.  NJ Transit Enjoys Significant Autonomy, with Only Limited State Control over NJ Transit's Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

        iii.  The Eleventh Amendment's Twin Objectives Articulated in *Hess* Confirm that NJ Transit is not an Arm of the State. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    B.  The Third Circuit Found that NJ Transit is not an Arm of the State Entitled to Sovereign Immunity when it Applied the Majority Approach Applied by the Second Circuit, and the *Karns* Decision is a Minority Outlier . . . . . . . . . . . . . . . . .11

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

# TABLE OF AUTHORITIES

**Cases**

*Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993). . . . . . . . . . . . . . . . . .7

*Allen v. Coughlin*, 64 F.3d 77 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233 (3d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

*Clissuras v. City Univ. of N.Y.*, 359 F.3d 79 (2d Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Cooper v. SEPTA*, 548 F.3d 296 (3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989). . . . . . . . . . . . . . . . *passim*

*Freyre v. Chronister*, 910 F.3d 1371 (11th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Gorton v. Gettel*, 554 F.3d 60 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Grajales v. P.R. Ports Auth.*, 831 F.3d 11 (1st Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437 (8th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . 1

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994). . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Hutto v. S.C. Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Karns v. Shanahan*, 879 F.3d 504 (3d Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

*Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391 (1979). . . . . . . . . . . . . . . . . .3

*Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130 (2d Cir. 2015). . . . . . . . . . . . . . . . . . . . . . .*passim*

*Maliandi v. Montclair State Univ.*, 845 F.3d 77 (3d Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . .5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . 2

*Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . 7

*Ray v. Cnty. of L.A.*, 935 F.3d 703 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 12

*Sturdevant v. Paulsen*, 218 F.3d 1160 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Tucker v. Williams*, 682 F.3d 654 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**Other Authorities**

U.S. Const. amend. XI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**Rules**

Fed. R. Civ. P. 56(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**Statutes**

N.J. Stat. Ann. § 27:25-4(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-5(j). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-5(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-5(r). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-5(u). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-5(v). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
N.J. Stat. Ann. § 27:25-17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

I.        **PRELIMINARY STATEMENT**

Defendant New Jersey Transit Corp.'s ("NJ Transit") Motion for Summary Judgment should be denied for three reasons: (1) the relevant test for sovereign immunity is that of the Second Circuit, not the Third Circuit; (2) application of the Second Circuit's test demonstrates that NJ Transit is not entitled to sovereign immunity; and (3) even an examination of Third Circuit law shows that NJ Transit is not entitled to sovereign immunity.

Under Second Circuit law, "the ***most important factor*** in determining whether a state entity is entitled to sovereign immunity[] is 'whether a judgment against the entity must be satisfied out of a State's treasury.'" *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 137 (2d Cir. 2015) (emphasis added) (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 31 (1994)). And this approach, which "recognize[s] the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations," aligns with the majority of circuits. *Hess*, 513 U.S. at 48; *see, e.g.*, *Grajales v. P.R. Ports Auth.*, 831 F.3d 11, 18 (**1st Cir.** 2016); *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (**4th Cir.** 2014); *Hudson v. City of New Orleans*, 174 F.3d 677, 682 (**5th Cir.** 1999); *Guertin v. Michigan*, 912 F.3d 907, 937 (**6th Cir.** 2019); *Tucker v. Williams*, 682 F.3d 654, 659 (**7th Cir.** 2012); *Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1439 (**8th Cir.** 1996); *Ray v. Cnty. of L.A.*, 935 F.3d 703, 709–10 (**9th Cir.** 2019); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1165 (**10th Cir.** 2000); *Freyre v. Chronister*, 910 F.3d 1371, 1384 (**11th Cir.** 2018).

But Defendant NJ Transit implores this Court to adopt the Third Circuit's approach, a minority approach which "no longer ascribe[s] primacy" to the state-treasury factor and instead considers each factor "co-equal." *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (quoting *Benn v. First Jud. Dist. of Pa.*, 426 F.3d 233, 239–40 (3d Cir. 2005)).

Applying the Second Circuit's test, NJ Transit cannot establish that it is entitled to sovereign immunity because (1) the State of New Jersey (the "State") lacks both legal and practical responsibility for satisfying any judgment against NJ Transit, and (2) NJ Transit enjoys significant autonomy, with only limited State control over NJ Transit's operations.  Moreover, "the Eleventh Amendment's twin reasons for being"—to protect the State's solvency and dignity—confirm this conclusion.  *Hess*, 513 U.S. at 47.  Furthermore, the Third Circuit found that NJ Transit is not entitled to sovereign immunity when it applied the majority approach applied by the Second Circuit.  *Compare Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 664 (3d Cir. 1989) (en banc) (holding that NJ Transit is not entitled to sovereign immunity when the most important factor is the state-treasury factor), *with Karns*, 879 F.3d at 518–19 (holding that NJ Transit is entitled to sovereign immunity when the state-treasury factor is co-equal).

## II.     STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Civil Rule 56.1(a), a Statement of Material Facts Not in Dispute is separately attached.

## III.    LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Courts "shall grant summary judgment it the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  Courts must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

IV.   ARGUMENT

NJ Transit's Motion for Summary Judgment turns exclusively on whether NJ Transit is an "arm of the state" such that it is entitled to sovereign immunity.  The Eleventh Amendment shields the states from suits brought by private individuals in federal court.  U.S. Const. amend. XI.  Generally, "the protection afforded by [the Eleventh] Amendment is only available to 'one of the United States.'"  *Hess*, 513 U.S. at 43 (quoting *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 400 (1979)).  But this protection can extend to state instrumentalities if deemed an arm of the state, such that a judgment against the entity would have "essentially the same practical consequences as a judgment against the State itself."  *Id.* (quoting *Lake Country Ests., Inc.*, 440 U.S. at 400–01).

In the absence of a clear standard articulated by the Supreme Court for determining whether an entity is an arm of the state, each circuit has developed its own test for establishing sovereign immunity.  *Leitner*, 779 F.3d at 134.  Under Second Circuit law, which "require[s] the party asserting Eleventh Amendment immunity to bear the burden of demonstrating entitlement," NJ Transit cannot establish that it is an arm of the State.  *Id.*  And Third Circuit law supports this conclusion: when the court considered **the same facts presented here,** use of either the majority approach (in *Fitchik v. New Jersey Transit Rail Operations, Inc.*) or the minority approach (in *Karns v. Shanahan*) was **outcome determinative**.

Despite NJ Transit's argument to the contrary, the "[p]rinciples of judicial comity" do not "counsel in favor" of the Court applying an improper legal standard.  *See* Mem. Law Supp. Def.'s Mot. Summ. J. 5 (arguing that it "would not be prudent" for NJ Transit to be sued in New York federal court when it was immune from a suit in New Jersey federal court).  Circuit splits exist in many areas of the law.  As such, different results may be reached in different circuits as to the

3

same issue. That reality does not mean that this Court should adopt a minority approach from another circuit just to avoid the result NJ Transit opposes. This Court should properly apply the law of this circuit—the Second Circuit—in deciding the issue.

    **A.    Under Second Circuit Law, NJ Transit Cannot Meet its Burden of Demonstrating that it is an Arm of the State Entitled to Sovereign Immunity.**

Under Second Circuit law, NJ Transit cannot establish that it is an arm of the State entitled to sovereign immunity such that a suit against NJ Transit is essentially a suit against the State itself. To determine whether an entity is an arm of the state entitled to sovereign immunity, the Second Circuit applies both the two-factor *Clissuras* test and the six-factor *Mancuso* test. *Leitner*, 779 F.3d at 134–35. These tests are similar, with "[t]he *Clissuras* test incorporat[ing] four of the six *Mancuso* factors." *Id.* at 137. If "the *Clissuras* factors point in different directions, the additional factors from the *Mancuso* test can be instructive." *Id.* But if the factors are inconclusive, "a court must focus on the two main aims of the Eleventh Amendment, as identified by the Supreme Court: preserving the state's treasury and protecting the integrity of the state." *Id.* at 135 (citing *Hess*, 513 U.S. at 47).

Applying the *Clissuras* test, courts consider "(1) the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity, and (2) the degree of supervision exercised by the state over the defendant entity." *Id.* (quoting *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 82 (2d Cir. 2004)). The first *Clissuras* factor is "the most important factor in determining whether a state entity is entitled to sovereign immunity." *Id.* at 137.

Applying the *Mancuso* test, courts consider "(1) how the entity is referred to in the documents that created it; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government;

4

(5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding upon the state. *Id.* at 135 (quoting *Mancuso v. N.Y. State Thruway Auth.*, 86 F.3d 289, 293 (2d Cir. 1996)). Like the first *Clissuras* factor, the third and sixth *Mancuso* factors reflect "whether a judgment against the entity must be satisfied out of a State's treasury," "the most salient factor in Eleventh Amendment determinations." *Id.* at 134, 137 (quoting *Hess*, 513 U.S. at 31, 48).

Here, both *Clissuras* factors weigh against finding NJ Transit an arm of the State because the State lacks responsibility for satisfying judgments against NJ Transit and exercises only limited control over NJ Transit's operations. With these factors in accord, the analysis is complete. But even if the Court determines that these factors point in different directions, the Eleventh Amendment's twin objectives articulated in *Hess v. Port Authority Trans-Hudson Corp.* confirm that NJ Transit is not an arm of the State.

      **i.    NJ Transit is not an Arm of the State Because the State is Neither Legally nor Practically Responsible for Satisfying Judgments Against NJ Transit.**

The first *Clissuras* factor weighs against finding NJ Transit an arm of the state entitled to sovereign immunity because the State is neither legally nor practically responsible for satisfying judgments against NJ Transit. This factor, "the most important factor in determining whether a state entity is entitled to sovereign immunity," incorporates "the third and sixth *Mancuso* factors, which address how the entity is funded and whether the entity's obligations are binding upon the state." *Id.* at 137. Mere "receipt of funds from state appropriations is not equivalent to satisfaction of a judgment . . . from the state treasury." *Id.* at 138.

NJ Transit concedes that "the [State] is not under a *legal* obligation to pay NJ Transit's debts or to reimburse NJ Transit for any judgments that it pays." Def.'s Mem. Law 7; Dkt. No. 170 at 4; *see also* N.J. Stat. Ann. § 27:25-17 ("No debt or liability of the corporation shall be

5

deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit of the State."). Nor does the State bear practical responsibility for satisfying judgments against NJ Transit. NJ Transit's self-serving arguments to the contrary ring hollow.

There is no real risk that an adverse judgment against NJ Transit would have an appreciable impact on the State, despite NJ Transit's claim that it relies on State funds. The majority of NJ Transit's 2022 operating budget is funded by fares, commercial revenue, and the federal government. Viqueira Dep. (Powers Ex. 2) at 27:11–28:4; NJT Board Meeting March 14, 2022, *FY23 Governor's Proposed Budget – Revenue* (Powers Ex. 4). Just **nineteen percent (19%)** of NJ Transit's 2022 operating budget came from state sources, and only a fraction of that came directly from the State's budget via the State Operating Subsidy. Viqueira Dep. (Powers Ex. 2) at 29:15–18; NJT Board Meeting March 14, 2022, *FY23 Governor's Proposed Budget – Revenue* (Powers Ex. 4). The State Operating Subsidy, which is the annual appropriation from the State's budget, made up only **four percent (4%)** of NJ Transit's $2.65 billion operating budget—and just **two tenths of a percent (0.2%)** of the State's $44.83 billion budget. Viqueira Dep. (Powers Ex. 2) at 28:18–22; NJT Board Meeting March 14, 2022, *FY23 Governor's Proposed Budget – Revenue* (Powers Ex. 4); The Governor's FY2022 Budget (Stephenson Ex. 1) at PDF Page 36. In contrast, the bulk of state funds NJ Transit received came from Turnpike Funding, which are funds primarily generated by toll roads and rest stops. Viqueira Dep. (Powers Ex. 2) at 31:11–13.

Moreover, NJ Transit has taken measures to ensure that it can satisfy adverse judgments entered against it. Under federal law, NJ Transit is required to carry liability insurance to mitigate the risk of an adverse judgment impacting NJ Transit's financial position. *Id.* at 65:6–24. Although insurance will not divest a state of its sovereign immunity, *see Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997), surely this coverage cuts against NJ Transit's argument

6

that, because it operates at a deficit, the State would ultimately foot the bill, *see, e.g.*, NJ Transit Annual Financial Report For the Fiscal Years ended 2021 and 2020 (Stephenson Ex. 2) 50 ("NJ T[ransit] is a defendant in a number of lawsuits . . . . Management believes that the ultimate resolution of these matters will not have a material adverse impact on the financial position results of operations and cash flows of NJ T[ransit].").

And NJ Transit can take additional steps, if needed, to manipulate its costs and revenue in response to any burden of satisfying its legal liabilities.  Viqueira Dep. (Powers Ex. 2) at 55:2–19.  For instance, NJ Transit can reduce its year-to-year costs by "locking in fuel pricing, reducing scheduled overtime, and implementing parts and supplies efficiencies."  NJT Board Meeting July 15, 2015, *Fare and Service Adjustments Authorization* (Stephenson Ex. 3) (reducing NJ Transit's yearly costs by "more than **$42 million**").  Likewise, NJ Transit can adjust its fares to impact the revenues it generates.  Viqueira Dep. (Powers Ex. 2) at 44:7–19; NJT Board Meeting July 15, 2015, *Fare and Service Adjustments Authorization* (Stephenson Ex. 3) (increasing fares by nine percent (9%) on average to close a **$56 million** budget gap).

Notably, NJ Transit reaches to "other [c]ircuits" such as the Ninth Circuit and D.C. Circuit for caselaw it claims supports sovereign immunity as to this factor.  *See* Def.'s Mem. Law 7–9 (discussing *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378 (9th Cir. 1993); and *Morris v. Wash. Metro. Area Transit Auth.*, 781 F.2d 218 (D.C. Cir. 1986)).  Given NJ Transit's purported reliance on "the Third Circuit's guidance," Def.'s Mem. Law 1, it is interesting why it would seek the law of other circuits instead of the Third Circuit.  This is because the Third Circuit has specifically found that this factor "does not favor a finding of immunity" for NJ Transit, noting, among other reasons, that "NJ Transit concedes that it is not entirely reliant on state funds but rather that it receives a 'combination of federal, state, and local funds' to balance its

7

budget." *Karns*, 879 F.3d at 516 (quoting NJ Transit's brief). In fact, the court in *Karns* specifically noted that "NJ Transit's reliance on both cases [*Alaska Cargo* and *Morris*] is misplaced" as they are "inapplicable" to NJ Transit. *Id.*

Because the State is neither legally nor practically responsible for satisfying judgments against NJ Transit, the first *Clissuras* factor weighs against finding NJ Transit an arm of the state entitled to sovereign immunity.

> ii. **NJ Transit Enjoys Significant Autonomy, with Only Limited State Control over NJ Transit's Operations.**

The second *Clissuras* factor weighs against finding NJ Transit an arm of the State entitled to sovereign immunity because the State exerts only limited control over NJ Transit's operations. This factor focuses on "the ***degree*** of the state's control over the entity," not simply the existence of some control. *Leitner*, 779 F.3d at 139 (emphasis added). The second *Clissuras* factor incorporates the second *Mancuso* factor, which considers "how the governing members of the entity are appointed." *Id.* at 138. But courts consider more than just "control over board decision-making"; control over "day-to-day operations" is also relevant to this analysis. *Id.* at 139. Likewise, the second *Clissuras* factor incorporates the fifth *Mancuso* factor, which considers "whether the state has veto power over the entity's actions." *Id.* at 138. But "state veto power . . . is not dispositive for the purpose of sovereign immunity." *Id.* at 139 (citing *Gorton v. Gettel*, 554 F.3d 60, 63 (2d Cir. 2009)).

Here, the degree of the State's control over NJ Transit is limited to basic oversight and policy planning. The Governor of New Jersey (the "Governor") appoints NJ Transit's Board of Directors (the "Board"), but these appointments are volunteer positions, and Board meetings only occur ten times a year. Viqueira Dep. (Powers Ex. 2) at 21:4–8, 16–17. The Board does not manage the day-to-day activities of NJ Transit, nor do they manage NJ Transit's financials. *Id.* at

20:7–9, 14–16.  And although the Governor has veto power over the decisions of the Board, this power is rarely exercised, seemingly in only the most extreme circumstances.[1]  *Id.* at 57:15–59:6.

In contrast, NJ Transit's executive management controls the day-to-day activities of NJ Transit, making both management and financial decisions for NJ Transit's 12,000 employees.  *Id.* at 24:21–25:1; 2021 NJ Transit Annual Report (Stephenson Ex. 4) 13.  And NJ Transit's executive management reports directly to NJ Transit's CEO—not to the Board.  Viqueira Dep. (Powers Ex. 2) at 22:20–23:2.  In fact, it is the executive management's responsibility to brief the Board on pertinent issues and prepare the Board for its ten annual meetings.  *Id.* at 21:18–20.

As part of a comprehensive strategic, financial, and operational assessment of NJ Transit, an independent management consulting firm concluded that the sprawling corporation lacked effective leadership and meaningful State oversight:

> In terms of leadership structure, decision-making, and governance, NJ Transit has no strategic plan, no retention program, no knowledge management program, and no succession plans.  The organization has an overly complex organizational structure matched by equally as complex business processes.  The organizational culture reflects "buck passing" and siloed behaviors, low employee morale, and ill-defined roles, authorities, and accountabilities.

*Comprehensive Strategic, Financial & Operational Assessment of NJ Transit October 5, 2018*, (Powers Ex. 5) 5.  So while there are mechanisms in place enabling some semblance of top-down State control, the reality is that NJ Transit enjoys significant autonomy.

Because the State rarely exercises the available mechanisms of its limited, top-down control over NJ Transit, the second *Clissuras* factor weighs against finding NJ Transit an arm of the State entitled to sovereign immunity.  And with the two *Clissuras* factors weighing against

---

[1] The Governor has vetoed just one Board decision in at least the past decade.  Viqueira Dep. (Powers Ex. 2) at 57:15–59:6.  In that instance, the Governor vetoed a Board decision awarding a contract to a private bus carrier that had been sued for defrauding NJ Transit.  *Id.*

finding NJ Transit an arm of the State, the Court should conclude that NJ Transit is not entitled to sovereign immunity and deny NJ Transit's Motion for Summary Judgment.

### iii. The Eleventh Amendment's Twin Objectives Articulated in *Hess* Confirm that NJ Transit is not an Arm of the State.

Even if the Court finds that the *Clissuras* factors point in different directions, the Eleventh Amendment's twin objectives—to protect the State's solvency and dignity—confirm that NJ Transit is not an arm of the State. Although "the additional factors from the *Mancuso* test can be instructive" when "the *Clissuras* factors point in different directions," here, these factors—"how the entity is referred to in the documents that created it" and "whether the entity's function is state or local"—are inconclusive. *Leitner*, 779 F.3d at 137, 139. As such, the dispositive focus must be on the twin objectives articulated in *Hess*. *See id.* at 135 (citing *Hess*, 513 U.S. at 47).

NJ Transit plucks language from its origin documents to suggest that it is an arm of the State, but these documents are not as conclusive as NJ Transit suggests. For instance, while NJ Transit is statutorily "allocated within the Department of Transportation, . . . notwithstanding said allocation, the corporation shall be ***independent of any supervision or control by the department*** or by any body or officer thereof." N.J. Stat. Ann. § 27:25-4(a). NJ Transit's origin documents grant NJ Transit a separate corporate existence, *id.*, and allow NJ Transit to sue and be sued, *id.* § 27:25-5(a), enter into contracts, *id.* §§ 27:25-5(r), (v), and purchase, own, and sell real property, personal property, and capital stock, *id.* §§ 27:25-5(j)–(k), (u).

Likewise, an examination of NJ Transit's function—and specifically the circumstances of NJ Transit's formation—fails to conclusively establish that NJ Transit is an arm of the State. Although NJ Transit now offers a variety of services throughout the geographic area of the State, NJ Transit absorbed and replaced a "balkanized" system of local transportation providers. Powers

Ex. 1 at PDF Page 124.  And the NJ Transit of today represents a patchwork of carriers which traditionally offered local, regionally restricted services:

> In 1980, NJ T[ransit] purchased Transport of New Jersey, the State's largest ***private bus company*** at that time. Between 1981–85, the services of ***several other bus companies*** were incorporated into NJ TRANSIT Bus Operations, Inc. . . . A third subsidiary, NJ TRANSIT Mercer, Inc., was established in 1984 when the agency assumed operation of bus service in the ***Trenton/Mercer County area***. A fourth subsidiary, NJ TRANSIT Morris, Inc., was established in 2011 when the agency assumed operation of the ***local bus service*** in Morris County.

*About Us*, NJ Transit (Stephenson Ex. 5).  Indeed, NJ Transit routinely collaborates with local transportation providers to offer services that are local in nature.  Viqueira Dep. (Powers Ex. 2) at 56:8–57:6.

Turning finally to the dispositive Eleventh Amendment objectives articulated in *Hess*, a finding of sovereign immunity for NJ Transit would not further these objectives.  Here, immunity would not protect the State's treasury because, as discussed above, the State is neither legally nor practically responsible for NJ Transit's debts and liabilities.  Nor would immunity protect the State's dignity; NJ Transit is a distinct corporate entity, independent of the State's Department of Transportation and statutorily empowered to sue and be sued.  Because the objectives of the Eleventh Amendment would not be furthered by according sovereign immunity to NJ Transit, the Court should conclude that NJ Transit is not an arm of the state and deny NJ Transit's Motion for Summary Judgment.

    **B.**    **The Third Circuit Found that NJ Transit is not an Arm of the State Entitled to Sovereign Immunity when it Applied the Majority Approach Applied by the Second Circuit, and the *Karns* Decision is a Minority Outlier.**

Since NJ Transit "requests that the Court follow the Third Circuit's guidance," it is important to note that the Third Circuit found that NJ Transit is not an arm of the state entitled to sovereign immunity when it applied the majority approach applied by the Second Circuit, and the

*Karns* decision is a minority outlier. Def.'s Mem. Law 1. The Third Circuit "historically considered the first factor—the state-treasury factor—as 'most important,'" like the majority of circuits do today. *Karns*, 879 F.3d at 513 (quoting *Fitchik*, 873 F.2d at 659). But in *Benn v. First Judicial District of Pennsylvania*, the Third Circuit "recalibrated the factors," marking a fundamental shift in [the court's] approach to Eleventh Amendment immunity analysis."[2] *Karns*, 879 F.3d at 513–14 (quoting *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 84 (3d Cir. 2016)). Adopting a minority approach, the Third Circuit no longer treats the state-treasury factor as "predominant" but rather considers each factor "co-equal." *Karns*, 879 F.3d at 513 (first quoting *Cooper v. SEPTA*, 548 F.3d 296, 301 (3d Cir. 2008); and then quoting *Benn*, 426 F.3d at 240).

The Third Circuit has applied both the majority and minority approach when analyzing NJ Transit, giving the state-treasury factor predominant weight in *Fitchik* and equal weight in *Karns*.[3] In those two cases, the court considered the same facts regarding NJ Transit's funding, status under state law, and autonomy; indeed, it considered the same facts presented here. "Little has changed" since the Third Circuit's en banc opinion in *Fitchik*. *Karns*, 879 F.3d at 524 (Roth, J., dissenting)

---

[2] The Third Circuit departed from the majority approach in response to the Supreme Court's holding in *Regents of the University of California v. Doe*. *Karns*, 879 F.3d at 513. But in *Regents*, the "**narrow** question" before the Supreme Court was "whether the fact that the Federal Government has agreed to indemnify a state instrumentality against the cost of litigation, including adverse judgments, divests the state agency of Eleventh Amendment immunity." *Regents of the Univ. of Cal.*, 519 U.S. at 426 (emphasis added). The Supreme Court held that an indemnification agreement does not nullify sovereign immunity. *Id.* at 431. But nothing in this holding requires that the circuits alter how they balance the state-treasury factor, and the Second Circuit—unlike the Third Circuit—has declined to do so. *See Leitner*, 779 F.3d at 137.

[3] The court in *Karns* noted that en banc reconsideration is typically required to overrule a prior precedential opinion. *Karns*, 879 F.3d at 514. But the court found that its rebalancing of the *Fitchik* factors in response to *Regents of the University of California* "unquestionably present[ed] an intervening shift in the applicable Eleventh Amendment immunity analytical framework" such that the panel in *Karns* could overrule the en banc opinion in *Fitchik*. *Id.* at 515. This further underscores the significant difference between the Second Circuit's majority approach and the Third Circuit's minority approach to weighing the state-treasury factor.

12

("This evidence might be more compelling had our Court not considered it when NJ Transit first raised its immunity defense in *Fitchik*.").

Importantly, the difference in weight applied to the state-treasury factor was outcome determinative, with the Third Circuit concluding that NJ Transit was not entitled to sovereign immunity in *Fitchik* yet immune from suit in *Karns*. In *Fitchik*, the court "concluded that because the funding factor disfavored immunity and because the remaining two factors—status under state law and the degree of autonomy—only 'slightly' favored a finding of immunity, NJ Transit was not entitled to claim Eleventh Amendment immunity." *Karns*, 879 F.3d at 513 (quoting Fitchik, 873 F.2d at 664). In contrast, the court in *Karns* "determine[d] that while the state-treasury factor counsel[ed] against awarding Eleventh Amendment immunity, the state law and autonomy factors both tilt[ed] in favor of immunity" and held that NJ Transit is an arm of the State. *Id.* at 519.

Relevant to this Court's analysis of the first *Clissuras* factor, the Third Circuit concluded that "the funding factor . . . [w]eighs [s]trongly against [NJ Transit's] claim that it is entitled to immunity from suit in federal court" and "provides extremely strong indication that [NJ Transit] is not the alter ego of [the State]." *Fitchik*, 873 F.2d at 662; *accord Karns*, 879 F.3d at 515 ("The parties have not offered updated financial information to undermine th[e] assessment [in *Fitchik*]."). And relevant to the second *Clissuras* factor, the Third Circuit determined that NJ Transit is "significantly autonomous." *Fitchik*, 873 F.2d at 664; *accord Karns*, 879 F.3d at 518 ("Our consideration of this factor is largely in accord."). *But see Fitchik*, 873 F.2d at 664 ("Since the degree of control by the governor is fairly substantial, we think that [the autonomy] factor counsels slightly in favor of according immunity to [NJ Transit]."); *Karns*, 879 F.3d at 518 ("All of these facts suggest that NJ Transit is an instrumentality of the state, exercising limited autonomy apart from it.").

13

As *Fitchik* and *Karns* make clear, the weight accorded to the state-treasury factor yields different results when considering whether NJ Transit is an arm of the State. And because the Second Circuit deems the state-treasury factor to be "the most important factor in determining whether a state entity is entitled to sovereign immunity," the Court should reach the same conclusion as the *Fitchik* court and find that NJ Transit is not entitled to immunity. *Leitner*, 779 F.3d at 137.

## V. CONCLUSION

NJ Transit cannot meet its burden under Second Circuit law of demonstrating that it is an arm of the State entitled to sovereign immunity. The Third Circuit held just that when it applied the majority approach in *Fitchik*. As such, the Court should deny NJ Transit's Motion for Summary Judgment.

Dated: November 4, 2022

Respectfully submitted,

/s/ Dariush Keyhani
Dariush Keyhani
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
Telephone: (202) 748-8950
Fax: (202) 318-8958
dkeyhani@keyhanillc.com
*Attorneys for Plaintiff Bytemark, Inc.*