UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BYTEMARK, INC.,

                          Plaintiff,

        -against-

XEROX CORP., ACS TRANSPORT
SOLUTIONS, INC., XEROX
TRANSPORT SOLUTIONS, INC.,
CONDUENT INC., and NEW JERSEY
TRANSIT CORP.

                          Defendants.

**ORDER**

17 Civ. 1803 (PGG) (JW)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Bytemark, Inc. brings this action against Defendants Xerox Corp., ACS Transport Solutions, Inc., Xerox Transport Solutions, Inc., Conduent Inc., and New Jersey Transit Corp ("NJ Transit") (collectively "Defendants") asserting claims for patent infringement, breach of contract, trade secret misappropriation, unfair competition, and unjust enrichment.[1] (See Third Am. Cmplt. ("TAC") (Dkt. No. 139) ¶ 1)

Defendant NJ Transit has moved for summary judgment based on Eleventh Amendment immunity (see Dkt. No. 197), and all Defendants have moved to stay this case pending resolution of their petitions for inter partes review before the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office (the "PTO").  (Dkt. No. 165)

For the reasons stated below, NJ Transit's motion for summary judgment will be denied, and Defendants' motion to stay the case will be denied as moot.

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

## BACKGROUND

### I.    PLAINTIFF'S ALLEGATIONS

Plaintiff Bytemark provides "a secure mobile ticketing platform for transit, tourism, and events though smartphone apps, point-of-sale plugins, and open [Application Programming Interfaces or] APIs." (TAC (Dkt. No. 139) ¶ 3)

Bytemark alleges that it entered into a series of confidentiality agreements with ACS Transport Solutions and Xerox Transport Solutions (the "Xerox Entities") for the purpose of developing joint bids to provide mobile ticketing solutions to prospective clients in the mass transit industry. (Id. ¶ 29) After Bytemark disclosed its trade secrets and proprietary information to the Xerox Entities, the Xerox Entities allegedly cut Bytemark out of the bidding process and used Plaintiff's intellectual property and trade secrets to secure a contract with NJ Transit. (Id. ¶¶ 33, 35, 37-39) The Xerox Entities incorporated Bytemark's proprietary information into their visual validation applications – including their MyTix mobile application – and then sold this allegedly infringing mobile technology to NJ Transit. (Id. ¶ 35) Conduent allegedly assisted the Xerox Entities and NJ Transit in the servicing, maintenance, and continued utilization of Bytemark's proprietary technology. (Id. ¶ 35-36, 47)

After the Xerox Entites sold their infringing MyTix application to NJ Transit, NJ Transit – "in collaboration with the Xerox Entities and Conduent[]" – offered to provide the infringing software to New York Waterway as part of an agreement under which NJ Transit and New York Waterway would offer integrated bus and ferry services to passengers. (Id. ¶¶ 36, 41-42) As a result of Defendants' actions, New York Waterway declined to extend its existing contract with Bytemark, explaining that it had received a better offer from Defendants. (Id. ¶ 42)

2

After Bytemark initiated this action, New York Waterway agreed to a temporary short-term extension of its contract with Bytemark.  (Id.)

Bytemark seeks damages related to Defendants' alleged misappropriation of Bytemark's patent-protected property and trade secrets.

In the Third Amended Complaint, Bytemark alleges that it owns trade secrets "relating to the design of applications and technical support systems and back-end management technical support and service of its [mobile ticketing] applications."  (Id. ¶¶ 84, 113)  Bytemark further alleges that it owns two patents that relate to its mobile ticketing applications – Patent No. 10,346,764 (the "'764 patent"), and Patent No. 10,360,567 (the "'567 patent").  (Id. ¶¶ 21-22, Ex. A ('764 Patent) (Dkt. No. 139-1), Ex. B ('567 Patent) (Dkt. No. 139-2))  The '764 Patent was issued on July 9, 2019, and the '567 Patent was issued on July 23, 2019.  (See TAC, Ex. A ('764 Patent) (Dkt. No. 139-1) at 2, Ex. B ('567 Patent) (Dkt. No. 139-2) at 2)

The '764 patent is entitled "Method and System for Distributing Electronic Tickets with Visual Display for Verification."  (TAC, Ex. A ('764 Patent) (Dkt. No. 139-1) at 2)  According to the patent abstract, the '764 patent "discloses a novel system and method for distributing electronic ticketing such that the ticket is verified at the entrance to venues by means of an animation or other human perceptible verifying visual object that is selected by the venue for the specific event."  (Id.)  The patent abstract further explains that this ticketing technology improves the ticket and payment experience for consumers and merchants by "remov[ing] the need [for] a bar-code scanner on an LCD display," "speed[ing] up" the ticket verification process, and allowing for ticket verification "in the absence of a network connection."  (Id.)

The '764 patent contains 28 claims.  (Id. at 28-29)  Claim 1 addresses:

3

A method performed by a computer system for displaying visual validation of the possession of a previously purchased electronic ticket for utilization of a service monitored by a ticket taker comprising:

transmitting a token associated with a previously purchased electronic ticket to a remote display device, wherein the token is a unique identifier and a copy of the unique identifier is stored on a central computer system;

validating the token by matching the token transmitted to the remote display device to the copy of the unique identifier stored on the central computing system to provide a ticket payload to the remote display device;

transmitting to the remote display device a validation display object associated with the ticket payload, the validation display object being configured to be readily recognizable visually by the ticket taker, in order to enable the remote display device to display the validation display object so that upon visual recognition by the ticket taker, the user of the remote display device is permitted to utilize the service monitored by the ticket taker; and

wherein the ticket payload contains code that destroys the validating visual object in a predetermined period of time after initial display or upon some pre-determined input event.

(Id. at 28)

The '567 patent is entitled "Method and System for Distributing Tickets with Data Integrity Checking." (TAC, Ex. B ('567 Patent) (Dkt. No. 139-2) at 2) The patent abstract states that the '567 patent "discloses a novel system and method for distributing electronic ticketing to mobile devices such that the ticket stored on the device is checked for its integrity from tampering and the device periodically reports on ticket usage with a central server." (Id.)

The '567 patent comprises 16 claims. (Id. at 36-37) Claim 1 addresses:

A mobile ticketing system for detecting fraudulent activity of tickets using data integrity, comprising:

a mobile device in communication with a server;

a server adapted to receive authentication data for a user account from the mobile device via a data network, and transmit data in the form of a ticket payload that contains code to the mobile device embodying a pass, wherein the pass includes a validation visual object that a ticket taker can rely on as a verification of the pass without using a scanning device and

4

wherein the validation visual object is not accessible until a time selected to be close to the point in time where the ticket has to be presented;

wherein the server is further configured to:
receive the pass with the data from the mobile device and determine if there is any mismatch in the received data of the pass by comparing the received data with the data transmitted;
block the user account in an event **if** the received data is mismatched with the transmitted data and detected as a fraudulent activity; and
determine the occurrence of the fraudulent activity associated with the user account in connection with the mobile ticketing system and store in a data record associated with the user account a data value indicating the fraudulent activity and in dependence on the data value indicating fraudulent activity, the code in the ticket payload makes the pass, including the validation visual object, no longer available on the device.

(Id. at 36)

Bytemark alleges that Defendants' MyTix mobile application and other sales offerings of visual validation mobile ticketing applications and systems "infringe at least claim 1 of the '567 patent . . . and at least claim 1 of the '764 patent." (TAC (Dkt. No. 139) ¶¶ 38, 48-50, 53, 58, 62-64, 66-67) On July 2, 2019, "Bytemark notified Defendants that their application and system practices" infringe "at least claim 1 of the '567 patent and claim 1 of the '764 patent." (Id. ¶¶ 43, 50, 64) "Defendants have continued to use and offer for sale Bytemark's proprietary technology," however. (Id. ¶¶ 43, 52-53, 65)

The TAC pleads patent infringement claims against all Defendants premised on the '764 patent (id. ¶¶ 57-70) and the '567 patent (id. ¶¶ 44-56).

## II.    PROCEDURAL HISTORY

### A.    Court Proceedings

The Complaint was filed on March 10, 2017 (Cmplt. (Dkt. No. 1)); the First Amended Complaint was filed on September 21, 2017 (Dkt. No. 40); the Second Amended

Complaint was filed on October 1, 2018 (Dkt. No. **73**); and the TAC was filed on April 14, 2021. (Dkt. No. 139)

The TAC pleads claims for patent infringement, breach of contract, trade secret misappropriation, unfair competition, and unjust enrichment. (Id.)

On March 11, 2022, Defendants moved to stay the instant action pending resolution of their petitions for inter partes review of the '567 patent and the '764 patent. (Def. Stay Mot. (Dkt. No. 165)) Bytemark filed its opposition to the stay motion on March 25, 2022 (Pltf. Opp. to Stay Mot. (Dkt. No. 168)), and Defendants submitted their reply on March 30, 2022. (Dkt. No. 167)

In a May 9, 2022 letter, Defendant NJ Transit sought leave to move for summary judgment on grounds of Eleventh Amendment immunity. (Dkt. No. 170) On July 15, 2022, NJ Transit moved to stay this case pending a ruling on its proposed summary judgment motion. (Dkt. No. 181)

On July 21, 2022, this Court granted NJ Transit leave to move for summary judgment on the issue of Eleventh Amendment immunity and stayed the proceedings as to NJ Transit. (Dkt. No. 188) On August 3, 2022, the remaining parties moved to stay the case in its entirety pending resolution of NJ Transit's summary judgment motion (Dkt. No. 189); this Court granted that motion on August 9, 2022. (Dkt. No. 190)

On October 14, 2022, NJ Transit submitted its summary judgment motion based on Eleventh Amendment immunity. (Dkt. No. 197) Bytemark filed its opposition on November 4, 2022 (Dkt. No. 204), and NJ Transit replied on November 15, 2022. (Dkt. No. 201)

B.       *Inter Partes* **Review**

On February 18, 2022, Defendants filed petitions with the PTO for inter partes review of the '764 and '567 patents.[2]  Petition for Inter Partes Review (Dkt. No. 1), Xerox Corp. v. Bytemark, Inc., No. IPR2022-00621 (P.T.A.B. Sept. 7, 2023); Petition for Inter Partes Review (Dkt. No. 1), Xerox Corp. v. Bytemark, Inc., No. IPR2022-00624 (P.T.A.B. Feb. 10, 2023).

1.       **'764 Patent *Inter Partes* Proceedings**

On August 17, 2022, the PTO's Patent and Trial Appeal Board issued a decision granting institution of inter partes review as to the '764 patent.  See Decision Granting Institution of Inter Partes Review (Dkt. No. 9) at 2, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00621 (P.T.A.B. Aug. 17, 2022).  The Patent and Trial Appeal Board issued an initial judgment on August 16, 2023 regarding the '764 patent, which was superseded by a corrected judgment on September 7, 2023.  See Corrected Judgment (Dkt. No. 36), Xerox Corp. v. Bytemark, Inc., No. IPR2022-00621 (P.T.A.B. Sept. 7, 2023); Judgment (Dkt. No. 34), Xerox Corp. v. Bytemark, Inc., No. IPR2022-00621 (P.T.A.B. Aug. 16, 2023).

In the corrected judgment, the Patent and Trial Appeal Board found that claims 1, 2, 9, 10, 15-24, and 26-28 of the '764 patent are unpatentable.  Corrected Judgment (Dkt. No. 36) at 76-77, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00621 (P.T.A.B. Sept. 7, 2022).  The Patent and Trial Appeal Board further found that Defendants had not shown that claims 3-8, 11-14, and 25 of the '764 patent are unpatentable.  Id.

---

[2]  In resolving the instant motions, this Court takes judicial notice of filings in proceedings before the PTO.  See Nespresso USA, Inc. v. Peet's Coffee, Inc., 22-cv-02209 (CM), 2023 WL 374980, at *4 (S.D.N.Y. Jan. 24, 2023) ("It is well established that the court may properly take judicial notice of official records of the United States Patent and Trademark office." (quotation marks, citations, and alterations omitted)).

### 2. '567 Patent *Inter Partes* Proceedings

On August 24, 2022, the PTO's Patent and Trial Appeal Board issued a decision denying institution of inter partes review as to the '567 patent.  See Decision Denying Institution of Inter Partes Review (Dkt. No. 9) at 2, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00624 (P.T.A.B. Aug. 24, 2022).  On September 23, 2022, Defendants requested a rehearing of their petition and a Precedential Opinion Panel review of issues raised in the Board's decision.  See Petitioners' Request for Rehearing (Dkt. No. 10) at 2, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00624 (P.T.A.B. Feb. 10, 2023).  On February 10, 2023, the PTO's Patent and Trial Appeal Board ordered director review of its denial of inter partes review but dismissed Defendants' requests for rehearing and Precedential Opinion Panel review.  See Order (Dkt. No. 13) at 2, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00624, at 2 (P.T.A.B. Feb. 10, 2023) (per curiam).  That same day, PTO Director Katherine K. Vidal issued a decision affirming the August 24, 2022 decision denying institution of inter partes review as to the '567 patent.  See Decision Granting Sua Sponte Director Review and Affirming the Patent Trial and Appeal Board Decision Denying Institution (Dkt. No. 12) at 2, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00624 (P.T.A.B. Feb. 10, 2023).

## DISCUSSION

Pending before this Court are (1) Defendant NJ Transit's motion for summary judgment on the grounds of Eleventh Amendment immunity (see Def. NJ Transit Sum. J. Mot. (Dkt. No. 197)); and (2) Defendants' motion for a stay of this case until the PTO's Patent Trial and Appeal Board issues a decision concerning Defendants' petitions for inter partes review. (Def. Stay Mot. (Dkt. No. 165))

8

I.    **NJ TRANSIT SUMMARY JUDGMENT MOTION**

Defendant NJ Transit contends that it is entitled to summary judgment on all of Plaintiff's claims because it "is an arm of the State of New Jersey, and [is] not subject to suit under the Eleventh Amendment of the United States Constitution." (Def. NJ Transit Sum. J. Br. (Dkt. No. 198) at 4)

On March 4, 2026, the Supreme Court issued its decision in Galette v. New Jersey Transit Corporation, 164 S.Ct. 854 (2026). Galette addresses the question of "whether New Jersey Transit is an arm of New Jersey and thus entitled to the State's sovereign immunity." Id. at 863.

Galette holds that "NJ Transit is not an arm of New Jersey and thus is not entitled to share in New Jersey's interstate sovereign immunity." Id. at 875. The opinion notes that "New Jersey structured NJ Transit as a legally separate entity," that "the State is not formally liable for any of NJ Transit's debts or liabilities," and that "the control that New Jersey exerts over NJ Transit . . . does not meaningfully affect NJ Transit's status, given the fact that it is a legally separate corporation and is responsible for its own judgments." Id. at 871-72.

Galette forecloses any argument that NJ Transit is immune from suit in federal court under a theory of sovereign immunity. Accordingly, NJ Transit's motion for summary judgment on grounds of Eleventh Amendment immunity (Dkt. No. 197) is denied, and this Court's order (Dkt. No. 190) staying this case pending resolution of NJ Transit's summary judgment motion is vacated.

II.    **MOTION TO STAY PENDING *INTER PARTES* REVIEW**

As noted above, Defendants moved to stay this case pending resolution of their petitions for inter partes review of the '567 and '764 patents. (Def. Stay Mot. (Dkt. No. 166) at

9

5) Defendants argued that review by the PTO's Patent Trial and Appeal Board "will shed light on the meaning of the claim terms and the patented technology and include an analysis of the prior art in this case." (Id.)  Defendants also asserted that inter partes review could "dispose of Bytemark's two patent infringement claims altogether." (Id.)

As discussed above, this case has been stayed since August 9, 2022, pending resolution of NJ Transit's summary judgment motion premised on Eleventh Amendment immunity. (See August 9, 2022 Order (Dkt. No. 190)  In the interim, and as discussed above, the Patent Trial and Appeal Board has issued final decisions concerning both of Defendants' petitions for inter partes review. See Corrected Judgment (Dkt. No. 36), Xerox Corp. v. Bytemark, Inc., No. IPR2022-00621 (P.T.A.B. Sept. 7, 2023) (finding some claims in the '764 patent unpatentable); Decision Granting Sua Sponte Director Review and Affirming the Patent Trial and Appeal Board Decision Denying Institution (Dkt. No. 12) at 2, Xerox Corp. v. Bytemark, Inc., No. IPR2022-00624 (P.T.A.B. Feb. 10, 2023) (affirming Patent Trial and Appeal Board decision denying institution of inter partes review).  Accordingly, Defendants' stay motion (Dkt. No. 165) is denied as moot.

## CONCLUSION

For the reasons stated above, NJ Transit's motion for summary judgment (Dkt. No. 197) is denied; this Court's August 9, 2022 order staying this case pending resolution of NJ Transit's summary judgment motion (Dkt. No. 190) is vacated; and Defendants' motion to stay this case pending inter partes review (Dkt. No. 165) is denied as moot.

A status conference in this matter will take place on **April 17, 2026, at 10:00 a.m.,** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

By **April 10, 2026**, the parties will submit a joint status letter and proposed Case Management Plan and Scheduling Order, in accordance with this Court's Individual Rules of Practice in Civil Cases. A model Civil Case Management Plan and Scheduling Order is available on the Court's website (https://www.nysd.uscourts.gov/hon-paul-g-gardephe).

The parties' joint status letter will address the following matters: (1) the effect of the Patent and Trial Appeal Board decisions on this action, including with respect to Plaintiff's motion to dismiss Counterclaim V and strike Defendants' Twelfth Affirmative Defense (Dkt. No. 161); (3) what the parties envision as to discovery and future motion practice in this case, including as to the matters discussed in Plaintiff's July 8, 2022 letter (Dkt. No. 175); and (4) the prospect for settlement.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 165, 197).

Dated: New York, New York
      March 30, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge

11